1  Alex R. Straus (SBN 321366)
   **MILBERG COLEMAN BRYSON**
2  **PHILLIPS GROSSMAN, PLLC**
   280 S. Beverley Drive
3  Beverly Hills, CA 90212
   Tel:    (917) 471-1894
4  Fax:    (310) 496-3176
   Email: astraus@milberg.com
5
6  *Attorneys for Plaintiff*

7  *[Names and addresses of additional Counsel for Plaintiff on Signature Page]*

8

9                        **UNITED STATES DISTRICT COURT**
                         **CENTRAL DISTRICT OF CALIFORNIA**
10                                **WESTERN DIVISION**

11

12 | PETER MOSES GUTIERREZ JR., individually and on behalf of all others similarly situated, | **Case No.** |
13 | | |
   | Plaintiff, | **CLASS ACTION COMPLAINT** |
14 | | |
   | v. | **DEMAND FOR JURY TRIAL** |
15 | | |
16 | AMPLIFY ENERGY CORPORATION; BETA OPERATING COMPANY, LLC; and DOE CORPS 1-100, | |
17 | | |
18 | | |
19 | Defendants. | |
20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
1

Plaintiff Peter Moses Gutierrez Jr. (the "Plaintiff"), on behalf of themselves and all others similarly situated (the "Class"), brings this Class Action Complaint (the "Action") against Defendants AMPLIFY ENERGY CORPORATION ("Amplify"); BETA OPERATING COMPANY, LLC ("BETA OFFSHORE"); AND DOE CORPS 1-100 ("Elly" or the "Defendants") for violations of state law. The allegations herein are made based on Plaintiff's personal knowledge as to the allegations pertaining to themselves, and upon information and belief as to all other matters.

## INTRODUCTION

1. Defendants operate an oil rig and connected pipeline(s) located off the coast of the state of California; the rig, known as Elly, had a breach which occurred on or around October 1st, 2021. The exact cause of the breach is still unknown.

2. The area affected by the oil spill is a stretch of California's Pacific coast, from Huntington Beach to Newport Beach, as well as the surrounding region (the "Affected Area"). At the time of the filing of this complaint, at least 126,000 gallons of oil were spilled into the Pacific Ocean, causing an "environmental catastrophe," according to Huntington Beach mayor Kim Carr. At the time of this complaint's filing, deceased animals were washing up covered in oil on the shoreline of the Affected Area and a large ecological reserve nearby had suffered tremendous damage. Additionally, the Orange County healthcare agency released a statement to the citizens of the Affected Area about the deleterious effects of the oil spill to human health and safety.

3. An image of the oil spill can be seen below:



4. Oil spills are not new – the corporations that run oil rigs and pipelines assume the risk of oil spills when they undertake the responsibility required to run those entities. And, when that responsibility is breached by the defendants, as here, the consequences can be catastrophic for the people, the environment, and the defenseless animals who suffer from all of the damage that flows from a breached rig or pipeline.

5. As such, Plaintiff brings this class action (the "Action") on behalf of himself and all others similarly situated to redress the harm caused by the Defendants' Elly pipeline oil spill in the Affected Area.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(the "Class Action Fairness Act"), because Plaintiff alleges that the amount in controversy exceeds the sum of $5,000,000.00, in the aggregate, there are well over 100 members of the Classes that are known to exist, and this is a class action in which the Plaintiff is from a different state of at least one Defendant – namely, Plaintiff Gutierrez Jr. is from the state of California and Defendant Amplify is headquartered in Houston, Texas.

7. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein from part of the same case or controversy.

8. Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because the Plaintiff resides in this District and are residents of the state of California.

9. Alternatively, venue is proper in this this District because the harm that the Defendants caused is in this District.

## PARTIES

10. **Plaintiff.** Plaintiff Peter Moses Gutierrez Jr. is a citizen of California. Plaintiff owns a disk jockey ("DJ") company which performs events frequently on the Huntington Beach beachfront. Plaintiff is losing and will lose a substantial amount of his DJ business as a result of the Defendants' oil spill for the foreseeable future due to the necessary closure of Huntington Beach due to the Defendants' collective conduct with respect to the oil spill. Additionally, as a

resident of Huntington Beach, Plaintiff has been or will be exposed to toxins as a result of the Defendants conduct.

11. Thus, Plaintiff was harmed by the Defendants' conduct alleged herein.

12. **Defendants.** Defendant AMPLIFY ENERGY CORPORATION is a Delaware corporation with its principal place of business located at 500 Dallas Street, Suite 1700, Houston, Texas. Amply owns subsidiary Beta Operating Corporation, a co-defendant in this Action, who is responsible for the management and/or ownership of the Elly oil rig. At the time of the filing of this Action, Amplify Chief Executive Officer Martyn Willsher addressed some of the substance related to the oil spill at-issue in this complaint; thus, Amplify assumes responsibility for at least some of the allegations set forth in this complaint.

13. Defendant BETA OPERATING COMPANY, LLC (a/k/a BETA OFFSHORE) is a limited liability corporation with its principal place of business located 11 W. Ocean Blvd., Suite 1240, Long Beach, California. BETA OFFSHORE is one of the largest oil producers in Southern California and is a division within Amplify Energy Corporation, a co-defendant. BETA OFFSHORE is believed to be responsible for the day-to-day operations and management of the Elly oil rig.

14. Defendant DOE CORPS 1-100 are subsidiaries and/or affiliates of the Defendants that may be responsible for the conduct alleged herein. Such parties are named "John Doe Corporations" pending the discovery portion of this case.

## FACTUAL ALLEGATIONS

15. According to information and belief, the Elly pipeline and the facilities that operate the pipeline were built in the late 1970's and early 1980's.[1] The pipeline, which ranges nearly 18 miles, has been under the ownership of Defendant Amplify for approximately nine years.[2]

16. On Saturday, October 2, 2021, shortly after 9 AM local time, the United States Coast Guard received a call about a potential oil spill in the affected area.[3]

---

[1] Alta Spells, Holly Yan, and Amir Vera, "An oil spill of the California coast destroyed a wildlife habitat and cased dead birds and fish to wash up on Huntington Beach, officials say," CNN.COM (Oct. 3, 2021), at https://www.cnn.com/2021/10/03/us/california-oil-spill/index.html.
[2] *Id.*
[3] *Id.*

17. While the leak became evident to the Coast Guard on Saturday, October 2, 2021, Huntington Beach, Orange County supervisor Katrina Foley stated that "[the pipeline] has probably been leaking longer than we know."[4] However, Amplify CEO, Martyn Willsher, stated that his company notified the Coast Guard on Saturday morning – which would have been after the leak began.[5]

18. At the time of this complaint, roughly 126,000 gallons of post-production crude leaked into the Pacific Ocean along the California coast; Huntington Beach, which is in the Affected Area, was among one of the first beaches impacted by the leak.[6] Huntington Beach's mayor, Kim Carr, called the spill an "ecological disaster."[7] Multiple reports identified the oil rig "Elly" as the cause of the oil spill – though the specific location of the leak is currently unknown at this time..

19. The effects to the surrounding area were swift and drastic.

20. The area of crude that spilled into the Pacific spanned about 8,320 acres (an area larger than Santa Monica), and the oil tarnished a 25-acre ecological reserve called Talbert Marsh which is home to dozens of species of birds.[8]

21. The Defendants had an obligation to oversee the safe operation of the Elly oil rig in order to ensure that there would be no leak of oil into the Pacific Ocean.

22. After the breach occurred and oil began to seep into the Pacific Ocean, the surrounding areas became affected and the citizens who live in those areas were affected as well.

23. The Orange County healthcare agency released the following update:

> In response to the coastal oil spill that occurred Saturday, the OC Health Care Agency's (HCA), County Health Officer, Dr. Clayton Chau issued a health advisory today to recommend those who may have encountered the contaminated materials to seek medical attention.

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] Hannah Fry, Robin Estrin, Anh Do, Jaclyn Cosgrove, Louis Sahagun, Rong-Gong Lin II, Brittny Mejia, "Massive oil spill sends crude onto Orange County breaches, killing birds, marine life," LA TIMES (Oct. 2, 2021), at https://www.latimes.com/california/story/2021-10-02/coast-guard-rushes-to-contain-newport-beach-oil-slick.

CLASS ACTION COMPLAINT
5

"The effects of oil spills on humans may be direct and indirect, depending on the type of contact with the oil spill. People may come in direct contact with oil and/or oil products while walking in a contaminated area (e.g., beach). An initial irritation will be obvious. Additionally, contaminants may be absorbed through the skin. Even when an oil sheen may not be visible, dispersed and dissolved oil contaminants may exist in the water," stated Dr. Chau. "Please contact your family physician or call 911 if you are experiencing adverse symptoms. Currently, we are asking residents to please refrain from participating in recreational activities on the coastline such as swimming, surfing, biking, walking, exercising, gathering, etc."

According to the HCA's Environmental Health Division, spilled oil can pose a skin contact concern and it contains volatile components that can evaporate in the air. Depending on their concentration, such air pollutants may travel by the wind and aerosols. Petroleum products contain toxic chemicals such as benzene and aromatic hydrocarbons. Prolong exposure with these chemicals may cause health issues.

Symptoms reported from excessive exposure to oil or dispersants commonly include the following:

- Skin, eye, nose and throat irritation
- headache
- dizziness
- upset stomach
- vomiting
- cough or shortness of breath

Inhalation of toxic oil vapors or other aerosolized oil compound particles from wind-blown waves can cause these side effects. The elderly, children, and folks with respiratory diseases such as asthma will be more susceptible to adverse side effects from inhaling the oil vapors. Please contact your family physician or call 911 should you experience these symptoms from contacting or inhaling the oil vapors.

The HCA, in coordination with local, state and federal authorities will continue to monitor and keep you informed. In addition to the immediate impact on air pollution, we advise against consuming seafood from personal fishing off the beaches.[9]

24. According to Huntington Beach mayor, Kim Carr, the disaster was so profound that it warranted closing the beaches in Orange County and that the closures could last for up to "a few months."[10] Additionally, the impact on wildlife is anticipated to be devastating as well; Gwen

---

[9] https://www.ocgov.com/news/oc-health-care-agency-issues-health-advisory-residents-exposed-oil-contaminants, (last accessed Oct. 4, 2021).

[10] Eric Resendiz, "Efforts underway by land and sea to clean oil spill along Orange County coast," ABC7 NEWS (Oct. 4, 2021), at https://abc7.com/newport-beach-oil-coast-guard-slick/11078784/.

Goodmanlowe, a marine biology professor at California State University, Long Beach stated, "[t]he entire ecology of the areas can be affected by an oil spill. Marine animals, if they ingest the oil, they have got lung infections, they also can't reproduce or get reproductive impairment."[11]

25. The damage that has resulted here is tremendous.

26. That damage includes (but is not limited to): harm to personal property, harm to personal health, harm to animals and livestock owned by members of the Putative class, harm to businesses, diminishment of property values for members of the Putative class who own/sell/buy or are involved in the transaction of property in the Affected Area, and increased costs associated with repairing the harm done by the Defendants as alleged herein.

## CLASS ACTION ALLEGATIONS

27. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiff seeks certification of the following class (hereinafter, the "Class"):

> All natural persons and/or business who have been harmed as a result of the Elly oil rig oil spill/breach that occurred on or about October 1, 2021.

28. Excluded from the Class are Defendants, their subsidiaries, affiliates, officers, directors, and employees.

29. **Numerosity: Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiff is informed and believes—based upon the publicly-available information discussed herein—that there are at least thousands of Class members, making joinder impracticable.

30. **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** Defendants have acted with respect to Plaintiff and the other members of the proposed Class in a manner generally applicable to each of them. There is a well-defined community of interest in the questions of law and fact involved, which affect all Class members.

---

[11] *Id.*

CLASS ACTION COMPLAINT
7

The questions of law and fact common to the Class predominate over the questions that may affect individual Class members, including the following:

    a.    Whether the Defendants violated the state law claims pled herein;

    b.    Whether the Defendants owed a duty to Plaintiff and the other Class members;

    c.    Whether the Defendants breached that duty;

    d.    Whether the Defendants caused harm to the Plaintiff and other Class members;

    e.    Whether compensatory or consequential damages should be awarded to Plaintiff and the other Class members;

    f.    Whether restitution should be awarded to Plaintiff and the other Class members; and

    g.    Whether injunctive and/or other equitable relief is appropriate, and what that relief should be.

31. **Typicality: Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of other Class members' claims because Plaintiff and class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

32. **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate class representative because their interests do not conflict with the interests of Class members who they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and their counsel.

33. **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).** The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other class members and impair their interests. Defendants have acted and/or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate.

34. Injunctive relief is particularly necessary in this case because Plaintiff and other Class members continue suffer harm due to the leak caused by the Defendants' conduct.

35. **Superiority: Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for class members to individually seek redress. Even if Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT I

## NEGLIGENCE

36. Plaintiff realleges and incorporate by reference each of the above paragraphs as if fully set forth herein.

37. The actions of Defendants were negligent.

38. The actions of the Defendants, alternatively, were negligent under the doctrine of *res ipsa loquitor*.

39. Defendants owned/operated/managed the Elly oil rig; Defendants therefore assumed the duty of owning/operating/managing the Elly oil rig in a safe manner which would keep it free from having issues – like causing an oil spill.

40. Defendants failed to properly operate the oil rig, resulting in a catastrophic oil spill.

41. Defendants failed to ensure that the oil rig was safe to operate, when, in reality, it was not.

42. Defendants' conduct fell below the standard of care of a reasonable property owner/operator in similar circumstances.

43. Defendants knew or should have known about its failure to adequately operate and/or supervise the oil rig for its intended purpose.

44. Defendants failed to warn and/or provide Plaintiff, the Class, and the public at large with adequate and timely notice of the hazards and their impacts.

45. Defendants conduct alleged herein caused both physical personal injury and real property damage that also resulted in stress and anxiety for the Plaintiff and Class members. And, as a direct and proximate result of the Defendants' conduct as set forth herein, Plaintiff and Class members have suffered damages.

## COUNT II

## RESPONSE COSTS UNDER THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT

46. Plaintiff realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

47. The oil rig is a "facility" within the meaning of 42 U.S.C. § 9601(9).

48. Each Defendant is (1) a current owner or operator; (2) a former owner or operator of the rig at the time the hazardous substances described herein were released; (3) a generator or other party who arranged for disposal of hazardous substances at the rig; or (4) a transporter of hazardous substances to the rig pursuant to 42 U.S.C. § 9607(a).

49. Defendants have allowed a "release" or "threatened release" of a hazardous substance from the facility within the meaning of 42 U.S.C. § 9607(a)(4), including but not limited to sulfur dioxide, hydrogen sulfide, volatile organic compounds, oil and other hazardous substances.

50. As a result of the release of hazardous substances from the rig, including sulfur dioxide, hydrogen sulfide, volatile organic compounds, oil and other hazardous substances, Plaintiff and Class Members have incurred response costs consistent with the national contingency plan.

51. Plaintiff and Class Members have suffered harm as a result of these releases and are entitled to declaratory judgment, injunctive relief, and response costs incurred as a result thereof.

## COUNT III

### PRIVATE NUISANCE/TRESPASS

52. Plaintiff realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

53. Defendants' actions constitute a private nuisance and/or a trespass.

54. Defendants' discharge of oil and other chemicals, toxins, and particulates, into Plaintiff's and Class Members' residences and other properties, interfered with Plaintiff's and Class Members' use and enjoyment of their homes and properties, damaged their homes and properties, and caused personal injuries.

55. By so doing, Defendants have wrongfully and unreasonably interfered with Plaintiff and Class Members' private use and enjoyment of their homes and properties.

56. As a result, Plaintiff and the Class have been damaged as alleged herein.

## COUNT IV

### MEDICAL MONITORING

57. Plaintiff's allegations are incorporated by reference as though fully set forth herein.

58. Plaintiff and Class Members were significantly exposed to oil and other chemicals, toxins, and particulates proven hazardous to health,

59. The exposure to these dangerous substances is such that Plaintiff and the Class Members have been placed at an increased risk of contracting latent illness and disease, including but not limited to cancer, and as such, require medical monitoring which Defendants are responsible for providing and paying for.

60. Monitoring and testing procedures for cancer and other illnesses associated with exposure to oil and other chemicals, toxins, and particulates exist which make the early detection and treatment of the disease possible and beneficial.

61. As a result, the Court should establish a Court-supervised and administered trust fund and medical monitoring regime to compensate Plaintiff and Class Members for their economic damages.

## PRAYER FOR RELIEF

62. WHEREFORE, Plaintiff, individually and on behalf of all other Class members, respectfully request that the Court enter an Order:

A. An order naming Plaintiff's counsel as lead counsel for this matter and any other related or consolidated matters;

B. An order naming Plaintiff lead plaintiff for this matter and any other related or consolidated matters;

C. Damages;

D. Punitive damages where allowable;

E. Pre- and post-judgment interest as allowed by law;

F. Injunctive relief ceasing Defendants' continued inadequate methods of compensation to victims of Defendants' conduct and inadequate cleanup of the victims' property;

G. Declaratory judgment that Defendants are responsible for past and future costs to remedy the harm caused to Plaintiff, Class Members and their properties;

H. Attorneys fees and costs pursuant to any applicable statutes and/or regulations; and;

I. All other relief this Court deems necessary, just and proper.

DATED: Oct 4, 2021             Respectfully submitted,

                                           s/ Alex R. Straus
                                           Alex R. Straus (SBN 321366)
                                           *astraus@milberg.com*
                                           **MILBERG COLEMAN BRYSON**
                                           **PHILLIPS GROSSMAN, PLLC**
                                           280 S. Beverley Drive
                                           Beverly Hills, CA 90212
                                           Tel.:   (917) 471-1894
                                           Fax:   (310) 496-3176

Blake Hunter Yagman*
*byagman@milberg.com*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel.:   212-594-5300

*Attorneys for Plaintiff*
*\*Pro Hac Vice Forthcoming*