Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverley Drive
Beverly Hills, California 90212
Phone: 917-471-1894
Fax: 310-496-3176
astraus@milberg.com

*Attorneys for Plaintiffs*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| PETER MOSES GUTIERREZ, Jr.; CHANDRALEKHA WICKRAMASEKARAN and RAJASEKARAN WICKRAMASEKARAN, as Trustees of THE WICKRAMASEKARAN FAMILY TRUST established March 12, 1993; *et al.* individually and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> vs. <br><br> AMPLIFY ENERGY CORP., a Delaware Corporation, BETA OPERATING COMPANY, LLC, a Delaware, limited liability company, and SAN PEDRO BAY PIPELINE COMPANY a California Corporation and DOE CORPS 1-100, <br><br> Defendants | Case No. 8:21-CV-01628-DOC-JDE <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> DEMAND FOR JURY TRIAL |

## I.     INTRODUCTION

Peter Moses Gutierrez, Jr.; and Chandralekha Wickramasekaran and Rajasekaran Wickramasekaran, as Trustees of The Wickramasekaran Family Trust established March 12, 1993 (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Amplify Energy Corp, Beta Operating Company, LLC, and San Pedro Bay Pipeline Company ("Defendants"), based where applicable on personal knowledge, information and belief, and the investigation and research of counsel.

## II.     NATURE OF THE ACTION

1.     On the evening of October 1, 2021, there were reports of an oily sheen in the waters offshore of Long Beach, California ("the Oil Spill). On October 2, 2021 it was determined this Oil Spill due a rupture in a 17.5-mile long pipeline just offshore of Orange County, California known as the San Pedro Bay Pipeline ("the Pipeline"), owned and operated by Defendants. The rupture caused tens of thousands of gallons of toxic crude oil flowing into the Pacific Ocean and onto some of California's most beautiful beaches and into its pristine waters ("the Affected Coastline").

2.     Before Defendants shut off the Pipeline, it had discharged crude oil in an amount estimated to be as much as 125,000 gallons. Oil floated onto the surface of the ocean creating slicks that stretched for miles. It then travelled into the shoreline and clung to rocks, sand, wild animals, and marine life. The spill forced the closure of beaches, nature reserves, and fertile fishing grounds, including a variety of shellfish and fishing operations, and damaged coastal private properties.

3.     On November 20, 2021, it was reported by county officials and the Huntington Beach Police Department that there was yet another oil sheen in the area of the same Pipeline; at the time of this filing, it was still being ascertained whether the Pipeline had discharged oil once again.

4.     These waters are home to hundreds of sensitive animal species, and serve as the backbone of the local economy. Tourists come to these beaches to enjoy

First Amended Class Action Complaint
Case No. 8:21-CV-01628-DOC-JDE

the unspoiled sand and water. Additionally, people support themselves and their families by harvesting fish, squid, and shellfish from these waters. The beachfront properties along the central coast of California, like coastal properties throughout the state, are highly valuable. The property owners enjoy the unspoiled sand and water, direct access to fishing, surfing, kayaking, and other activities. The oil fields below these waters also provide many local jobs for workers in offshore and onshore oil and gas operations, and a lucrative market for small business that support the oil companies.

5.     This could have been averted had Defendants adequately maintained the Pipeline, making it less susceptible to rupture, or properly responded to the rupture of the Pipeline.

6.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on their own behalves and as representatives of others similarly situated to recover significant losses as well as expenditures of time, effort, and resources that they have incurred and will continue to incur because of Defendants' oil spill.

## III.   PARTIES

7.      Plaintiff Peter Moses Gutierrez, Jr. is a citizen of California. Plaintiff Gutierrez owns a disk jockey ("DJ") company which performs events frequently on the Huntington Beach beachfront.

8.     Chandralekha Wickramasekaran, a natural person and citizen of California, is a Co-Trustee of The Wickramasekaran Family Trust established Mach 12, 1993 who owns beachfront rental property located in Newport Beach, California. As a result of the Defendants' conduct alleged herein, the Plaintiff has been harmed.

9.     Rajasekaran Wickramasekara, a natural person and citizen of California, is a Co-Trustee of The Wickramasekaran Family Trust established Mach 12, 1993 who owns beachfront rental property located in Newport Beach, California. As a result of the Defendants' conduct alleged herein, the Plaintiff has been harmed.

10.     Defendant Amplify Energy Corp is a Delaware corporation with its principal place of business in Dallas Texas.

11.     Defendant Beta Operating Company, LLC is a Delaware limited liability company with its principal place of business in Long Beach California.

12.     Defendant San Pedro Bay Pipeline Company is California corporation with its principal place of business in Long Beach California.

13.     Defendants own and operate the San Pedro Bay Pipeline, a crude oil pipeline system which, until shut down following the rupture, had been transporting crude oil from three offshore platforms just offshore of Orange County.

## IV.    JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant, specifically, Defendant Amplify maintains its headquarters in Texas whereas Plaintiffs are citizens of California; there are more than 100 class members; and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

15.     Alternatively, venue is proper in this this District because the harm that the Defendants caused to Plaintiffs is in this District; additionally, Plaintiff Gutierrez lives in this District.

16.     This Court has personal jurisdiction over Defendants because they are registered to conduct business in California, and have sufficient minimum contacts with California.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendants have caused harm to Class members residing in this District.

## V.    FACTS

### A. The Affected Coastline

18.    The 17.5-mile San Pedro Bay pipeline extends both onshore and offshore from Platform Eureka, to Platforms Elly and Ellen, to a pumping station in Long Beach (collectively "the Pipeline"). The Pipeline runs south of Long Beach and west of Huntington Beach, Newport Beach, and Laguna Beach.

19.    According to information and belief, the Pipeline and the facilities that operate the pipeline were built in the late 1970's and early 1980's and has been under the ownership of Defendant Amplify for approximately nine years.[1]

20.    Defendants' Pipeline and the oil seen as of October 4, 2021 is shown in the below map prepared by the Bureau of Ocean Energy Management and NOAA Marine Pollution Reports and published by the New York Times.

---

[1] Alta Spells, Holly Yan, and Amir Vera, "An oil spill of the California coast destroyed a wildlife habitat and cased dead birds and fish to wash up on Huntington Beach, officials say," CNN.COM (Oct. 3, 2021), *available at* https://www.cnn.com/2021/10/03/us/california-oil-spill/index.html.



21.     The failure of the Pipeline has affected Long Beach south and east to Huntington Beach, Newport Beach, and Laguna Beach and there are reports that the oil could affect southern coastlines as far as San Diego ("the Affected Coastline").

22.     The Affected Coastline is a special place. Its blue waters and beautiful coastline are home to an abundance of life. Because of its natural bounty and beauty, as long as people have lived in North America, they have lived on the Affected Coastline. Today, the economic life in this region revolves around its waters and beaches. Thousands of people in and around the Affected Coastline depend on the ocean and beaches for their jobs: fishing, tourism, and recreation in the region rely on them. Beachfront property owners enjoy direct access to blue waters and magnificent coastline, and residents walk the beaches, fish from the shores, swim, surf, kayak and use and enjoy their properties.

4e1ac3f8109ca2ac

23.   The area of crude that spilled into the Pacific spanned about 8,320 acres (an area larger than Santa Monica), and the oil tarnished a 25-acre ecological reserve called Talbert Marsh which is home to dozens of species of birds.[2]

24.   For example, Long Beach is well known for its oceanfront property, urban waterfront attractions, such as the Queen Mary, the Aquarium of the Pacific, the Bluff Park, whale watching tours, its beaches that offer a variety of activities like biking, skating, and kiteboarding, charter fishing, and its year-round surf fisheries with several species of surf perch, corbina, halibut, yellowfin croaker, and other species regularly caught. Huntington Beach nicknamed "Surf City, USA" is well known for its ocean front property, the iconic Huntington Beach Pier, the Huntington Harbour, its 10 miles wide open sandy beaches that offer a variety of activities including biking, beach bonfire pits, kayaking, charter fishing and its year around fishing that includes cabezon, corbina, croaker, jacksmelt, mackerel, perch, rays, sardines, sharks, and shovelnose guitarfish. Laguna Beach is well known for its ocean front property, more than 30 coves, and eight miles of beaches that offer a variety of activities including snorkeling, swimming, surfing, paddle boarding, playing volleyball or exploring the tide pools, charter fishing, and its year around fishing.

**B. The Failure of Defendants' San Pedro Bay Pipeline**

25.   San Pedro Bay pipeline is a 17.5-mile pipeline just offshore of Orange County that runs south of Long Beach and west of Huntington Beach, Newport Beach, and Laguna Beach as can be seen from the below map published in the Orange County Register.

---

[2] Hannah Fry, Robin Estrin, Anh Do, Jaclyn Cosgrove, Louis Sahagun, Rong-Gong Lin II, Brittny Mejia, "Massive oil spill sends crude onto Orange County breaches, killing birds, marine life," LA TIMES (Oct. 2, 2021), *available at* https://www.latimes.com/california/story/2021-10-02/coast-guard-rushes-to-contain-newport-beach-oil-slick.



26.    On the evening of October 1, 2021, there were reports of an oily sheen in the waters offshore of Long Beach, California. On October 2, 2021 it was determined this Oil Spill due a rupture in a 17.5-mile long pipeline just offshore of Orange County, California known as the San Pedro Bay Pipeline ("the Pipeline"), owned and operated by Defendants. The rupture caused tens of thousands of gallons of toxic crude oil flowing into the Pacific Ocean and onto some of California's most beautiful beaches and into its pristine waters.

27.    On the morning of October 2, 2021, it was reported that there was 34-by-9-foot stretch of oil in the Pacific Ocean, headed toward Laguna Beach, according to Office of Emergency Hazardous Materials Spill Reports. Later that morning Oxnard-based oil and gas company DCOR reported from Huntington Beach they had spotted a sheen under platform Eva that appears to be moving east with that oil slick reported to be 100 by 100 feet, according to Office of Emergency Hazardous Materials Spill Reports. That afternoon, the U.S. Coast Guard tweeted they are responding to an oil slick approximately 13 square miles in size off Newport Beach.

28.     While the leak became evident to the Coast Guard on Saturday, October 2, 2021, Huntington Beach, Orange County supervisor Katrina Foley stated that "[the Pipeline] has probably been leaking longer than we know."[3] However, Amplify CEO, Martyn Willsher, stated that his company notified the Coast Guard on Saturday morning – which would have been after the leak began.[4]

29.     The evening of October 2, 2021, Huntington Beach closed its beaches.

30.     In the early hours of October 3, 2021, the city of Huntington Beach canceled the final day of the Pacific Airshow, and advised people to remain clear of the beach and to avoid oiled areas due to its toxicity.

31.     The evening of October 3, 2021 Laguna Beach closed its beaches

32.     Also, the evening of October 3, 2021, the Southern California's fisheries were shut down, and California Department of Fish and Wildlife ("CDFW") warned against consuming any fish or shellfish caught off the coast of Orange County.

33.     On the morning of October 4, 2021, Laguna Beach closed all its beaches, including county-operated beaches and Newport Beach closed its harbor to all boat traffic, and Bayside Beach.

34.     According to Huntington Beach mayor, Kim Carr, the disaster was so profound that it warranted closing the beaches in Orange County and that the closures could last for up to "a few months."[5]

---

[3] Alta Spells, Holly Yan, and Amir Vera, "An oil spill of the California coast destroyed a wildlife habitat and
cased dead birds and fish to wash up on Huntington Beach, officials say," CNN.COM (Oct. 3, 2021), *available at*
https://www.cnn.com/2021/10/03/us/california-oil-spill/index.html.
[4] *Id.*
[5] Eric Resendiz, "Efforts underway by land and sea to clean oil spill along Orange County coast," ABC7 NEWS
(Oct. 4, 2021), *available at* https://abc7.com/newport-beach-oil-coast-guard-slick/11078784/.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 8:21-CV-01628-DOC-JDE

35.     Along the Affected Coastline, those environmental impacts translate to profound economic impacts. In the short term, the oil from Defendants' ruptured pipeline has closed fishing grounds and shellfish areas, and caused canceled reservations from tourists who otherwise would be spending their money on hotels, restaurants, kayaking or surf trips, fishing charters and other activities.

36.     Long term, the impacts may be as-yet-unknown, but they are no less certain. Even with the best spill response, toxic oil will remain in the environment for a long time, continuing to harm water, wildlife, and beaches. Eleven years after the Deepwater Horizon oil spill in the Gulf of Mexico, officials as still assessing the damage to that ecosystem and have previously said "the environmental effects of this spill is likely to last for generations." So too with this spill, which will cause similarly long-lasting environmental and economic impacts.

37.     On November 20, 2021, it was announced that there was an additional oil spill that likely emanated from the same pipeline.

38.     Supervisor Katrina Foley reported on her Twitter account, "On November 20, 2021, crews scheduled for planned work on the pipeline observed and reported a sheen of 30' by 70' as they approved the area of the pipeline. Divers conducting the planned assessments on the line then discovered small droplets on the syntho-glass wrap… [i]nvestigation is ongoing to determine whether the reported sheen is associated with the small droplets found on the wrap of the line or from a separate source."

39.     Indeed, Huntington Beach Police Department reported on their official Twitter account, "[w]e have been made aware of a potential oil sheen measuring 30' by 70' off our coast. We have been in communication with the US Coast Guard who is handling the situation… At this time, Huntington Beach Fire Department is prepped & on standby to deploy preventative equipment…"

## VI.   PLAINTIFF'S FACTS

**Peter Moses Gutierrez, Jr.**

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 8:21-CV-01628-DOC-JDE

40.     Plaintiff Gutierrez owns a disk jockey company which performs events frequently on the Huntington Beach beachfront.

41.     Plaintiff Gutierrez is losing and will continue to lose a substantial amount of his DJ business as a result of the oil spill for the foreseeable future due to the necessary closure of Huntington Beach and continuing impacts therefrom as a result of Defendants' collective conduct with respect to the oil spill.

42.     Additionally, as a resident of Huntington Beach, Plaintiff Gutierrez has been or will be exposed to toxins as a result of Defendants' conduct.

43.     As a result of the Defendants' conduct alleged herein, the Plaintiff Gutierrez has been harmed.

**Plaintiffs Chandralekha Wickramasekaran and Rajasekaran Wickramasekara**

44.     Plaintiffs Rajasekaran Wickramasekaran and Chandralekha Wickramasekaran (the "Wickramasekarans") are the Co-Trustees of The Wickramasekaran Family Trust, and owners of beachfront, duplex property located at 6602 West Oceanfront, Newport Beach, CA 92663.

45.     Such property is rented consistently throughout the year via villarentalsinc.com, with a policy requiring a 3-night minimum rental. The rental unit at address 6602 A West Oceanfront is rented out for approximately $356 daily, and 6602 B (the upstairs unit) is rented out for approximately $483 daily.

46.     Unit A was booked from October 3 through October 17, 2021 for $1,829, but that booking was cancelled by the renters due at least in part to the oil spill.  The Unit A was subsequently booked from October 15, through October 19, 2021.

47.     A significant portion of the income for the Wickramasekarans is derived from such rental property.

## VII.   CLASS ACTION ALLEGATIONS

48.     Plaintiffs bring claims pursuant to Federal Rule of Civil Procedure 23 on behalf of classes of similarly situated persons. Plaintiff proposes four classes: a

First Amended Class Action Complaint
Case No. 8:21-CV-01628-DOC-JDE

Commercial Fishery Class, Commercial Charter Boat Class, Natural Resources-Based Businesses Class, and Residential Real Property Class.

49.    The Commercial Fishery Class is defined as follows:

> All persons who derive a significant portion of their income through the direct harvest of fish, shellfish, or other sea life in the marine waters adjacent to and affected by the 2021 San Pedro Bay pipeline oil spill.

50.    The Commercial Charter Boat Class is defined as follows:

> All persons who derive a significant portion of their income through commercial charter boats in the marine waters adjacent to and affected by the 2021 San Pedro Bay pipeline oil spill.

51.    The Natural Resources-Based Businesses Class is defined as follows:

> All persons who derive a significant portion of their income from the operation of a business or businesses in Orange County, where such businesses are dependent upon the coastal and marine natural resources of that county, and that have lost profits as a result of the 2021 San Pedro Bay pipeline oil spill.

52.    The Residential Real Property Class is defined as follows:

> Residential beachfront properties on a beach and residential properties with a private easement to a beach where oil from the 2021 San Pedro Bay pipeline oil spill washed                                                                          up.

53.    The members of each of class collectively are referred to as "Class members" or the "Class".

54.    Defendants and their employees or agents are excluded from the Class.

55.     The Class members are ascertainable and have a well-defined community of interest among their members.

56.     **Ascertainability**: The number and identity of class members can be easily ascertained. Because the oil spill was a distinct catastrophic event, the class members—who consist of fishers and fish buyers, beachfront property owners and lessees, small businesses and oil workers who suffered economic harm—will not have difficulty discerning these injuries, or their cause. In October, 2021, as a result of the Pipeline oil spill, oil from the Pipeline washed up on their property, damaged their nets and equipment, affected their catch, forced their businesses or employers to shut down, and affected customer demand, and continues to do so. Those who can no longer work as a result of the spill are aware of that fact. Similarly, those whose properties or business were affected by the spill and its lingering effects are aware of these facts and the resulting costs. Finally, those in the fishing industry are well aware of any current or continuing changes to the availability, quality or demand for their products.

57.     **Numerosity**: The members of the Class are so numerous that joinder of all members is impractical. The proposed Class likely contains hundreds if not thousands of members.

58.     **Commonality**: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class.

59.     For Plaintiffs and the Class, the common legal and factual questions include, but are not limited to, the following:

    a.  Whether Defendants acted negligently, recklessly, wantonly, and/or unlawfully to cause the spill;

    b.  Whether Defendants installed and maintained adequate safety measures and systems on Line 901 and in its systems of command and control to prevent the spill;

    c.  Whether Defendants conducted adequate supervision that could have prevented the spill or reduced its scale;

d. Whether Defendants engaged in unconscionable, deceptive, and/or unreasonable business practices and conduct;

e. Whether Defendants knowingly, intentionally, or negligently concealed, suppressed, or omitted material facts concerning the safety of the Pipeline from the public;

f. Whether Defendants knowingly, intentionally, or negligently concealed, suppressed, omitted, or delayed relaying material facts regarding the spill to local, state, and federal agencies, thereby slowing the response, and/or increasing the damages to Plaintiffs and members of the Class;

g. Whether Plaintiffs and the Class suffered injury by virtue of Defendants' negligence, recklessness, carelessness, and/or unconscionable and/or deceptive business practices; and

h. Whether Defendants are strictly liable to Plaintiffs and the Class, by virtue of state and/or federal laws.

60. **Typicality**: The representative Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all the members of the Class have been injured by the same wrongful acts and omissions of Defendants. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

61. **Adequacy of Representation**: Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interest contrary to or in conflict with the Class.

62. **Rule 23(b)(3)**: In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class members and a class action is superior to individual litigation. The

amount of damages available to individual plaintiffs is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer case management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

63.    **Rule 23(b)(2)**: Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

64.    **Rule 23(c)(4)**: Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). The claims of Class members are composed of particular issues that are common to all Class members and capable of class wide resolution that will significantly advance the litigation.

## VIII.  CAUSES OF ACTION
### First Claim for Relief
### Strict Liability under Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, Government Code Section 8670, *et seq*.

65.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

66.    The Lempert-Keene-Seastrand Oil Spill Prevention and Response Act ("the Act") provides that "[a]ny responsible party, as defined in Section 8670.3, shall be absolutely liable without regard to fault for any damages incurred by any injured party which arise out of, or are caused by, the discharge or leaking of oil into or onto marine waters." Cal. Gov't Code Section 8670.56.5(a).

67.    The Pacific Ocean and the waters off Orange County are "marine waters" as defined in Section 8670.03(i).

68.    Defendants are "responsible part[ies]," which includes "the owner or transporter of oil or a person or entity accepting responsibility for the oil."

69.    The oil transported through the Pipeline is "oil" within the meaning of the Act, which defines "oil" as "any kind of petroleum, liquid hydrocarbon, or petroleum products or any fraction or residues therefrom," including "crude oil."

70.    As the responsible party for the oil transported through Line 901, Defendants are absolutely liable under the Lempert-Keene-Seastrand Act.

71.    On October 2, 2021, Defendants discharged or leaked crude oil into the Pacific Ocean, and are therefore absolutely liable without regard to fault for all damages that Plaintiffs and the Class sustained or will sustain. That discharge was not permitted by state or federal law.

72.    The Act entitles a plaintiff to recover a wide variety of damages, including, but not limited to, loss of subsistence use of natural resources; injury to, or economic losses resulting from destruction of or injury to, real or personal property, which shall be recoverable by any claimant who has an ownership or leasehold interest in property; loss of taxes, royalties, rents, or net profit shares caused by the injury, destruction, loss, or impairment of use of real property, personal property, or natural resources; and loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources. See generally Cal. Gov't Code Section 8670.56.5(h).

73.    The contamination illegally caused by the discharge of crude oil into or upon area beaches and the Pacific Ocean injured, and the shutdown of local oil and gas operations, caused to be lost, and/or impaired the use of property or natural resources on which Plaintiffs and the Class depend for their livelihood, including, but not limited to, local beaches and marine waters; populations of fish, squid and shellfish; and marine ecosystems. It also caused injury to and destruction of real or personal property, as well as impairment of earning capacity of Plaintiffs and the Class.

74.     Because Plaintiffs rely on natural resources for subsistence use; Plaintiffs have ownership or leasehold interests in real or personal property damaged by Defendants' oil spill; Plaintiffs derive at least 25 percent of their annual or seasonal earnings from activities that utilize property or natural resources damaged by Defendants' oil spill; Plaintiffs' livelihoods and earning capacity depend directly on the ability to extract the natural resources of the oil fields and the integrity of the pipeline not rupturing and damaging real and personal property and the natural resources in and around the Pacific Ocean, and along the California coastline; and/or Defendants' damage to real property, personal property, and natural resources has caused Plaintiffs a loss of taxes, royalties, rents, or net profit; or all of the above, Defendants are liable to Plaintiffs and the Class under the Act.

75.     The injury, destruction, loss, and/or impairment of usability of these natural resources has caused Plaintiffs and the Class to lose profits, and will cause future losses of profits and/or impair their earning capacities.

76.     The long-lasting effects of contamination related to the discharge of toxic crude oil into the Pacific Ocean and coastal areas, which Plaintiffs and the Class rely on, requires that Plaintiffs and the Class continue future monitoring and testing activities in order to ensure that such marine life is not contaminated and is safe and fit for human consumption, that the toxic oil from the spill does not further contaminate and degrade Plaintiffs' property, and that their earning capacity is not impaired.

**<u>Second Claim for Relief</u>**
**Strict Liability for Ultra-hazardous Activities.**

77.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

78.     At all times herein, Defendants were the owner and operator of the Pipeline.

79.     At all times relevant to this action, Defendants had supervision, custody, and control of the Pipeline.

80.     At all times herein, Defendants were under a continuing duty to protect the Plaintiffs and the Class from the harm caused by the Pipeline.

81.     Defendants were engaged in ultra-hazardous activities by transporting flammable, hazardous, and toxic oil through the Pipeline.

82.     Plaintiffs and the Class have suffered harm from the discharge of toxic oil from the Pipeline and immediate, direct and negative impact of the shutdown of local oil and gas facilities.

83.     The injuries sustained by Plaintiffs and the Class as a result of the oil spill were the direct and proximate result of Defendants' activities.

84.     The harm to Plaintiffs and the Class was and is the kind of harm that would be reasonably anticipated as a result of the risks created by transporting flammable, hazardous, and toxic oil in a pipeline on which local oil and gas facilities and their workers depend, and not properly maintaining the pipelines in close proximity to the Pacific Ocean.

85.     Defendants' operation of the Pipeline and its failure was a substantial factor in causing the harms suffered by Plaintiffs and the Class.

86.     Due to Defendants' strict liability, Plaintiffs and Class members are entitled to recover actual damages.

87.     The acts and omissions of Defendants were conducted with malice, fraud, and/or oppression as set out in this Complaint.

## Third Claim for Relief
### Negligence

88.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

89.     Defendants owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care. That duty arose generally as well as from, among other

things, federal, state, and local laws, ordinances and regulations that require Defendants to operate a pipeline in a manner that does not damage public health and safety. These laws include, but are not limited to, the Lempert-Keene Act, Government Code Section 8670, *et seq*., the Porter-Cologne Act, Water Code Sections 13000, *et seq*., Cal. Fish & Game Code Section 5650, *et seq*., the Federal Clean Water Act, 33 U.S.C. § 1251 *et seq*., Chapter 25, §§ 25-7(g) and 25-37, and state and federal spill response and notification laws.

90.     Defendants breached their duty to Plaintiffs and the Class by, among other things, failing to install reasonable safety equipment to prevent a spill, failing to detect and repair corrosion, and failing to promptly respond to and contain the spill.

91.     Defendants, in the exercise of reasonable care, should have known that the Pipeline could rupture or otherwise fail, and spill significant amounts of oil, and cause local oil and gas operations to be shut down. Defendants have acknowledged that spills such as this have occurred on their pipelines in the past and will occur, and have in fact occurred, again.

92.     In addition, Defendants' violations of the above-cited statutes, ordinances, and/or regulations resulted in precisely the harm to Plaintiffs that the laws listed above were designed to prevent, and Plaintiffs and the Class are members of the class of persons for whose protection those laws were adopted.

93.     At all times herein mentioned, Defendants negligently, wantonly, carelessly and/or recklessly maintained and operated the Pipeline.

94.     As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have sustained damages. Those damages take primarily two forms: short-term and long-term. As a direct and legal cause of the Defendants' wrongful acts and omissions herein above set forth, Plaintiffs and the Class have suffered and will continue to suffer economic harm, injury to earning capacity, and losses.

95.     The short-term damages include loss of profits due to fishing closures caused by the spill, and increased costs associated with traveling to different

fisheries. The closures have excluded fishers from near shore fishing grounds for lobster, crab, shrimp, squid, and other species. The short-term damages also include lost profits due to cancellations from customers who, but for Defendants' oil spill, would have used services offered by businesses in Orange County, or simply visited Orange County and the businesses there. The short-term damages additionally include loss of use and enjoyment of beachfront and oceanfront real property because of oil polluting the beaches and waters, as well as potential lost rental income and profits from vacationers and tourists visiting Orange County. The short-term damages also include loss and/or impairment of earning capacity of workers at oil and gas facilities that have shut down, as well as the loss of revenues of the business that support the oil industry.

96.     The long-term damages include future lost profits due to the harm caused to the fisheries themselves. For example, the oil is likely to depress (or even eradicate in some areas) populations of sea urchins, crab, lobster, and other crustaceans by directly killing numbers of those species or hindering their breeding and feeding. Similarly, oil that sinks below the surface will poison fish and potentially smother their eggs, limiting their future numbers. The taboo associated with an oil spill has and will continue to drive down the price of local fish and shellfish, as consumers and fish processors become wary of producing locally-caught species. Defendants' oil spill caused physical injury to property in which Plaintiffs have a direct ownership interest or an interest by virtue of their right to harvest fish and shellfish.

97.     Workers in the oil and gas industry, and businesses that support the local oil and gas industry, may never find comparable, dependable employment and business if Defendants do not operate their pipelines in a safe and responsible manner.

98.     The oil spill's long-term damages may also diminish the values of oceanfront and beachfront real properties along the coast that have been polluted by Defendants' oil.

99.     Similarly, the images of the Affected Coastline as a pristine place and as a perfect place to vacation has been tarnished. Images of oil-soaked birds and fouled beaches now show up prominently in internet searches for beaches along the Effected Coastline and will dissuade people from visiting the region and the many businesses that depend on tourism and other visitors.

100.    The acts and omissions of Defendants, and each of them, were conducted with malice, fraud, and/or oppression as described in this Complaint.

**Fourth Claim for Relief**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

101.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

102.    Defendants have engaged in and continue to engage in unfair competition in violation of California's Unfair Competition Law ("UCL").

103.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. California Business and Professions Code § 17200.

104.    Defendants' conduct constitutes "fraudulent" business practices within the meaning of UCL in that members of the public have been harmed.

105.    Defendants' conduct amounts to "unfair" business practices as UCL forbids all wrongful business activities in any context in which they appear. Moreover, as described above, Defendants' practices offend established public policies, are immoral, unethical, oppressive, and unscrupulous. The impact of Defendants' practices is in no way mitigated by any justifications, reason, or motives. Defendants' conduct has no utility when compared to the harm done to Plaintiffs and members of the Class.

106.    Defendants' conduct is "unlawful" because it violated laws including but not limited to the Lempert-Keene Act, Government Code Section 8670, *et seq*.,

the Porter-Cologne Act, Water Code Sections 13000, *et seq*., and Cal. Fish & Game Code Section 5650, *et seq*., the Oil Pollution Act, and local, state, and federal spill notification laws, and the oil spill response plans required by federal, state, and local laws. As a direct and proximate result of Defendants' unfair, fraudulent, and unlawful methods of competition and unfair and deceptive acts or practices, Plaintiffs and the Class have sustained injury in fact and have lost money or property, including but not limited to a diminishment in assets and value of assets, for which they seek injunctive relief. The relief sought includes, but is not limited to, an order requiring Defendants to do the following: restore fisheries impacted by the spill; repair reputational damage done to Orange County's seafood industry; restore the area real properties and beaches impacted by the spill; repair short and long term damages to coastal properties; repair reputational damage done to coastal property values; and prevent Defendants from operating the Pipeline without adequate safety mechanisms and ongoing monitoring, to ensure that no future spill occurs.

107.   Plaintiffs and the Class have no adequate remedy at law for the injuries that will result from failure of the Defendants to safely replace and/or repair, operate, and maintain the Pipeline and it could be impossible for Plaintiffs and the Class to determine the precise amount of damages they will suffer if Defendants' conduct is not restrained and Plaintiffs are forced to institute a multiplicity of suits to obtain adequate compensation for injuries and harm to the Class.

108.   The acts and omissions of Defendants were done with malice, fraud, and/or oppression as described in this Complaint.

### **Fifth Claim for Relief**
### **Public Nuisance.**

109.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

110.   Defendants have created a condition that is harmful to health and interferes with the comfortable enjoyment of life and property by discharging more

than 126,000 gallons of crude oil into the Pacific Ocean and onto the California coastline.

111.   That nuisance affects a substantial number of individuals similarly situated to the Plaintiffs, such as citizens of and visitors to Orange County, commercial fishers and processors, real property owners, oil workers, and that rely on the safe and healthy environment in the County.

112.   Defendants' oil spill is a condition which would reasonably annoy and disturb an ordinary person, as shown by, for example, the health impacts warned of by the county, the community outrage in response to the spill, and the nationwide interest in the spill's impacts on the Affected Coastline.

113.   The seriousness and gravity of that harm outweighs the social utility of Defendants' conduct. There is little or no social utility associated with releasing tens of thousands of gallons of oil into the unique ecological setting of Orange County.

114.   Plaintiffs and the Class suffered harm and injury to their economic livelihood, which they did not consent to and which is different from the type of harm suffered by the general public.

115.   The above acts and omissions also created a public nuisance vis-à-vis the Plaintiffs and the Class, interfering with the property rights of Plaintiffs and the Class, and rights incidental to those property rights.

116.   The acts and omissions of Defendants described herein were also in violation of various California state laws including but not limited to the Lempert-Keene Act, Government Code Section 8670, *et seq*., the Porter-Cologne Act, Water Code Sections 13000, *et seq*., and Cal. Fish & Game Code Section 5650, *et seq*.

117.   Defendants' violations of those statutes directly and proximately caused, and will cause, injury to the Plaintiffs and the Class of a type which the statutes are intended to prevent. Plaintiffs and the Class are of the class of persons for whose protection these statutes were enacted.

118.   As a direct and legal cause of Defendants' wrongful acts and/or omissions herein above set forth, Plaintiffs and the Class have suffered and will suffer economic harm, injury, and losses.

119.   To remedy the harm caused by Defendants' nuisance, Plaintiffs will seek public injunctive relief, including, but not limited to, an order requiring Defendants to do the following: restore fisheries impacted by the spill; repair reputational damage done to Orange County's seafood industry; restore the area real properties and beaches impacted by the spill; repair short and long term damages to coastal properties; repair reputational damage done to coastal property values; and prevent Defendants from operating the Pipeline without adequate safety mechanisms and ongoing monitoring, to ensure that no future spill occurs.

120.   In maintaining the nuisance, which is ongoing, Defendants are acting with full knowledge of the consequences and damage being caused, and the acts and omissions of Defendants, were done with malice, fraud, and/or oppression as described in this Complaint.

### Sixth Claim for Relief
**Negligent Interference With Prospective Economic Advantage**

121.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

122.   Plaintiffs and the Class have existing or prospective economic relationships with citizens of Orange County, visitors to Orange County, and other individuals and organizations doing business in and related to Orange County.

123.   These relationships have a reasonably probable likelihood of resulting in future economic benefits or advantages to Plaintiffs and the Class.

124.   Defendants knew or should have known of these existing and prospective economic relationships.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 8:21-CV-01628-DOC-JDE

125.   Defendants owed a duty to Plaintiffs and the Class to avoid negligent or reckless conduct that would interfere with and adversely affect the existing and prospective economic relationships of Plaintiffs and the Class.

126.   Defendants breached that duty to Plaintiffs and the Class by, among other things, failing to install and/or maintain reasonable safety equipment to prevent such a spill, failing properly to maintain the pipeline in a safe condition, and failing to promptly respond to and contain the spill.

127.   Defendants knew or should have known that, if they failed to act with reasonable care, the existing and prospective economic relationships of Plaintiffs and the Class would be interfered with and disrupted.

128.   Defendants were negligent and failed to act with reasonable care as herein set forth above.

129.   Defendants engaged in wrongful acts and/or omissions as herein set forth above, including but not limited to their violations of federal, state, and local laws that require Defendants to operate the Pipeline in a manner that does not damage public health and safety.

130.   As a direct and proximate result of Defendants wrongful acts and/or omissions, Defendants negligently and recklessly interfered with and disrupted the existing and prospective economic relationships of Plaintiffs and the Class.

131.   As a direct and proximate result of Defendants' wrongful acts and/or omissions, Plaintiffs and the Class have suffered and will suffer economic harm, injury, and losses as herein set forth above.

## Seventh Claim for Relief
### Trespass

132.   Plaintiffs who have a real property interest in water front property bring this on behalf of themselves and all other similarly situated land owners or lessees. They incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

133.   Defendants discharged a polluting matter beyond the boundary of Plaintiffs' and Class Members' real property in such a manner that, it was reasonably foreseeable that the pollutant would, in due course, invade Plaintiffs' and Class Members' real property and cause harm.

134.   By discharging polluting matter, Defendants entered, invaded, and intruded on the real properties of Plaintiffs and the Class Members without privilege, permission, invitation, or justification.

135.   Defendants had a duty to use reasonable care not to enter, intrude on, or invade Plaintiffs' and Class Members' real properties. Defendants also owed a duty to Plaintiffs and members of the Class to exercise reasonable care in the manufacture, maintenance, and operation of the Pipeline.

136.   Defendants had a heightened duty of care to Plaintiffs and the Class because of the great danger associated with transporting oil so near to pristine coastal residential areas and nearby real properties along the Central Coast.

137.   Defendants breached the duty they owed to Plaintiffs and members of the Class when they failed to exercise reasonable care in the manufacture, maintenance, and operation of the Pipeline, which conduct resulted in entry, intrusion, or invasion on Plaintiffs' and Class Members' real properties.

138.   Defendants knew or should have known that their conduct would foreseeably result in a disastrous oil spill, causing damage to the real properties and economic interests of persons in the area affected by the spill.

139.   As a direct and proximate result of Defendants' trespass, Plaintiffs and Class Members have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, property damage, diminution of value of real estate, loss of income and other economic loss.

140.   Defendants' wanton or reckless conduct, as described herein, entitles Plaintiffs and Class Members to punitive damages.

**Eight Claim for Relief**
**Continuing Private Nuisance**

141.   Plaintiffs who have a real property interest in water front property bring this on behalf of themselves and all other similarly situated land owners or lessees. They incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

142.   Defendants' actions and inactions caused, maintained, and/or permitted the contamination alleged in this action by its negligence, intentional or otherwise, actionable acts, and/or omissions.

143.   Defendants created the contamination at issue, which is harmful to both human health and the environment and interferes with Plaintiff's comfortable use and enjoyment of the real property in which she has a possessory interest.

144.   Defendants were, at all relevant times, in sufficient control of the Pipeline to have known of the threatened release of oil and associated hydrocarbons and to have prevented the resulting contamination. Defendants knew or should have known that their operation of the failed pipeline would have, and did, cause the contamination described herein.

145.   Despite knowledge and forewarning, Defendants failed to take reasonable steps to prevent the failure which resulted in the contamination at issue.

146.   Defendants failed to take reasonable steps to abate the contamination at issue, which continues to spread to previously uncontaminated areas. The contamination is, however, abatable, and, therefore, it is continuing in nature. This also confirms that Defendants have knowingly maintained the nuisance, i.e. the contamination at issue.

147.   Plaintiffs did not consent to the ongoing damage to the use and enjoyment of her property as a result of Defendants' actions and inactions.

148.   After having a reasonable opportunity to do so, Defendants failed to take reasonable measures to properly abate the contamination described herein.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 8:21-CV-01628-DOC-JDE

149.   As a direct and proximate cause, Defendants' acts and omissions have caused substantial actual damage and immediate and ongoing diminution of the value of Plaintiffs' real property and the property of the Class.

150.   As a result, Plaintiffs have and will continue to suffer damages, both economic and otherwise.

151.   The contamination described herein constitutes a nuisance within the meaning of Section 3479 of California Civil Code.

152.   Plaintiffs are informed and believe, and on that basis allege, that the contamination is continuing and abatable.

153.   As a proximate result of the nuisance, Plaintiffs have and will continue to suffer damages.

## Ninth Claim for Relief
### Nuisance Per Se

154.   Plaintiffs who have a real property interest in water front property bring this on behalf of themselves and all other similarly situated land owners or lessees. They incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

155.   The contamination constitutes a continuing nuisance within the meaning of Section 3479 of California Civil Code.

156.   Plaintiffs are in the class of persons protected under these statutes from Defendants and their violations thereof due to the fact that Defendants have, at all times relevant, owned, operated, maintained, supervised and/or controlled the Pipeline.

157.   Defendants violated California Civil Code section 3479 by their failure to properly abate the contamination, and by allowing contamination to continue to spread.

158.   As a proximate result of the nuisance per se, Plaintiffs have and will continue to suffer damages.

**Tenth Claim for Relief**
**Response Costs Under the Comprehensive Environmental**
**Response, Compensation and Liability Act**

159.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

160.   The Pipeline and the related oil rigs are a "facility" within the meaning of 42 U.S.C. § 9601(9).

161.   Each Defendant is (1) a current owner or operator; (2) a former owner or operator of the rig at the time the hazardous substances described herein were released; (3) a generator or other party who arranged for disposal of hazardous substances at the rig; or (4) a transporter of hazardous substances to the rig pursuant to 42 U.S.C. § 9607(a).

162.   Defendants have allowed a "release" or "threatened release" of a hazardous substance from the facility within the meaning of 42 U.S.C. § 9607(a)(4), including but not limited to sulfur dioxide, hydrogen sulfide, volatile organic compounds, oil and other hazardous substances.

163.   As a result of the release of hazardous substances from the rig, including sulfur dioxide, hydrogen sulfide, volatile organic compounds, oil and other hazardous substances,

164.   Plaintiff and Class Members have incurred response costs consistent with the national contingency plan.

**Eleventh Claim for Relief**
**Permanent Injunction**

165.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

166.   Beginning on or about October 2, 2021, and continuing to the present time, Defendants, and each of them, wrongfully and unlawfully caused oil to spill onto surrounding areas, into the Pacific Ocean, and onto coastal real properties.

Defendants' conduct also caused local workers and businesses to lose work and impaired their ability to earn a livelihood indefinitely.

167.    In the absence of an injunction, Defendants will continue to violate the rights of Plaintiff and the Class. Defendants, and each of them, have refused and still refuse to refrain from their wrongful conduct.

168.    Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff and the Class.

169.    Plaintiff and the Class have no adequate remedy at law for the injuries that will result from failure of the Defendants to safely replace and/or repair, operate, and maintain their pipeline and it could be impossible for Plaintiff and the Class to determine the precise amount of damages they will suffer if Defendants' conduct is not restrained and Plaintiff is forced to institute a multiplicity of suits to obtain adequate compensation for injuries and harm to the Class.

### Twelfth Claim for Relief
### Medical Monitoring

170.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

171.    Plaintiff and Class Members were significantly exposed to oil and other chemicals, toxins, and particulates proven hazardous to health.

172.    The exposure to these dangerous substances is such that Plaintiff and the Class Members have been placed at an increased risk of contracting latent illness and disease, including but not limited to cancer, and as such, require medical monitoring which Defendants are responsible for providing and paying for.

173.    Monitoring and testing procedures for cancer and other illnesses associated with exposure to oil and other chemicals, toxins, and particulates exist which make the early detection and treatment of the disease possible and beneficial.

174. As a result, the Court should establish a Court-supervised and administered trust fund and medical monitoring regime to compensate Plaintiff and Class Members for their economic damages.

## IX.   NATURE OF THE ACTION

Plaintiffs, individually and on behalf of all others similarly situated, request judgment against Defendants as follows:

A.     For an order certifying the Class and appointing Plaintiffs as representatives of the Class and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class;

B.     For an order permanently enjoining Defendants from operating a pipeline in Orange County without adequate safety and response measures and ongoing monitoring;

C.     For all recoverable compensatory, statutory, and other damages sustained by Plaintiffs and the Class, including all relief allowed under applicable laws;

D.     For costs;

E.     For both pre-judgment and post-judgment interest on any amounts awarded;

F.     For appropriate injunctive relief, including public injunctive relief; i.e., an order requiring Defendants to do the following: restore fisheries impacted by the spill; repair reputational damage done to Orange County's seafood industry; require Defendants to restore property values impacted by the spill; repair reputational damage done to oceanfront and beachfront real property along California's Central Coast; and an order requiring Defendants to operate the Pipeline in such a way to ensure no further spills and resulting losses of jobs;

G.     For treble damages insofar as they are allowed by applicable laws;

H.     For appropriate individual relief as requested above;

I.     For payment of attorneys' fees and expert fees as may be allowable under applicable law, including Cal. Gov. Code section 8670.56.5(f) the Private

1

2

Attorneys General Act ("PAGA"), Cal. Lab. Code. § 2698, *et seq*., and any other applicable statutes and/or regulations;

3

4

J.      For exemplary or punitive damages under Cal. Civ. Code Section 3294 for the oppression, fraud, and malice alleged above;

5

6

7

K.      Declaratory judgment that Defendants are responsible for past and future costs to remedy the harm caused to Plaintiff, Class Members and their properties; and

8

9

L.      For such other and further relief, including declaratory relief, as the Court may deem just and proper.

## X.     DEMAND FOR JURY TRIAL

10

Plaintiffs hereby demand a trial by jury on all issues so triable.

11

12

13

**DATED**: Dec. 10, 2021.                    Respectfully submitted,

14

15

*/s/ Alex R. Straus*

16

17

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverley Drive
Beverly Hills, California 90212
Phone: 917-471-1894
Fax: 310-496-3176
astraus@milberg.com

18

19

20

21

22

23

24

25

Abbas Kazerounian (SBN 249203)
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Phone: 800-400-6808
Fax: 800-520-5523
ak@kazlg.com

26

27

28

Jason A. Ibey (SBN 284607)
**KAZEROUNI LAW GROUP, APC**
321 N Mall Drive, Suite R108
St. George, UT 84790
Phone: 800-400-6808
Fax: 800-520-5523
jason@kazlg.com

*/s/* Brian H. Barr
Brian H. Barr (*pro hac vice motion forthcoming*)
Matthew D. Schultz (*pro hac vice motion forthcoming*)
William F. Cash III *(pro hac vice motion forthcoming*)
**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7045
Fax: 850-436-6044
bbarr@levinlaw.com
mschultz@levinlaw.com
bcash@levinlaw.com