Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverley Drive
Beverly Hills, California 90212
Phone: 917-471-1894
Fax: 310-496-3176
astraus@milberg.com

*Attorneys for Plaintiffs*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| PETER MOSES GUTIERREZ, Jr.; CHANDRALEKHA WICKRAMASEKARAN and RAJASEKARAN WICKRAMASEKARAN, as Trustees of THE WICKRAMASEKARAN FAMILY TRUST established March 12, 1993; individually and on behalf of all others similarly situated; *et al.*, individually and on behalf of all others similarly situated;<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>AMPLIFY ENERGY CORP., a Delaware Corporation; BETA OPERATING COMPANY, LLC, a Delaware limited liability company; SAN PEDRO BAY PIPELINE COMPANY a California Corporation; and DOE CORPS 1-100,<br><br>　　　　Defendants. | Case No. 8:21-cv-01628-DOC-JDE<br><br>**PRELIMINARY REPORT IN SUPPORT OF MOTION FOR CASE CONSOLIDATION AND APPOINTMENT OF INTERIM LEAD CLASS COUNSEL** |

Proposed Interim Lead Counsel in the first filed action ask the Court to appoint his attorneys and their firms as interim lead class counsel in this action and all other Amplify oil spill cases (see Appendix). This Preliminary Report is filed pursuant to the Court's scheduling order, entered in this action on October 8, 2021 (ECF No. 25), which set out criteria the Court will consider, and scheduled the hearing set for December 15, 2021.

## I.  APPLICATION FOR LEAD COUNSEL

On October 4, 2021, Plaintiff Peter Moses Gutierrez, Jr. filed the first class action complaint in response to the oil spill discovered off the coast of Southern California.

Proposed Interim Lead Counsel put people on the ground within hours, embarking on a thorough investigation of the Huntington Beach coastline, Amplify Energy Corporation and its related entities, and quickly retained a highly-qualified environmental damages expert to analyze the potential scope of the economic and personal injuries to the community and surrounding areas.

Within 24 hours of the news breaking, Proposed Interim Lead Counsel put the Defendants on notice of their obligation to preserve documents and discoverable information. Counsel immediately collected photographic and video evidence of the oil washing up on shore and the large floating oil deposits in the spill zone, to document potential liabilities and to inform and protect the community at large about the dangers and available mitigation efforts.

Proposed Interim Lead Counsel have retained expert witnesses, monitored municipal and national forensic investigations, and drafted Freedom of Information Act requests. Proposed Interim Lead Counsel have also drafted early discovery requests and taken a leadership role in coordinating with counsel representing other plaintiffs to maximize efficiencies. On October 11, 2021, before all but three pending cases were even filed, Proposed Interim Lead Counsel held a well-attended informational event to provide crucial information to those negatively impacted by the oil spill. This informational event was held in Huntington Beach and included

presentations by David Batker, an environmental economist with extensive experience working on offshore oil spill disasters including the 1989 Exxon Valdez spill and the 2010 BP Deepwater Horizon spill.

Plaintiff's three law firms—Milberg Coleman Bryson Phillips Grossman, PLLC; Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, & Mougey, P.A.; and Kazerouni Law Group, APC (collectively, "Proposed Interim Lead Counsel")—are the right consortium of firms to lead this litigation. The firms have over three decades of experience litigating cases involving environmental disasters, and offshore oil spills in particular. Each firm offers a unique advantage that is a good fit for this case. Moreover, each firm has a strong track record of working with others to effectively resolve complex litigation. They ask the Court to appoint them as co-leads and interim counsel to manage all pending class action cases.

### A. Applicable standards in making this appointment.

A district court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The considerations in such an appointment include:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The Court reiterated these factors in its scheduling order as important considerations. Additionally, the Court has further inquired regarding lawyers' "[l]ongstanding connection to the affected communities, namely Orange and Los Angeles Counties," and their "[e]xperience in litigation involving similar facts and issues to those in these cases."

Interim class counsel is often done when "overlapping, duplicative, or competing class suits are pending before a court, so that appointment of interim

counsel is necessary to protect the interests of class members." *White v. TransUnion, LLC*, 239 F.R.D. 681, 683 (C.D. Cal. 2006)). Attorneys appointed to serve as interim class counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

**B.  Proposed Interim Lead Counsel in light of the applicable factors.**

Proposed Interim Lead Counsel now discusses its advantages, in light of the factors and law set out by the Court. These factors overlap to an extent, so to avoid duplication, counsel discuss some of the factors together in the same sections.

*1.   Ties to Los Angeles and Orange Counties*

The Court identified the longstanding presence in the affected region as its first criterion for appointment of interim counsel. Proposed Interim Lead Counsel agree that this is an extremely important consideration.

Both Milberg and KLG have offices in Southern California. KLG is headquartered in Orange County and employs dozens of people there. Both firms had experienced attorneys on site in Huntington Beach, investigating and researching, within hours of news reports announcing the oil spill had occurred.

A local presence in this litigation will be critical. An understanding of the unique geography, natural resources, populations, tourist potential, and commercial potential of the region is necessary to inform the best direction for the litigation, as well as to fairly evaluate any potential settlements or direct the best trial strategy. Southern California is like no other place on Earth, and it demands attorneys with long ties to understand it and to best represent clients from this area.

Interim counsel also needs the ability to quickly and regularly interact with the Court and the Defendants at hearings, as well as the ability to conduct other important work in the immediate region. Although the virus pandemic has lessened the need for in-person presence to an extent, often there simply is no substitute. Kazerouni Law Group, APC's main office is located in Costa Mesa, about five miles from the courthouse, and its attorneys are fully pledged to all in-person appearances

as appropriate. Milberg also maintains an office in the region and it, too, will bring all necessary counsel together to prosecute this action.

*2. Counsel's experience in prosecuting complex litigation and the resources counsel will bring to bear for this case.*

No other consortium or combination of attorneys have the same track record of handling complex class action litigation or environmental litigation. Moreover, Proposed Interim Lead Counsel can commit to bringing **all** needed resources to the prosecution of this case.

Collectively, the three firms, including Milberg, LPR, and KLG, have over 200 attorneys and an additional 200 W-2 attorney employees available for document review and other tasks. Regarding the lawyers already involved, Proposed Interim Lead Counsel's team includes 10 experienced attorneys actively engaged in this litigation, including founding partners, senior partners, and senior counsel, as well a team of experienced support staff. As discussed in more detail below, the attorneys actively engaged in this litigation regularly litigate cases in the Central District's Southern Division and have extensive experience litigating many of the biggest and most complex oil spill and environmental cases in the nation's history.

Financial capitalization is an important issue in complex litigation. The Court should only appoint firms with a history of financing and developing the necessary evidence and experts to fully develop the plaintiffs' side of the case and secure the best position for them. The three firms here have that history and are fully capitalized to do so. By way of example, LPR has fully funded a number of mass tort litigations through multiple bellwether trials. Its most notable current case is *In re: Nat'l Prescription Opiate Litig.*, MDL 2804 (N.D. Ohio), where a firm partner holds one of the highest executive leadership positions, thus demonstrating the firm's commitment to large scale, expansive litigations. LPR, Milberg, and KLG will fully fund the Southern California oil spill litigation.

> 3. *Counsel's knowledge of the applicable law, expertise in litigating past cases with similar law and factual circumstances.*

Each of the three firms is made up of outstanding lawyers with history and experience to handle cases like this one. Counsel now discuss their individual advantages in light of the Court's inquiry into their past handling of oil spill cases and complex litigation generally.

**Milberg**[1]

Mitchell Breit is a partner at Milberg Coleman Bryson Phillips Grossman. Breit received his B.A. from the University of North Carolina at Chapel Hill in 1972 and his J.D. from Southwestern University School of Law in Los Angeles in 1979. Straus Decl. at ¶ 17.

In his 41 years of practice, Breit has focused on environmental litigation, consumer class actions and mass torts of national scope. He was actively involved as a member of the Sampling and Testing Working Group in the Deepwater Horizon BP oil spill litigation, where he was responsible with others for interviewing and retaining experts to opine on such matters as natural resources damages occasioned by the spill. He was one of the lead counsel in settlements of environmental class actions against Honeywell, Inc. involving contamination of properties in the vicinity of a manufacturing facility in Tampa, Florida; against Conoco involving contamination of properties in Pensacola, Florida; and a case involving petroleum spills at a Conoco facility in Roxana, Illinois. Earlier in his career, Breit was class co-counsel in groundwater contamination litigation over the gasoline additive MTBE (in the Southern District of New York). Straus Decl. at ¶ 18.

Breit also litigates cases involving defective medical and pharmaceutical products. He served on the Plaintiffs' Executive Committee in the ReNu MoistureLoc® litigation (*In re: Bausch & Lomb, Inc. Contact Lens Solution Prods. Liab. Litig.*, MDL 1785) and as Liaison Counsel in New York State consolidated

---

[1] *See* Milberg Firm Resume, attached hereto as **Exhibit A**.

Bextra-Celebrex litigation. He was co-counsel in union health and welfare fund tobacco litigation, which included multiple class actions in numerous jurisdictions and was lead counsel in the settlement of a seminal case against Bank of America for fraudulent overdraft fees. Straus Decl. at ¶ 19.

Breit has been a frequent panelist at national litigation conferences involving toxic and mass torts, class actions and groundwater contamination, including Mealey's, HarrisMartin, Practicing Law Institute and multiple bar association conferences, and has served as an adjunct professor at Brooklyn Law School in New York. Straus Decl. at ¶ 20.

Milberg attorneys Alex R. Straus and Blake Hunter Yagman are also continuing to take an active role in this litigation. Straus has extensive experience working on behalf of victims of environmental disasters. In addition to representing victims of the Kingston Fossil Plant coal ash spill in Roane Valley, Tennessee, the largest environmental disaster in the nation's history, and representing victims and families impacted by the environmental damage created by the terrorist attacks on September 11, 2001, Straus was one of the first attorneys investigating the Deepwater Horizon oil spill in the Gulf of Mexico. Straus Decl. at ¶ 15. Straus is based in Southern California and has been collecting potential evidence on the Orange County coast on a daily basis, beginning the first day this oil spill was discovered. Straus is an experienced attorney who has authored several chapters focused on occupation disease litigation in published treatises and an *amicus curiae* brief filed in the Supreme Court of the United States. Straus Decl. at ¶ 16.

Yagman is an associate at Milberg. Yagman has worked with plaintiffs in class action litigation since his second year of law school (2015). Over that time span, Yagman has represented Plaintiffs in this Court and in California in high-profile consumer class action litigation. *Ajzenman v. Office of the Commissioner of Baseball*, No. 2:20-cv-03643 (C.D. Cal. 2020); *In re Google Play Consumer Antitrust Litig.*, Case No. 3:20-cv-05761 (N.D. Cal. 2020); Cohen v. CBR Systems, Inc., No. 3:21-cv-06527 (N.D. Cal. 2021); *Crittenden v. Apple, Inc.*, No. 5:21-cv-

04322 (N.D. Cal. 2021); *Neumark v. Sony Interactive Ent'mt*, No. 3:21-cv-05031 (N.D. Cal. 2021). Other than the instant case, Mr. Yagman also has experience in consumer class actions pertaining to the gasoline industry. *In re Calif. Gasoline Spot Market Antitrust Litig.*, No. 3:20-cv-03131 (N.D. Cal. 2020); *Dickerson v. CDPQ Colonial Partners, L.P.*, Case No. 1:21-cv-02098 (N.D. Ga. 2021). Mr. Yagman has guest lectured at a New York-area law school on plaintiffs-side class action litigation and is a member of LeGaL, New York City's oldest LGBTQIA+ bar association. Straus Decl. at ¶ 21.

**Kazerouni Law Group**

Kazerouni Law Group, APC ("KLG") is based in Costa Mesa, California. KLG has a total of 20 attorneys through offices in California and outside of California. The firm has extensive experience in consumer class actions and other complex litigation and has litigated over 10,000 cases in the past fourteen years. Straus Decl. at ¶ 23.

Abbas Kazerounian is a founding and managing partner and has been licensed in California since 2007.[2] He is also licensed in several other jurisdictions (Colorado, District of Columbia, Illinois, New York, Texas, Michigan, Washington) and is an adjunct professor teaching a course in consumer law. Kazerounian is a highly regarded class action practitioner. He is a member of several consumer rights organizations and currently serves on the executive committee as diversity chair at Consumer Attorneys of California. Straus Decl. at ¶ 24.

Approximately 95% percent of his practice concerns consumer litigation in general. KLG has been appointed class counsel or interim lead counsel in many consumer cases in recent years. Kazerounian has been appointed class counsel in large and complex class action settlements, arguing before the Ninth Circuit on

---

[2] *See* Abbas Kazerounian *curriculum vitae*, attached hereto as **Exhibit** B.

several occasions.3 He also "has experience in commercial litigation and large-scale products liability litigation," *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN (NLS), 2013 U.S. Dist. LEXIS 15731, at *9 (S.D. Cal. Feb. 4, 2013). Straus Decl. at ¶ 25.

Courts have recognized the experience of KLG and Kazerounian in class action litigation. For example, in *Medeiros v. HSBC Card Servs.*, No. CV 15-09093 JVS (AFMx), 2017 U.S. Dist. LEXIS 178484, at *38−39 (C.D. Cal. Oct. 23, 2017), the court noted "that several of the attorneys [at KLG] … have extensive experience in class action litigation"). In *Holt v. Foodstate Inc.*, No. 17-cv-637-LM (D.N.H. Jan. 6, 2020), the court at the final approval hearing (as reflected by the hearing transcript for that matter) recognized that Kazerounian "[h]as participated in over 50 consumer protection class action suits in the last several years and he also has received extensive training in consumer protection litigation, has given presentations on the subject, including teaching a law school course on consumer law." And in *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 171 (S.D. Cal. 2019), the court certified on contested motion class action on behalf of over 2 million class members and appointing Kazerouni Law Group as co-lead class counsel. Straus Decl. at ¶ 26.

Kazerounian has experience arguing before the Judicial Panel on Multidistrict Litigation on three occasions, including most recently in a data privacy matter in MDL No. 2907, *In re: First American Financial Corporation Customer Data Security Breach Litigation*. He was appointed Co-Lead Counsel in a federal securities class action in *Jiao et al. v. Merrill Lynch Pierce Fenner & Smith, Inc. et al.*, No. 3:17-cv-00409-L-MDD (S.D. Cal.). He co-authored an amicus brief in the

---

3 KLG's successful appeals include *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018); *Rahmany v. T-Mobile USA Inc.*, 717 F. App'x 752 (9th Cir. 2018); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014).

Supreme Court of the United States in *Facebook, Inc. v. Duguid*, No. 19-511 (2020). Straus Decl. at ¶ 27.

Awards to Kazerounian include the Wiley W. Manuel Award by State Bar of California for Pro Bono Work, 2017; voted Rising Star in Super Lawyers Magazine, 2013−2015; voted a Super Lawyer in Super Lawyers Magazine 2016−2022; and nominated to "Top 40 under 40" by The National Trial Lawyers 2018−2019. Straus Decl. at ¶ 28.

Most recently, Kazerounian presented at the following events on legal topics: 2021 CAOC San Francisco Conference on Using Arbitration as a Sword; 2021 CAOC Sonoma Virtual Conference on Nuts & Bolts of Fighting Arbitration; 2021 Palm Springs Seminar Panel on Hot Topics In Mass Tort And Class Actions: What You Don't Know Might Get You Burned. Straus Decl. at ¶ 29.

KLG has substantial arbitration and trial experience. In 2020, Mr. Kazerounian was lead counsel for the plaintiff in an evidentiary hearing before the Honorable Fernando M. Olguin in the matter of *Hill v. Quicken Loans, Inc*., No. ED CV 19-0163 FMO (SPx), 2020 U.S. Dist. LEXIS 140980 (C.D. Cal. Aug. 5, 2020), in which his client prevailed in defeating a motion to compel arbitration. More recently, KLG served as lead counsel in a trial before this Court in *Pongsai v. American Express*. No. 8:19-cv-01628-DOC-JDE. Straus Decl. at ¶ 30.

Finally, Kazerouni Law Group, APC, has in the past, and is able to continue to expend great financial resources to consumer litigation, including this matter. Straus Decl. at ¶ 31.

**Levin Papantonio Rafferty**

Levin Papantonio Rafferty is based in Pensacola, Florida. The three partner-level attorneys LPR have brought to the litigation are Brian Barr, Matthew Schultz, and William Cash III. Straus Decl. at ¶ 32.

Brian Barr is a named partner in LPR.[4] Among the federal cases where he has served plaintiffs by judicial appointment are:

- Executive Committee/Class Counsel, *In re: Oil Spill by the Oil Rig "Deepwater Horizon"*, MDL 2179 (E.D. La.) (Barbier, J.)
- Co-Lead Counsel, *In re: Xarelto Prods. Liab. Litig.*, MDL 2592 (E.D. La.) (Fallon, J.)
- Co-Liaison Counsel, *In re: 3M Combat Arms Earplugs Litig.*, MDL 2885 (N.D. Fla.) (Rodgers, J.)
- Steering Committee, *In re: Trasylol Prods. Liab. Litig.*, MDL 1928 (M.D. Fla.) (Middlebrooks, J.)

Straus Decl. at ¶ 33.

In particular, the BP oil spill, a/k/a the *Deepwater Horizon* case, is of extraordinary relevance here. Barr was appointed by the court as one of just four members of the Plaintiffs' Executive Committee, tasked with leading the collective efforts of a massive team of lawyers from around the country. The demands of the position required Mr. Barr to effectively relocate to New Orleans, Louisiana for a period of three years as he managed this complex case. Management of the BP spill case was particularly challenging given its scope and the unprecedented complexity of the legal issues. Claims included a diverse range of economic damages and injuries incurred by individuals, businesses, and state and local governments. Straus Decl. at ¶ 34.

Barr took a number of depositions including those of high-ranking BP officers; multiple BP, Transocean and Halliburton witnesses who worked on the response effort; and depositions of United States Coast Guard and MMS officials, including the deposition of the National Incident Commander Adm. Thad Allen. Straus Decl. at ¶ 35.

---

[4] *See* Brian Barr *curriculum vitae*, attached hereto as **Exhibit C**.

Mr. Barr also was the co-lead of the "Science Team," which preserved all of the scientific evidence of oiling and assembled a team of experts to model the ecosystem impacts as well as the amount of oil that actually spilled. He was also responsible for a team of PSC lawyers that developed the "Source Control" portion of the liability case. This work required engagement of multiple expert witnesses and preparation of expert reports on the issues germane to the question of why it took 87 days to cap the well and stop the flow of oil into the Gulf of Mexico. Further, Barr managed a team of lawyers that took an excess of 70 depositions over a several-month period as well as handled the arguments and briefing for the weekly discovery conferences before Magistrate Judge Shushan. Straus Decl. at ¶ 36.

Barr was also the lead trial counsel for the Plaintiffs' Steering Committee for the twelve-day "Phase 2" limitation and liability bench trial before Judge Barbier on the issue of source control—the question of negligence or gross negligence related to the effort to stop the flow of oil into the Gulf of Mexico. Straus Decl. at ¶ 37.

In addition to pre-trial and discovery duties, Barr assisted Co-Liaison Counsel and lead settlement counsel in negotiating and implementing the Economic and Property Damage Class Settlement. He negotiated several aspects of the class action settlement and assisted in drafting the final class action settlement agreement. Barr was also involved in the implementation of the settlement class, a multi-year effort that resulted in numerous briefs and hearings before the Fifth Circuit. Straus Decl. at ¶ 38.

LPR's second lawyer on this case is Matthew Schultz.[5] Schultz is a partner in the firm and has worked at LPR since 2004. Schultz attended Florida State University College of Law where he graduated *summa cum laude* in 2002, having "booked" 14 of his 30 law school courses. Upon graduation he served a two-year clerkship with Hon. Robert L. Hinkle in the U.S. District Court for the Northern District of Florida. Mr. Schultz has been court-appointed to six MDL steering

---

[5] *See* Matthew Schultz *curriculum vitae*, attached hereto as **Exhibit D**.

committees and has had leadership roles in all. He has served as bellwether trial counsel in two of the six MDLs and will be co-lead trial counsel in the first JUUL MDL bellwether trial before Judge William Orrick in April 2022. He has at the same time maintained a single-event practice focused largely on litigation against the tobacco industry. Mr. Schultz has co-chaired LPR's class action department since 2018 and has been appointed as class counsel in a number of cases since taking on that role. He worked for two years as the principal author of the ALM treatise *Class Actions: The Law of 50 States*. Mr. Schultz is AV-rated by Martindale-Hubbell based on more than 20 peer reviews (including reviews by opposing counsel) that unanimously rate him 5/5 in all categories, including ethics. Straus Decl. at ¶ 39.

LPR also brings other attorneys, including William Cash III.[6] Cash graduated third in his class, *summa cum laude*, from Capital University Law School in Ohio, and completed a judicial clerkship with Hon. M. Casey Rodgers in the Northern District of Florida. In 2009, he then joined LPR, making partner in 2015 and transitioning to of-counsel status in Chicago in 2018. He is a founding member of the firm's class action department as well. Cash is the author of several academic articles or works on mass torts litigation. He concentrates his practice in advanced discovery and expert development. He has been on trial teams for seven cases involving mass torts or class actions, including MDL 2047, *In re Chinese Drywall Prods. Liab. Litig.*, which was a class action involving environmental damage. He has been appointed to the plaintiffs steering committee or as class counsel by several federal judges in MDLs and class actions. Straus Decl. at ¶ 40.

Finally, although they have not sought admission in this action as yet, LPR has relied on the services and contributions of several other accomplished class action and torts lawyers in this case. Straus Decl. at ¶ 41.

---

[6] *See* William Cash *curriculum vitae*, attached hereto as **Exhibit E**.

## II. POSITION ON CONSOLIDATION OF THESE ACTIONS

In its order, the Court indicated that it was interested to hear "[w]hether the Court should consolidate the cases at this point or wait for further developments as to claims and/or sub-classes."

The legal standard for consolidation is a familiar one and this is a matter in the Court's discretion. "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay. Fed. R. Civ. P. 42(a). "To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Prac. Litig.*, 282 F.R.D. 486, 490 (C.D. Cal. 2012). A district court has "broad discretion" in determining whether or not to consolidate actions. *See id.*; *see also Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010) (citing *Southwest Marine*, 720 F. Supp. at 806–07).

Proposed Interim Lead Counsel believes that consolidation is plainly appropriate here. Each of these actions arises from the same event, involve the same defendants, and will rely on the same information and documentation to prove the defendants' liability. Each of the operative complaints in these cases allege economic losses as a result of the same event or occurrence and, thus, present common issues of fact and law. Each complaint seeks relief under the same or substantially similar causes of action.

Finally, without consolidation, there is a risk that there will be competition for limited resources (or insurance) owned by the Defendants, or that the Defendants may seek the advantage by initiating a "settlement auction" whereby they settle these actions for the lowest amount accepted by the "lowest bidder." That would work a real hardship to class members with palpable claims.

Proposed Interim Lead Counsel believes the Court should consolidate all of the actions.

### III. POSITION ON A COORDINATED PLAN FOR THE ACTIONS

As counsel in the first filed action, Proposed Interim Lead Counsel supports the stipulated order, entered on November 24, 2021 that required interim counsel to file a consolidated complaint covering all actions. A single complaint driving this litigation, along with a minimized number of distinct responsive pleadings from each Defendant, will permit the Court to address the legal questions early and up front and proceed forward to discovery.

As outlined in the Joint Rule 26(f) Report, Proposed Interim Lead Counsel propose that trial in this matter should be held within two years. *See* Dkt. 36. Proposed Interim Lead Counsel helped craft the current discovery plan which demands an efficient process and includes a pretrial schedule for class certification briefing within a year from the filing of consolidated complaint. Thus, if appointed, Proposed Interim Lead Counsel would efficiently litigate this matter and work cooperatively with all plaintiffs' counsel in the interests of justice and judicial efficiencies.

Proposed Interim Lead Counsel has dozens of retained clients prepared to represent a diverse group of impacted persons and entities, including sport fishing guides, commercial fishing companies, businesses boat charters, beachfront real property owners and lessees, surf shops, seafood providers, lifeguards, and other local business owners.

Proposed Interim Lead Counsel will continue to work in close cooperation with other plaintiffs' counsel.  To date, as counsel in the first filed action, Proposed Interim Lead Counsel has collaborated and shared its knowledge, and resources in an effort to promote the efficient prosecution of the claims alleged. Proposed Interim Lead Counsel will continue to work in an effort to build competent, diverse, and inclusive working groups. Proposed Interim Lead Counsel has already taken a leadership role in working cooperatively with other plaintiffs' counsel and Defendants' counsel to avoid duplication of resources. As ordered by this Court,

Proposed Interim Lead Counsel will file a proposed consolidated class complaint within 30 days of this Court's appointment of interim class counsel. *See* Dkt. 36.

**DATED**: December 10, 2021.  Respectfully submitted,

*/s/ Alex R. Straus*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverley Drive
Beverly Hills, California 90212
Phone: 917-471-1894
Fax: 310-496-3176
astraus@milberg.com

Abbas Kazerounian (SBN 249203)
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Phone: 800-400-6808
Fax: 800-520-5523
ak@kazlg.com

Jason A. Ibey (SBN 284607)
**KAZEROUNI LAW GROUP, APC**
321 N Mall Drive, Suite R108
St. George, UT 84790
Phone: 800-400-6808
Fax: 800-520-5523
jason@kazlg.com

Brian H. Barr (*pro hac vice motion forthcoming*)
Matthew D. Schultz (*pro hac vice motion forthcoming*)
William F. Cash III *(pro hac vice motion forthcoming)*
**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7045
Fax: 850-436-6044
bbarr@levinlaw.com
mschultz@levinlaw.com
bcash@levinlaw.com

## APPENDIX: LIST OF OTHER KNOWN AMPLIFY OIL SPILL CASES

| Case Title | Case Number |
|---|---|
| *Stephen E. Samuelian et al. v. Amplify Energy Corp., et al.* | 8:21-cv-01658-DOC-JDE |
| *Banzai Surf Company, LLC v. Amplify Energy Corporation, et al.* | 8:21-cv-01669-DOC-JDE |
| *Quality Sea Food, Inc. et al. v. Amplify Energy Corporation et al.* | 8:21-cv-01680-DOC-JDE |
| *Davey's Locker Sportfishing, Inc. et al. v. Amplify Energy Corporation et al.* | 8:21-cv-01684-DOC-JDE |
| *Ketcham Tackle LLC v. Amplify Energy Corp. et al.* | 8:21-cv-01685-DOC-JDE |
| *Newport Surfrider, LLC v. Amplify Energy Corporation et al.* | 8:21-cv-01686-DOC-JDE |
| *Bradley Bitton et al. v. Amplify Energy Corporation et al.* | 8:21-cv-01694-DOC-JDE |
| *James Whelan et al. v. Amplify Energy Corporation et al.* | 8:21-cv-01706-DOC-JDE |
| *Beyond Business Incorporated v. Amplify Energy Corporation et al.* | 8:21-cv-01714-DOC-JDE |
| *N.S.T. v. Amplify Energy Corporation, a Delaware corporation et al.* | 8:21-cv-01722-DOC-JDE |
| *East Meets West Excursions, et al. v. Amplify Energy Corporation, et al.* | 8:21-cv-01725-DOC-JDE |
| *Hills Boat Service, Inc. v. Amplify Energy Corp. et al.* | 8:21-cv-01734-DOC-JDE |
| *Charlie's Gyros, Inc. v. Amplify Energy Corporation et al.* | 8:21-cv-01738-DOC-JDE |