Christopher W. Keegan (SBN 232045)
chris.keegan@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Daniel T. Donovan (admitted *pro hac vice*)
ddonovan@kirkland.com
Matthew Owen (*pro hac vice pending*)
matt.owen@kirkland.com
McClain Thompson (*pro hac vice pending*)
mcclain.thompson@kirkland.com
Holly Trogdon (*pro hac vice pending*)
holly.trogdon@kirkland.com
Ross Powell (*pro hac vice pending*)
ross.powell@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200

Anna Rotman (admitted *pro hac vice*)
anna.rotman@kirkland.com
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
Telephone: (713) 836-3600
Facsimile: (713) 836-3601

*Counsel for Defendants and Third-Party Plaintiffs Amplify Energy Corp., Beta Operating Company, LLC, and San Pedro Bay Pipeline Company*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| PETER MOSES GUTIERREZ JR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AMPLIFY ENERGY CORPORATION, et al.,<br><br>Defendants/Third-Party Plaintiffs,<br><br>v. | CASE NO. 8:21-cv-01628-DOC-JDE<br><br>**DEFENDANTS/THIRD-PARTY PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. David O. Carter<br>Hearing Date: May 23, 2022<br>Time: 10:00 A.M.<br>Courtroom: 9 D |

1  MEDITERRANEAN SHIPPING
2  COMPANY, S.A., et al.,

3          Defendants/Third-Party
        Defendants.
4

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 23, 2022, at 10:00 a.m., or as soon as the matter can be heard before the Honorable David O. Carter in Courtroom 9 D of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California, 92701, Defendants and Third-Party Plaintiffs Amplify Energy Corp., Beta Operating Company, LLC, and San Pedro Bay Pipeline Company (collectively "Amplify" or "Amplify defendants") will and hereby do move to dismiss Plaintiffs' First Amended Consolidated Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6).  Amplify moves to dismiss Plaintiffs' state-law claims with prejudice.  Amplify moves to dismiss Plaintiffs' OPA claims, except those of Davey's Locker Sportfishing, Inc. and East Meets West Excursions, without prejudice.

Amplify's motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities in support of this motion, all pleadings filed with this Court, and any oral argument that may be presented at a hearing.

This motion is made following the conference of counsel under Civil Local Rule 7-3, which took place on February 18, 2022.

1

DATED:  March 23, 2022                    Respectfully submitted,

2

_/s/ Christopher W. Keegan_

3

Daniel T. Donovan (admitted _pro hac vice_)      Christopher W. Keegan (SBN 232045)

4

ddonovan@kirkland.com                                    chris.keegan@kirkland.com

Matthew Owen (_pro hac vice pending_)          KIRKLAND & ELLIS LLP

5

matt.owen@kirkland.com                                 555 California St., Suite 2900

McClain Thompson (_pro hac vice pending_)    San Francisco, CA 94104

6

mcclain.thompson@kirkland.com                    Telephone: (415) 439-1400

Holly Trogdon (_pro hac vice pending_)          Facsimile: (415) 439-1500

7

holly.trogdon@kirkland.com

8

Ross Powell (_pro hac vice pending_)             _Counsel for Defendants and Third-_

ross.powell@kirkland.com                               _Party Plaintiffs Amplify Energy Corp.,_

9

KIRKLAND & ELLIS LLP                               _Beta Operating Company, LLC and_

1301 Pennsylvania Avenue, N.W.                    _San Pedro Bay Pipeline Company_

10

Washington, D.C. 20004

11

Telephone: (202) 389-5000

Facsimile: (202) 389-5200

12

13

Anna Rotman (admitted _pro hac vice_)

anna.rotman@kirkland.com

14

KIRKLAND & ELLIS LLP

609 Main Street

15

Houston, TX 77002

Telephone: (713) 836-3600

16

Facsimile: (713) 836-3601

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

PLAINTIFFS' ALLEGATIONS ....................................................................... 2

LEGAL STANDARD.......................................................................................... 4

ARGUMENT ....................................................................................................... 4

    I.    Because Federal Law Provides The Exclusive Remedy For Plaintiffs'
        Injuries, Their State-Law Claims Must Be Dismissed. .............................. 5

        A.    OCSLA Compels Dismissal of Plaintiffs' State-Law Claims. ......... 5

        B.    Alternatively, Plaintiffs' State-Law Claims Must Be Dismissed
               Because They Are Instead Governed By Maritime Law.................. 9

    II.    Certain Plaintiffs' OPA Claims Should Be Dismissed Because They Do
        Not Comply With OPA's Requirements. ................................................... 11

        A.    All But Two Plaintiffs Failed To Satisfy OPA's Statutory
               Presentment Requirement............................................................... 12

        B.    Certain Plaintiffs Fail To State An OPA Claim Because They Do
               Not Allege Physical Damage To Real Property Or Lost Profits. .... 13

    III.    Alternatively, This Court Should Dismiss Several Of Plaintiffs'
         State-Law Claims........................................................................................ 15

        A.    This Court Should Dismiss Plaintiffs' Strict Liability For
               Ultrahazardous Activity Claims. .................................................... 15

        B.    This Court Should Dismiss Most Plaintiffs' Negligence And
               Strict Liability Claims Under The Economic Loss Rule................. 18

        C.    This Court Should Dismiss Plaintiffs' Negligent Interference
               With Prospective Economic Advantage Claims.............................. 19

        D.    This Court Should Dismiss Plaintiffs' Trespass Claims. ................ 21

CONCLUSION ................................................................................................. 21

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Adamson v. Port of Bellingham,*
5
   907 F.3d 1122 (9th Cir. 2018) ...................................................................... 9

6

*Artiglio v. Corning, Inc.,*
7
   18 Cal. 4th 604 (1998) ............................................................................... 18

8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................... 4, 21
9

*Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.,*
10
   2011 WL 5360074 (S.D. Cal. 2011) .......................................................... 20

11

*Boca Ciega Hotel v. Bouchard Transp. Co.,*
12
   51 F.3d 235 (11th Cir. 1995) ............................................................... 12, 13

13

*California v. Norton,*
14
   311 F.3d 1162 (9th Cir. 2002) ..................................................................... 5

15

*Casault v. Fed. Nat'l Mortg. Ass'n,*
16
   915 F. Supp. 2d 1113 (C.D. Cal. 2012) ....................................................... 4

17

*Chaveriat v. Williams Pipe Line Co.,*
18
   1994 WL 583598 (N.D. Ill. Oct. 18, 1994) ............................................... 16

19

*Cities Serv. Pipe Line Co. v. United States,*
   742 F.2d 626 (Fed. Cir. 1984) ................................................................... 16
20

*Clarke v. Pac. Gas & Elec. Co.,*
21
   501 F. Supp. 3d 774 (N.D. Cal. 2020) ....................................................... 16

22

*Crimson Cal. Pipeline, L.P. v. S. Cal. Edison Co.,*
23
   2016 WL 5340528 (C.D. Cal. Feb. 12, 2016) ........................................... 16

24

*F.M. Tarbell Co. v. A & L Partners, Inc.,*
25
   2011 WL 1153539 (C.D. Cal. Mar. 23, 2011) ..................................... 20, 21

26

*Fletcher v. Conoco Pipe Line Co.,*
27
   129 F. Supp. 2d 1255 (W.D. Mo. 2001) .................................................... 16

28

*Goodwin v. Reilley*,
    176 Cal. App. 3d 86 (1985) ................................................................. 17

*Honeywell Int'l Inc. v. Citgo Petroleum Corp.*,
    2021 WL 5832712 (N.D.N.Y. Dec. 8, 2021) ..................................... 13

*In re Big Heart Pet Brands Litig.*,
    2019 WL 8266869 (N.D. Cal. Oct. 4, 2019) ..................................... 19

*In re Burbank Env't Litig.*,
    42 F. Supp. 2d 976 (C.D. Cal. 1998) ................................................. 16

*In re Deepwater Horizon*,
    745 F.3d 157 (5th Cir. 2014) ....................................................... 7, 8, 10

*In re Exxon Valdez*,
    767 F. Supp. 1509 (D. Alaska 1991) ................................................... 9

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 10, 2010*,
    902 F. Supp. 2d 808 (E.D. La. 2012) .......................................... 13, 14

*In re Oil Spill By the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,
    835 F. Supp. 2d 175 (E.D. La. 2011) ................................................. 8

*In re Oil Spill By the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,
    808 F. Supp. 2d 943 (E.D. La. 2011) ................................................. 8

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
    513 U.S. 527 (1995) ............................................................... 9, 10, 11

*Jimenez v. Superior Ct.*,
    29 Cal. 4th 473 (2002) ....................................................................... 18

*Johnson v. Colonial Pipeline Co.*,
    830 F. Supp. 309 (E.D. Va. 1993) ..................................................... 12

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*,
    315 F. App'x 603 (9th Cir. 2008) ....................................................... 18

*Mauia v. Petrochem Insulation, Inc.*,
    5 F.4th 1068 (9th Cir. 2021) ........................................................... 1, 6

TABLE

*Mazal Grp., LLC v. Barak,*
 2019 WL 4316244 (C.D. Cal. June 17, 2019)....................................................21

*New Show Studios LLC v. Needle,*
 2014 WL 2988271 (C.D. Cal. June 30, 2014)....................................................20

*Nguyen v. Am. Com. Lines L.L.C.,*
 805 F.3d 134 (5th Cir. 2015) ...............................................................13

*Offshore Logistics, Inc. v. Tallentire,*
 477 U.S. 207 (1986)......................................................................8

*Oppen v. Aetna Ins., Co.,*
 485 F.2d 252 (9th Cir. 1973) .........................................................10, 11

*Outlaw v. Plantation Pipe Line Co.,*
 2021 WL 3394931 (N.D. Ga. Apr. 23, 2021)....................................................16

*Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.,*
 268 F. Supp. 3d 1071 (C.D. Cal. 2017)............................................20

*Parker Drilling Management v. Newton,*
 139 S. Ct. 1881 (2019)......................................................1, 5, 6, 7, 8, 9

*Pierce v. Pac. Gas & Elec. Co.,*
 166 Cal. App. 3d 68 (1985) ...........................................................15

*Pinole Point Props., Inc. v. Bethlehem Steel Corp.,*
 596 F. Supp. 283 (N.D. Cal. 1984)....................................................17

*Pope & Talbot v. Hawn,*
 346 U.S. 406 (1953).......................................................................9

*Rodrigue v. Aetna Cas. & Sur. Co.,*
 395 U.S. 352 (1969)....................................................................5, 6

*S. Cal. Gas Leak Cases,*
 7 Cal. 5th 391 (2019) ...............................................................18, 19

*S. Port Marine LLC v. Gulf Oil Ltd.,*
 234 F.3d 58 (1st Cir. 2000)...........................................................7

*Santa Fe Props., LP v. Source Bioscience, Inc.,*
 2021 WL 6104156 (C.D. Cal. Feb. 10, 2021) ....................................................20

*Savage Servs. Corp. v. United States*,
   2022 WL 368281 (11th Cir. Feb. 8, 2022) ............................................................ 7

*Se. Recovery Grp., LLC v. BP Am., Inc.*,
   2011 WL 13205918 (E.D. La. Oct. 26, 2011) ..................................................... 13

*Shell Oil Co. v. Iowa Dep't of Revenue*,
   488 U.S. 19 (1988) .................................................................................................. 5

*Sisson v. Ruby*,
   497 U.S. 358 (1990) ........................................................................................ 10, 11

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   2013 WL 4530470 (N.D. Cal. Aug. 26, 2013) ................................................... 19

*Ukudi v. McMoran Oil & Gas, L.L.C.*,
   587 F. App'x 119 (5th Cir. 2014) ....................................................................... 16

*Union Oil Co. v. Oppen*,
   501 F.2d 558 (9th Cir. 1974) .............................................................................. 11

*Venoco, LLC v. Plains Pipeline, L.P.*,
   814 F. App'x 318 (9th Cir. 2020) ....................................................................... 14

*Wilson v. Interlake Steel Co.*,
   32 Cal. 3d 229 (1982) .......................................................................................... 21

**Statutes**

33 U.S.C. § 2701, *et seq.* .................................... 1, 2, 4, 5, 7, 8, 9, 11, 12, 13, 14, 15

33 U.S.C. § 2702 ......................................................................................... 7, 13, 14

33 U.S.C. § 2713 ..................................................................................... 1, 7, 12, 13

33 U.S.C. § 2718 ....................................................................................................... 7

43 U.S.C. § 1333 ........................................................................................ 1, 5, 6, 7, 8

46 U.S.C. § 30101 .................................................................................................. 10

Cal. Bus. & Prof. Code §§ 17200–210 ..................................................................... 8

Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, Cal.
   Gov. Code §§ 8670.1–.95 ............................................................................... 8, 14

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 4

33 C.F.R. § 110.214 ................................................................................ 2, 3

33 C.F.R. § 160.216 .................................................................................... 3

46 C.F.R. § 4.05-1 ...................................................................................... 3

H.R. Rep. No. 101-242, pt. 2 (1989) ....................................................... 12

# INTRODUCTION

Plaintiffs' amended complaint is overbroad, and most of it should be dismissed. Congress has established an efficient procedure for resolving oil-pollution claims. The Oil Pollution Act of 1990 ("OPA") entitles oil-pollution victims to compensation for clearly defined categories of damages. That comprehensive federal scheme represents the exclusive mechanism for resolving Plaintiffs' claims against the Amplify defendants.

It follows that Plaintiffs' state-law claims should be dismissed. Plaintiffs are suing for damages from a discharge of oil on the exclusively federal Outer Continental Shelf ("Shelf"). Under the Outer Continental Shelf Lands Act ("OCSLA"), only federal law applies on the Shelf. An adjacent state law can be borrowed and "federalized" only if there is a "gap" in federal regulation on some subject. In its recent unanimous decision in *Parker Drilling Management Services, Ltd. v. Newton*, 139 S. Ct. 1881 (2019), however, the Supreme Court held that no such gap exists if any federal statute addresses relevant issues—even if state law provides better or different relief. *Id.* at 1889; *see also Mauia v. Petrochem Insulation, Inc.*, 5 F.4th 1068, 1074 (9th Cir. 2021) (same). Here, OPA is that federal statute. Federal law does not need to borrow anything from California to supply (or limit) the remedies available for oil-pollution injuries. And even apart from OPA, Plaintiffs' non-OPA claims would still be governed by federal *maritime* law, not state tort law, because they concern an accident at sea that allegedly interfered with traditional maritime commerce. Resolving these issues now will allow the parties to focus on the legally proper scope of damages here and expedite further proceedings and mediation.

Once this case is properly confined to OPA claims, the Court should require Plaintiffs to comply with that statute's rules. OPA requires those injured by an oil spill to present claims to Amplify and sue only if those claims are denied or not settled within 90 days. 33 U.S.C. § 2713. But only *two* Plaintiffs alleged compliance with that congressionally mandated presentment process; the other Plaintiffs' claims should be

dismissed until they do so.  And even leaving that aside, some Plaintiffs have simply failed to plead facts that would entitle them to damages under OPA at all.

Because OPA is Plaintiffs' exclusive remedy, the Court can resolve this motion without examining the adequacy of Plaintiffs' state-law claims.  But should the Court reach that question, a number of Plaintiffs' California claims are either legally meritless or factually inadequate as pleaded.  To take two examples, transporting oil through a pipeline is not an ultrahazardous activity giving rise to strict liability as Plaintiffs claim; and the economic loss rule bars many of their damages theories in the absence of special circumstances they have not tried to plead.

For all those reasons, the amended complaint should be dismissed in part.  To be clear, Amplify agrees that a plaintiff who satisfies OPA's presentment requirement and plausibly pleads an entitlement to the kinds of damages OPA authorizes can survive a motion to dismiss.   The Court, however, should enforce OPA's procedural and substantive requirements and dismiss Plaintiffs' surplus claims.

## PLAINTIFFS' ALLEGATIONS

Amplify Energy Corporation owns and operates the San Pedro Bay Pipeline ("the Pipeline") through its subsidiaries, Beta Operating Company, LLC, and San Pedro Bay Pipeline Company.   *See* First Am. Consolidated Class Action Compl. ("First Am. Compl.") ¶¶ 26–29, ECF No. 148.

On January 25, 2021, two containerships, the MSC *Danit* and COSCO *Beijing*, repeatedly crossed over the Pipeline while dragging their anchors along the ocean floor.  First Am. Compl. ¶¶ 66–67.  That was unlawful:  Federal regulations prohibit vessels from deploying their anchors so close to the Pipeline.  33 C.F.R. § 110.214(a)(4) ("[V]essels are prohibited from anchoring outside of designated anchorage areas.").  Despite knowing that they risked an anchor strike to the Pipeline, the vessels did not notify Amplify or relevant authorities, in violation of federal regulations requiring them to minimize danger to other vessels and facilities and to notify the Coast Guard of anchor-strike incidents.  First Am. Compl. ¶¶ 63, 65, 71; 33 C.F.R. § 110.214(a)(4)(i);

*id.* § 160.216; 46 C.F.R. § 4.05-1.   The vessels "severely weakened" the Pipeline, cracking its concrete casing and dragging it over 100 feet across the seabed floor.  First Am. Compl. ¶¶ 63, 67–70.  In early October 2021, as a result of the ships' actions, the Pipeline ruptured and discharged oil into the ocean.  *Id.*

Harbors and beaches in Newport Beach and Dana Point reopened five days after the discharge.  *Id.* ¶ 123.  All beaches, including Huntington Beach and Laguna Beach, were fully reopened within two weeks of the discharge.  *Id.*  Fisheries reopened within two months, and fishing was permitted "outside of the confines of the closed fisheries" until then.  *Id.* ¶¶ 115–16.  Clean-up efforts were fully completed in less than three months—by December 29, 2021.  *Id.* ¶ 8.

On January 28, 2022, a group of 17 named Plaintiffs filed a consolidated complaint.  *See* Consolidated Compl., ECF No. 102.  On February 28, 2022, Amplify moved to dismiss Plaintiffs' consolidated complaint.  *See* Defs.' Notice of Mot. & Mot. to Dismiss Pls.' Consolidated Compl., ECF No. 124.  Amplify also sued the vessels who damaged the Pipeline and caused its rupture, and the Marine Exchange of Los Angeles-Long Beach Harbor.  *See* Defs./Third-Party Pls.' Third-Party Compl., ECF No. 123.  Plaintiffs filed an amended complaint on March 21, 2022, asserting the same claims as the consolidated complaint and adding the MSC *Danit* (in rem), the COSCO *Beijing* (in rem), and V.Ships Greece Ltd., which operates the COSCO *Beijing*.  *See* First Am. Compl. ¶¶ 30, 33, 35.

Plaintiffs seek to represent three putative classes: a "Commercial Fishing Class" made up of owners of commercial fishing vessels and seafood sellers; a "Real Property Class" made up of owners or lessees of waterfront properties or properties with a private easement to the coast; and a "Waterfront Tourism Class" made up of persons or entities who own or worked on vessels engaged in ocean water tourism or own businesses conducting commercial activities across a large stretch of the coast.  First Am. Compl. ¶ 148.

In addition to the vessels that caused the Pipeline rupture, Plaintiffs have also sued the Amplify defendants.  The gist of their complaint is that Amplify failed to detect and stop the vessel-caused leak once it started.  *See id* ¶¶ 72–77, 89–98.  Plaintiffs assert nine causes of action against Amplify:  a federal claim under OPA, 33 U.S.C. § 2701, *et seq*., and eight state-law causes of action based on California statutes and state tort law.  *Id.* ¶¶ 161–261.  Plaintiffs seek "all recoverable compensatory, statutory, and other damages, including remediation costs," costs, interest, treble damages "insofar as they are allowed by applicable laws," injunctive relief, attorneys' fees and expert fees, exemplary or punitive damages, and any other relief that the Court deems just and proper.  *Id.* at 85–86.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), "a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief."  *Casault v. Fed. Nat'l Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1119 (C.D. Cal. 2012).  Courts do not presume the truth of bare assertions or legal conclusions couched as facts.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

Amplify does not contest that federal law, through OPA, provides a cause of action for many individuals and entities injured by the October 2021 oil spill, or that at least two plaintiffs (Davey's Locker Sportfishing, Inc. and East Meets West Excursions) have adequately pleaded an OPA claim.  But federal law preempts Plaintiffs' tacked-on state-law causes of action.  The Court should dismiss these claims and thereby focus the parties' attention on resolving the case under the framework Congress prescribed. In the alternative, a number of Plaintiffs' claims are not adequately pleaded even on their own terms.  The motion to dismiss should be granted.

MEMORANDUM

## I. Because Federal Law Provides The Exclusive Remedy For Plaintiffs' Injuries, Their State-Law Claims Must Be Dismissed.

Plaintiffs' state-law claims should be dismissed.  Through OCSLA, Congress made federal law exclusive on the Outer Continental Shelf, where this oil spill occurred.  State law applies on the Shelf only when needed to fill a "gap" in federal law, but here there is no such gap.  As the Supreme Court made clear in *Parker Drilling*, if a federal statute regulates a subject on the Shelf, there is no gap for state regulation to fill even if state law provides more or different protection.  Here, OPA satisfies the *Parker Drilling* test.  It provides a comprehensive scheme for compensating those injured by oil spills at sea and leaves no "gap" for state tort law to fill.  And in any event, given the nature of the allegations here, federal *maritime* law, not state law, would govern Plaintiffs' non-OPA claims.

### A. OCSLA Compels Dismissal of Plaintiffs' State-Law Claims.

This case arises on the Outer Continental Shelf.  The Shelf "begins at the outer boundary of [California's] coastal zone (three miles out) and extends seaward." *California v. Norton*, 311 F.3d 1162, 1168 (9th Cir. 2002).  And here, Plaintiffs allege that oil was discharged from a cracked portion of the San Pedro Bay Pipeline about four and a half miles offshore.  First Am. Compl. ¶ 63.[1]

OCSLA makes federal law exclusive on the Shelf.  It establishes the legal framework applicable to "the seabed, the subsoil, and the fixed structures" relevant to the exploration, production, and development of minerals (including oil) on the Shelf, *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969), and "emphatically implement[s] [Congress'] view that the United States has paramount rights to the seabed."  *Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 27 (1988) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 752 n.26 (1981)).  OCSLA provides that "[t]he

---

[1] Four Plaintiffs' individual complaints allege OCSLA jurisdiction.  Am. Compl. ¶¶ 48-49, *Banzai Surf Co., LLC v. Amplify Energy Corp.*, 8:21-CV-01669 (C.D. Cal. Nov. 09, 2021); Compl. ¶¶ 41–42, *E. Meets W. Excursions v. Amplify Energy Corp.*, 8:21-CV-01725 (C.D. Cal. Oct. 18, 2021).

Constitution and laws and civil and political jurisdiction of the United States are extended [to the Shelf], to the same extent as if the [Shelf] were an area of exclusive Federal jurisdiction located within a State."  43 U.S.C. § 1333(a)(1).

OCSLA prescribes a narrow category of circumstances when state law may be applied on the Shelf.  To fill any "gaps in the federal law," *Rodrigue*, 395 U.S. at 357, the laws of the adjacent state are adopted as surrogate federal law on the Shelf, but only "[t]o the extent" those state laws "are applicable and not inconsistent with . . . other Federal laws." 43 U.S.C. § 1333(a)(2)(A).  But even then, "all law on the [Shelf] is federal law."  *Parker Drilling*, 139 S. Ct. at 1886.

In its recent unanimous decision in *Parker Drilling*, the Supreme Court made clear that there is no "gap" for state law to fill if any federal statute addresses the subject.  Interpreting OCSLA, the Court held that "state laws can be 'applicable and not inconsistent' with federal law under § 1333(a)(2)(A) only if federal law does not address the relevant issue." *Id.* at 1889.  Importantly, OCLSA "does not present the ordinary question in pre-emption cases—*i.e.*, whether a conflict exists between federal and state law," because that "type of pre-emption analysis [applies] only where the overlapping, dual jurisdiction of the Federal and State Governments makes it necessary to decide which law takes precedence."  *Id.*  Instead, when "federal law is on point," "state law is not adopted to govern the [Shelf]."  *Id.* at 1891; *see also Mauia*, 5 F.4th at 1074 ("*Parker Drilling* . . . made clear that state law plays only a limited role on the OCS.").

Applying that standard, *Parker Drilling* foreclosed the application of California's wage-and-hour law on a Shelf-based oilrig because the federal Fair Labor Standards Act ("FLSA") already addresses that subject.  139 S. Ct. at 1886–89.  It did not matter that California law provided better or different protections than the FLSA; what mattered was that federal law "has already addressed the relevant issue."  *Id.* at 1889; *Mauia*, 5 F.4th at 1075 ("*Parker Drilling* does not require a direct federal counterpart; it requires that we ask whether federal law addresses the relevant issue, not whether

federal law addresses it in the same way."). *Parker Drilling*'s holding was no affront to California's regulatory authority. The Court emphasized that the Shelf "is not, and never was, part of a State, so state law has never applied of its own force." *Parker Drilling*, 139 S. Ct. at 1889.

*Parker Drilling* controls this case. There is no doubt that a federal law addresses the subject of oil spills on the Shelf. OPA is a "comprehensive federal plan for handling oil spill responses, allocating responsibility . . . and prescribing reimbursement for cleanup costs and injuries to third parties." *In re Deepwater Horizon*, 745 F.3d 157, 168 (5th Cir. 2014); s*ee also S. Port Marine LLC v. Gulf Oil Ltd.*, 234 F.3d 58, 64 (1st Cir. 2000) ("Congress established a comprehensive federal scheme for oil pollution liability in the OPA."); *Savage Servs. Corp. v. United States*, 2022 WL 368281, at *10 (11th Cir. Feb. 8, 2022) ("[OPA is] a veritable super-structure of oil-cleanup rights, duties, and obligations."). OPA outlines an exhaustive scheme of liability and provides detailed instructions about the categories of "removal costs and damages" recoverable from responsible parties. In enacting OPA, Congress expanded and expedited private litigants' recovery following an oil discharge and required the responsible party to set up an economic recovery claims process within days of the discharge. 33 U.S.C. §§ 2702, 2713. Because there is no "gap" in OPA's careful scheme, there is no need to federalize California state law.

Nor does OPA's state-law savings clause reanimate any of Plaintiffs' claims. Under 33 U.S.C. § 2718(c), nothing in OPA affects "the authority of . . . any State . . . to impose additional liability or additional requirements . . . relating to the discharge, or substantial threat of a discharge, of oil." But as the Fifth Circuit has held, that clause can only "save" a state's existing, pre-OPA authority to impose liability; it does not *create* such authority in exclusively federal enclaves like the Shelf. *In re Deepwater Horizon*, 745 F.3d at 171. As *Parker Drilling* recognized, the Supreme Court's "pre-OCSLA decisions made clear that the Federal Government controlled the [Shelf] in every respect, and the OCSLA reaffirmed the central role of federal law on the [the

MEMORANDUM

Shelf]." 139 S. Ct. at 1888; *see also Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 224–25 (1986) (Death on the High Seas Act savings clause only preserves state courts' jurisdiction to provide remedies for fatalities in state territorial waters).

Here again *Parker Drilling* controls.  In that case, the FLSA (the analog to OPA here) also had a state-law savings clause plaintiffs tried to invoke to circumvent federal exclusivity.  But the Supreme Court rejected that maneuver as irrelevant to the OCSLA question.  The Court explained that "whatever the import of" savings clauses "in an ordinary pre-emption case," "the question under the OCSLA is whether federal law addresses the minimum wage on the [Shelf]."  139 S. Ct. at 1893.  The same result obtains here.  *See In re Deepwater Horizon*, 745 F.3d at 171 (on the Shelf "there are no state remedies to 'save'").  Applying that rule, the Court should dismiss Plaintiffs' state-law claims as unavailable on the exclusively federal Shelf.

The Fifth Circuit's decision in *In re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014), confirms that point.  In that case, plaintiffs presented state-law claims resulting from an oil spill in the Gulf of Mexico that allegedly caused harm felt on shore.  *See id.* at 161, 165–67.  The district court dismissed those claims as preempted by OCSLA, and the court of appeals affirmed.  *Id.* at 165–67 ("[T]he federal law articulated by OCSLA displaces state law."); *In re Oil Spill By the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 835 F. Supp. 2d 175, 178 (E.D. La. 2011); *see also In re Oil Spill By the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 808 F. Supp. 2d 943, 958 (E.D. La. 2011) (dismissing state common law and statutory claims).  The same result is required here.  Because Plaintiffs sue for damages allegedly caused by a Shelf-based oil discharge, their state-law claims must be dismissed.[2]

---

[2] That conclusion applies with full force to Plaintiffs' state-law statutory claims under the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act ("OSPRA"), Cal. Gov. Code §§ 8670.1–.95, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–210.  The Fifth Circuit expressly concluded that a Louisiana statute was preempted under OCSLA because there were "no state remedies to 'save.'"  *In re Deepwater Horizon*, 745 F.3d at 161, 171.  So for the same reason that

### B.  Alternatively, Plaintiffs' State-Law Claims Must Be Dismissed Because They Are Instead Governed By Maritime Law.

As explained above, *Parker Drilling* requires dismissal of all of Plaintiffs' non-OPA claims.  But Plaintiffs' state-law claims are legally defective for another reason as well.  To the extent it falls outside of OPA, this case is governed by federal maritime law, which Plaintiffs' amended complaint conspicuously avoids invoking. Plaintiffs allege that two ships at sea damaged a pipeline with their anchors, causing the discharge of oil into the ocean and disrupting commercial fishing and other traditional maritime activities.  *See* First Am. Compl. ¶¶ 37, 182.  As explained below, that is a quintessential maritime case.  As a result, "it does not matter that [P]laintiffs characterized their claims in terms of state law; federal maritime law is controlling." *In re Exxon Valdez*, 767 F. Supp. 1509, 1514 (D. Alaska 1991); *id.* at 1513 ("[T]he oil spill caused by the *Exxon Valdez* is a maritime tort."); *Pope & Talbot v. Hawn*, 346 U.S. 406, 410 (1953) (maritime law, not Pennsylvania state law, governed claim).

Maritime law applies when a claim has both (1) a maritime locality and (2) a sufficient nexus to traditional maritime activity.  *Adamson v. Port of Bellingham*, 907 F.3d 1122, 1125–26 (9th Cir. 2018).  Plaintiffs' claims satisfy both prongs.

***Maritime locality***.  Plaintiffs' claims have an obvious maritime locality.  They are suing about an accident that occurred in navigable waters at sea.  That is sufficient for two reasons.  *First*, because the alleged wrong "occurred on or in the navigable waters[,] . . . [t]he locality requirement is met." *In re Exxon Valdez*, 767 F. Supp. at 1511; *see also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 535 (1995) ("Because the injuries . . . were caused by a vessel on navigable water, the location enquiry would seem to be at an end . . . .").  *Second*, the Admiralty Jurisdiction Extension Act provides that admiralty and maritime "principles of law and the rules of practice" "extend[] to and include[] cases of injury or damage, to person or

---

Plaintiffs' state-law common-law claims must be dismissed, their state-law statutory claims must be as well.

property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101(a)–(b); *Grubart*, 513 U.S. at 532.

*Maritime nexus*.  To determine whether a claim has a maritime nexus, courts examine "whether the incident has 'a potentially disruptive impact on maritime commerce,'" and "whether the general character of the activity" means the incident bears a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534, 539 (internal quotation marks omitted) (quoting *Sisson v. Ruby*, 497 U.S. 358, 362, 364–65, 364 n.2 (1990)).  That test is satisfied here for several independent reasons.

*First*, the "general features" of a marine pollution incident like the one at issue here are "likely to disrupt" traditional commercial maritime activity.  *Id.* at 534; *Oppen v. Aetna Ins., Co.*, 485 F.2d 252, 257 (9th Cir. 1973) (claims related to oil discharge sounded in maritime tort because of "interference with the[] right of navigation").  In *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), for example, the Supreme Court held that "damage by a vessel in navigable water to an underwater structure" has "a 'potentially disruptive impact on maritime commerce'" and therefore a maritime nexus.  *Id.* at 539 (citing admiralty cases involving damage to underwater pipelines); *see also In re Deepwater Horizon*, 745 F.3d at 166 (maritime law applied when oil discharge "had a significant effect on maritime commerce").  This case is *a fortiori* from *Grubart*.  Not only *could* damage to an underwater pipeline disrupt maritime commerce, Plaintiffs contend it in fact *has* done so.  Plaintiffs allege disruption to their ability to access the harbor, fishing blocks, and other navigable waters following the oil discharge and while Amplify and the government worked to clean it up.  *See* First Am. Compl. ¶¶ 135, 144–47 (could not take their boats out on the water due to harbor closures); *id.* ¶¶ 135–37 (could not access fishing blocks); *id.* ¶ 137 (could not set, bait, or check lobster traps); *id.* ¶¶ 137, 145 (closed fisheries).  The Ninth Circuit has held that when plaintiffs "seek[] to protect" their rights to engage in "traditional maritime activity" a maritime nexus exists.  *Oppen*, 485 F.2d at 257.

*Second*, the general character of Plaintiffs' allegedly impeded activity shows "a substantial relationship to a traditional maritime activity." *Sisson*, 497 U.S. at 365 (internal quotation marks omitted).   As the Ninth Circuit has explained, when determining whether maritime law applies, a court should examine "the injured party['s]" relationship to traditional maritime activity, not the alleged tortfeasor's. *Union Oil Co. v. Oppen*, 501 F.2d 558, 561 (9th Cir. 1974).   Under that test, "[n]avigation of boats in navigable waters," *Grubart*, 513 U.S. at 540, and "property damage to . . . vessels," *Oppen*, 485 F.2d at 257, establish a "substantial relationship" to maritime activities.

*Third*, Plaintiffs specifically allege harm to commercial fishing.  "[T]he fishing industry is clearly a part of traditional maritime activity; and to assert otherwise would amount to a repudiation of much of maritime history." *Union Oil*, 501 F.2d at 561, 567 (explaining the "long recognized rule" that the "right[s] of fishermen" are "favorites of admiralty").   And Plaintiffs allege, among other things, that commercial fishermen could not fish—a classic maritime injury.  Plaintiffs Brockman and Jacques allege that they were prevented from "running their commercial fishing business."  First Am. Compl. ¶ 135.  Plaintiff John Crowe "is a commercial fisher who primarily fishes for lobster and squid in Blocks . . . which were closed due to the oil spill." *Id.* ¶ 136.  And Plaintiff Josh Hernandez "owns his boat based out of Dana Point, . . . where he fishes primarily . . . in Blocks . . . which were closed because of [the] oil spill." *Id.* ¶ 137. Those allegations suffice to show Plaintiffs' maritime nexus.

In short, even if OPA is not Plaintiffs' exclusive remedy against Amplify, then the Court should alternatively dismiss Plaintiffs' state-law claims and require them to plead non-OPA claims under federal maritime law.

## II.   Certain Plaintiffs' OPA Claims Should Be Dismissed Because They Do Not Comply With OPA's Requirements.

Certain of Plaintiffs' OPA claims must also be dismissed because they do not allege satisfaction of the statute's procedural and substantive requirements.  Only two

Plaintiffs have alleged satisfaction of OPA's mandatory pre-suit presentment requirement, a failure that requires dismissal.  And many Plaintiffs' OPA claims are substantively defective because they failed to plead the kinds of damages authorized by law.

### A.  All But Two Plaintiffs Failed To Satisfy OPA's Statutory Presentment Requirement.

Congress designed OPA to facilitate informal and efficient resolution of oil-pollution claims and avoid "costly and cumbersome litigation" by permitting suit only after "attempts to reach a settlement with the responsible party . . . were unsuccessful." H.R. Rep. No. 101-242, pt. 2, at 66 (1989); *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993).  Under the statute's framework, "all claims for removal costs or damages" under OPA "shall be presented first to the responsible party," which here is Amplify.  33 U.S.C. § 2713(a).  The claimant cannot sue unless "a claim is presented in accordance with subsection (a)," and then either "(1) [the responsible party] denies all liability for the claim, or (2) the claim is not settled . . . within 90 days." *Id.* § 2713(c).

Of the named plaintiffs in this case, only Davey's Locker and East Meets West have pleaded that they complied with OPA's statutory presentment requirement.  First Am. Compl. ¶ 145.  After resolution of the motion to dismiss, therefore, Amplify will answer Davey's Locker's and East Meets West's OPA claims in due course.[3]

The Court should dismiss, however, the claims of the other Plaintiffs who have not pleaded compliance with OPA presentment.  "Congressional use of the word 'shall' in § 2713(a) is naturally read to place a mandatory condition on all claims," barring suit by plaintiffs that fail to comply.  *Boca Ciega Hotel v. Bouchard Transp. Co.*, 51 F.3d

---

[3] Some, but not all, of the other 15 named Plaintiffs have contacted Amplify's OPA claims processor, but none has pleaded any facts about that presentment in either their consolidated complaint or amended complaint or shown that they have satisfied OPA's procedural requirements before filing suit.

MEMORANDUM

235, 238 (11th Cir. 1995); *see*, *e.g.*, *Nguyen v. Am. Com. Lines L.L.C.*, 805 F.3d 134, 139 (5th Cir. 2015) ("§ 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented her claims." (quoting *Boca Ciega Hotel*, 51 F.3d at 240)).  Yet apart from Davey's Locker and East Meets West, none of the Plaintiffs has pleaded any facts to suggest that they complied with OPA's mandatory presentment requirement.  Plaintiffs do not allege that they submitted a claim through OPA's economic claims process in the first instance, or that they waited the requisite 90 days before suing.  Nor do they allege that Amplify affirmatively denied any economic claims.  *See* 33 U.S.C. § 2713(c).  In fact, after Amplify moved to dismiss, Plaintiffs remedied the defect *only* as to East Meets West, effectively conceding that the remaining Plaintiffs have failed to comply with OPA's presentment requirement.  The proper remedy for that failure is dismissal.  *See*, *e.g.*, *Boca Ciega Hotel*, 51 F.3d at 238, 240; *Honeywell Int'l Inc. v. Citgo Petroleum Corp.*, 2021 WL 5832712, at *3 (N.D.N.Y. Dec. 8, 2021) (dismissing OPA claims for failure to plead compliance with OPA presentment); *Se. Recovery Grp., LLC v. BP Am., Inc.*, 2011 WL 13205918, at *5 (E.D. La. Oct. 26, 2011) (same).

### B.    Certain Plaintiffs Fail To State An OPA Claim Because They Do Not Allege Physical Damage To Real Property Or Lost Profits.

The Court should also dismiss certain named Plaintiffs' OPA claims for failure to state claims for certain compensable damages under OPA.  These defects concern two provisions of OPA:  damages for injury to property under 33 U.S.C. § 2702(b)(2)(B), and for economic losses under § 2702(b)(2)(E).

***Defective Property Damage Claims***.  To recover for injury to property, Plaintiffs must plead physical damage to property they owned or leased.  33 U.S.C. § 2702(b)(2)(B).  Allegations of temporary damage to public property, such as a 5-day closure of a public beach, are insufficient.  *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 10, 2010*, 902 F. Supp. 2d 808, 813–16 (E.D.

La. 2012) (dismissing claims for failure to allege physical injury or destruction of owned or leased property).

Plaintiffs LBC Seafood, Inc., Quality Sea Food, Inc., Banzai Surf Company LLC, Beyond Business Inc., Davey's Locker, Tyler Wayman, John and Marysue Pedicini, and Rajasekaran and Chandralekha Wickramasekaran fail to state claims for damage to real property under § 2702(b)(2)(B).  None of these Plaintiffs—*not even the homeowners*—has alleged physical damage to their property.  First Am. Compl. ¶¶ 18–19, 140–41 (alleging the oil discharge "prevented" them from "enjoying and using their property, such as walking the beach and swimming," and their "property" was harmed); *id.* ¶¶ 138–39, 142–43, 145, 147 (alleging impaired supply of fish and overall decline in business).  This failure bars their subsection (B) OPA claims.

***Defective Economic Loss Claims.***  Claims brought by Tyler Wayman, the Pedicinis, and the Wickramasekarans for economic damages under subsection (E) fare no better.  That subsection "only allows recovery for 'loss of profits' or 'impairment of earning capacity,'" not for "unrealized diminution of real property value." *In re Oil Spill*, 902 F. Supp. 2d at 816.  The above-named Plaintiffs, however, did not plead such damages.  Tyler Wayman alleges only that the discharge impacted the consistency of his bookings as a commercial boat captain but not that he lost bookings.  *See* First Am. Compl. ¶ 147 (impacted consistency of boat captain work).  The Pedicinis allege only that they own a waterfront property, not that they sold the property at a depressed value. *Id.* ¶ 140.  And while the Wickramasekarans allege that they rent the property out, they do not specifically allege that the discharge resulted in cancelled bookings or a decrease in rental prices.  *Id.* ¶ 141.  "Such claims concern neither a 'loss of profit' nor 'impairment of earning capacity,'" and therefore fail.  *See In re Oil Spill*, 902 F. Supp. 2d at 816.[4]

---

[4] To the extent not barred by federal law, *see supra* Section I, Plaintiffs' OSPRA claims fail for the same reasons. *See Venoco, LLC v. Plains Pipeline, L.P.*, 814 F. App'x

The Court should dismiss these defective OPA claims.

## III.   Alternatively, This Court Should Dismiss Several Of Plaintiffs' State-Law Claims.

As explained above, Plaintiffs' state-law claims must be dismissed.  But if the Court disagrees, it should still examine whether Plaintiffs have properly stated claims under California law.   That examination reveals a number of defects in Plaintiffs' hodgepodge of California causes of action.   As explained below, (1) transporting oil through a pipeline is not an ultrahazardous activity; (2) most of Plaintiffs' strict liability claims and negligence claims fail because California law bars purely economic losses; (3) Plaintiffs' negligent interference with prospective economic advantage claims fail because Plaintiffs do not allege they had specific economic relationships with third parties that Amplify knew or should have known about; and (4) the trespass claims are deficient because Plaintiffs do not allege damage to real property.  At a minimum, those claims should be dismissed for failure to state a claim upon which relief can be granted.

### A.   This Court Should Dismiss Plaintiffs' Strict Liability For Ultrahazardous Activity Claims.

Plaintiffs' ultrahazardous-activity claims fail for two reasons.  *First*, transporting oil through a pipeline is a common and beneficial activity, not an ultrahazardous one. *Second*, most Plaintiffs fail to allege harms *of the kind* that would make transporting oil ultrahazardous.

The California "Supreme Court has limited the doctrine of ultrahazardous activity to encompass only activities which are neither commonplace nor customary."  *Pierce v. Pac. Gas & Elec. Co.*, 166 Cal. App. 3d 68, 85 (1985) (citing *Luthringer v. Moore*, 31 Cal. 2d 489, 498 (1948)).[5]  No one disputes that "transporting petroleum products

318, 320 (9th Cir. 2020) ("Given the similarity between the two statutes . . . the parties agree that the same interpretation should govern both statutes.").

[5] More generally, California courts consider six factors when determining whether an activity is ultrahazardous: whether (1) there is a high degree of risk of harm to persons or property; (2) any harm is likely to be substantial; (3) risk can be eliminated

by pipeline is a common and highly beneficial activity in this industrialized society." *Chaveriat v. Williams Pipe Line Co.*, 1994 WL 583598, at *6 (N.D. Ill. Oct. 18, 1994); *Fletcher v. Conoco Pipe Line Co.*, 129 F. Supp. 2d 1255, 1261 (W.D. Mo. 2001). For that reason, courts across the country have consequently held that transporting petroleum products through a pipeline is not an ultrahazardous activity. *See, e.g.*, *Cities Serv. Pipe Line Co. v. United States*, 742 F.2d 626, 627 (Fed. Cir. 1984) (holding pipeline that transported crude oil was "not abnormally dangerous"); *Outlaw v. Plantation Pipe Line Co.*, 2021 WL 3394931, at *5 (N.D. Ga. Apr. 23, 2021) ("[O]perating a petroleum pipeline of itself is not an ultrahazardous activity that warrants imposing strict liability."); *Fletcher*, 129 F. Supp. 2d at 1261 (holding the same and noting that plaintiffs there "fail[ed] to cite a single case applying strict liability to petroleum pipeline operations"); *see also Ukudi v. McMoran Oil & Gas, L.L.C.*, 587 F. App'x 119, 122 (5th Cir. 2014) ( "[O]ffshore oil production is not an ultrahazardous activity."). No California case holds otherwise.

To avoid that result, Plaintiffs reframe the purportedly ultrahazardous activity as "transporting flammable, hazardous, and toxic oil through a severely corroded Pipeline in a high consequence area and near a major population center." First Am. Compl. ¶ 188. But that hyper-specific approach (in which barely concealed allegations of negligence are weaved into the description of the activity) would convert nearly every activity that results in an accident into an ultrahazardous one. That is not the law. The ultrahazardous activity "doctrine scrutinizes not the accident itself but the activity which led up to the accident." *Crimson Cal. Pipeline, L.P. v. S. Cal. Edison Co.*, 2016 WL 5340528, at *5 (C.D. Cal. Feb. 12, 2016); *see also Clarke v. Pac. Gas & Elec. Co.*, 501 F. Supp. 3d 774, 791 (N.D. Cal. 2020) (rejecting similar framing of allegedly ultrahazardous activity).

---

through reasonable care; (4) the activity is commonplace; (5) the activity is appropriate to its place; and (6) the activity's value to the community outweighs any danger. *See In re Burbank Env't Litig.*, 42 F. Supp. 2d 976, 983 (C.D. Cal. 1998).

Plaintiffs' ultrahazardous-activity claims fail for a second reason—their claimed economic injuries are not the "kind of harm" that would make transporting oil ultrahazardous. *Goodwin v. Reilley*, 176 Cal. App. 3d 86, 91 (1985). Plaintiffs say that transporting oil by pipeline is dangerous because of the "risk of harm to persons, lands, and chattel[]" caused by releasing "flammable, hazardous, and toxic oil." *See* First Am. Compl. ¶¶ 188–89. But Plaintiffs do not claim to have been injured by, for example, an explosion of flammable liquids or personal exposure to harmful toxins. Instead, they seek damages for *other* things—like decreased tourism and lost profits. *Id.* ¶ 194. Economic harms are not the kind of harm that would make transporting oil ultrahazardous because they are not caused by oil's dangerous propensities. *See Goodwin*, 176 Cal. App. 3d at 9; *see also Pinole Point Props., Inc. v. Bethlehem Steel Corp.*, 596 F. Supp. 283, 292 n.5 (N.D. Cal. 1984) (rejecting ultrahazardous activity claim when plaintiffs alleged only economic losses as a result of hazardous waste runoff into their pond). Plaintiffs alleging only indirect, economic harms therefore fail to state an ultrahazardous-activity claim because their harms are not caused by what would make transporting oil dangerous.[6] Indeed, no Plaintiff alleges injury caused by oil's allegedly ultra-dangerous propensities.

---

[6] *See, e.g.*, First Am. Compl. ¶ 135 (Donald C. Brockman and Heidi M. Jacques; harbor closure); *id.* ¶ 138 (LBC Seafood, Inc.; difficulties "sourc[ing] its product"); *id.* ¶ 139 (Quality Seafood Inc.; "a decline in business" and "negative consequences" related to sourcing seafood); *id.* ¶ 140 (John and Marysue Pedicini; beach closures and interruption of "pristine views"); *id.* ¶ 141 (Rajasekaran and Chandralekha Wickramasekaran; lost "rental income"); *id.* ¶ 142 (Banzai Surf Company, LLC; "decline in tourism" and beach closure); *id.* ¶ 143 (Beyond Business Incorporated; "reduction in customers and foot traffic"); *id.* ¶ 145 (Davey's Locker Sportfishing, Inc.; "declined demand" and harbor closure); *id.* ¶ 147 (Tyler Wayman; "lost revenue" as boat captain).

**B.   This Court Should Dismiss Most Plaintiffs' Negligence And Strict Liability Claims Under The Economic Loss Rule.**

Thirteen Plaintiffs allege only business losses that did not arise from personal injury or property damage.[7]  Under California law, such claims are barred by the economic loss rule.  Plaintiffs cannot normally recover in negligence or strict liability for purely economic losses like lost profits or lost business opportunities.  *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019).  Yet those thirteen Plaintiffs allege only decreased tourism, diminished demand for services, and interruptions to their business activity.[8]

Plaintiffs cannot satisfy any exception to the economic loss rule that would permit their claims to survive.  In order to state a claim for economic damages, Plaintiffs must plausibly allege "(1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule." *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008); *S. Cal. Gas Leak Cases*, 7 Cal. 5th at 399–400; *Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 482 (2002); *Artiglio v. Corning, Inc.*, 18 Cal. 4th 604, 614 (1998).

No such exception is applicable here.  As an initial matter, Plaintiffs advance (1) no claims for personal injury and (4) no basis for any other common law exception.

_____

[7] This argument is made as to all Plaintiffs except the Commercial Fishing Class representatives Donald C. Brockman and Heidi M. Jacques, John Crowe, and Josh Hernandez, who alleged that they are commercial fishers who fish in the fisheries closed by the oil discharge.  LBC Seafood and Quality Seafood, Inc., the other Commercial Fishing Class representatives, made no such allegations.

[8] *See* First Am. Compl. ¶ 138 (LBC Seafood, Inc.; vague "impairment of its ability to earn a living" due to closed fishing blocks from which it "sources its product"); *id.* ¶ 139 (Quality Sea Food, Inc.; ambiguous "negative consequences" flowing from closed fishing blocks and customer hesitancy to purchase seafood); *id.* ¶ 142 (Banzai Surf Company, Inc.; inability to offer surf lessons while beaches closed and loss of revenue from a "decline in demand"); *id.* ¶ 143 (Beyond Business Inc.; un-recouped business expenses and lost profits flowing from a "reduction in customers and foot traffic"); *id.* ¶ 145 (Davey's Locker Sportfishing, Inc.; inability to "run[] its business" and "declined demand for its services"); *id.* ¶ 147 (Tyler Wayman; lost revenue and "significant financial losses" from disrupted services).

That leaves (2) physical damage to property, and (3) a special relationship between the parties; but neither is plausibly pleaded here.

***No Physical Damage to Property.***   Only Bongos Sportfishing LLC and Bongos III Sportfishing LLC (collectively "Bongos") and East Meets West Excursions assert some physical damage to property—that their boats were contaminated by oil.   First Am. Compl. ¶¶ 144, 146.   But that does not suffice.   To be recoverable, economic losses must "flow" or "arise" from compensable physical injury to property.   *S. Cal. Gas Leak Cases*, 7 Cal. 5th at 397–98; *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 4530470, at *7 (N.D. Cal. Aug. 26, 2013) (rejecting argument that, once plaintiffs identify any non-economic damages, the economic loss rule is inapplicable).   And here, Bongos and East Meets West claim that their economic losses stem from *harbor closures and general business disruption*, not damage to their boats.   First Am. Compl. ¶¶ 144, 146.

***No Special Relationship***.   Nor have Plaintiffs alleged that they were in a "special relationship" with Amplify.   Plaintiffs do not plead any such relationship or contractual privity with Amplify.   Nor do they claim, for instance, that Amplify operated the Pipeline under some third-party agreement of which Plaintiffs were intended beneficiaries.   *See S. Cal. Gas Leak Cases*, 7 Cal. 5th at 400; *In re Big Heart Pet Brands Litig.*, 2019 WL 8266869, at *25 (N.D. Cal. Oct. 4, 2019).   As a result, Plaintiffs cannot invoke the special relationship exception.   Plaintiffs' allegation that Amplify operated its business "near the Orange County coastline" is irrelevant.   First Am. Compl. ¶ 202.   A transaction is not intended to benefit a third party when the only tie is that the plaintiffs operate a business nearby.   *S. Cal. Gas Leak Cases*, 7 Cal. 5th at 406–08.

These thirteen Plaintiffs' claims for economic-loss damages should be dismissed.

**C.     This Court Should Dismiss Plaintiffs' Negligent Interference With Prospective Economic Advantage Claims.**

To state a claim for negligent interference with prospective economic relationship, Plaintiffs must plead, among other elements, that (1) they were in

---

19

contractual privity or a special relationship with Amplify that gave rise to a duty of care; and that (2) Plaintiffs had pre-existing specific economic relationships with third parties that Amplify knew or should have known about. *F.M. Tarbell Co. v. A & L Partners, Inc.*, 2011 WL 1153539, at *5 (C.D. Cal. Mar. 23, 2011) (citing *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 786 (1997)).

No Plaintiff has pleaded either element of such a claim. As an initial matter, as just explained in Section III.B, Plaintiffs do not and could not allege that any of them was in contractual privity or any other special relationship with Amplify creating a duty of care. That defect alone bars these claims. *See New Show Studios LLC v. Needle*, 2014 WL 2988271, at *15 (C.D. Cal. June 30, 2014) (dismissing negligent interference claim for failure to plead a special relationship between the parties).

Nor do Plaintiffs adequately plead the existence of specific economic relationships about which Amplify knew or should have known. *F.M. Tarbell*, 2011 WL 1153539, at *5; *Santa Fe Props., LP v. Source Bioscience, Inc.*, 2021 WL 6104156, at *3 (C.D. Cal. Feb. 10, 2021). Indeed, nowhere in Plaintiffs' 93-page amended complaint do they identify specific economic relationships or customers in the first place. Even though "a general averment" of "'relationships with [ ] customers and prospective customers' is insufficient," *Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1090 (C.D. Cal. 2017), that is all Plaintiffs offer. They allege only that they have "existing or prospective economic relationships" with citizens, visitors, and other individuals and organizations doing business in the community. First Am. Compl. ¶ 227; *see id.* ¶¶ 138–39, 142–43 (alleging business with residents, "youth," tourists, fishers, and fish "wholesalers and distributers"); *id.* ¶¶ 144, 146–47 (generally alleging disrupted or cancelled bookings); *id.* ¶¶ 135–37, 140–41, 145. Plaintiffs' broad allegations lack the requisite specificity to state a claim for negligent interference with prospective economic advantage. *Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*, 2011 WL 5360074, at *5 (S.D. Cal. 2011) ("Relationships with the 'general public' and 'tourists' do not satisfy the specificity

requirement."); *Mazal Grp., LLC v. Barak*, 2019 WL 4316244, at *3 (C.D. Cal. June 17, 2019).

In any case, Plaintiffs fail to allege anything suggesting that Amplify "knew or should have known" about specific third-party relationships. *F.M. Tarbell*, 2011 WL 1153539, at *5. Instead, Plaintiffs state only the bare legal conclusion that "Defendants knew or should have known of these existing and prospective economic relationships." First Am. Compl. ¶ 229. That generic allegation does not suffice to state a claim. *See F.M. Tarbell*, 2011 WL 1153539, at *5 (finding that similar "allegations do not suffice under *Twombly* and its progeny").

### D.     This Court Should Dismiss Plaintiffs' Trespass Claims.

Finally, because the four plaintiffs who purport to represent a "Real Property Class" do not allege that oil entered property that they exclusively possess, this Court must dismiss their trespass claims. "[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land." *Wilson v. Interlake Steel Co.*, 32 Cal. 3d 229, 233 (1982) (internal quotation marks and citation omitted). Yet as explained in more detail in Section II.B, the amended complaint lacks any allegations that those Plaintiffs' properties were oiled or otherwise suffered physical harm. And the "[t]hreadbare recital," *Iqbal*, 556 U.S. at 678, that the Real Property Class members have "a real property interest in waterfront property" and that Amplify "entered, invaded, and intruded on" the class members' real property is insufficient. First Am. Compl. ¶¶ 236, 238.

### CONCLUSION

For those reasons, Plaintiffs' state-law claims should be dismissed with prejudice. Plaintiffs' OPA claims, except those of Davey's Locker and East Meets West, should be dismissed without prejudice.

1    DATED:  March 23, 2022                 Respectfully submitted,

2

3                                           /s/ Christopher W. Keegan

     Daniel T. Donovan (admitted *pro hac vice*)   Christopher W. Keegan (SBN 232045)
4    ddonovan@kirkland.com                 chris.keegan@kirkland.com
     Matthew Owen (*pro hac vice pending*)   KIRKLAND & ELLIS LLP
5    matt.owen@kirkland.com                555 California St., Suite 2900
     McClain Thompson (*pro hac vice pending*)   San Francisco, CA 94104
6    mcclain.thompson@kirkland.com         Telephone: (415) 439-1400
     Holly Trogdon (*pro hac vice pending*)   Facsimile: (415) 439-1500
7    holly.trogdon@kirkland.com
     Ross Powell (*pro hac vice pending*)   *Counsel for Defendants Amplify*
8    ross.powell@kirkland.com              *Energy Corp., Beta Operating*
     KIRKLAND & ELLIS LLP                  *Company, LLC and San Pedro Bay*
9    1301 Pennsylvania Avenue, N.W.        *Pipeline Company*
     Washington, D.C. 20004
10   Telephone: (202) 389-5000
     Facsimile: (202) 389-5200
11

12   Anna Rotman (admitted *pro hac vice*)
     anna.rotman@kirkland.com
13   KIRKLAND & ELLIS LLP
     609 Main Street
14   Houston, TX 77002
     Telephone: (713) 836-3600
15   Facsimile: (713) 836-3601

16

17

18

19

20

21

22

23

24

25

26

27

28