**F I L E D**

CLERK, U.S. DISTRICT COURT

12/15/2022

CENTRAL DISTRICT OF CALIFORNIA

BY: _____ kdu _____ DEPUTY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| PETER MOSES GUTIERREZ JR. ET AL. | Case No. SA 21-CV-1628-DOC-JDE |
| Plaintiffs, | |
| vs. | **SPECIAL MASTERS' ORDER RE: JOHN "JOCK" MAWSON DEPOSITION** |
| AMPLIFY ENERGY CORP. ET AL., | |
| Defendants. | |

1. Amplify requests the Special Master Panel ("SMP") order the DANIT Defendants to make John "Jock" Mawson available for a second deposition in which he will be instructed to answer questions for which Mr. Mawson, in a previous deposition held on November 18, 2022, was instructed not to answer questions based upon assertions of attorney-client privilege and work-product protections. Specifically, Amplify is requesting Mr. Mawson answer questions about (1) information Mr. Mawson considered when drafting the declaration described in below paragraphs 2-3; (2) the

**SPECIAL MASTERS' ORDER RE: JOHN "JOCK" MAWSON DEPOSITION**

1

identity and statements of witnesses whose interviews he attended or reviewed; and (3) Mr. Mawson's "current opinions about the anchor dragging across Amplify's pipeline."[1]

2.    Mr. Mawson submitted a declaration in another action in support of an opposed Emergency *Ex Parte* Verified Petition for an Order to Perpetuate Testimony, filed by Dordellas Finance Corp. *In re Application of Dordellas Finance Corp.*, No. 2:21-mc-01106-UA-PLA (C.D. Cal. Nov. 27, 2021) (ECF. Nos. 1, 1-5) ("Declaration").

3.    The Declaration included statements "upon information and belief" concerning wind conditions during the early hours of January 25, 2021 in the ports of Long Beach and Los Angeles. The Declaration states, in part, that several ships in the anchorages began to drag their anchors; at least two other vessels anchored in the area to the south of San Pedro Bay (Huntington Beach anchorage) dragged their anchors and in the course of doing so collided with each other during this same high winds event; one other ship that dragged anchor was the M/V BEIJING (IMO #9308508); the M/V BEIJING dragged its anchor while moving in a generally easterly direction toward where the MSC DANIT was anchored; the M/V BEIJING came within approximately 560 feet of the MSC DANIT; it is reasonable to conclude based on the video and radio transmissions that the M/V BEIJING was unable to raise its anchor and therefore control its movement; the MSC DANIT was presented with an imminent and significant risk of collision as the M/V BEIJING encroached and embarrassed the safe navigation and maneuverability of the MSC DANIT, which took evasive action. Declaration *passim*.

4.    Amplify states that it sought to depose Mr. Mawson and requested production of all documents that Mr. Mawson received, considered, and relied on in connection with the Declaration. Amplify states that counsel objected to (and the witness followed) questions that called for Mr. Mawson to identify information beyond a list of previously produced documents that he considered or relied on when submitting the Declaration, and questions about Mr. Mawson's current opinions on the events of January 25, 2021.

---

[1] The parties' positions are generally described in a November 17, 2022 letter from Joseph Walsh to Special Master Panel (Exhibit A); Amplify's Response to Danit Defendants' Nov. 17, 2022 Letter to Special Master Panel (Exhibit B); and Dordellas Parties' Response to Amplify's Nov. 29, 2022 Submission to Special Master Panel (Exhibit C). Mr. Mawson's declaration is included as Exhibit D.

**SPECIAL MASTERS' ORDER RE: JOHN "JOCK" MAWSON DEPOSITION**

5.      Amplify argues that the Declaration is testimonial argument from an expert and that Mr. Mawson must disclose the basis of the Declaration opinions and any facts and data he considered when forming those opinions. In support, Amplify states that the DANIT Defendants filed the Declaration on the public docket and which offered substantive opinions about the movements of the MSC DANIT and the M/V BEIJING, Amplify's positions regarding anchor dragging, and that the Declaration was offered in anticipation of litigation.

6.      Amplify argues further that subject-matter/work-product privilege waiver applies to Mr. Mawson's knowledge about the Declaration statements including (1) from the time-period before the Declaration was submitted; and (2) to information that affected Mr. Mawson's belief about the truth of the statements since the Declaration was submitted. Amplify states that it does not matter if Mr. Mawson is "imbedded" with the law firm of Collier Walsh Nakazawa LLP (counsel for the DANIT Defendants) (CWN").

7.      The "DANIT Defendants" (identified as the Dordellas Parties in the submittals) state that Amplify's position is unprecedented and seeks to secure access to the Dordellas Parties' "most sensitive" attorney-work product and privileged information. The Dordellas Parties state that Mr. Mawson is neither a percipient witness nor designated as an expert witness. The Dordellas Parties state that during the deposition Mr. Mawson spent over five hours answering questions on non-privileged topics.

8.      The Dordellas Parties aver that Amplify seeks to use a declaration by a law firm's consultant that was limited to an issue that is not contested or in dispute (the arrest of the M/V BEIJING) as a pretext for asserting a wholesale subject matter waiver of privilege and work-product protections. The Dordellas Parties argue that Amplify's request is not permitted by Rule 26(a)(2) and that it would provide Amplify an unfair litigation advantage.

9.      The Dordellas Parties also state that there is no basis for Amplify's argument that the attorney-client privilege and work-product protections do not apply to a properly designated expert witness, and that these privileges and protections would apply had Mr. Mawson been designated as an expert witness. The Dordellas Parties cite Rule 26(b)(4)(D) as providing protection from discovery and

**SPECIAL MASTERS' ORDER RE: JOHN "JOCK" MAWSON DEPOSITION**

that a party may not "discover facts known or opinions held by an expert who has been retained . . . to prepare for trial and who is not expected to be called a witness."

10.    Finally, the Dordellas Parties argue that Mr. Mawson testified extensively about the factual sources he considered and relied upon in preparing the Declaration, such as the interview statements conducted by the Coast Guard of the third mate of the M/V BEIJING. The Dordellas Parties state that for the Declaration, Mr. Mawson did not rely upon interviews conducted by the law firm where he works (CWN). The Dordellas parties state that if Mr. Mawson discussed with CWN attorneys the substance of materials he reviewed and how they should be presented in the Declaration, these discussions remain privileged because (1) Mr. Mawson was testifying to their contents as a fact witness; and (2) CWN's communications with Mr. Mawson about how to organize and present the evidence in the Declaration is work-product, the disclosure of which would necessarily reveal the mental processes and opinions of the Dordellas Parties' attorneys.

11.    The SMP points out that the Dordellas Parties' (CWN) letter to the Special Master Panel (Exhibit A) raising objections to Mr. Mawson's deposition was not posted to the SMP and the parties until after normal business hours on November 17 (the day prior to the deposition) and hand delivered to the Special Master the morning of the deposition. The letter also describes that the Dordellas Parties were aware of disputes concerning the scope of Mr. Dawson's deposition and that the parties unsuccessfully met and conferred on the topic. The SMP is concerned about the tardiness of the CWN's letter and that it did not allow time for the SMP to resolve the disputed matters in advance in an orderly fashion, thereby possibly rendering the re-deposition of Mr. Mawson unnecessary.

12.    The SMP orders the Dordellas Parties to make Mr. Mawson available for a second deposition to provide testimony relating to the Declaration, but not extending past the date Mr. Mawson signed/executed the Declaration. Mr. Mawson is required to provide testimony about all documents and information that provided the basis for the Declaration, other than information that is privileged or otherwise protected. Within seven (7) days, the Dordellas Parties are ordered to provide to the parties a list of all documents that Mr. Mawson relied upon for the Declaration and provide all non-privileged/non-protected documents that were not produced at Mr. Mawson's deposition. Within ten

**SPECIAL MASTERS' ORDER RE: JOHN "JOCK" MAWSON DEPOSITION**

1  (10) days, the Dordellas Parties are ordered to submit a privilege log describing all documents and

2  information that are being withheld from disclosure.

3       13.    The SMP reminds the parties that they stipulated that the SMP at its election may issue

4  Orders that are not reasoned; however, a party may request within three (3) days that the SMP issue a

5  reasoned Order.  The SMP will issue said Order in a timely fashion and file it with the Court at which

6  time the appeal process set-forth in the SMP appointment Order commences.

7

8       IT IS SO ORDERED.

9

10       DATED: December 13, 2022

                 James Smith, Esq.

11                   Special Master

12

13                   Daniel Garrie, Esq.

14                   Special Master

15

16                  /s/ Bradley O'Brien

                 Bradley O'Brien, Esq.

17                   Special Master

18

19

20

21

22

23

24

25

26

27

28

**SPECIAL MASTERS' ORDER RE: JOHN "JOCK" MAWSON DEPOSITION**

# EXHIBIT A



COLLIER WALSH NAKAZAWA LLP
ONE WORLD TRADE CENTER, SUITE 2370
LONG BEACH, CALIFORNIA 90831
T: +1 562 317 3300 | F: +1 562 317 3399
WWW.CWN-LAW.COM

JOSEPH A. WALSH II
JOE.WALSH@CWN-LAW.COM

November 17, 2022

Special Master Judge James L. Smith (Ret.)
Special Master Bradley O'Brien
Special Master Daniel Garrie

Re:    Gutierrez, et al. v. Amplify Energy Corp., et al. Case No. 8:21-cv-1628
       Deposition of John ("Jock") Mawson

Dear Special Master O'Brien:

We are writing with respect to the noticed deposition of John ("Jock") Mawson, which by agreement, is now scheduled to commence on Friday, November 18 at 9:00 am at the Los Angeles office of Kirkland & Ellis LLP located at 555 South Flower Street. Amplify has subpoenaed Mr. Mawson for deposition and production of documents pursuant to Rule 45 of the FRCP.[1]

The Dordellas Parties accepted service of both subpoenas and have agreed to produce Mr. Mawson, subject to their Objections detailed in Attachment A and any further objections that may be raised during the deposition proceeding. We have met and conferred with counsel for Amplify about the extent and scope of the intended deposition because Mr. Mawson is a consultant fully imbedded with the law firm of Collier Walsh Nakazawa LLP, counsel to the Dordellas Parties. He is and has been an active member of the legal team representing the Dordellas Parties in the litigation, and has had access to and participated in significant attorney-client communications as well as assisted with the formulation of strategies and other protected attorney work product.

The sole basis for deposing Mr. Mawson is that, as explained more fully below, Mr. Mawson executed a Declaration which was prepared and filed during a holiday weekend for the limited purpose of making the requisite showing of necessity in support of an Opposed Emergency *Ex Parte* Verified Petition to Perpetuate Testimony filed by Dordellas Finance Corp in *In re Application of Dordellas Finance Corp.*, ECF No. 1 (C.D. Cal. Nov. 27, 2021). As the deposing parties are aware, Mr. Mawson was not a percipient witness to any of the facts at issue in this case and relied on publicly available and produced documents for the factual statements in his declaration. Mr. Mawson is not an expert witness and will not be designated as such in this litigation. The Declaration itself is not at issue in the instant litigation. Deposing parties

---

[1] On Saturday, November 12, 2022, the BEIJING Parties also noticed Mr. Mawson's deposition, but their subpoena did not include a production demand. Nonetheless, the same issues raised by Amplify's subpoena will also apply to any questioning undertaken by the BEIJING Parties.



Special Master Judge James L. Smith (Ret.)
Special Master Bradley O'Brien
Special Master Daniel Garrie
November 17, 2022
Page 2

nonetheless insist they are entitled to question Mr. Mawson about the factual basis for the statements in the declaration.

Following our meet and confer, we anticipate that the deposing parties in fact intend to use Mr. Mawson's deposition as a means to explore unrelated privileged communications and/or protected work product generated in anticipation of litigation. As there is no legitimate basis to take his deposition on any subject beyond the four corners of his declaration, which was based entirely on public-record sources and documents produced in this litigation, the Dordellas Parties will object and instruct Mr. Mawson not to respond to any questions that seek to elicit privileged communications or protected attorney work product. This includes, for example, any questions concerning earlier drafts of the Declaration, discussions with counsel regarding its content or structure, or the "back and forth process" between counsel and Mr. Mawson during the drafting process, all of which are protected from discovery. *See, e.g., Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 2014 WL 3385130, at *4 (E.D. La. 2014).

to set expectations and minimize disruptions during the deposition, we discussed with Amplify our desire to have a Special Master attend the deposition, particularly in light of the obvious privilege issues associated with this particular deposition. We understand you will be attending the deposition in person, and we thank you in advance for making yourself available for that purpose.

**Background**

On November 27, 2021, Dordellas Finance Corp., through the law firm of Collier Walsh Nakazawa, filed an *ex parte* application for an emergency order authorizing a petition to perpetuate testimony of M/V BEIJING Second Officer Robert Ledesma, pursuant to FRCP Rule 27, prior to Mr. Ledesma's departure from this Court's jurisdiction. The *ex parte* application was prompted by an interview of Mr. Ledesma during which Mr. Ledesma asserted his Fifth Amendment right against self-incrimination in response to all questions after giving his name.

In support of its *ex parte* application, Dordellas filed a Declaration of Jock Mawson (hereinafter "Declaration"), Attachment C, in which Mr. Mawson summarized the content of several non-privileged documents, from which he determined the movements of the M/V BEIJING relative to the MSC DANIT on the morning of January 25, 2021, during the high wind event in question. In preparing his Declaration, Mr. Mawson reviewed and summarized: (1) data and documents provided by the United States Coast Guard ("USCG"), including an audio and video file from VTS containing its radio communications with ships at anchor in San Pedro Bay[2]; (2) video depictions

---

[2] DORD00301836; DORD00302927.



Special Master Judge James L. Smith (Ret.)
Special Master Bradley O'Brien
Special Master Daniel Garrie
November 17, 2022
Page 3

of vessel positions and movements as recorded by the VTS on the morning of January 25, 2021[3]; (3) the Engine Telegraph Recorder from the MSC DANIT[4]; (4) Bell Book of the MSC DANIT[5]; (5) MSC DANIT Engine Room Log[6]; (6) MSC DANIT Bridge Log[7]; and (7) internet searches of publicly available information to obtain basic particulars about the M/V BEIJING (flag, length, type of ship, etc.).  With the exception of public information about the M/V BEIJING obtained via *ad hoc* internet searches, all of these documents have been produced in discovery.  Accordingly, Mawson did not rely upon any privileged or work product-protected information in preparing his declaration.

On October 18, 2022, Amplify served this law firm with an FRCP 45 subpoena for Mr. Mawson to testify at deposition and produce documents ("Amplify Subpoena") concerning the Declaration.

The single document request seeks:

> All transcripts, recordings (video and audio), data, and any other Documents or Communications You received, considered, or relied upon in connection with Your Declaration in support of the Opposed Emergency *ex Parte* Verified Petition to Perpetuate Testimony filed by Dordellas Finance Corp in *In re Application of Dordellas Finance Corp.*, ECF No. 1 (C.D. Cal. Nov. 27, 2021).

Amplify Subpoena, <u>Attachment B</u>, p. 2.

## **<u>Opposing Counsel Depositions Disfavored</u>**

Opposing counsel depositions are generally disfavored. They "not only disrupt[] the adversarial system and lower[] the standards of the profession, but [] also add[] to the already burdensome time and costs of litigation." *Creighton v. Allstate Northbrook Indem. Co.*, No. 20cv243-TWR(KSC), 2021 U.S. Dist. LEXIS 36035, at *4 n.1 (S.D. Cal. Jan. 25, 2021) (quoting *Shelton v. Am Motors Corp.* 805 F.2d 1323, 1327 (8th Cir. 1986). The same inconveniences and time burdens apply whether the deposition is of opposing counsel *or a member of his litigation team*. *Cookie Dep't, Inc. v. Hershey Co.,* No. 20-cv-09324-KAW, 2022 U.S. Dist. LEXIS 108484 at *2-*3 (N.D. Cal. June 17, 2022) (citing *Dabney v. Inv. Corp. of Am.*, 82 F.R.D. 464, 465 (E.D. Pa. 1979)).

---

[3] MSCSA1564.
[4] MSCSA0695-MSCSA0701; DORD00329213.
[5] MSCSA0572, MSCSA0794; DORD00166110
[6] DORD00000858–923, DORD00000924–989.
[7] DORD00000733–857.



Special Master Judge James L. Smith (Ret.)
Special Master Bradley O'Brien
Special Master Daniel Garrie
November 17, 2022
Page 4


*Shelton v. Am Motors Corp.* 805 F.2d 1323 (8ᵗʰ Cir. 1986) is the seminal case on attorney depositions pertaining to open litigation and sets forth a three-part framework to guide courts' analyses, which district courts within the Ninth Circuit have followed. *See, eg. Creighton*, 2021 U.S. Dist. LEXIS 36035, at *6 (S.D. CA January 25, 2021); *De Alba v. Velocity Invs., LLC, No. 21-CV-547-AJB-WVG, 2022 U.S. Dist. LEXIS 143142, at *13-14 (S.D. Cal. Aug. 10, 2022).* Under *Shelton*, a party seeking to compel an attorney's deposition must demonstrate:

> (1) no other means exist to obtain the information than to depose opposing counsel;
> (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*De Alba v. Velocity Invs., LLC, No. 21-CV-547-AJB-WVG, 2022 U.S. Dist. LEXIS 143142, at *13-14 (S.D. Cal. Aug. 10, 2022)(quoting Shelton* at 1327)(further citations omitted).

Here, the Declaration does not offer any unique insight or information held exclusively by Mr. Mawson. *See Creighton*, 2021 U.S. Dist. LEXIS 36035, at *8-*9 (holding that plaintiff's counsel's knowledge of and familiarity with the underlying claim was "by no means unique" and denying discovery of such information). The Deposing Parties already have access to the same documents and data relied upon by Mr. Mawson in drafting the Declaration, and nothing is preventing the Deposing Parties from engaging their own qualified person to evaluate the statements therein and review the same facts and data to arrive at their own conclusions.

Moreover, the Declaration was limited in its purpose and disclosed only information necessary to convey to the Court the need for Dordellas' counsel to obtain and preserve testimony of a non-U.S. citizen who was about to leave the jurisdiction upon signing off his ship as part of counsel's investigation and formulation of defense strategies against anticipated litigation. There has been no waiver or applicable exception to privilege or work product protection because no privileged communication or analyses were disclosed—only facts and conclusions.

Lastly, Mawson neither used nor relied upon any privileged or work-product information in preparing his declaration. Therefore, Dordellas Parties will permit questioning about the factual sources for the statements in the Declaration; however, nothing else about the Declaration (*e.g.*, why he prepared it, the purpose of the *ex parte* application, and discussions with counsel about the scope and structure of the declaration) falls within the permissible scope of discovery.[8]

---

[8] *See, e.g., United States v. Nobles*, 422 U.S. 225, 239 (1975) (the work product doctrine protects from discovery in litigation 'mental impressions, conclusions, opinions, or legal theories of a party's attorney' that were 'prepared in anticipation of litigation or for trial[,]' and "extends to investigators or agents working for attorneys."); *De Alba v. Velocity Invs., LLC*, 2022 U.S. Dist.

Special Master Judge James L. Smith (Ret.)
Special Master Bradley O'Brien
Special Master Daniel Garrie
November 17, 2022
Page 5

**Conclusion**

Based on the foregoing, Mawson's testimony must be limited to the following:

(1) questions asking Mr. Mawson to identify which documents or materials he reviewed, considered, and relied upon in providing his Declaration; and,

(2) questions must also be limited to the time frame in which the Declaration was executed, November 23, 2021, and must not seek to solicit testimony beyond that date.

Questions about the specific contents of any documents or data and how those specific contents may have impacted, influenced or were analyzed in the formation of his Declaration are an infringement into his mental impressions, which are expressly protected. Counsel for the Dordellas Parties object to and will oppose any inquiries which seek to elicit Mr. Mawson's or counsel's mental impressions, conclusions, opinions, or legal theories on the basis of attorney/client privilege and/or the work product doctrine.

Very truly yours,

Joseph A. Walsh II

Attachments

---

LEXIS 143142 at *17-*18 (9th Cir. 2022)(denying defendant's motion to compel deposition testimony for an attorney and his legal assistant because "...learning about Plaintiff's counsel's motives and legal strategy in preparation for filing the instant lawsuit is simply outside the bounds of this litigation.")

ATTACHMENT A

JOSEPH A. WALSH II, State Bar No. 143694
joe.walsh@cwn-law.com
ELLEN E. McGLYNN, State Bar No. 270367
ellen.mcglynn@cwn-law.com
COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone: (562) 317-3300
Facsimile: (562) 317-3399

JONATHAN W. HUGHES State Bar No. 186829
jonathan.hughes@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, Tenth Floor
San Francisco, CA 94111
Telephone: (415) 471-3156
Facsimile: (415) 471-3400

Attorneys for Dordellas Finance Corp.,
Mediterranean Shipping Co. S.A.,
Mediterranean Shipping Co. S.r.l., MSC
Shipmanagement Ltd. and MSC DANIT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| PETER MOSES GUTIERREZ, Jr.; CHANDRALEKHA WICKRAMASEKARAN and RAJASEKARAN WICKRAMASEKARAN, as Trustees of THE WICKRAMASEKARAN FAMILY TRUST established March 12, 1993; et al. individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>AMPLIFY ENERGY CORP.; BETA OPERATING COMPANY, LLC; and SAN PEDRO BAY PIPELINE COMPANY,<br><br>Defendants/Third-Party Plaintiffs,<br><br>   v. | **IN ADMIRALTY**<br><br>Case No. 8:21-cv-01628-DOC-JDE<br>Judge: Hon. David O. Carter<br><br>**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS' NOTICE OF DEPOSITION AND SUBPOENA TO JOHN "JOCK" MAWSON**<br><br>Date: November 18, 2022<br>Time: 9:00 a.m. (PDT)<br>Location: Via Zoom |

1

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

1  MEDITERRANEAN SHIPPING
   COMPANY, S.A.; DORDELLAS
2  FINANCE CORPORATION;
   COSTAMARE SHIPPING CO., S.A.;
3  CAPETANISSA MARITIME
   CORPORATION; V.SHIPS GREECE
4  LTD.; MARINE EXCHANGE OF LOS
   ANGELES-LONG BEACH HARBOR
5  d/b/a MARINE EXCHANGE OF
   SOUTHERN CALIFORNIA; COSCO
6  SHIPPING LINES CO. LTD.; COSCO
   (CAYMAN) MERCURY CO. LTD.;
7  MEDITERRANEAN SHIPPING
   COMPANY S.R.L.; and MSC
8  SHIPMANAGEMENT LTD; in
   personam;
9  and M/V BEIJING and MSC DANIT, in
   rem.,
10
          Defendants/Third-Party
11        Defendants.

12
   MARKEL INTERNATIONAL
13 INSURANCE COMPANY, LTD.,
   ASCOT
14 UNDERWRITING INC., QBE
   EUROPEAN CO. OPERATIONS
15 (LLOYD'S SYNDICATE 1036),
   NAVIGATORS UNDERWRITING
16 AGENCY LTD. (LLOYD'S
   SYNDICATE
17 1221), MARKEL INTERNATIONAL
   LTD. (LLOYD'S SYNDICATE 3000),
18 AEGIS LONDON (LLOYD'S
   SYNDICATE 1225), TALBOT
19 UNDERWRITING LTD. (LLOYD'S
   SYNDICATE 1183), ANTARES
20 SYNDICATE 1274 (LLOYD'S
   SYNDICATE 1274); AXIS
21 CORPORATE
   CAPITAL UK LTD (LLOYD'S
22 SYNDICATE 1686); MUNICH RE
   SYNDICATE LIMITED
23
          v.
24 MEDITERRANEAN SHIPPING
   COMPANY, S.A.; DORDELLAS
25 FINANCE CORPORATION; MSC
   DANIT; DOES 1-5; COSTAMARE
26 SHIPPING CO., S.A.; CAPETANISSA
   MARITIME CORPORATION; V.SHIPS
27 GREECE LTD.; COSCO BEIJING; and
   DOES 6-10; MARINE EXCHANGE OF
28 LOS ANGELES-LONG BEACH

2

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS'**
**NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

HARBOR D/B/A MARINE EXCHANGE
OF SOUTHERN CALIFORNIA, COSCO
SHIPPING LINES CO. LTD.; COSCO
(CAYMAN) MERCURY CO. LTD.; and
MEDITERRANEAN SHIPPING
COMPANY S.R.L.,

        Defendants-in-Intervention.

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS'
NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

1    Third-Party Defendants MEDITERRANEAN SHIPPING COMPANY, S.A.,
2  DORDELLAS FINANCE CORPORATION, MEDITERRANEAN SHIPPING CO.
3  S.R.L., MSC SHIPMANAGEMENT LTD. and MSC DANIT, *in rem* (hereafter,
4  "Third-Party Defendants" or "Dordellas Parties") hereby submit the following
5  objections to Defendants/Third-Party Defendants CAPETANISSA MARITIME
6  CORPORATION, COSTAMARE SHIPPING CO. S.A., V. SHIPS GREECE LTD.
7  AND M/V BEIJING'S ("Beijing" or "Deposing Party") Notice of Third Party
8  Deposition Subpoena to John "Jock" Mawson (hereafter, the "Notice" and
9  "Deponent," respectively).  By agreement of the parties the deposition is now set to
10  occur on Friday, November 18, 2022.  Pursuant to Federal Rule of Civil Procedure,
11  Rule 26, 30 and 45, Dordellas Parties assert the following objections to the Notice
12  and reserve the right to amend the following objections and responses:

13                    **OBJECTIONS TO DEPOSITION NOTICE AND SUBPOENA**

14       1.    Third-Party Defendants object to the extent that Beijing seeks opinion
15  testimony from a consulting, non-testifying expert, namely opinions generated in
16  anticipation of litigation.

17       2.    Third-Party Defendants further object to the extent Beijing contends the
18  Declaration at issue constitutes a report, in which case FRCP Rule 26(b)(4)(B) prevents
19  access to an opposing party's trial preparation, by protecting from disclosure any draft
20  report or draft disclosure.

21       3.    Third-Party Defendants further object to the extent Beijing seeks
22  disclosure of Third-Party Defendants' trial preparation materials, including but not
23  limited to mental impressions, conclusions, opinions, and/or legal theories of Third-
24  Party Defendants, including attorneys and/or representatives thereof.  Fed. Rule Civ.
25  Proc. 26(b)(3).

26       4.    Third-Party Defendants object on the grounds that Beijing has no
27  legitimate purpose for deposing the Deponent and therefore the deposition is not
28  proportionate to the needs of this litigation.  As an employee of defense counsel, the

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

Deponent is neither a percipient fact witness nor testifying expert in the instant case. Such depositions are highly disfavored and in this case the deposition has been noticed purely as a mechanism to harass and place unnecessary burden, hardship and expense on Dordellas Parties and the Deponent. The declaration over which Beijing presumably now intends to question the Deponent was filed pre-suit for the limited purpose of seeking an *ex parte* order to secure testimony of a witness, and with no more information disclosed than necessary to convey to the Court the potential adversity of the interests of the two Vessels now involved in this litigation. A simple read of the declaration makes it clear that the Deponent is ***not a witness to key facts that could not be obtained from other sources***. See *Creighton v. Allstate Northbrook Indem. Co.*, 2021 U.S. Dist. LEXIS 36035, at *7 (S.D. CA January 25, 2021). Rather, he reviewed certain U.S. Coast Guard data and VTS video and audio files —already produced in this litigation—and stated in his declaration what, based on his experience and review, he believes to have occurred on or about January 25, 2021. Nothing is preventing Amplify from hiring its own experts to review the U.S. Coast Guard data and VTS video and audio files to generate their own opinions of what occurred.

5.     Third-Party Defendants further object on the grounds that Deposing Party seeks to invade the attorney-client privilege and/or work product protection by noticing the deposition of an employee of defense counsel for the Dordellas Parties, and to the extent Deposing Party seeks to explore privileged communications and/or work product generated in anticipation of litigation and/or during the course of this litigation, the common interest privilege, or any other applicable privilege or immunity against disclosure. Any inadvertent disclosure of such privileged information should not be construed as a waiver of any privilege or protection. Any objection based on the attorney-client privilege, the work product doctrine, the common interest privilege, or any other applicable privilege or immunity, should not be construed as a representation that such information exists or existed. Such an objection indicates only that the Topic is of such a scope as to potentially embrace subject matter protected by such privilege,

3

immunity, or other protection.  Namely, the declaration referenced in the subpoena (the "Declaration")—over which Beijing now intends to question the Deponent—was filed pre-suit for the limited purpose of seeking an *ex parte* order to perpetuate testimony of a witness, and with no more information disclosed than necessary to convey to the Court the potential adversity of the interests of the two Vessels now involved in this litigation and does not serve as a waiver of any privilege and/or protection. The information sought from the deposition that is not subject to privilege and/or work product are equally available to Deposing Parties via discovery from third party sources and parties to this litigation, namely the U.S. Coast Guard and Marine Exchange. Moreover, Beijing is at liberty to retain its own experts—whether consulting or testifying—to analyze the documents and information and reach their own independent opinions on the movements of the vessels involved in this litigation.

6.    To the extent Beijing seeks to test the bases for Deponent's opinions, the deposition seeks wholly irrelevant testimony that again, is not germane to the issue of this case, is unrelated to any party's claims or defenses in this proceeding, and is not proportionate to the needs of this case.  The Deponent is not a testifying expert in this case and will not be offering expert testimony at trial in this case.  The Deponent is not a percipient witness to the circumstances surrounding the facts of this case. The propriety of the emergency order or *ex parte* application is not being litigated in this action; this is not a case involving claims of, for example, malicious prosecution, nor a coverage action where Deponent's percipient knowledge in an underlying case is relevant. Accordingly, the only conceivable reason Beijing seeks the deposition is to question the mental impressions of an employee of defense counsel in his review of certain documents and information, which serves to invade attorney-client privilege information and protected work product of Dordellas Parties, clearly generated in anticipation of litigation.

7.    Dordellas Parties object to the extent the instructions, terms, and/or conditions contained in the Notice purport to establish rules, procedures, or protocols

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

4

for the deposition that are different from or inconsistent with those set forth in the Federal Rules of Civil Procedure and Local Rules of the Central District of California.

8.      Dordellas Parties, including the Deponent, reserve their rights to lodge and/or make additional objections to any subsequent notice of deposition, to any individual question(s) that may be posed during such deposition, and to any documents whose production may be requested in connection therewith.

Subject to and without waiving the foregoing objections or its reservation of rights to lodge additional objections at the time of the deposition, in the interest of reaching a compromise in good faith, Dordellas Parties are willing to produce the Deponent on the date and time in the Amended Notice of Deposition and Subpoena, for the limited purpose of confirming the extent of the U.S.C.G. and VTS documents relied upon by the Deponent in drafting the Declaration, and in the presence of the assigned Special Master in this litigation

Dated: November 17, 2022                COLLIER WALSH NAKAZAWA LLP


                                        By:  ___/s/ Joseph A. Walsh II___
                                             Joseph A. Walsh II
                                             Ellen E. McGlynn

                                             ARNOLD & PORTER
                                             KAYE SCHOLER LLP
                                             Jonathan W. Hughes
                                             Angel Tang Nakamura
                                             Lauren Daniel
                                             Katie J.L. Scott

                                             Attorneys for Dordellas Finance Corp.,
                                             Mediterranean Shipping Co. S.A.,
                                             Mediterranean Shipping Co. S.r.l., MSC
                                             Shipmanagement Ltd. and MSC DANIT

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS'
NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF KING**

    At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of King, State of California.  My business address is 450 Alaskan Way South, Suite 200, Seattle, WA 98104.

    On November 17, 2022, I served true copies of the following document(s) described as **DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS' NOTICE OF DEPOSITION AND SUBPOENA TO JOHN "JOCK" MAWSON** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

    **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address Gelila.Ayenew@cwn-law.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

    I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

    Executed on November 17, 2022, at Seattle, Washington.


                 /s/  Gelila Ayenew
                 Gelila Ayenew

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS'
NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

**SERVICE LIST**

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

| | |
|---|---|
| Gary A Praglin<br>Hannah Brown<br>Kelly Christina Weil<br>Robert B. Hutchinson<br>Cotchett Pitre and McCarthy LLP<br>2716 Ocean Park Boulevard Suite 3088<br>Santa Monica, CA 90405<br>310-392-2008<br>Fax: 310-392-0111<br>Email: gpraglin@cpmlegal.com<br>hbrown@cpmlegal.com<br>kweil@cpmlegal.com<br>rhutchinson@cpmlegal.com | *PLAINTIFFS*<br>*BANZAI SURF COMPANY, LLC,*<br>*BOBS LEMONADE, BRADLEY*<br>*BITTON dba BRADS LIVE LOCAL*<br>*LOBSTER, CLINT CARROLL SURF*<br>*SCHOOL, COACHES*<br>*MEDITERRANEAN GRILL & BAR,*<br>*COLD STONE CREAMERY,*<br>*ENDLESS SUN SURF SCHOOL,*<br>*GOFF TOURS, JOSHUA TUCKER,*<br>*KIRK SCHOONOVER, LEARN TO*<br>*SURF LLC, MAIN ST. EYEWEAR &*<br>*BOUTIQUE, ZACKS BY THE*<br>*BEACH, ZIGGYS ON MAIN* |
| Allie Murphy<br>Nancei Nishimura<br>Cotchett, Pitre & McCarthy<br>840 Malcolm Road, Suite 200<br>Burlingame, CA 94010<br>650-697-6000<br>Fax: 650-697-0577<br>Email: amurphy@cpmlegal.com<br>nnishimura@cpmlegal.com | *BANZAI SURF COMPANY, LLC;*<br>*BRADLEY BITTON DBA BRAD'S*<br>*LIVE LOCAL LOBSTER AND KIRK*<br>*SCHOONOVER* |
| Lexi J Hazam<br>Frank White<br>Robert Nelson<br>Lieff Cabraser Heimann and Bernstein<br>LLP<br>Embarcadero Center West<br>275 Battery Street 29th Floor<br>San Francisco, CA 94111-3339<br>415-956-1000<br>Fax: 415-956-1008<br>Email: lhazam@lchb.com<br>fwhite@lchb.com<br>rnelson@lchb.com | *PLAINTIFFS*<br>*BANZAI SURF COMPANY, LLC,*<br>*BEYOND BUSINESS*<br>*INCORPORATED D/B/A BIG FISH*<br>*BAIT & TACKLE, BLUE PACIFIC*<br>*FISHERIES, BOBS LEMONADE,*<br>*CHANDRALEKHA*<br>*WICKRAMASEKARAN, individually*<br>*and as Trustees of the*<br>*Wickramasekaren Family,*<br>*CHARLIE'S GYROS, INC., CLINT*<br>*CARROLL SURF SCHOOL,*<br>*COACHES MEDITERRANEAN*<br>*GRILL & BAR, COLD STONE*<br>*CREAMERY, DAVEY'S LOCKER*<br>*SPORTFISHING, INC., DONALD*<br>*C. BROCKMAN, individually and as*<br>*Trustee of the Donald C. Brockman*<br>*Trust, EAST MEETS WEST*<br>*EXCURSIONS, ENDLESS SUN*<br>*SURF SCHOOL, GINA ROSANSKY,* |

7

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

| | |
|---|---|
| | *GOFF TOURS, GREG TAYLOR, GREGORY HEXBURG, HEIDI M. JACQUES, IVAR SOUTHERN, JACK BUTTLER, JOHN PEDICINI, individually and as Trustee of the T&G Trust, JOSHUA TUCKER, KIRK SCHOONOVER, LBC SEAFOOD, INC., LEARN TO SURF LLC, LINDA SOUTHERN, MAIN ST. EYEWEAR & BOUTIQUE, MARYSUE PEDICINI, individually and as Trustee of the T&G Trust, MICHAEL JENSEN, MIKE OWENS, NEWPORT LANDING SPORTFISHING, INC., NEWPORT SURFRIDER, LLC, PATRICK MAHONEY, JOLYNN MAHONEY, PETER MOSES GUTIERREZ, JR., QUALITY SEAFOOD, INC., RAJASEKARAN WICKRAMASEKARAN, individually and as Trustees of the Wickramasekaran Family, SAN PEDRO BAIT Co., STEVE LEGERE, STEVEN ROSANSKY, ZACKS BY THE BEACH, ZIGGYS ON MAIN, JAMES WHELAN, BRADLEY BITTON dba BRADS LIVE LOCAL LOBSTER, JOSH HERNANDEZ, JOHN CROWE, BONGOS SPORTFISHING LLC, BONGOS III SPORTFISHING LLC, TYLER WAYMAN, JENNIFER TAYLOR* |
| Stephen Gerald Larson<br>Andrew Joseph Bedigian<br>Rick Lloyd Richmond<br>Larson LLP<br>555 South Flower Street Suite 4400<br>Los Angeles, CA 90071<br>213-436-4888<br>Fax: 213-623-2000<br>Email: slarson@larsonllp.com<br>abedigian@larsonllp.com<br>rrichmond@larsonllp.com | *PLAINTIFFS BANZAI SURF COMPANY, LLC, BEYOND BUSINESS INCORPORATED D/B/A BIG FISH BAIT & TACKLE, CHANDRALEKHA WICKRAMASEKARAN, individually and as Trustees of the Wickramasekaren Family, CHARLIE'S GYROS, INC., DAVEY'S LOCKER SPORTFISHING, INC., DONALD C. BROCKMAN, individually and as Trustee of the Donald C. Brockman Trust, EAST MEETS WEST EXCURSIONS, GREG TAYLOR, HEIDI M. JACQUES, individually and as Trustee of the Heidi M. Brockman Trust, JENNIFER TAYLOR, JOHN PEDICINI,* |

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS'
NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

| | |
|---|---|
| | *individually and as Trustee of the T&G Trust, LBC SEAFOOD, INC., MARYSUE PEDICINI, individually and as Trustee of the T&G Trust, PETER MOSES GUTIERREZ, JR., QUALITY SEAFOOD, INC., RAJASKARAN WICKRAMASEKARAN, individually and as Trustees of the Wickramasekaran Family, JOSH HERNANDEZ, JOHN CROWE, BONGOS SPORTFISHING LLC, BONGOS III SPORTFISHING LLC, TYLER WAYMAN* |
| Alexander Robertson IV<br>Mark Uyeno<br>ROBERTSON & ASSOCIATES, LLP<br>32121 Lindero Canyon Road, Suite 200<br>Westlake Village, CA 91361<br>Email: arobertson@robertsonlaw.com<br>muyeno@robertsonlaw.com | *BLUE PACIFIC FISHERIES, DAVEY'S LOCKER SPORTFISHING INC., DONALD C BROCKMAN, DONALD C. BROCKMAN TRUST, GREGORY C. AND DEBORAH L. HEXBURG FAMILY TRUST; GREGORY HEXBURG; HEIDI M. BROCKMAN TRUST; HEIDI M. JACQUES, IVAR SOUTHERN, LINDA SOUTHERN, NEWPORT LANDING SPORTFISHING, INC., SAN PEDRO BAIT CO.* |
| Elaine S. Kusel<br>Sherief Morsy<br>McCune Wright Arevalo LLP<br>One Gateway Center, Suite 1500<br>Newwark, NJ 07102<br>973-888-1203<br>Fax: 909-557-1275<br>Email: esk@mccunewright.com<br>sm@mccunewright.com | *PLAINTIFFS, BEYOND BUSINESS INCORPORATED D/B/A BIG FISH BAIT & TACKLE* |
| Steven E Bledsoe<br>Larson LLP<br>600 Anton Boulevard Suite 1270<br>Costa Mesa, CA 92626<br>949-516-7250<br>Fax: 949-516-7251<br>Email: sbledsoe@larsonllp.com | *PLAINTIFFS, BEYOND BUSINESS INCORPORATED D/B/A BIG FISH BAIT & TACKLE* |
| David C Wright | *PLAINTIFFS,* |

9

| | |
|---|---|
| Richard D. McCune<br>James G. Perry<br>McCune Wright Arevalo LLP<br>18565 Jamboree Road Suite 550<br>Irvine, CA 92612<br>909-557-1250<br>Fax: 909-557-1275<br>Email dcw@mccunewright.com<br>        rdm@mccunewright.com<br>        jgp@mccunewright.com | *BEYOND BUSINESS INCORPORATED D/B/A BIG FISH BAIT & TACKLE* |
| Mark I. Richards<br>McCune Wright Arevalo LLP<br>3281 East Guasti Road Suite 100<br>Ontario, CA 91761<br>909-557-1250<br>Fax: 909-557-1275<br>Email: mir@mccunewright.com | *PLAINTIFFS,<br>BEYOND BUSINESS INCORPORATED D/B/A BIG FISH BAIT & TACKLE* |
| Wilson M Dunlavey<br>Kelly K. McNabb<br>Lieff Cabraser Heiman and Bernstein LLP<br>250 Hudson Street 8th Floor<br>New York, NY 10013<br>212-355-9500<br>Fax: 212-355-9592<br>Email: wdunlavey@lchb.com<br>        kmcnabb@lchb.com | *PLAINTIFFS,<br>BLUE PACIFIC FISHERIES, DAVEY'S LOCKER SPORTFISHING, INC., DONALD C. BROCKMAN, individually and as Trustee of the Donald C. Brockman Trust, GREOGRY HEXBERG, IVAR SOUTHERN, LINDA SOUTHERN, NEWPORT LANDING SPORTFISHING, INC., SAN PEDRO BAIT CO.* |
| Alex R. Straus<br>Milberg Coleman Bryson Phillips Grossman PLLC<br>280 South Beverly Drive<br>Beverly Hills, CA 90212<br>914-471-1894<br>Fax: 919-600-5035<br>Email: astraus@milberg.com | *PLAINTIFFS CHANDRALEKHA WICKRAMASEKARAN, individually and as Trustees of the Wickramasekaren Family, PETER MOSES GUTIERREZ, JR., RAJASKARAN WICKRAMASEKARAN, individually and as Trustees of the Wickramasekaran Family* |
| Jason A Ibey<br>Seyed Abbas Kazerounian | *PLAINTIFFS CHANDRALEKHA WICKRAMASEKARAN, individually* |

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS'
NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

| | |
|---|---|
| Kazerouni Law Group APC<br>245 Fisher Ave, Unit D1<br>Costa Mesa, CA 92626<br>800-400-6808<br>Fax: 800-520-5523<br>Email: jason@kazlg.com<br>        ak@kazlg.com | *and as Trustees of the Wickramasekaren Family, PETER MOSES GUTIERREZ, JR., RAJASKARAN WICKRAMASEKARAN, individually and as Trustees of the Wickramasekaran Family* |
| Gregory L. Bentley<br>Matthew William Clark<br>Bentley and More LLP<br>4931 Birch Street<br>Newport Beach, CA 92660<br>949-870-3800<br>Fax: 949-732-6291<br>Email: gbentley@bentleymore.com<br>        mclark@bentleymore.com | *PLAINTIFFS*<br>*CHARLIE'S GYROS, INC., GREG TAYLOR, JENNIFER TAYLOR* |
| Darren O. Aitken<br>Megan Janet Gless Demshki<br>Wylie A. Aitken<br>Aitken and Cohn<br>3 MacArthur Place Suite 800<br>Santa Ana, CA 92707<br>714-434-1424<br>Fax: 714-434-3600<br>Email: darren@aitkenlaw.com<br>        megan@aitkenlaw.com<br>        wylie@aitkenlaw.com | *PLAINTIFFS,*<br>*EAST MEETS WEST EXCURSIONS, GINA ROSANSKY, JOHN PEDICINI, individually and as Trustee of the T&G Trust, JOLYNN MAHONEY, MARYSUE PEDICINI, individually and as Trustee of the T&G Trust, MICHAEL JENSEN, MIKE OWENS, PATRICK MAHONEY, STEVEN ROSANSKY* |
| Erica A. Maharg<br>James T. Brett<br>Jason R. Flanders<br>Matthew C. Maclear<br>Aqua Terra Aeris Law Group<br>4030 Martin Luther King Jr. Way<br>Oakland, CA 94609<br>510-473-8793<br>Email: eam@atalawgroup.com<br>        jtb@atalawgroup.com<br>        jrf@atalawgroup.com | *PLAINTIFFS*<br>*JACK BUTTLER, LBC SEAFOOD, INC., QUALITY SEA FOOD, INC., STEVE LEGERE* |

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS'
NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON

| | |
|---|---|
| mcm@atalawgroup.com | |
| Hannah E Mohr<br>Matiasic Firm PC<br>4 Embarcadero Center Suite 1400<br>San Francisco, CA 94111<br>213-699-2083<br>Fax: 415-675-1103<br>Email: mohr@mjlawoffice.com | *PLAINTIFFS*<br>*JACK BUTTLER, LBC SEAFOOD, INC., QUALITY SEAFOOD, INC., STEVE LEGERE* |
| David Seabold Casey, Jr<br>Frederick Schenk<br>Gayle M. Blatt<br>Patricia C. Guerra<br>Casey Gerry Schenk Francavilla Blatt and Penfield LLP<br>110 Laurel Street<br>San Diego, CA 92101<br>619-238-1811<br>Fax: 619-544-9232<br>Email: dcasey@cglaw.com<br>      fschenk@cglaw.com<br>      gmb@cglaw.com | *PLAINTIFFS*<br>*JAMES WHELAN* |
| Stephen Hennan<br>HERMAN, HERMAN, KATZ & COTLAR<br>820 O'Keefe Ave.<br>New Orleans, LA 70113-1116<br>504-581-4892<br>Fax: 504-561-6024 | *PLAINTIFFS*<br>*JAMES WHELAN* |
| Steven Noel Williams<br>Joseph Saveri Law Firm Inc<br>601 California Street Suite 1000<br>San Francisco, CA 94108<br>415-500-6800<br>Fax: 415-395-9940<br>Email: swilliams@saverilawfirm.com | *PLAINTIFF*<br>*KETCHAM TACKLE LLC* |

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS'
NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

| | |
|---|---|
| 1<br>2<br>3<br>4 | Stuart Gross<br>GROSS & KLEIN<br>The Embarcadero Pier 9, Suite 100<br>San Francisco, CA 94111<br>Email: sgross@grosskleinlaw.com | *KETCHAM TACKLE LLC* |
| 5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15 | JOSEPH SAVERI LAW<br>FIRM INC<br>Anna-Patrice Harris<br>Christopher Young<br>Joseph Saveri<br>Steven R Noel Williams<br>601 California Street, Suite 1000<br>San Francisco, CA 94108<br>415-500-6800<br>Fax: 415-395-9940<br>Email: aharris@saverilawfirm.com<br>    cyoung@saverilawfirm.com<br>    jsaveri@saverilawfirm.com<br>    swilliams@saverilawfirm.com | *KETCHAM TACKLE LLC* |
| 16<br>17<br>18<br>19<br>20<br>21<br>22 | Guido Toscano<br>Jeff Westerman<br>WESTERMAN LAW CORP.<br>16133 Ventura Blvd, Suite 685<br>Encino, CA 91436<br>310-698-7450<br>Fax 310-698-7451<br>Email: gtoscano@jswlegal.com<br>    jwesterman@jswlegal.com | *KETCHAM TACKLE LLC* |
| 23<br>24<br>25<br>26<br>27 | Paul A Matiasic<br>Matiasic Firm PC<br>355 South Grand Avenue Suite 2450<br>Los Angeles, CA 90071<br>213-699-2083<br>Fax: 415-675-1103<br>Email: matiasic@mjlawoffice.com | *PLAINTIFFS<br>LBC SEAFOOD, INC., QUALITY<br>SEAFOOD, INC., STEVE LEGERE,<br>JACK BUTTLER* |
| 28 | Joel B. Young | *PLAINTIFFS,<br>N.S.T., A MINOR, BY AND* |

13

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

| | |
|---|---|
| Tidrick Law Firm LLP<br>1300 Clay Street Suite 600<br>Oakland, CA 94612<br>510-788-5100<br>Fax: 510-291-3226<br>Email: jby@tidricklaw.com | *THROUGH HER GUARDIAN AD LITEM, MICHAELANGELO SAINT THOMAS* |
| Steven Gregory Tidrick<br>The Tidrick Law Firm<br>2039 Shattuck Avenue Suite 308<br>Berkeley, CA 94704<br>510-788-5100<br>Fax: 510-291-3226<br>Email: sgt@tidricklaw.com | *PLAINTIFFS,<br>N.S.T., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, MICHAELANGELO SAINT THOMAS* |
| Mikael Abye<br>88 Kearney Street, Suite 1850<br>San Francisco, CA 94108<br>415-341-4519<br>Email: Mick@abyelaw.com | *PLAINTIFFS,<br>N.S.T., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, MICHAELANGELO SAINT THOMAS* |
| Brittany Armstrong<br>WHITTINGTON LAW FIRM<br>100 Admiral Callaghan Ln, Unit 5482<br>Vallejo, CA 94591<br>833-944-8529<br>Email: Brittany@whittingtonlaw.com | *N.S.T., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, MICHAELANGELO SAINT THOMAS* |
| Francis A. Bottini, Jr.<br>Bottini and Bottini Inc.<br>7817 Ivanhoe Avenue Suite 102<br>La Jolla, CA 92037<br>858-914-2001<br>Fax: 858-914-2002<br>Email: fbottini@bottinilaw.com | *PLAINTIFF<br>NEWPORT SURFRIDER, LLC* |
| Lawrence Conlan<br>A. Barry Cappello<br>Leila Noel<br>Cappello & Noel LLP<br>831 State Street | *KRISTIN AND STEPHEN SAMUELIAN FAMILY TRUST EST. 8/25/2017; SK5-KELLER LEGACY, LLC; STEPHEN E. SAMUELIAN, KRISTIN KAY SAMUELIAN* |

14

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS'
NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

| | |
|---|---|
| Santa Barbara, CA 93101-3227<br>805-564-2444<br>Fax: 805-965-5950<br>Email: abc@cappellonoel.com<br>　　　lconlan@cappellonoel.com<br>　　　lnoel@cappellonoel.com | |
| Jessica Grau<br>Golden Injury Law<br>17291 Irvine Blvd, Suite 440<br>Tustin, CA 92780-2963<br>714-715-3100<br>Email: jessical@goldeninjurylaw.com | *HILL'S BOAT SERVICE, INC.* |
| Cynthia Garber<br>Onderlaw, LLC<br>12 Corporate Plaza Drive, Suit e275<br>Newport Beach, CA 92660<br>Email: garber@onderlaw.com | *HILL'S BOAT SERVICE, INC.* |
| Blake Hunter Yagman<br>Milberg Coleman Bryson Phillips<br>Grossman PLLC<br>100 Garden City Plaza, Suite 500<br>Garden City, NY 11530<br>212-594-5300<br>Email: byagman@milberg.com<br>*(admitted Pro Hac Vice)* | *PLAINTIFF,*<br>*PETER MOSES GUTIERREZ, JR.* |
| Anna Rotman<br>Kirkland and Ellis LLP<br>609 Main Street<br>Houston, TX 77002<br>713-836-3600<br>Fax: 713-836-3601<br>Email: anna.rotman@kirkland.com | *DEFENDANTS*<br>*AMPLIFY ENERGY CORP.., BETA*<br>*OPERATING COMANY, LLC*<br><br>*THIRD PARTY-PLAINTIFFS*<br>*AMPLIFY ENERGY CORP., BETA*<br>*OPERATING COMPANY, LLC,*<br>*SAN PEDRO BAY PIPELINE*<br>*COMPANY* |
| Daniel T. Donovan<br>Meredith Pohl<br>Holly R. Trogdon | *DEFENDANTS*<br>*AMPLIFY ENERGY CORP., BETA*<br>*OPERATING COMPANY, LLC,,*<br>*SAN PEDRO BAY PIPELINE* |

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

15

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS'**
**NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

| | |
|---|---|
| Kevin Ross Powell<br>Matthew S. Owen<br>McClain Thompson<br>Kirkland and Ellis LLP<br>1301 Pennsylvania Avenue NW<br>Washington, DC 20004<br>202-389-5000<br>Fax: 202-389-5200<br>Email: ddonovan@kirkland.com<br>    Meredith.pohl@kirkland.com<br>    Holly.trogdon@kirkland.com<br>    Ross.Powell@kirkland.com<br>    Matt.owen@kirkland.co m<br>    Mcclain.Thompson@kirkland.com | *COMPANY*<br><br>*THIRD PARTY-PLAINTIFFS AMPLIFY ENERGY CORP., BETA OPERATING COMPANY, LLC, SAN PEDRO BAY PIPELINE COMPANY* |
| Christopher W. Keegan<br>Kirkland and Ellis LLP<br>555 California Street Suite 2900<br>San Francisco, CA 94104<br>415-429-1400<br>Fax: 415-439-1500<br>Email:<br>christopher.keegan@kirkland.com | *DEFENDANTS AMPLIFY ENERGY CORP., BETA OPERATING COMPANY, LLC, SAN PEDRO BAY PIPELINE COMPANY*<br><br>*THIRD PARTY-PLAINTIFFS AMPLIFY ENERGY CORP., BETA OPERATING COMPANY, LLC, SAN PEDRO BAY PIPELINE COMPANY* |
| Mark Holscher<br>Kirkland and Ellis LLP<br>555 South Flower Street, Suite 3700<br>Los Angeles, CA 90071<br>213-680-8400<br>Fax: 213-680-8500<br>Email: mark.holscher@kirkland.com | *DEFENDANTS AMPLIFY ENERGY CORP., BETA OPERATING COMPANY, LLC, SAN PEDRO BAY PIPELINE COMPANY*<br><br>*THIRD PARTY-PLAINTIFFS AMPLIFY ENERGY CORP., BETA OPERATING COMPANY, LLC, SAN PEDRO BAY PIPELINE COMPANY* |
| Conte C. Cicala<br>Clyde & Co US LLP<br>150 California Street, 15th Floor<br>San Francisco, CA 94111<br>415-365-9800<br>Fax: 415-365-9801<br>Email: conte.cicala@clydeco.us | *THIRD PARTY DEFENDANTS MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF SOUTHERN CALIFORNIA* |

16

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

| | |
|---|---|
| Albert E. Peacock III<br>Glen R. Piper<br>David A. Tong<br>Margaret Stando<br>Juliette B. McCullough<br>Peacock Piper Tong + Voss LLP<br>100 W. Broadway, Suite 610<br>Long Beach, CA 90802<br>562-320-8880<br>Fax: 562-735-3950<br>Email: apeacock@peacockpiper.com<br>    gpiper@peacockpiper.com<br>    dtong@peacockpiper.com<br>    mstando@peacockpiper.com<br>    jmccullough@peacockpiper.com | *SPECIALLY APPEARING DEFENDANT CAPETANISSA MARITIME CORPORATION, COSTAMARE SHIPPING CO. S.A., V. SHIPS GREECE LTD.*<br><br>*THIRD PARTY DEFENDANT V. SHIPS GREECE LTD., COSCO BEIJING, CAPETANISSA MARITIME CORPORATION, COSTAMARE SHIPPING CO. S.A.* |
| Bradley O'Brien<br>Pro Se<br>O'Brien Conflict Resolution LLC<br>P.O. Box 306<br>Sausalito, CA 94966<br>415-272-1679<br>Email:<br>bradley@obrienconflictresolution.com<br>PRO SE | *SPECIAL MASTER* |
| Daniel Garrie<br>Pro Se<br>JAMS<br>555 West 5th Street 32nd Floor<br>Los Angeles, CA 90013<br>Email: dgarrie@jamsadr.com | *SPECIAL MASTER* |
| James L. Smith<br>Pro Se<br>JAMS<br>5 Park Plaza Suite 400<br>Irvine, CA 92614<br>714-937-8229 | *SPECIAL MASTER* |

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS' NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

1

2

3

Fax: 714-939-8710
Email: jsmith@jamsadr.com

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO BEIJING DEFENDANTS'
NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

1  JOSEPH A. WALSH II, State Bar No. 143694
   joe.walsh@cwn-law.com
2  ELLEN E. McGLYNN, State Bar No. 270367
   ellen.mcglynn@cwn-law.com
3  COLLIER WALSH NAKAZAWA LLP
   One World Trade Center, Suite 2370
4  Long Beach, California 90831
   Telephone: (562) 317-3300
5  Facsimile: (562) 317-3399

6  JONATHAN W. HUGHES State Bar No. 186829
   jonathan.hughes@arnoldporter.com
7  ARNOLD & PORTER KAYE SCHOLER LLP
   Three Embarcadero Center, Tenth Floor
8  San Francisco, CA 94111
   Telephone: (415) 471-3156
9  Facsimile: (415) 471-3400

10 Attorneys for Dordellas Finance Corp.,
   Mediterranean Shipping Co. S.A.,
11 Mediterranean Shipping Co. S.r.l., MSC
   Shipmanagement Ltd. and MSC DANIT

12

13             UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                  SOUTHERN DIVISION

16 PETER MOSES GUTIERREZ, Jr.;            **IN ADMIRALTY**
   CHANDRALEKHA
17 WICKRAMASEKARAN and                    Case No. 8:21-cv-01628-DOC-JDE
   RAJASEKARAN                            Judge: Hon. David O. Carter
18 WICKRAMASEKARAN, as Trustees of
   THE WICKRAMASEKARAN FAMILY             **DORDELLAS PARTIES' NOTICE**
19 TRUST established March 12, 1993; et al. **OF OBJECTION TO AMPLIFY**
   individually and on behalf of all others **DEFENDANTS/THIRD-PARTY**
20 similarly situated,                     **PLAINTIFFS' NOTICE OF**
                                           **DEPOSITION OF JOHN "JOCK"**
21          Plaintiffs,                    **MAWSON**

22     v.                                 Date: November 18, 2022
                                           Time: 9:00 a.m. (PDT)
23 AMPLIFY ENERGY CORP.; BETA             Location: Via Zoom
   OPERATING COMPANY, LLC; and
24 SAN PEDRO BAY PIPELINE
   COMPANY,
25

26 Defendants/Third-Party
   Plaintiffs,
27
       v.
28
                                1

1  MEDITERRANEAN SHIPPING
   COMPANY, S.A.; DORDELLAS
2  FINANCE CORPORATION;
   COSTAMARE SHIPPING CO., S.A.;
3  CAPETANISSA MARITIME
   CORPORATION; V.SHIPS GREECE
4  LTD.; MARINE EXCHANGE OF LOS
   ANGELES-LONG BEACH HARBOR
5  d/b/a MARINE EXCHANGE OF
   SOUTHERN CALIFORNIA; COSCO
6  SHIPPING LINES CO. LTD.; COSCO
   (CAYMAN) MERCURY CO. LTD.;
7  MEDITERRANEAN SHIPPING
   COMPANY S.R.L.; and MSC
8  SHIPMANAGEMENT LTD; in
   personam;
9  and M/V BEIJING and MSC DANIT, in
   rem.,
10
            Defendants/Third-Party
11          Defendants.

12
   MARKEL INTERNATIONAL
13 INSURANCE COMPANY, LTD.,
   ASCOT
14 UNDERWRITING INC., QBE
   EUROPEAN CO. OPERATIONS
15 (LLOYD'S SYNDICATE 1036),
   NAVIGATORS UNDERWRITING
16 AGENCY LTD. (LLOYD'S
   SYNDICATE
17 1221), MARKEL INTERNATIONAL
   LTD. (LLOYD'S SYNDICATE 3000),
18 AEGIS LONDON (LLOYD'S
   SYNDICATE 1225), TALBOT
19 UNDERWRITING LTD. (LLOYD'S
   SYNDICATE 1183), ANTARES
20 SYNDICATE 1274 (LLOYD'S
   SYNDICATE 1274); AXIS
21 CORPORATE
   CAPITAL UK LTD (LLOYD'S
22 SYNDICATE 1686); MUNICH RE
   SYNDICATE LIMITED
23
        v.
24 MEDITERRANEAN SHIPPING
   COMPANY, S.A.; DORDELLAS
25 FINANCE CORPORATION; MSC
   DANIT; DOES 1-5; COSTAMARE
26 SHIPPING CO., S.A.; CAPETANISSA
   MARITIME CORPORATION; V.SHIPS
27 GREECE LTD.; COSCO BEIJING; and
   DOES 6-10; MARINE EXCHANGE OF
28 LOS ANGELES-LONG BEACH

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

2

1 | HARBOR D/B/A MARINE EXCHANGE
OF SOUTHERN CALIFORNIA, COSCO
2 | SHIPPING LINES CO. LTD.; COSCO
(CAYMAN) MERCURY CO. LTD.; and
3 | MEDITERRANEAN SHIPPING
COMPANY S.R.L.,
4 |

5 |                 Defendants-in-Intervention.

6 |

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO AMPLIFY DEFENDANTS/THIRD-PARTY PLAINTIFFS' NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

1    Third-Party Defendants MEDITERRANEAN SHIPPING COMPANY, S.A.,

2  DORDELLAS FINANCE CORPORATION, MEDITERRANEAN SHIPPING CO.

3  S.R.L., MSC SHIPMANAGEMENT LTD. and MSC DANIT, *in rem* (hereafter,

4  "Third-Party Defendants" or "Dordellas Parties") hereby submit the following

5  objections to Third-Party Plaintiff AMPLIFY ENERGY CORP's ("Amplify" or

6  "Deposing Party") Continued Notice of Taking Electronic Videotaped Deposition of

7  John "Jock" Mawson (hereafter, the "Notice" and "Deponent," respectively).  By

8  agreement of the parties the deposition is now set to occur on Friday, November 18,

9  2022.  Third-Party Defendants reserve the right to amend the following objections

10  and responses:

11            **OBJECTIONS TO DEPOSITION NOTICE AND SUBPOENA**

12    1.    Third-Party Defendants object to the extent that Amplify seeks opinion

13  testimony from a consulting, non-testifying expert, namely opinions generated in

14  anticipation of litigation.

15    2.    Third-Party Defendants further object to the extent Amplify contends the

16  Declaration at issue constitutes a report, in which case FRCP Rule 26(b)(4)(B) prevents

17  access to an opposing party's trial preparation, by protecting from disclosure any draft

18  report or draft disclosure.

19    3.    Third-Party Defendants further object to the extent Amplify seeks

20  disclosure of Third-Party Defendants' trial preparation materials, including but not

21  limited to mental impressions, conclusions, opinions, and/or legal theories of Third-

22  Party Defendants, including attorneys and/or representatives thereof.  Fed. Rule Civ.

23  Proc. 26(b)(3).

24    4.    Third-Party Defendants object on the grounds that Amplify has no

25  legitimate purpose for deposing the Deponent and therefore the deposition is not

26  proportionate to the needs of this litigation.  As an employee of defense counsel, the

27  Deponent is neither a percipient fact witness nor testifying expert in the instant case.

28  Such depositions are highly disfavored and in this case the deposition has been noticed

2

1   purely as a mechanism to harass and place unnecessary burden, hardship and expense

2   on Dordellas Parties and the Deponent.  The declaration referenced in the subpoena

3   (the "Declaration")—over which Amplify now intends to question the Deponent—was

4   filed pre-suit for the limited purpose of seeking an *ex parte* order to secure testimony

5   of a witness, and with no more information disclosed than necessary to convey to the

6   Court the potential adversity of the interests of the two Vessels now involved in this

7   litigation.  A simple read of the declaration makes it clear that the Deponent is ***not a***

8   ***witness to key facts that could not be obtained from other sources***.  See *Creighton v.*

9   *Allstate Northbrook Indem. Co*., 2021 U.S. Dist. LEXIS 36035, at *7 (S.D. CA January

10  25, 2021). Rather, he reviewed certain U.S. Coast Guard data and VTS video and audio

11  files —already produced in this litigation—and stated in his declaration what, based on

12  his experience and review, he believes to have occurred on or about January 25, 2021.

13  Nothing is preventing Amplify from hiring its own experts to review the U.S. Coast

14  Guard data and VTS video and audio files to generate their own opinions of what

15  occurred.

16       5.     Third-Party Defendants further object on the grounds that Deposing Party

17  seeks to invade the attorney-client privilege and/or work product protection by noticing

18  the deposition of an employee of defense counsel for the Dordellas Parties, and to the

19  extent Deposing Party seeks to explore privileged communications and/or work

20  product generated in anticipation of litigation and/or during the course of this litigation,

21  the common interest privilege, or any other applicable privilege or immunity against

22  disclosure. Any inadvertent disclosure of such privileged information should not be

23  construed as a waiver of any privilege or protection.  Any objection based on the

24  attorney-client privilege, the work product doctrine, the common interest privilege, or

25  any other applicable privilege or immunity, should not be construed as a representation

26  that such information exists or existed.  Such an objection indicates only that the Topic

27  is of such a scope as to potentially embrace subject matter protected by such privilege,

28  immunity, or other protection.  Namely, the declaration referenced in the subpoena (the

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

3

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

"Declaration")—over which Amplify now intends to question the Deponent—was filed pre-suit for the limited purpose of seeking an *ex parte* order to perpetuate testimony of a witness, and with no more information disclosed than necessary to convey to the Court the potential adversity of the interests of the two Vessels now involved in this litigation and does not serve as a waiver of any privilege and/or protection. The documents and/or information sought from the deposition that are not subject to privilege and/or work product are equally available to Deposing Parties via discovery from third party sources and parties to this litigation, namely the U.S. Coast Guard and Marine Exchange. Moreover, Deposing Parties are at liberty to retain their own experts—whether consulting or testifying—to analyze the documents and information and reach their own independent opinions on the movements of the vessels involved in this litigation.

6.  To the extent Deposing Parties seek to test the bases for Deponent's opinions, the deposition seeks wholly irrelevant testimony that again, is not germane to the issue of this case, is unrelated to any party's claims or defenses in this proceeding, and is not proportionate to the needs of this case.  The Deponent is not a testifying expert in this case and will not be offering expert testimony at trial in this case.  The Deponent is not a percipient witness to the circumstances surrounding the facts of this case. The propriety of the emergency order or *ex parte* application is not being litigated in this action; this is not a case involving claims of, for example, malicious prosecution, nor a coverage action where Deponent's percipient knowledge in an underlying case is relevant.  Accordingly, the only conceivable reason Deposing Parties seek the deposition is to question the mental impressions of an employee of defense counsel in his review of certain documents and information, which serves to invade attorney-client privilege information and protected work product of Dordellas Parties, clearly generated in anticipation of litigation.

7.  Third-Party Defendants object to the extent the instructions, terms, and/or conditions contained in the Notice purport to establish rules, procedures, or

4

protocols for the deposition that are different from or inconsistent with those set forth in the Federal Rules of Civil Procedure and Local Rules of the Central District of California.

8.    Third-Party Defendants, including the Deponent, reserve their rights to lodge and/or make additional objections to any subsequent notice of deposition, to any individual question(s) that may be posed during such deposition, and to any documents whose production may be requested in connection therewith.

Subject to and without waiving the foregoing objections or its reservation of rights to lodge additional objections at the time of the deposition, in the interest of reaching a compromise in good faith, Third-Party Defendants are willing to produce the Deponent on the date and time in the Amended Notice of Deposition and Subpoena, for the limited purpose of confirming the extent of the U.S.C.G. and VTS documents relied upon by the Deponent in drafting the Declaration, and in the presence of the assigned Special Master in this litigation.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.    Dordellas Parties object to the definitions of "Communications" and "Documents" and all requests incorporating such terms as vague, ambiguous, overbroad, and unduly burdensome.  Dordellas Parties further object to the foregoing definitions and all requests incorporating such terms to the extent any request improperly seeks the production of information in contravention of the Local Rules, Standing Orders, and/or General Orders of the U.S. District Court for the Central District of California, including those relating to the production of Electronically Stored Information.

2.    Dordellas Parties object to the stated Time Period for the Requests, January 1, 2020 to Present, as overbroad, unduly burdensome, and not proportional to the needs of the case.

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

## OBJECTIONS TO DOCUMENT REQUESTS

Pursuant to Federal Rule of Civil Procedure, Rule 26, 30 and 45, Third-Party Defendants assert the following objections and responses to the document production requests contained in the Notice:

## DOCUMENT REQUEST NO. 1:

All transcripts, recordings (video and audio), data, and any other Documents or Communications You received, considered, or relied upon in connection with Your Declaration in support of the Opposed Emergency ex Parte Verified Petition to Perpetuate Testimony filed by Dordellas Finance Corp in In re Application of Dordellas Finance Corp., ECF No. 1 (C.D. Cal. Nov. 27, 2021).

## OBJECTIONS TO DOCUMENT REQUEST NO. 1:

Dordellas Parties restate all objections stated above and further objects on the grounds that it seeks documents not relevant to any party's claims or defenses, and is not proportionate to the needs of this case. Dordellas Parties further object to this request to the extent that it seeks information and documents protected by the attorney-client privilege and/or work product doctrine, including but not limited to consulting expert protection and protection of trial preparation materials. Dordellas Parties further object on the grounds that the request, "All . . . Documents or Communications You received . . . in support of the [Petition]" is vague, ambiguous, and unintelligible as written, vastly overbroad and seeks to invade the attorney-client privilege and/or work product doctrine. Dordellas Parties further object to the extent the requested documents have already been produced in the instant litigation and/or are equally available to Deposing Party.  Subject to and without waiving the foregoing objections, Dordellas Parties will produce at the deposition any non- privileged or otherwise protected documents and/or provide Deposing Party with the corresponding Bates labels of such foregoing documents to the extent the documents have already been produced in this litigation.

1

2   Dated: November 1, 2022                    COLLIER WALSH NAKAZAWA LLP

3

4                                    By:      /s/ Joseph A. Walsh II

5                                           Joseph A. Walsh II
                                            Ellen E. McGlynn
6

7                                           ARNOLD & PORTER
                                            KAYE SCHOLER LLP
8                                           Jonathan W. Hughes
                                            Angel Tang Nakamura
9                                           Lauren Daniel
                                            Katie J.L. Scott
10

11                                          Attorneys for Dordellas Finance Corp.,
                                            Mediterranean Shipping Co. S.A.,
12                                          Mediterranean Shipping Co. S.r.l., MSC
                                            Shipmanagement Ltd. and MSC DANIT
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

1

## CERTIFICATE OF SERVICE

2      I, Caroline J. Wilson, certify that on November 1, 2022, I served the following document by

3  e-mail on counsel for Amplify:

4      **DORDELLAS PARTIES' NOTICE OF OBJECTION TO AMPLIFY**

5      **DEFENDANTS/THIRD-PARTY PLAINTIFFS'**

6      **NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

7

8

9

10  Dated: November 1, 2022                              /s/ Caroline J. Wilson
                                                          Caroline J. Wilson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

**DORDELLAS PARTIES' NOTICE OF OBJECTION TO AMPLIFY DEFENDANTS/THIRD-PARTY PLAINTIFFS' NOTICE OF DEPOSITION OF JOHN "JOCK" MAWSON**

# ATTACHMENT B

1  Christopher W. Keegan (SBN 232045)
   chris.keegan@kirkland.com
2  KIRKLAND & ELLIS LLP
   555 California St., Suite 2900
3  San Francisco, CA 94104
4  Tel: (415) 439-1400 / Fax: (415) 439-1500

5  Mark Holscher (SBN 139582)
   mark.holscher@kirkland.com
6  KIRKLAND & ELLIS LLP
   555 South Flower St., Suite 3700
7  Los Angeles, CA 90071
8  Tel: (213) 680-8400 / Fax: (213) 680-8500

9  Daniel T. Donovan (admitted *pro hac vice*)   Anna Rotman (admitted *pro hac vice*)
   ddonovan@kirkland.com                         anna.rotman@kirkland.com
10 KIRKLAND & ELLIS LLP                          KIRKLAND & ELLIS LLP
   1301 Pennsylvania Avenue, N.W.                609 Main Street
11 Washington, D.C. 20004                        Houston, TX 77002
12 Tel: (202) 389-5000 / Fax: (202) 389-5200     Tel: (713) 836-3600 / Fax: (713) 836-3601

13 [*additional counsel on signature page*]

14 *Counsel for the Amplify Defendants/Third-*
15 *Party Plaintiffs*

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18                  **SOUTHERN DIVISION**

19 PETER MOSES GUTIERREZ, Jr.;          CASE NO. 8:21-cv-01628-DOC-JDE
   CHANDRALEKHA
20 WICKRAMASEKARAN and                  **AMPLIFY DEFENDANTS/THIRD-**
   RAJASEKARAN                          **PARTY PLAINTIFFS' NOTICE OF**
21 WICKRAMASEKARAN, as Trustees of      **SUBPOENA TO TESTIFY AT A**
   THE WICKRAMASEKARAN FAMILY           **DEPOSITION IN A CIVIL ACTION**
22 TRUST established March 12, 1993; et al. **TO JOHN "JOCK" MAWSON**
   individually and on behalf of all others
23 similarly situated,                  Judge:          Hon. David O. Carter

24          Plaintiffs,
25      v.

26 AMPLIFY ENERGY CORP.; BETA
   OPERATING COMPANY, LLC; and
27 SAN PEDRO BAY PIPELINE
   COMPANY,
28

1           Defendants/Third-Party
            Plaintiffs,
2

3      v.

4 MEDITERRANEAN SHIPPING
COMPANY, S.A.; DORDELLAS
5 FINANCE CORPORATION;
COSTAMARE SHIPPING CO., S.A.;
6 CAPETANISSA MARITIME
CORPORATION; V.SHIPS GREECE
7 LTD.; MARINE EXCHANGE OF LOS
ANGELES-LONG BEACH HARBOR
8 d/b/a MARINE EXCHANGE OF
SOUTHERN CALIFORNIA; COSCO
9 SHIPPING LINES CO. LTD.; COSCO
(CAYMAN) MERCURY CO. LTD.;
10 MEDITERRANEAN SHIPPING
COMPANY S.R.L.; and MSC
11 SHIPMANAGEMENT LTD; *in personam*;
and M/V BEIJING and MSC DANIT, *in*
12 *rem*.,

13           Defendants/Third-Party
            Defendants.
14

15

16 MARKEL INTERNATIONAL
INSURANCE COMPANY, LTD., ASCOT
17 UNDERWRITING INC., QBE
EUROPEAN CO. OPERATIONS
18 (LLOYD'S SYNDICATE 1036),
NAVIGATORS UNDERWRITING
19 AGENCY LTD. (LLOYD'S SYNDICATE
1221), MARKEL INTERNATIONAL
20 LTD. (LLOYD'S SYNDICATE 3000),
AEGIS LONDON (LLOYD'S
21 SYNDICATE 1225), TALBOT
UNDERWRITING LTD. (LLOYD'S
22 SYNDICATE 1183), ANTARES
SYNDICATE 1274 (LLOYD'S
23 SYNDICATE 1274); AXIS CORPORATE
CAPITAL UK LTD (LLOYD'S
24 SYNDICATE 1686); MUNICH RE
SYNDICATE LIMITED
25

26      v.

27 MEDITERRANEAN SHIPPING
COMPANY, S.A.; DORDELLAS
28 FINANCE CORPORATION; MSC

2

1  DANIT; DOES 1-5; COSTAMARE
   SHIPPING CO., S.A.; CAPETANISSA
2  MARITIME CORPORATION; V.SHIPS
   GREECE LTD.; COSCO BEIJING; and
3  DOES 6-10; MARINE EXCHANGE OF
   LOS ANGELES-LONG BEACH
4  HARBOR D/B/A MARINE EXCHANGE
   OF SOUTHERN CALIFORNIA, COSCO
5  SHIPPING LINES CO. LTD.; COSCO
   (CAYMAN) MERCURY CO. LTD.; and
6  MEDITERRANEAN SHIPPING
   COMPANY S.R.L.,
7

8            Defendants-in-Intervention.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMPLIFY'S NOTICE OF SUBPOENA TO TESTIFY AT A DEPOSITION
IN A CIVIL ACTION TO JOHN "JOCK" MAWSON

1    PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil

2    Procedure, Defendants/Third-Party Plaintiffs Amplify Energy Corporation, Beta

3    Operating Company, LLC, and San Pedro Bay Pipeline Company (collectively,

4    "Amplify") intend to serve the attached Subpoena to Testify at a Deposition in a Civil

5    Action on the date and location designated, or at another mutually agreeable date or

6    location, on John "Jock" Mawson.

7    A copy of the Subpoena is attached as Exhibit 1.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  October 15, 2022

Respectfully submitted,

s/ Christopher W. Keegan

Daniel T. Donovan (admitted *pro hac vice*)
ddonovan@kirkland.com
Matthew Owen (admitted *pro hac vice*)
matt.owen@kirkland.com
Holly Trogdon (admitted *pro hac vice*)
holly.trogdon@kirkland.com
McClain Thompson (admitted *pro hac vice*)
mcclain.thompson@kirkland.com
Ross Powell (admitted *pro hac vice*)
ross.powell@kirkland.com
Kate Epstein (admitted *pro hac vice*)
kate.epstein@kirkland.com
Meredith Pohl (admitted *pro hac vice*)
meredith.pohl@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-5000
Fax: (202) 389-5200

Christopher W. Keegan (SBN 232045)
chris.keegan@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Tel: (415) 439-1400
Fax: (415) 439-1500

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower St., Suite 3700
Los Angeles, CA 90071
Tel: (213) 680-8400
Fax: (213) 680-8500

Anna Rotman (admitted *pro hac vice*)
anna.rotman@kirkland.com
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
Tel: (713) 836-3600
Fax: (713) 836-3601

*Counsel for the Amplify*
*Defendants/Third-Party Plaintiffs*

# EXHIBIT 1

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

### Central District of California

| | |
|---|---|
| PETER MOSES GUTIERREZ, Jr. et al. | ) |
| _Plaintiff_ | ) |
| v. | ) |
| AMPLIFY ENERGY CORP. et al. | ) |
| | ) |
| _Defendant_ | ) |

Civil Action No.  8:21-cv-01628-DOC-JDE

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:            John "Jock" Mawson,
12313 Linda Flora Dr, Ojai, CA 3023-9723
_(Name of person to whom this subpoena is directed)_

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Kirkland & Ellis LLP<br>555 South Flower Street<br>Los Angeles, CA 90071 | Date and Time:<br><br>10/31/2022 9:00 am |
|---|---|

The deposition will be recorded by this method:   Realtime, video

☑ _Production:_  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Attachment A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   10/15/2022

_CLERK OF COURT_

OR

_____          s/ Christopher W. Keegan
_Signature of Clerk or Deputy Clerk_                    _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_  Amplify Energy
Corp., Beta Operating Co., LLC, San Pedro Bay Pipeline Co. , who issues or requests this subpoena, are:
Christopher Keegan, Kirkland & Ellis, 555 California St., SF, CA 94104, 415-439-1400, chris.keegan@kirkland.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  8:21-cv-01628-DOC-JDE

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Attachment A

**ATTACHMENT A**

**Definitions And Instructions**

Unless otherwise indicated, the following definitions apply:

1.    "You" or "Your" refers to John "Jock" Mawson ("Mawson").

2.    "Amplify" refers to Amplify Energy Corp., Beta Operating Company, LLC, and San Pedro Bay Pipeline Company, collectively, or any of its parents, subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, officials, employees, agents, representatives, legal counsel or any and all persons or entities acting or authorized to act on its behalf.

3.    "*Beijing*" refers to the Malta-flagged container vessel with IMO number 9308508 otherwise known as the M/V Beijing or the COSCO Beijing.

4.    "MSC *Danit*" refers to the Panama-flagged container vessel with IMO number 9404649.

5.    "Action" or "Consolidated Class Action" refers to the consolidated litigation, Peter Moses Gutierrez, Jr., et al. v. Amplify Energy Corp. et al., No. 8:21-cv-01628-DOC-JDE (C.D. Cal.).

6.    "Limitation Action" refers to the consolidated limitation action litigation titled In the Matter of the Complaint of Dordellas Finance Corp. Owner and MSC Mediterranean Shipping Company S.A., Owner, No. 2:22-cv-02153-DOC-JDE (C.D. Cal.).

7.    "Communication(s)" means the transmittal of information of any kind in any form. "Communications" also includes all Documents reflecting Communications.

8.    "Document" or "Documents" as used herein includes any medium upon which information is or can be recorded, including without limitation the following items, whether printed or reproduced or stored or recorded by any process, or written, or produced by hand, and whether or not claimed to be privileged or otherwise excludable from discovery, namely: vessel logs, notes, letters, correspondence, books,

1

periodicals, printed publications, Communications, telexes, telegrams, memoranda, summaries or records of telephone conversations, electronic or SMS text messages, social media or Internet posts or messages, emails, chat logs, summaries and research reports and notebooks, charts, lists, schedules, plans, drawings, photographs, diaries, studies, evaluations, worksheets, minutes or records of meetings, reports and/or summaries of interviews, reports and/or summaries of investigations, opinions or reports of consultants, opinions of counsel, agreements, contracts, reports or summaries of negotiations, court papers, administrative agency papers, transcripts, brochures, pamphlets, advertisements, circulars, promotions material, trade letters, press releases, videotapes, radio tapes, electronic mail, story boards, recordings, drafts of Documents and revisions of drafts of Documents.

9.    "Including," whether capitalized or not, means including without limitation.

10.    "Person" and its plural shall mean any natural persons, corporations, professional corporations, limited liability partnerships, firms, partnerships, associations, joint ventures, trusts, trustees, proprietorships, entities, government or governmental entities, and all other forms of organizations, associations or entities, and any past or present officer, director, partner, principal, agent, trustee, beneficiary, or representative of such person.

11.    "Present" means through and including the date of Your response to these Requests.

12.    "Regarding" means anything directly or indirectly pertaining to, concerning, alluding to, responding to, connected with, commenting on, in respect of, about, discussing, showing, describing, mentioning, analyzing, studying, reflecting, evidencing, containing, or constituting, in whole or in part.

13.    The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

14.    The terms "any" and "all" shall each be construed to mean "any and all."

15.   The term "each" includes the word "every" and "every" includes the word "each."

16.   The masculine form of any noun or pronoun includes the feminine and the neuter form and the feminine or neuter form includes the masculine form.

17.   None of the below requests should be construed as seeking the discovery of any part of a report of a marine casualty investigation under 46 U.S.C. § 6301, including findings of fact, opinions, recommendations, deliberations, or conclusions. See 46 U.S.C. § 6301(a).

18.   The use of the singular form of any word includes the plural, and the use of the plural includes the singular.

19.   Unless otherwise indicated, the Time Period for these requests is January 1, 2020, to Present.

20.   All documents provided in response to this subpoena shall be produced in accordance with the specifications set forth in the Stipulated Order re Document and Electronically Stored Information Production Protocol in this Action (Attachment B).

## DOCUMENTS AND THINGS REQUESTED

1.    All transcripts, recordings (video and audio), data, and any other Documents or Communications You received, considered, or relied upon in connection with Your Declaration in support of the Opposed Emergency *ex Parte* Verified Petition to Perpetuate Testimony filed by Dordellas Finance Corp in *In re Application of Dordellas Finance Corp.*, ECF No. 1 (C.D. Cal. Nov. 27, 2021).

# Attachment B

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PETER MOSES GUTIERREZ, et al.<br><br>    Plaintiffs,<br><br>v.<br><br>AMPLIFY ENERGY CORPORATION, et al.<br><br>    Defendants. | Case No. 8:21-cv-01628-DOC-JDE<br><br>**STIPULATED ORDER RE: DOCUMENT AND ELECTRONICALLY STORED INFORMATION PRODUCTION PROTOCOL** |

Pursuant to the parties' Stipulation (Dkt. 96), the Court finds and orders as follows.

**I.    PURPOSE**

This Order will govern production of Documents and Electronically-Stored Information (as defined below) by Plaintiffs and Defendants (the "Parties") as described in Federal Rules of Civil Procedure 26, 33, and 34. This Order shall apply to the production of hard-copy and electronic documents by the Parties in this litigation. The production formats for any other materials will be addressed by the Parties after a meet and confer regarding the specific item or category of items.

/ / /

/ / /

The production of documents and ESI by the Parties also shall be subject to the provisions of orders concerning confidentiality and privilege as agreed to among the Parties and/or entered by the Court.

Nothing in this Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the discoverability, admissibility, or confidentiality of documents or Electronically-Stored Information ("ESI"). The Parties reserve all objections under the Federal Rules of Civil Procedure and applicable decisional authority other than concerning matters that are addressed in this Order.

Nothing in this Protocol shall be construed to eliminate, alleviate, or shift any obligations the Parties have to produce relevant and responsive documents pursuant to the Federal Rules of Civil Procedure, including but not limited to Rule 26 and Rule 34. Nothing in this Protocol shall be construed to eliminate or impair the Parties' rights and protections under Rule 26 and Rule 34.

## II.   DUTY OF COOPERATION CONSISTENT WITH RULE 26

The Parties acknowledge their duty to work together cooperatively throughout the discovery process, consistent with and subject to their rights, obligations, and protections under Federal Rule of Civil Procedure 26.

## III.   PRESERVATION

The Parties represent that they have issued litigation hold notices to those custodians who they reasonably believe possess discoverable information, and persons or entities responsible for maintenance of non-custodial data, which they reasonably believe possess discoverable information, and have established reasonable and proportionate procedures to ensure that those notices have been received, understood and appropriately acted upon.

Reasonable and proportionate steps have been taken to preserve backup or archive media which are reasonably expected to contain discoverable ESI not

otherwise available.

Reasonable and proportionate steps have been taken to prevent the elimination, or transfer to a less accessible medium, of any unpreserved data and associated metadata which would otherwise be required to be preserved or produced.

For purposes of this Part III, the "Parties" is defined to include Defendants Amplify Energy Corporation, Beta Operating Company, LLC, San Pedro Bay Pipeline Company, and Plaintiffs named in the January 28, 2022 consolidated class complaint.  This Part III is without prejudice to Defendants' rights and ability to seek discovery from persons not named as plaintiffs in the January 28, 2022 consolidated class complaint, including plaintiffs who filed lawsuits and whose cases were consolidated into this one.  This Part III is also without prejudice to rights and ability of such persons and/or Co-Lead Interim Class Counsel to oppose such discovery from Defendants.

## IV.  **DEFINITIONS**

1.  "Confidentiality Designation" means the legend affixed to Documents or ESI for confidential or highly confidential information as defined by, and subject to, the terms of the order concerning confidentiality agreed to and/or entered by the Court in this litigation.

2.  "Custodial Source" means a source of ESI accessed by or collected from an identifiable individual person or group.

3.  "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "document" shall include hard-copy documents, electronic documents, and ESI as defined herein.

4.  "Electronic Document or Data" means documents or data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft

Word), computer slide presentations (e.g., PowerPoint or Keynote slides),
spreadsheets (e.g., Excel), and image files (e.g., PDF).

5.    "Electronically stored information" or "ESI," as used herein, has the
same meaning as in Rules 26 and 34 of the Federal Rules of Civil Procedure and
includes Electronic Documents or Data, and computer-generated information or
data, stored in or on any storage media located on computers, file servers, disks,
tape, USB drives, cloud drives, or other real or virtualized devices or media.

6.    "Extracted Full Text" means the full text that is extracted
electronically from native electronic files, and includes all header, footer, and
document body information.

7.    "Hard-Copy Document" means documents existing in paper form at
the time of collection.

8.    "Hash Value" is a unique numerical identifier that can be assigned to a
file, a group of files, or a portion of a file, based on a standard mathematical
algorithm applied to the characteristics of the data set. Each party shall consistently
apply an industry-standard algorithm in generating hash values for their ESI.  The
same hash value shall be used in Deduplication as described in Section VI and
produced where required under Appendix A.

9.    "Load files" means an electronic file containing information
identifying a set of paper-scanned images, processed ESI, or native format files, as
well as the corresponding Extracted Full Text or OCR text files, and containing
agreed-upon extracted or user-created metadata, as well as information indicating
unitization (i.e., document breaks and document relationships such as those
between an email and its attachments) used to load that production set into the
document review platform of the Party receiving a production ("Receiving Party"),
and correlate its data within that platform. A load file is used to import all image,
native, and text files and their corresponding production information into a
document database. The Producing Party shall produce a load file for all produced

STIPULATED PROTECTIVE ORDER RE: ES
8:21-CV-01628-DOC-JDE

documents with each particular production in accordance with specifications provided herein.

10. "Media" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

11. "Metadata" means: (i) information embedded in or associated with a native file that describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, redaction status, privilege status, or confidentiality status created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device on which it was stored, or the custodian or non-custodial data source from which it was collected.

12. "Native Format" or "native file" means the format of ESI in which it was generated and/or used by the Party Producing ESI or documents (the "Producing Party") in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is an .xls or .xslx file.

13. "Non-Custodial Source" means a shared or collaborative ESI source accessed and used jointly or collaboratively.

14. "Optical Character Recognition" or "OCR" means the optical character recognition technology used to read the text within electronic images of paper Documents and create a file containing a visible, searchable text format of such Documents.

15. "Searchable Text" means the native text extracted from an electronic document and any Optical Character Recognition text ("OCR text") generated from the electronic image of a paper Document.

## V.    **IDENTIFICATION OF DOCUMENTS AND ESI**

1.    The Parties agree to meet and confer to discuss (i) custodians, including the names, titles and departments of custodians;[1] (ii) identification of the custodial and noncustodial data sources containing potentially relevant ESI for potential collection, review, and production; (iii) additional parameters for scoping the review and production efforts (e.g., application of date ranges, etc.); (iv) potential use and identification of search terms, tools, or techniques; (v) the identification and production of documents and ESI from custodial and non-custodial sources that do not require the use of search terms, tools, or techniques; and (vi) the method each Party proposes to use to identify and de-duplicate duplicate documents, and any exceptions to such de-duplication the Party proposes to implement. An initial meet and confer between Plaintiffs and Defendants on these matters will take place after the initial exchange of (i)-(vi) above and by the later of seven (7) calendar days following entry of this Order or (7) days following the filing of the consolidated class complaint.  To the extent Plaintiffs and Defendants have not reached agreement regarding these matters, they will provide an update of their progress and open issues in the joint status report due to the Special Masters on February 17, 2022.

2.    Each Party will describe a Search Protocol that will include: (a) the criteria to be used to identify the universe of documents to which search terms will be applied (e.g., custodians and date ranges), and (b) proposed search terms to be applied to that universe of documents, subject to revision based on, for example, meet and confer of the parties and the number of hits returned by each term. A Requesting Party may also suggest search terms to be applied.  Any Search Protocol will include a requirement for the Producing Party to provide hit reports

---

[1] The Requesting Party may request from the Producing Party additional information to clarify the roles of specific proposed or potential custodians where reasonably needed. Nothing in this paragraph will preclude any Requesting Party from serving ESI Requests seeking information from any custodians from whom it contends ESI should be produced.

for proposed search terms prior to utilizing the search terms to narrow the universe of documents to be reviewed or produced. Any Search Protocol utilizing search terms shall include a requirement to review one (and only one) randomly selected representative null set sample. The "null set" is defined as all documents which the parties agree are subject to search (within agreed-to custodian and/or non-custodial sources and date limitations) but which do not contain preliminary agreed searched terms. The size of the sample shall be calculated assuming a 50% distribution and using a confidence level of 95% and a confidence interval (margin of error) of 2.5%.  This sampling requirement applies to each person or entity that uses search terms; the three defendant entities are combined into one party for this purpose. The producing party will review the contents of the sample and will produce any responsive and non-privileged documents in the sample (keeping families together); the non-producing party will have no right to review non-responsive (or privileged) documents in the sample.  If null set sampling reveals responsive documents not being captured by the preliminary agreed search terms, the Parties shall meet and confer regarding revising or supplementing search terms and any materiality, burden, proportionality, and privilege issues associated with same.  The Parties intend to conduct the null set sampling process promptly after the Producing Party has collected the agreed-upon custodial and non-custodial data on which the search terms are to be run.  The Parties further intend to complete the null set process early in the document discovery window,  such that any issues or disputes can be addressed in the March 17, 2022 report to the Special Masters.

3.     As of the execution of this Order, no Party presently intends to use technology assisted review ("TAR"), although the Parties' rights to use TAR are reserved.  The Parties acknowledge that applications of machine learning for analysis, provided such applications do not result in the exclusion of documents from document review or consideration for production, are not subject to meet and confer requirements. Any application that may or will result in exclusion of

documents from document review or consideration for production does trigger the producing Party's meet and confer obligations under this Protocol.

4.     To the extent one or more Parties intends to use TAR, the Parties agree to meet and confer before its use regarding a protocol for doing so, and submit any unresolved disputes to the Court for resolution  A Party who intends to use TAR will disclose a TAR Protocol that includes: (a) the TAR system to be used; (b) the criteria to be used to identify the universe of documents to which TAR is to be applied (the "TAR Universe"); (c) its methodology for training the TAR model and identifying responsive documents; (d) the methodology for validation testing to be used; (e) the subject-matter expert who will oversee the implementation of the TAR Protocol; and (f) the process by which documents excluded as not conducive to categorization (e.g. multimedia files, primarily numerical spreadsheets, database files) will be reviewed for production. The Parties shall meet and confer about whether and how to incorporate samples appropriate (including whether and how to incorporate particular documents or types of documents) to cover relevant issues in light of any TAR tool being used by the Producing Party; the parties' rights are reserved to make and oppose such requests at the appropriate time.

5.     The Parties further agree to meet and confer to the extent that this Order imposes any undue burden or expense on any Plaintiff or Defendant with respect to its response to any particular discovery request.

6.     Nothing in this order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools (including any proposed as supplements).

## VI.   **DEDUPLICATION**

1.     Except as provided in Section VI, Paragraph 7 below, to the extent exact duplicate documents reside within a Party's ESI data set, the Party shall use reasonable best efforts to produce only a single copy of a document or document

family deduplicated at the parent level. "Exact duplicate" shall mean bit-for-bit identity of the document content with exact hash value matches; so-called "near duplicates" will not be included within this definition. Near-duplicate documents shall be produced rather than removed (e.g. any documents containing red-lined changes or comment fields). The Parties further agree that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field.

2.      Except as provided in Section VI, Paragraph 7 below, to the extent a party de-duplicates its documents, it shall de-duplicate stand-alone documents or entire document families in their ESI sources by the use of MD5, SHA-1, or SHA256 hash values. Where any such documents have attachments, hash values must be identical for both the document plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

3.      Except as provided in Section VI, Paragraph 7 below, a Producing Party shall de-duplicate documents globally, and populate a field of data that identifies each custodian or source who had a copy of the produced document (the "AllCustodian" field) in addition to a separate field of data identifying the custodian whose document is produced; such de-duplicated documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial. A Producing Party shall use a uniform description of a particular custodian across productions. Multiple custodians in the "AllCustodian" field shall be separated by a semicolon. Entity/departmental custodians should be identified with a description of the entity or department to the extent applicable.

4.      No Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

5.      Hard-Copy Documents shall not be eliminated as duplicates of ESI.

6.      If the Producing Party makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update the "AllCustodian" field. The overlay file shall include all custodians listed in the "Duplicate Custodian" field in prior productions and any custodians newly identified in the current supplemental production.

7.      With respect to documents previously collected and processed in connection with subpoenas or civil investigative demands previously issued to Defendants, the Parties agree that such documents do not need to be reprocessed in the first instance. Both Plaintiffs and Defendants reserve the right to request reprocessing of any such productions if they do not comply with the metadata requirements and other specifications set forth in this Order, are otherwise unusable (e.g. corrupt, require proprietary or industry-specific software to open, etc.), and to seek relief from the Court if such a request is denied following a meet-and-confer. The Parties' rights are reserved to request (and to oppose such requests for) proprietary file programs, tools, and software to access materials produced by the Parties.

## VII.   PRODUCTION FORMAT SPECIFICATIONS

1.      Standard Format. Unless otherwise specified, the Parties shall produce documents in tagged image file format ("TIFF"). TIFFs of ESI shall convey the same information and image as the original document, including all commenting, versioning, and formatting that is visible in any view of the document in its native application. Specifically, all documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision

STIPULATED PROTECTIVE ORDER RE: ES
8:21-CV-01628-DOC-JDE

and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image. All hidden text will be expanded, extracted, and rendered in the TIFF file and, to the extent possible, the Producing Party will instruct its vendor to force off Auto Date. Any TIFFs produced shall be single-page, 300 DPI with 1 bit depth, Group IV TIFF files.

2.      TIFFs of Redacted ESI. TIFFs of redacted ESI shall convey the same non-redacted information and image as the original document, including all non-redacted elements and formatting which are visible in any view of the document in its native application, and each redacted area must bear a label containing the reason for the redaction (i.e., "Redacted - Privileged").

3.      Native Format. The Parties shall produce all spreadsheets, computer slide presentations, audio files, video files, photos, and other file types that cannot be accurately represented in TIFF format in native format, provided, however, that the Parties will meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Teams, Slack, Microsoft Access, Oracle, or other ephemeral messaging or proprietary databases). For each document produced in native format, a responding Party shall also produce a corresponding cover page in TIFF image format (Bates numbered in the same way as any other TIFF, which shall be used as the BegBates and EndBates of the associated document) specifying that the document has been "produced in native format" and endorsed with the Bates Number and Confidentiality Designation, if applicable, which will be inserted into the image population in place of the native file. When the native file is produced, the Producing Party shall make reasonable best efforts to preserve the integrity of the electronic document's contents, i.e., its original formatting and metadata.  Notwithstanding the foregoing, with respect to documents previously produced with redactions in connection with subpoenas or civil investigative demands previously issued to Defendants, the Parties agree such

STIPULATED PROTECTIVE ORDER RE: ES
8:21-CV-01628-DOC-JDE

documents may be reproduced in the same format as previously produced,

including in TIFF image format, in the first instance. Both Plaintiffs and

Defendants reserve the right to request reprocessing of any such productions if they

do not comply with the metadata requirements and other specifications set forth in

this Order, are otherwise unusable (e.g. corrupt, require proprietary or industry-

specific software to open, etc.), and to seek relief from the Court if such a request is

denied following a meet-and-confer.

      4.    Color. Documents that the Producing Party can reasonably identify as

containing color shall be produced in color, as single-page, 300 DPI JPG images

with JPG compression and a high quality setting as to not degrade the original

image.

      5.    De-NISTing. Non-user generated files may be removed from review

and production using the list of nonuser generated files maintained by the National

Institute of Standards and Technology (NIST). If a party excludes from review a

standard, readable, and reviewable file type not within the industry standard, that

party must disclose such an exclusion to the other parties.

      6.    Email Threading. The Parties are permitted to produce the most

inclusive unique message(s) in each thread, and the Parties do not need to

separately produce the lesser-included emails unless those lesser-included emails

have unique content, bcc recipients, or unique attachments not included in the

longest chain.  The Parties are required to preserve all suppressed documents and to

produce in their entirety all lesser inclusive emails with unique content, bcc

recipients, and/or attachments that that would not otherwise be produced by

production of the inclusive message(s). If a Party elects to produce only the most

inclusive email(s) within a chain, that Party shall not be entitled to withhold in full

any emails wherein privilege would attach to only a portion of the email

conversation if all earlier emails were separately considered as discrete

files.  Inclusive emails containing partially privileged contents shall be produced

STIPULATED PROTECTIVE ORDER RE: ES
8:21-CV-01628-DOC-JDE

with appropriate redactions. The Parties agree that for emails sent on October 1.
2021, or October 2, 2021, and all responsive emails thereto (whether inclusive or
non-inclusive messages, plus families) shall be produced in order to provide lesser-
inclusive message metadata during this period.

7.      Embedded Objects. If documents contain embedded objects, the
Parties shall extract the embedded objects as separate documents and treat them like
attachments to the document to the extent reasonably possible. To the extent
reasonably possible, images embedded in emails shall not be extracted and
produced separately.

8.      Load Files. Each production of ESI and Documents, whether produced
prior to or subsequent to this Protocol, shall be accompanied by Concordance and
comma delimited load files (.dat and .opt) containing a field with the full path and
filename to files produced in native format and also containing metadata fields
identified in Appendix A, to the extent the information is available in the original
ESI file (except for vendor-generated fields related to the litigation production, such
as "BEGDOC", "ENDDOC", bases for redaction, and Confidentiality
Designations). All metadata shall be provided in UTF-8 with Byte Order Mark
format.

9.      Text Files.  For all documents containing extracted full text or OCR
text, the Producing Party shall provide searchable document level .txt files (named
using the Bates start/"BEGDOC"), which shall reside in the same file directory as
the images for such documents. Electronic text must be extracted directly from the
native electronic file unless the document requires redaction, is an image file, or is a
native electronic file that does not contain text to extract (e.g., non-searchable
PDFs). In these instances, and in the case of imaged Hard-copy Documents, a text
file shall be created using OCR and shall be produced in lieu of extracted text.
Extracted text shall be provided in UTF-8 with Byte Order Mark format text.
Extracted text shall include all comments, revisions, tracked changes, speaker's

notes and text from documents with comments or tracked changes, and hidden worksheets, slides, columns and rows.

10. **Text Extracted from Emails.** Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

11. **Bates Numbering and Other Unique Identifiers.** Every item or file of ESI that is produced shall be identified by a unique page identifier ("Bates Number") and a Production Volume Number for any storage device (e.g., CD, USB, hard drive) containing such files. All Bates numbers will consist of an Alpha Prefix, followed by a numeric page index. There must be no spaces in any Bates number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits. All ESI produced in TIFF format shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document.

12. If a member of a document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Receiving Party in the "Exceptions" metadata field. A Receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues. The Parties agree that this provision is not intended to raise or address issues with email signature panels that do not display from time to time.

13.     Hard-Copy Documents. Except as otherwise set forth in this paragraph, the Parties agree that responsive paper documents shall be converted to single-page TIFF files, and produced following the same protocols set forth in Section VI, Paragraph 1, above, including the production of OCR text that is generated to make such documents searchable. Generally, all paper documents will be scanned and produced electronically, unless a Party establishes good cause for making such documents available via paper and reasonable access is provided to the opposing Party to review the documents directly. In scanning all Hard-Copy Documents, Hard-Copy Documents should be logically unitized. Accordingly, distinct documents should not be merged into a single record, and single documents should not be split into multiple records. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), each of the Hard-Copy Documents should be separately scanned, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending documents and attachment fields. The Parties will make their best efforts to unitize the documents correctly. For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable. Pages with Post-It notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-It.  Original document orientation (i.e., portrait v. landscape) should be maintained. Producing Hard-Copy Documents as provided herein does not change their character from Hard-Copy Documents into ESI. For Hard-Copy Documents, the Parties need only populate the following metadata fields: "BEGDOC," "ENDDOC," "PROD VOLUME," "CUSTODIAN," "SOURCE," "CONFIDENTIAL," "REDACTION," and "COMPANY" fields, as well as "BEGATTACH" and "ENDATTACH" fields where applicable.

14.     Confidentiality Designation.  To the extent any Document or ESI (or portion thereof) produced as a TIFF image in accordance with this Order is designated as confidential or highly confidential under the order concerning confidentiality agreed and/or entered in this litigation, the Producing Party will brand the required Confidentiality Designation in a corner of any TIFF images representing the produced item and in a consistent font type and size that does not obscure any part of the underlying image or Bates number, to the extent possible.

15.     Redactions. A Party may use redactions to protect attorney-client or work product privileges consistent with the order concerning privilege agreed and/or entered in this litigation. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for redaction (i.e., "Redacted - Privileged"). Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions, as well as the metadata required under this Protocol.  Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Producing Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. For Excel and PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

| Excel Print to TIFF Options |
| --- |
| • Unhide columns and rows<br>• Unhide worksheets<br>• Autofit columns and rows, settings to be over by columns first and, then down by rows<br>• Print gridlines<br>• Display headings<br>• Display comments |

```
                        PowerPoint Print to TIFF Options
                    •  Print notes pages
                    •  Print hidden slides
                    •  Print comments
```

The Parties shall honor reasonable requests for the production of particular redacted

documents in other formats where the TIFF image is not reasonably usable.  The

foregoing does not apply to documents previously produced in connection with

subpoenas or civil investigation demands previously issued and, the Parties agree

those documents do not need to be reprocessed and may be reproduced in the same

format as previously produced.  Both Plaintiffs and Defendants reserve the right to

request reprocessing of any such productions if they do not comply with the

metadata requirements and other specifications set forth in this Order, are otherwise

unusable (e.g. corrupt, require proprietary or industry-specific software to open,

etc.), and to seek relief from the Court if such a request is denied following a meet-

and-confer.

16.     Parent-Child Relationship. The Parties acknowledge and agree that

parent-child relationships within a document family (the association between an

attachment and its parent document or between embedded documents and their

parent) shall be preserved. Responsive non-privileged electronic documents

attached to an e- mail or embedded within other electronic documents and hard-

copy documents attached or appended to hard-copy documents must be mapped to

their parent by the beginning Bates number and immediately follow that parent file

in the sequence of the production. Email attachments and embedded files or links

"BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates

number of the parent documents and ending number of the last attachment must be

populated for each child and parent document. If any member of a family group is

produced, all members of that group must also be produced or else logged as

privileged.

STIPULATED PROTECTIVE ORDER RE: ES
8:21-CV-01628-DOC-JDE

17. OCR. OCR software shall be set to the highest quality setting during processing.

18. Deviation from Production Specification. If a particular document or category of documents warrant a different format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

19. Productions From Other Proceedings. To the extent documents produced by Defendants in other proceedings are responsive to document requests issued by Plaintiffs, Defendants shall produce such documents to Plaintiffs in the same format in which they were previously produced, including any previously produced metadata, load files, and accompanying text files.

20. Password Protection. In the event any Document or ESI (or portion thereof) produced is password protected, the Producing Party shall make reasonable efforts to provide the password needed to access the document or ESI.

21. Use at Deposition. Any document produced in native that a party identifies and/or marks as an exhibit at a deposition must include as part of that identification or exhibit the produced corresponding cover page in TIFF image format, endorsed with document's Bates Number and Confidentiality Designation, as described in Section VI, Paragraph 1, above.

22. Lost, Destroyed or Irretrievable ESI. If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Producing Party shall explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists.

## VIII. **PRODUCTION MEDIA**

The Producing Party shall produce documents on readily accessible,

- 18 -

computer or electronic media, including external hard drive (with standard PC compatible interface), via secure FTP site or ShareFile link, or such other readily accessible computer or electronic media as the Parties may agree (the "Production Media"). With each production, the Producing Party shall provide information sufficient to show (a) the name of the litigation and the case number; (b) the identity of the Producing Party (and Plaintiffs agree they will make plaintiff-by-plaintiff productions, not group productions); (c) the production date; (d) the Bates Number range of the materials contained on such Production Media item; and (e) the Production Volume Number of the Production Media. If the Producing Party produces documents via secure FTP site, the Producing Party shall specify the date through which the materials will remain available via the secure FTP site and the Producing Party shall, within a reasonable time, accommodate requests from another Party or Parties that documents be reposted to the FTP site.

## IX.  <u>COST SHIFTING</u>

The costs of production pursuant to this Order shall be borne by the Producing Party. However, in agreeing to this Order, no Party waives or relinquishes any right or interest it may have under the Federal Rules of Civil Procedure to seek cost shifting or apportionment for the costs of electronic discovery.

## X.  <u>PRIVILEGE LOG</u>

The Producing Party shall provide the Requesting Party with a log of the documents withheld or redacted for privilege containing the following information: AllCustodian, Subject (unless it would reveal privileged information), From, To, CC, BCC, Date, Type of Privilege (e.g., Work Product), Basis of Withholding (e.g., "Email containing attorney-client communication regarding [subject]"). In-house attorney names shall be designated with an asterisk; outside counsel attorney names will be designated with a double asterisk. In the case of a privilege claimed for lesser-included emails redacted from inclusive emails, attorney names in the From,

STIPULATED PROTECTIVE ORDER RE: ES
8:21-CV-01628-DOC-JDE

To, CC, and BCC fields of the lesser-included redacted email shall be provided in the logs and identified as such.

Each member of a document family (e.g., email and attachments) should be logged separately. If a family of documents is entirely privileged, the family relationship shall be indicated with a family ID on the log for each family member. If a family of documents exists that contains both privileged and non-privileged documents, the privileged documents in the family may be redacted or replaced in the production with a slipsheet indicating, "Privileged Document Withheld," and BegDoc and BegAttach Bates should be populated in columns on the log.

The Parties agree to meet and confer regarding (a) the deadline to exchange privilege logs and (b) case-specific limitations (e.g., categorical logging for communications with certain custodians or attorneys / firms after certain dates).

## XI.  THIRD-PARTY ESI

1.     A Party that issues a non-Party subpoena (the "Issuing Party") shall include a copy of this Order and the Stipulation and Proposed Protective Order [ECF 87] with the subpoena and state that the Parties in the litigation have requested that third-Parties produce documents in accordance with the specifications set forth herein.

2.     The Issuing Party shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a non-Party within three (3) business days of receipt

3.     If the non-Party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties and provide notice that it has done so.

## XII.  BEST EFFORTS COMPLIANCE AND DISPUTES

The Parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provision/s of this Order. If a

Producing Party cannot comply in a particular circumstance with this Order, such Party shall promptly inform the Receiving Party in writing why compliance with the Order is not reasonable or feasible. No Party may seek relief from the Court concerning compliance or non-compliance with the Order until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

## XIII. **MODIFICATION**

This Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

IT IS SO ORDERED.

Dated: January 27, 2022

JOHN D. EARLY
United States Magistrate Judge

STIPULATED PROTECTIVE ORDER RE: ES
8:21-CV-01628-DOC-JDE

# APPENDIX A: ESI METADATA AND CODING FIELDS

| Field | Definition | Doc Type |
|-------|------------|----------|
| CUSTODIAN | Name of person or other data source (non-human) from where documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.)* | All |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | Ending Bates Number (production number) | All |
| PGCOUNT | Number of pages in the document | All |
| FILESIZE | File Size | All |
| FILEPATH | Original file/path of the location where the item was located at the time of collection. | E-document |
| FILENAME | Original file name at the point of collection | E-Document. |
| NATIVEFILELINK | For documents provided in native format only | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| MSGID | Email system identifier assigned by the host email system. This value is extracted from parent message during processing | E-mail |
| PST/OST filename | PST/OST filename | E-Mail |
| Folder | Folder location of the e-mail within the PST/OST | E-mail |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |

| Field | Definition | Doc Type |
|---|---|---|
| BEGATTACH | First Bates number of family range (i.e. Bates number of the first page of the parent e-mail or document) | E-mail, E-Documents |
| ENDATTACH | Last Bates number of family range (i.e. Bates number of the last page of the last attachment or, if no attachments, the document itself) | E-mail |
| DATESENT (mm/dd/yyyy) | Date Sent | E-mail |
| TIMESENT (hh:mm:ss AM) | Time Sent | E-mail |
| DATERCVD (mm/dd/yyyy) | Date Received | E-mail |
| TIMERCVD (hh:mm:ss AM) | Time Received | E-mail |
| E-mail Outlook Type | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task | Outlook or similar system data |
| HASHVALUE | MD5 hash value | All |
| TITLE | Internal document property | E-document |
| AUTHOR | Creator of a document | E-document |
| DATECRTD (mm/dd/yyyy) | Creation Date | E-document |
| TIMECRTD | Creation Time | E-document |
| LAST MODIFIED BY | Last person who modified (saved) a document | E-document |
| LASTMODD (mm/dd/yyyy) | Last Modified Date | E-document |
| LAST MODT (mm/dd/yyyy) | Last Modified Time | E-document |
| DocumentType | Descriptor for the type of document: **"Edoc"** for electronic documents not attached to e-mails; **"Email"** for all e-mails; **"Attach"** for files that were attachments to e-mails; and **"Hard Copy"** for hard copy physical documents that have been scanned and converted to an electronic image. | All |

| Field | Definition | Doc Type |
|---|---|---|
| Importance | High Importance — indicates Priority E-mail message. | E-mail |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for un-redacted documents. | All |
| RedactionReason | Basis of redaction. If more than one, separate reasons by semi-colons | All |
| ProdVol | Name of media that data was produced on. | All |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |
| TimeZoneField | Timezone of data at time of Ingestion | All |
| AllCustodians | List of all custodians associated with document, i.e. "Custodian" + "Other Custodian" values delimited by semi-colon. | All |
| ParentDate | DOCDATE of the parent item | All |
| Exceptions | Y for documents that were processing or extractions exceptions, blank/null if not present | All |
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) | All |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx | All |
| Date Last Printed | Date the document was last printed. | All |

ATTACHMENT C

JOSEPH A. WALSH II, State Bar No. 143694
joe.walsh@cwn-law.com
ELLEN E. McGLYNN, State Bar No. 270367
ellen.mcglynn@cwn-law.com
COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone: (562) 317-3300
Facsimile: (562) 317-3399

Attorneys for Plaintiffs Dordellas Finance
Corp.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re Application of | Case No. |
| Dordellas Finance Corp. | IN ADMIRALTY |
| Petitioner, | **DECLARATION OF JOCK MAWSON IN SUPPORT OF OPPOSED EMERGENCY *EX PARTE* VERIFIED PETITION FOR AN ORDER TO PERPETUATE TESTIMONY** |
| For Order Authorizing Petition to Perpetuate Testimony Pursuant to FRCP Rules 27 | **[FRCP Rule 27]** |

I, John (Jock) Mawson, declare and state as follows:

1.     I am a Master Mariner and consultant for Collier Walsh Nakazawa LLP ("CWN") counsel for Petitioner Dordellas Finance Corp. (hereinafter "Petitioner") in the above-captioned action.

2.     I submit this declaration in support of Petitioner's Opposed Emergency *Ex Parte* Verified Petition For An Order to Perpetuate Evidence and Testimony ("Petition")  Pursuant to FRCP Rules 27 and 34.

3.     I have personal knowledge of the facts in this declaration except those facts stated on information and belief and as to those facts, I believe them to be true.

4891-2031-4628v5                    1

4.     My experience includes thirteen (13) years as a deck officer in the merchant navy, serving on all types of cargo ship, rising to the rank of chief officer, Master Mariner, qualified to sail as captain on all sizes of ocean going ships, trading worldwide without limitation. My experience also includes working in the marine insurance and claims industry for more than thirty (30) years after coming ashore from sea, investigating marine casualties including pollution incidents, fires, groundings and cargo damage. I have served as an expert witness in marine claims cases, including at the highest levels, the Supreme Court of the United Kingdom. I have lectured to, and acted as dissertation supervisor to, MA and MBA level students at Greenwich University London. I have also served as the International Chamber of Shipping's representative to the United Nations (UNCITRAL) for the negotiation of new international carriage of goods by sea rules.

5.     In connection with my role as a consultant to CWN, I have reviewed various data and documents provided by the United States Coast Guard ("USCG") including an audio and video file from the Los Angeles - Long Beach Vessel Traffic Service (VTS) which contained, among other data, radio communications with ships in San Pedro Bay and the anchorages off the ports of Long Beach and Los Angeles, video depictions of vessel positions and movements as recorded by the VTS on the morning of 25th January 2021 during a high wind event that occurred in San Pedro Bay and its anchorages.

6.     Upon information and belief, during the early hours of the 25th January 2021, wind speeds increased significantly in the ports' outer anchorage areas, such that several ships in the anchorages began to drag their anchors. In fact, VTS and USCG records indicate that at least two other vessels anchored in the area to the South of San Pedro Bay, known as the Huntington Beach ("HB") anchorage, dragged their anchors and in the course of doing so collided with each other during this same high winds event.

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

4891-2031-4628v5

2

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

7.     Upon information and belief, one other ship that dragged anchor was the M/V BEIJING (IMO # 9308508) a large container ship under the flag of the Republic of Malta, which was anchored in the Sierra Foxtrot ("SF") anchorage southeast of the dual Los Angeles-Long Beach port complex.

8.     The MSC DANIT, another large container ship under the flag of the Republic of Panama, was anchored nearby in an adjacent anchorage, commonly referred to as SF-3.

9.     Upon information and belief, starting as early as 0400 PST on 25 January 2021, the M/V BEIJING dragged its anchor, while moving in a generally easterly direction towards where the MSC DANIT was anchored.

10.     Upon information and belief, the Captain of the M/V BEIJING eventually informed VTS via radio that he was weighing (raising) his ship's anchor, however, he failed or was unable to do so for several hours. In fact, a review of the VTS video file shows that despite its stated intentions to get underway, the M/V BEIJING remained in anchorage throughout January 25, 2021.

11.     Upon information and belief,  the Captain of the MSC DANIT  advised VTS via radio at approximately 05:49 PST of his intention to weigh anchor and proceed to sea to drift within the VTS area.

12.     However, upon information and belief, as the MSC DANIT was raising its anchor, the M/V BEIJING, continued dragging its anchor moving at some point nearly one nautical mile out of its assigned anchor position closer towards the MSC DANIT.

13.     Upon information and belief and based on my review of the VTS video file provided by USCG, at least one point in time, the M/V BEIJING came within approximately 560 feet of the MSC DANIT after it had reported to VTS of its efforts to weigh anchor to get underway. That distance is less than one-half of the M/V BEIJING's overall length. It is reasonable to conclude based on the video

4891-2031-4628v5

3

1  depiction and radio transmissions that the M/V BEIJING was unable to raise its
2  anchor and therefore unable to control its movement.

3        14.    Upon information and belief, the MSC DANIT, was presented with an
4  imminent and significant risk of collision as the M/V BEIJING encroached and
5  embarrassed the safe navigation and maneuverability of the  MSC DANIT which
6  was forced, and in fact obligated under the collision regulations, to take evasive
7  action including stopping heaving its own anchor, paying out more anchor chain to
8  allow more room between the ships and if necessary even engaging its engines to
9  back away from the M/V BEIJING so as to avoid collision and stay out of the way
10  of the M/V BEIJING .

11        15.    Upon information and belief,  the uncontrolled nature of the
12  movements, encroachment and continued dragging of anchor by the M/V BEIJING,
13  lasted for over two hours, until the MSC DANIT was able to resume weighing its
14  own anchor and proceeded to drift at sea approximately 08:20 PST.

15
16        I declare under penalty of perjury under the laws of the United States of
17  America that the foregoing is true and correct.  Executed November 27, 2021, at Ojai,
18  California.

19
20                        /s/ Jock Mawson
                      Jock Mawson

21
22
23
24
25
26
27
28

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

4

DECLARATION OF JOCK MAWSON IN SUPPORT OPPOSED EMERGENCY EX PARTE VERIFIED
PETITION FOR AN ORDER TO PERPETUATE TESTIMONY

# EXHIBIT B

1   Christopher W. Keegan (SBN 232045)
    chris.keegan@kirkland.com
2   KIRKLAND & ELLIS LLP
    555 California St., Suite 2900
3   San Francisco, CA 94104
4   Tel: (415) 439-1400 / Fax: (415) 439-1500

5   Mark Holscher (SBN 139582)
    mark.holscher@kirkland.com
6   KIRKLAND & ELLIS LLP
    555 South Flower St., Suite 3700
7   Los Angeles, CA 90071
8   Tel: (213) 680-8400 / Fax: (213) 680-8500

9   Daniel T. Donovan (admitted *pro hac vice*)    Anna Rotman (admitted *pro hac vice*)
    ddonovan@kirkland.com                           anna.rotman@kirkland.com
10  KIRKLAND & ELLIS LLP                            KIRKLAND & ELLIS LLP
    1301 Pennsylvania Avenue, N.W.                  609 Main Street
11  Washington, D.C. 20004                          Houston, TX 77002
12  Tel: (202) 389-5000 / Fax: (202) 389-5200      Tel: (713) 836-3600 / Fax: (713) 836-3601

13  [*additional counsel on signature page*]

14  *Counsel for the Amplify Defendants/Third-*
15  *Party Plaintiffs*

16              **UNITED STATES DISTRICT COURT**

17            **CENTRAL DISTRICT OF CALIFORNIA**

18                   **SOUTHERN DIVISION**

19  PETER MOSES GUTIERREZ, Jr.;          CASE NO. 8:21-cv-01628-DOC-JDE
    CHANDRALEKHA
20  WICKRAMASEKARAN and                  **AMPLIFY'S RESPONSE TO *DANIT***
    RAJASEKARAN                          **DEFENDANTS' NOV. 17, 2022**
21  WICKRAMASEKARAN, as Trustees of      **LETTER TO SPECIAL MASTER**
    THE WICKRAMASEKARAN FAMILY           **PANEL**
22  TRUST established March 12, 1993; et al.
    individually and on behalf of all others
23  similarly situated,

24              Plaintiffs,
25        v.

26  AMPLIFY ENERGY CORP.; BETA
    OPERATING COMPANY, LLC; and
27  SAN PEDRO BAY PIPELINE
    COMPANY,
28

---

1          Defendants/Third-Party
2          Plaintiffs,

3      v.

4  MEDITERRANEAN SHIPPING
   COMPANY, S.A.; DORDELLAS
5  FINANCE CORPORATION;
   COSTAMARE SHIPPING CO., S.A.;
6  CAPETANISSA MARITIME
   CORPORATION; V.SHIPS GREECE
7  LTD.; MARINE EXCHANGE OF LOS
   ANGELES-LONG BEACH HARBOR
8  d/b/a MARINE EXCHANGE OF
   SOUTHERN CALIFORNIA; COSCO
9  SHIPPING LINES CO. LTD.; COSCO
   (CAYMAN) MERCURY CO. LTD.;
10 MEDITERRANEAN SHIPPING
   COMPANY S.R.L.; and MSC
11 SHIPMANAGEMENT LTD; *in personam*;
   and M/V BEIJING and MSC DANIT, *in*
12 *rem*.,

13         Defendants/Third-Party
14         Defendants.

15 ────────────────────────────────

16 MARKEL INTERNATIONAL
   INSURANCE COMPANY, LTD., ASCOT
17 UNDERWRITING INC., QBE
   EUROPEAN CO. OPERATIONS
18 (LLOYD'S SYNDICATE 1036),
   NAVIGATORS UNDERWRITING
19 AGENCY LTD. (LLOYD'S SYNDICATE
   1221), MARKEL INTERNATIONAL
20 LTD. (LLOYD'S SYNDICATE 3000),
   AEGIS LONDON (LLOYD'S
21 SYNDICATE 1225), TALBOT
   UNDERWRITING LTD. (LLOYD'S
22 SYNDICATE 1183), ANTARES
   SYNDICATE 1274 (LLOYD'S
23 SYNDICATE 1274); AXIS CORPORATE
   CAPITAL UK LTD (LLOYD'S
24 SYNDICATE 1686); MUNICH RE
25 SYNDICATE LIMITED

26         v.

27 MEDITERRANEAN SHIPPING
   COMPANY, S.A.; DORDELLAS
28 FINANCE CORPORATION; MSC

───────────────────────────────────────
2

DANIT; DOES 1-5; COSTAMARE SHIPPING CO., S.A.; CAPETANISSA MARITIME CORPORATION; V.SHIPS GREECE LTD.; COSCO BEIJING; and DOES 6-10; MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR D/B/A MARINE EXCHANGE OF SOUTHERN CALIFORNIA, COSCO SHIPPING LINES CO. LTD.; COSCO (CAYMAN) MERCURY CO. LTD.; and MEDITERRANEAN SHIPPING COMPANY S.R.L.,

Defendants-in-Intervention.

## INTRODUCTION

We write on behalf of Amplify to object to the *Danit* Defendants' assertion of attorney-client privilege and work-product privilege during the deposition of Jock Mawson and seek relief from this Panel, pursuant to Special Master O'Brien's instruction. 11/18/22 J. Mawson Dep. Tr. 55:8–25. The *Danit* Defendants' objections were untimely and inappropriate, and Amplify requests that the Special Master Panel overrule them and order the *Danit* Defendants to produce Mr. Mawson to answer questions about (1) information he considered when drafting his publicly filed declaration, (2) the identity and statements of witnesses whose interviews he attended or reviewed, and (3) his current opinions about the anchor dragging across Amplify's pipeline (the exact topic of his declaration).

## BACKGROUND

Amplify first informed the *Danit* Defendants of its intent to depose Jock Mawson over a month ago, on October 15, 2022, and the parties met-and-conferred about the subpoena on October 21, 2022. Mr. Mawson is a consultant with extensive experience in the maritime industry, including 13 years working in the merchant navy, where he rose to the rank of chief officer, and then more than 30 years working at marine insurance and claims businesses where he conducted marine casualty investigations. J. Mawson Decl. in Supp. of Opposed Emergency *Ex Parte* Verified Pet. ¶ 4, *In re Application of Dordellas Fin. Corp.*, No. 2:21-mc-01106-UA-PLA (C.D. Cal. Nov. 27, 2021), ECF No. 1-5 (the "J. Mawson Decl."). Mr. Mawson currently works as a consultant for the law firm of Collier Walsh Nakazawa LLP and as part of that work submitted a declaration in support of the Opposed Emergency *Ex Parte* Verified Petition to Perpetuate Testimony filed by Dordellas Finance Corp. Opposed Emergency *Ex Parte* Verified Petition to Perpetuate Test., *In re Application of Dordellas Finance Corp.*, No. 2:21-mc-01106-UA-PLA (C.D. Cal. Nov. 27, 2021), ECF No. 1 (the "Verified Petition").

Because Mr. Mawson's declaration contains a series of factual statements about the movements of the MSC *Danit* ("*Danit*") and *M/V Beijing* ("*Beijing*") on January 25, 2021, Amplify sought to depose Mr. Mawson and requested production of all documents that he received, considered, and relied on in connection with his declaration.   Amplify made clear that if the *Danit* Defendants objected to the deposition, they needed to move for a protective order.  They did not do so.  Then, the night before the deposition, after the close of business, the *Danit* Defendants filed a letter—in truth a dilatory and inappropriate motion for a protective order—that is in violation of the Special Master Panel's established process for raising disputes.  11/17/22 Letter from J. Walsh to SMP; ECF No. 57; 11/02/22 SMP Notice to All Parties.

During Mr. Mawson's deposition, his counsel objected to any questioning that called for Mr. Mawson to identify information beyond a list of previously produced documents that Mr. Mawson considered or relied on when submitting his declaration. *See, e.g.*, 1/18/22 J. Mawson Dep. Tr. 261:16–262:17.  Following advice of counsel, Mr. Mawson did not answer questions about any information outside the previously identified documents that he considered when forming the opinions in his declaration. *Id.*; *see also* 11/17/22 Letter from J. Walsh to SMP at 5.  Also on the advice of counsel, Mr. Mawson did not answer questions about his current opinions on the anchor dragging on January 25, 2021 by the *Danit* and the *Beijing*, despite admitting that he does currently have opinions about those questions.  11/18/22 J. Mawson Dep. Tr.288:14–290:5, 291:16–292:4.

## **ARGUMENT**

## I.    **EXPERT WITNESSES MUST DISCLOSE THE FACTS AND REASONING UNDERLYING THEIR OPINIONS**

Because Mr. Mawson's declaration is a testimonial statement from an expert, he must disclose the basis of the opinions in his declaration and any facts and data he considered when forming those opinions.  *See* Fed. R. Civ. P. 26(a)(2).  Case law

5

surrounding expert testimony makes clear that, when an expert provides a public opinion, the basis of their opinions and any facts and data considered when forming those opinions are properly discoverable. *See, e.g.*, *United States v. Nobles*, 422 U.S. 225, 239–240 (1975); *Worley v. Avanquest N. Am. Inc.*, 2013 WL 6576732, at \*4–5 (N.D. Cal. Dec. 13, 2013); *see also* Fed. R. Civ. P. 26(a)(2).

Mr. Mawson is an expert witness.  His declaration is expert testimony.  "[L]ay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'"  Fed. R. Evid. 701 advisory committee's note to 2000 amendments (citation omitted).  Mr. Mawson did not observe the *Beijing* and *Danit* drag anchor over Amplify's Pipeline on January 25, 2021.  Instead, his declaration, which lists his 13 years of experience as a deck officer, 30 years of experience investigating marine casualties, and work as an expert witness in marine claims cases in the United Kingdom, J. Mawson Decl. ¶ 4; 11/18/22 J. Mawson Dep. Tr. 90:19–91:6, is an application of that expertise to his post-hoc review of data from January 25, 2021.  Moreover, during his deposition, Mr. Mawson drew on his nautical expertise to admit, among other things, the following: what a voyage data recorder is, the meaning and what is displayed on ECDIS, the circumstances in which voyage data recorder information should be preserved, the risks posed by engaging a windlass to lift anchor without engaging the main engine, why a master would order the anchor position to be frequently checked, and that sometimes expected heavy weather should prompt a ship to leave its anchorage and drift at sea.  That is plainly expert testimony.

## II.  THE *DANIT* DEFENDANTS WAIVED ANY POTENTIAL CLAIM OF PRIVILEGE

The *Danit* Defendants waived any claim of privilege over information related to the statements in Mr. Mawson's declaration by publicly filing it in support of the Verified Petition.  A party waives work-product privilege if the party makes "testimonial use" of work-product materials.  *Nobles*, 422 U.S. at 239 n.14.  "Making

work product public is the epitome of sharing with an adversary, thus waiving protection." *Eastman v. Thompson*, --- F. Supp. 3d ----, 2022 WL 894256, at *19 (C.D. Cal. Mar. 28, 2022). When a party submits a declaration from a non-testifying expert in support of a motion or pleading, courts allow discovery "related to the expert's statements, findings, or opinions that were put at issue." *Worley*, 2013 WL 6576732 at *4–5; *see also Rubalcava v. City of San Jose*, 2022 WL 484988, at *3 (N.D. Cal. Feb. 16, 2022) ("[I]t seems beyond dispute that [the plaintiff's attorney who submitted a fact declaration] properly may be examined in deposition regarding the matters disclosed in her declaration, subject to the usual requirements that the deposition testimony must be relevant and proportional to the needs of the case."); *Nobles*, 422 U.S. at 239–40.

There can be no dispute that the *Danit* Defendants reliance on Mr. Mawson's declaration as factual support for their Verified Petition was testimonial use. The *Danit* Defendants filed on the public docket Mr. Mawson's declaration, which offered substantive opinions about the movements of the *Danit* and *Beijing* during the heavy weather event on January 25, 2021, including that the *Beijing* dragged its anchor as it moved toward the *Danit* and that the *Danit* took several hours to weigh its own anchor. J. Mawson Decl. ¶¶ 6–15. The Verified Petition was, in its own words, about "Anticipated Litigation." Verified Pet. at 6–7; *see also* 11/17/22 Letter from J. Walsh to SMP at 4. It was thus plain that the *Danit* Defendants were aware they were making "testimonial use" of Mr. Mawson's declaration; they publicly filed it, about "anticipated litigation," and the declaration itself is substantive testimony about the *Danit* and *Beijing*'s movements and anchor dragging on January 25, 2021. The *Danit* Defendants therefore cannot assert privilege to prevent Amplify, Class Plaintiffs, and the *Beijing* Defendants from obtaining discovery into the basis for Mr. Mawson's declaration.[1] This subject-matter waiver applies to Mr. Mawson's knowledge about

---

[1]    In their letter to the Special Master Panel dated November 17, 2022, the *Danit* Defendants claim they could not have waived any applicable privilege because the

the statements in his declaration, either from before he submitted it or information that has affected his belief about the truth of the statements since submitting his declaration.

That "Mr. Mawson is a consultant fully imbedded with the law firm of Collier Walsh Nakazawa LLP" does not matter.  11/17/22 Letter from J. Walsh to SMP at 1. If a party makes testimonial use of work-product materials from a consulting expert, "the normal rules of evidence come into play with respect to cross-examination and production of documents."  *Nobles*, 422 U.S. at 239 n.14; *see also Murray v. S. Route Mar., S.A.*, 2014 WL 1671581, at *1, *3 (W.D. Wash. Apr. 28, 2014) (explaining "that if the facts known or opinions held by a non-testifying expert are intentionally disclosed or used in a way that is contrary to the purpose of the privilege, waiver may apply" and finding that disclosure of a consulting expert's report to a third party "waived the privilege as to that document").  Because the *Danit* Defendants used Mr. Mawson's declaration affirmatively to advance their case in a public forum, any privilege previously attached to that declaration or the work that went into it is waived.  The *Danit* Defendants used Mawson's testimony as a sword, and in so doing forfeited any right to use privilege as a shield.

## III.   MR. MAWSON MUST ANSWER QUESTIONS ABOUT THE INFORMATION UNDERLYING HIS DECLARATION

Mr. Mawson, at the instruction of his counsel, refused to answer questions about (1) any information he had considered when drafting and swearing to the truth of his declaration that is not contained therein, 11/18/22 J. Mawson Dep. Tr. 261:16–262:17, (2) the identity and statements of witnesses whose interviews concerning the events of January 25, 2021, he attended or reviewed, *id.* at 265:1–266:5, and (3) Mr. Mawson's current views about which ship's anchor struck Amplify's pipeline and

---

declaration only contained "facts and conclusions."  11/17/22 Letter from J. Walsh to SMP at 4.  That is incorrect.  By submitting Mr. Mawson's factual declaration in support of their pleading, the *Danit* Defendants put Mr. Mawson's statements "into the judicial arena," and Amplify is entitled to "take discovery about th[e] statements, findings, or opinions" in his declaration.  *Worley*, 2013 WL 6576732, at *4.

1    whether the *Hong Kong Spirit* also encroached upon and embarrassed the safe

2    navigation and maneuverability of the *Danit, id.* at 288:14–290:5, 291:16–292:4.

3    Because the *Danit* Defendants waived privilege with respect to the subject matter of

4    Mr. Mawson's declaration, Amplify respectfully asks that the Special Master Panel

5    order the *Danit* Defendants to make Mr. Mawson available for a second deposition in

6    which he will be instructed to answer these questions.

7

8    DATED:  November 29, 2022                Respectfully submitted,

9
                                             *s/ Matt Owen*

10   Daniel T. Donovan (admitted *pro hac vice*)    Christopher W. Keegan (SBN 232045)
     ddonovan@kirkland.com                          chris.keegan@kirkland.com
11   Matthew Owen (admitted *pro hac vice*)         KIRKLAND & ELLIS LLP
     matt.owen@kirkland.com                         555 California St., Suite 2900
12   Holly Trogdon (admitted *pro hac vice*)        San Francisco, CA 94104
     holly.trogdon@kirkland.com                     Tel: (415) 439-1400
13   McClain Thompson (admitted *pro hac vice*)     Fax: (415) 439-1500
     mcclain.thompson@kirkland.com
14   Ross Powell (admitted *pro hac vice*)
     ross.powell@kirkland.com                       Mark Holscher (SBN 139582)
15   Kate Epstein (admitted *pro hac vice*)         mark.holscher@kirkland.com
     kate.epstein@kirkland.com                      KIRKLAND & ELLIS LLP
16   Meredith Pohl (admitted *pro hac vice*)        555 South Flower St., Suite 3700
     meredith.pohl@kirkland.com                     Los Angeles, CA 90071
17   James Yates (admitted *pro hac vice*)          Tel: (213) 680-8400
     james.yates@kirkland.com                       Fax: (213) 680-8500
18   KIRKLAND & ELLIS LLP
     1301 Pennsylvania Avenue, N.W.                 Anna Rotman (admitted *pro hac vice*)
19   Washington, D.C. 20004                         anna.rotman@kirkland.com
     Tel: (202) 389-5000                            KIRKLAND & ELLIS LLP
20   Fax: (202) 389-5200                            609 Main Street
                                                    Houston, TX 77002
21                                                  Tel: (713) 836-3600
                                                    Fax: (713) 836-3601
22

23                                                  *Counsel for the Amplify*
                                                    *Defendants/Third-Party Plaintiffs*
24

25

26

27

28
                                       9

# EXHIBIT C

1  JOSEPH A. WALSH II, State Bar No. 143694
   joe.walsh@cwn-law.com
2  ELLEN E. McGLYNN, State Bar No. 270367
   ellen.mcglynn@cwn-law.com
3  COLLIER WALSH NAKAZAWA LLP
   One World Trade Center, Suite 2370
4  Long Beach, California 90831
   Telephone: (562) 317-3300
5  Facsimile: (562) 317-3399
6
7  JONATHAN W. HUGHES, State Bar No. 186829
   jonathan.hughes@arnoldporter.com
8  ARNOLD & PORTER KAYE SCHOLER LLP
   Three Embarcadero Center, Tenth Floor
9  San Francisco, CA 94111
   Telephone: (415) 471-3156
10 Facsimile: (415) 471-3400

11 *Attorneys for Dordellas Finance Corp., MSC Mediterranean Shipping Co. SA,*
   *Mediterranean Shipping Co. S.r.l., MSC Shipmanagement Ltd., and MSC Danit*
12

13            UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15                 SOUTHERN DIVISION

16

| | |
|---|---|
| PETER MOSES GUTIERREZ, JR., *et al.*, | Case No. 8:21-cv-01628-DOC-JDE |
| Plaintiffs, | **DORDELLAS PARTIES'** |
| v. | **RESPONSE TO AMPLIFY'S NOV.** |
| AMPLIFY ENERGY CORPORATION, *et al.*, | **29, 2022 SUBMISSION TO** |
| | **SPECIAL MASTER PANEL** |
| Defendants/Third-Party Plaintiffs | |
| MEDITERRANEAN SHIPPING COMPANY, S.A., *et al.*, | |
| Defendants/Third-Party Defendants | |

1

## __INTRODUCTION__

2       Amplify's response stakes out a position that is as radical and far-reaching as

3   it is unprecedented and unsupported.  In an attempt to secure access to the Dordellas

4   Parties' most sensitive attorney work product and privileged information, Amplify

5   seeks to use the filing of a declaration by a law firm's consultant that was limited to

6   an issue that is not contested or even in dispute as a pretext for asserting a wholesale

7   subject matter waiver of privilege and work product protections.  According to

8   Amplify, this waiver is so broad that they are entitled to discovery about opinions the

9   declarant, Mr. Mawson, did not actually disclose in his declaration, that do not relate

10  to the topics he did disclose in his declaration, and that he did not form until well after

11  he signed the declaration.  Amplify's argument should fail on those facts alone, but

12  its position is even more radical still.  Amplify does not dispute that the declarant, Mr.

13  Mawson, was neither a percipient witness nor designated by the Dordellas Parties as

14  an expert.  Instead, the entire premise of Amplify's argument is that Amplify should

15  be entitled to unilaterally convert Mr. Mawson into a Rule 26 expert and depose him

16  on that basis merely because Mr. Mawson expressed opinions in his declaration—no

17  matter how limited those opinions.  This is not the law, nor has it ever been the law,

18  and none of the cases Amplify cites even remotely support the outcome it seeks.  The

19  bottom line is that while he was properly instructed to not disclose privileged

20  information, Mr. Mawson spent over five hours answering all of the questions on non-

21  privileged topics that Amplify asked him—indeed, Amplify does not suggest

22  anything to the contrary.  The SMP should reject Amplify's arguments and its bid to

23  secure an improper and unfair litigation advantage.

24

## __ARGUMENT__

25  **I.    The Dordellas Parties' Objections Raised In Their November 17,**
26  **Letter Were Timely And Appropriate**

27      Amplify's threshold complaint about the timing of the filing of the Dordellas

28  Parties' objections is a makeweight that should not distract from the underlying flaws

in its position. Contrary to Amplify's assertions, the Dordellas Parties timely objected to the deposition notice and subpoena, raised their concerns about the scope of Amplify's questions and then properly asserted objections to specific, improper questions *during* Mr. Mawson's deposition. That is precisely what the rules contemplate. After Amplify noticed Mr. Mawson's deposition, the Dordellas Parties did not dispute that he could be deposed on non-privileged subjects. But, as with any deposition, the Dordellas Parties had no way of knowing in advance what questions Amplify would ask or whether Amplify would attempt to wade into privileged areas. For this reason, the Dordellas Parties had no basis on which to seek a protective order against improper questions that might not even be asked. Indeed, had they done so, Amplify would likely have complained that the Dordellas Parties' filing was premature and sought an advisory opinion since no questions had yet been asked. The Dordellas Parties thus properly alerted the SMP (who were already planning to attend the deposition) and opposing counsel that the Dordellas Parties would interpose appropriate objections to protect against disclosure of privileged communications or work-product information. Though nothing in the rules required the Dordellas Parties to alert the SMP and Amplify to these issues in advance, doing so allowed the deposition to go forward while establishing the boundaries of permissible questioning.

## II.  Mawson's Limited Declaration Does Not Provide A Basis For Amplify To Discover Privileged Information

The merits of Amplify's argument do not fare any better than its procedural complaint. The central premise of Amplify's argument is that an open-ended interrogation into every document Mr. Mawson has read in this case is appropriate because *Amplify* claims he is an "expert witness." This argument is fundamentally flawed and should be rejected for the following reasons.

***First***, the only support for Amplify's assertion that Mr. Mawson is the Dordellas Parties' expert is its own say so. Mr. Mawson has not been disclosed as an

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

2

expert by any party in this litigation.  In fact, expert discovery is not even scheduled to begin until after the end of fact discovery.  To the extent that his declaration is construed to contain opinion testimony, it was limited to a narrow issue that is no longer in controversy—namely, whether sufficient evidence existed to arrest the M/V BEIJING so that the testimony of her crewmembers could be preserved.  Rule 26(a)(2) does not permit Amplify to use this limited-purpose testimony to convert Mawson into an all-purpose expert who can be interrogated about every document he has ever reviewed in this case, much less all opinions he formed from day one through the present.  Put simply, Rule 26(a)(2) does not allow Amplify to designate the Dordellas Parties' experts for them and then depose them on all issues, let alone convert them into a vehicle for uncovering privileged information.  Amplify cites *United States v. Nobles*, 422 U.S. 225 (1975), but the U.S. Supreme Court held there that the defendant, by electing to present the investigator *as a witness at trial*, waived the privilege with respect to matters covered in his testimony.  *See Nobles*, 422 U.S. at 239–40.  Here, there is no "sword." The Dordellas Parties have not disclosed Mawson as an expert witness, and there is no unfairness in precluding Amplify from obtaining access to privileged and work product-protected information.  Quite the reverse is true, since allowing Amplify to probe privileged communications and sensitive attorney work product would give it an unfair litigation advantage.

There is another fatal flaw to Amplify's argument—the assertion that attorney-client privilege and work product protections do not apply *at all* to a properly designated expert witness is wholly unfounded.  Even if the Dordellas Parties had designated Mawson as an expert witness, Rule 26 does not nullify the attorney-client and attorney work product privileges.  Rule 26 in fact does the opposite:  it bars discovery of discussions between an expert and counsel unless the expert has relied on such discussions in forming his opinions.  Nor does Rule 26 permit discovery of draft reports, as they will often reveal mental impressions, legal opinions, and theories of counsel.  *See, e.g.*, *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 2014

3

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

WL 3385130, at *4 (E.D. La. 2014); *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 608-10 (D. Nev. 2005); *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 591 (N.D.N.Y. 1989). One of the cases Amplify relies upon, *Worley v. Avanquest N. Am. Inc.*, No. C 12-04391 WHO (LB), 2013 WL 6576732 (N.D. Cal. Dec. 13, 2013), makes this very point. There, the court noted that a party is permitted to discover "only information related to the expert's statements, findings, or opinions that were put at issue; discovery is not allowed into information or material not put in issue or regrading [sic] the contents of any privileged communications." *Worley*, 2013 WL 6576732, at *5; *see also Rubalcava v. City of San Jose*, 2022 WL 484988, at *5 (N.D. Cal. Feb. 16, 2022) (limiting disclosure "to factual, or non-opinion, work product commensurate with the disclosure made in [the] declaration").[1]

In other words, offering opinion testimony does not open the floodgates for opposing counsel to seek privileged information from Mr. Mawson; nor does it result in a complete subject-matter waiver of privilege. Again, Mr. Mawson has not been designated as an expert by any party, and the deadline to designate experts is still a month away. And, as he testified in his deposition, none of the materials he relied upon in preparing his declaration included privileged information. *See* 11/18/22 J. Mawson Dep. Tr. 71:3–73:9. So even if the Court were to conclude that Mr. Mawson offered expert testimony under Rule 26(a)(2), his declaration did not rely on privileged materials and did not result in waiver.

**Second**, Amplify's efforts to depose Mr. Mawson on his opinions (and the bases for them) *today* that he formed in the year after he filed the declaration and that

---

[1] *Eastman v. Thompson*, --- F. Supp. 3d ----, 2022 WL 894256, at *19 (C.D. Cal. Mar. 28, 2022), cited by Amplify, simply noted that because two documents were already disclosed to the public, work product protection had been waived as to those documents. Here, the Dordellas Parties are not attempting to withhold Mr. Mawson's declaration or any other public documents already disclosed.

**DORDELLAS PARTIES' RESPONSE TO AMPLIFY'S NOV. 29, 2022 SUBMISSION TO SPECIAL MASTER PANEL**

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

may not even relate to what he said in the declaration is a pure fishing expedition without any legitimate basis. Mr. Mawson's declaration was prepared and executed in November 2021, for the limited purpose of a separate *ex parte* petition, before this lawsuit was even filed, and more than a year before his deposition. In the intervening year, the parties engaged in vigorous investigation and discovery and developed their respective case strategies. Mr. Mawson, no less than any of the other parties' attorneys and their consultants, has undoubtedly formed new opinions about the facts of the case. These opinions unquestionably reflect the Dordellas Parties' attorney work product and privileged communications. And, critically, these opinions by definition are unrelated to anything Mr. Mawson wrote much less knew about when he executed his declaration on the narrow issue of whether Beijing witnesses should be kept in the jurisdiction until their testimony could be perpetuated for use in litigation.

Moreover, even if Mr. Mawson had been designated as an expert so that Rule 26 applied here, the Rule's plain language would not sanction Amplify's attempted piercing of privilege and work product protection. In the context of experts who have been designated but will not be called at trial, the federal rules provide ample protection: a party may not "discover facts known or opinions held by an expert who has been retained . . . to prepare for trial and who is not expected to be called as a witness." Fed. R. Civ. P. 26(b)(4)(D). Given that Mr. Mawson is not even designated in this limited capacity, seeking to depose him on his current opinions is *a fortiori* improper, if not borderline frivolous. Likewise, Amplify's request for information, including privileged information, acquired by Mr. Mawson after he submitted his declaration is without merit for all the same reasons. Amplify tellingly does not cite any authority for this assertion, which is likely because none exists.

### III.    Mr. Mawson Answered All Questions Put To Him About The Information Underlying His Declaration Testimony

Contrary to Amplify's argument, Mr. Mawson *did* testify extensively about the

factual sources he considered and relied upon in preparing his declaration. For example, Mr. Mawson testified that in drafting his declaration he relied in part on the interview statements made by the third mate of the M/V BEIJING. *See, e.g.*, 11/18/22 J. Mawson Dep. Tr. 261:16–262:17. That information was not conveyed to Mr. Mawson through attorney work product or privileged communications, but rather through the interview conducted by the United States Coast Guard, the transcript of which has been produced. Because Mr. Mawson did not rely on interviews conducted by CWN, the law firm at which he works, the declaration did not amount to waiver of the work product or attorney-client privileges or provide a basis to ask him about such interviews. And even if Mr. Mawson discussed with attorneys at CWN the substance of the materials he reviewed and how they should be presented in his declaration, those discussions remain privileged because: (i) Mr. Mawson was testifying to their contents as a fact witness, and (ii) CWN's communications with Mr. Mawson about how to organize and present that evidence in his declaration is work product whose disclosure would necessarily reveal the mental processes and opinions of the Dordellas Parties' attorneys. That the declaration was ultimately filed with the court does not change this analysis. *See Ideal Elec. Co.*, 230 F.R.D. at 610.

Indeed, the only deposition questions cited by Amplify go well beyond the factual bases for Mawson's declaration testimony, and clearly invade—as was their design—the attorney client privilege:

> 16  Q. Prior to November 27, 2021, what did you
> 17  learn from Mr. Walsh or his colleagues about this
> 18  case that is not contained in your declaration?

11/18/22 J. Mawson Dep. Tr. 261:16–262:18.

## **CONCLUSION**

For the foregoing reasons, the Dordellas Parties respectfully request that the Special Master Panel deny Amplify's request to order the Dordellas Parties to produce Mr. Mawson for a second deposition to answer questions that invade the attorney-client privilege and work product protections.

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

6

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

1  Dated: December 2, 2022             ARNOLD & PORTER KAYE SCHOLER LLP

2

3

4                                      By:    */s Jonathan W. Hughes*
                                              Jonathan W. Hughes
5                                             *Attorneys for Dordellas Finance Corp.,*
                                              *MSC Mediterranean Shipping Co. SA,*
6                                             *Mediterranean Shipping Co. S.r.l., MSC*
                                              *Shipmanagement Ltd., and MSC Danit*
7

8  Dated: December 2, 2022             COLLIER WALSH NAKAZAWA LLP

9

10

11                                     By:    */s Joseph A. Walsh II*
                                              Joseph A. Walsh II
12                                            Ellen E. McGlynn
                                              *Attorneys for Dordellas Finance Corp.,*
13                                            *MSC Mediterranean Shipping Co. SA,*
                                              *Mediterranean Shipping Co. S.r.l., MSC*
14                                            *Shipmanagement Ltd., and MSC Danit*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

# EXHIBIT D

JOSEPH A. WALSH II, State Bar No. 143694
joe.walsh@cwn-law.com
ELLEN E. McGLYNN, State Bar No. 270367
ellen.mcglynn@cwn-law.com
COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone: (562) 317-3300
Facsimile: (562) 317-3399

Attorneys for Plaintiffs Dordellas Finance
Corp.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re Application of | Case No. |
| Dordellas Finance Corp. | IN ADMIRALTY |
| Petitioner, | **DECLARATION OF JOCK MAWSON IN SUPPORT OF OPPOSED EMERGENCY *EX PARTE* VERIFIED PETITION FOR AN ORDER TO PERPETUATE TESTIMONY** |
| For Order Authorizing Petition to Perpetuate Testimony Pursuant to FRCP Rules 27 | **[FRCP Rule 27]** |

I, John (Jock) Mawson, declare and state as follows:

1.      I am a Master Mariner and consultant for Collier Walsh Nakazawa LLP ("CWN") counsel for Petitioner Dordellas Finance Corp. (hereinafter "Petitioner") in the above-captioned action.

2.      I submit this declaration in support of Petitioner's Opposed Emergency *Ex Parte* Verified Petition For An Order to Perpetuate Evidence and Testimony ("Petition")  Pursuant to FRCP Rules 27 and 34.

3.      I have personal knowledge of the facts in this declaration except those facts stated on information and belief and as to those facts, I believe them to be true.

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

4.     My experience includes thirteen (13) years as a deck officer in the merchant navy, serving on all types of cargo ship, rising to the rank of chief officer, Master Mariner, qualified to sail as captain on all sizes of ocean going ships, trading worldwide without limitation. My experience also includes working in the marine insurance and claims industry for more than thirty (30) years after coming ashore from sea, investigating marine casualties including pollution incidents, fires, groundings and cargo damage. I have served as an expert witness in marine claims cases, including at the highest levels, the Supreme Court of the United Kingdom. I have lectured to, and acted as dissertation supervisor to, MA and MBA level students at Greenwich University London. I have also served as the International Chamber of Shipping's representative to the United Nations (UNCITRAL) for the negotiation of new international carriage of goods by sea rules.

5.     In connection with my role as a consultant to CWN, I have reviewed various data and documents provided by the United States Coast Guard ("USCG") including an audio and video file from the Los Angeles - Long Beach Vessel Traffic Service (VTS) which contained, among other data, radio communications with ships in San Pedro Bay and the anchorages off the ports of Long Beach and Los Angeles, video depictions of vessel positions and movements as recorded by the VTS on the morning of 25th January 2021 during a high wind event that occurred in San Pedro Bay and its anchorages.

6.     Upon information and belief, during the early hours of the 25th January 2021, wind speeds increased significantly in the ports' outer anchorage areas, such that several ships in the anchorages began to drag their anchors. In fact, VTS and USCG records indicate that at least two other vessels anchored in the area to the South of San Pedro Bay, known as the Huntington Beach ("HB") anchorage, dragged their anchors and in the course of doing so collided with each other during this same high winds event.

DECLARATION OF JOCK MAWSON IN SUPPORT OPPOSED EMERGENCY EX PARTE VERIFIED PETITION FOR AN ORDER TO PERPETUATE TESTIMONY

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

7.  Upon information and belief, one other ship that dragged anchor was the M/V BEIJING (IMO # 9308508) a large container ship under the flag of the Republic of Malta, which was anchored in the Sierra Foxtrot ("SF") anchorage southeast of the dual Los Angeles-Long Beach port complex.

8.  The MSC DANIT, another large container ship under the flag of the Republic of Panama, was anchored nearby in an adjacent anchorage, commonly referred to as SF-3.

9.  Upon information and belief, starting as early as 0400 PST on 25 January 2021, the M/V BEIJING dragged its anchor, while moving in a generally easterly direction towards where the MSC DANIT was anchored.

10. Upon information and belief, the Captain of the M/V BEIJING eventually informed VTS via radio that he was weighing (raising) his ship's anchor, however, he failed or was unable to do so for several hours. In fact, a review of the VTS video file shows that despite its stated intentions to get underway, the M/V BEIJING remained in anchorage throughout January 25, 2021.

11. Upon information and belief, the Captain of the MSC DANIT advised VTS via radio at approximately 05:49 PST of his intention to weigh anchor and proceed to sea to drift within the VTS area.

12. However, upon information and belief, as the MSC DANIT was raising its anchor, the M/V BEIJING, continued dragging its anchor moving at some point nearly one nautical mile out of its assigned anchor position closer towards the MSC DANIT.

13. Upon information and belief and based on my review of the VTS video file provided by USCG, at least one point in time, the M/V BEIJING came within approximately 560 feet of the MSC DANIT after it had reported to VTS of its efforts to weigh anchor to get underway. That distance is less than one-half of the M/V BEIJING's overall length. It is reasonable to conclude based on the video

DECLARATION OF JOCK MAWSON IN SUPPORT OPPOSED EMERGENCY EX PARTE VERIFIED
PETITION FOR AN ORDER TO PERPETUATE TESTIMONY

1  depiction and radio transmissions that the M/V BEIJING was unable to raise its

2  anchor and therefore unable to control its movement.

3      14.    Upon information and belief, the MSC DANIT, was presented with an

4  imminent and significant risk of collision as the M/V BEIJING encroached and

5  embarrassed the safe navigation and maneuverability of the  MSC DANIT which

6  was forced, and in fact obligated under the collision regulations, to take evasive

7  action including stopping heaving its own anchor, paying out more anchor chain to

8  allow more room between the ships and if necessary even engaging its engines to

9  back away from the M/V BEIJING so as to avoid collision and stay out of the way

10  of the M/V BEIJING .

11      15.    Upon information and belief,  the uncontrolled nature of the

12  movements, encroachment and continued dragging of anchor by the M/V BEIJING,

13  lasted for over two hours, until the MSC DANIT was able to resume weighing its

14  own anchor and proceeded to drift at sea approximately 08:20 PST.

15

16      I declare under penalty of perjury under the laws of the United States of

17  America that the foregoing is true and correct.  Executed November 27, 2021, at Ojai,

18  California.

19

20                           /s/ Jock Mawson
                         Jock Mawson

21

22

23

24

25

26

27

28

COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone (562) 317-3300

4891-2031-4628v5

4

DECLARATION OF JOCK MAWSON IN SUPPORT OPPOSED EMERGENCY EX PARTE VERIFIED
PETITION FOR AN ORDER TO PERPETUATE TESTIMONY