1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **IN THE MATTER OF THE COMPLAINT OF DORDELLAS FINANCE CORP. OWNER AND MSC MEDITERRANEAN SHIPPING COMPANY S.A.** | **Case Nos. 2:22-CV-02153-DOC-JDE**<br>**8:21-CV-01628-DOC-JDE**<br><br>**ORDER CLARIFYING SCOPE OF LIMITATION ACT TRIAL** |

Before the Court are the parties' briefs and arguments regarding the scope of Phase I of the trial in the Limitation Action (No. 2:22-cv-02153-DOC-JDE). Phase I of the trial is currently scheduled to begin on April 24, 2023.

For reasons set forth below, Phase I of the trial will consider only (1) whether the vessels were seaworthy; (2) whether any conditions of unseaworthiness caused the pipeline damage; (3) whether any conditions of unseaworthiness caused the oil leak; (4) whether any acts of negligence by the vessel owner or vessel crew caused the pipeline damage, (5) whether any acts of negligence by the vessel owner or vessel crew caused the oil leak; (6) whether Limitation Plaintiffs had privity or knowledge of any negligent acts or conditions of unseaworthiness; and (7) whether Amplify's own conduct was the sole proximate cause of the pipeline damage or the initial oil leak.  Phase I will not address Amplify's conduct after the oil leak or liability for entities that are not participating in the Limitation Action. Nor will the Court consider allocation of fault or questions of damages generally.[1] Pursuant to this order, the parties shall meet and confer and propose a pretrial schedule. The proposed schedules shall be submitted to the Special Master Panel.

I.  **BACKGROUND**

This action arises from an October 2021 oil spill off the coast of California near Huntington Beach. Fourteen cases were filed on behalf of various plaintiffs against Amplify Energy Corp. and its subsidiaries ("Amplify"). The Court consolidated those actions on December 20, 2021 (Dkt. 44, No. 8:21- cv-01628-DOC-JDE).

Plaintiffs in the *Gutierrez* class action, No. 8:21- cv-01628-DOC-JDE, brought claims against Amplify under the Oil Pollution Act ("OPA") (33 U.S.C. §§ 2701 *et seq*.); the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act (Gov. Code §§ 8670 *et seq*.); the California Unfair Competition Laws (Cal. Bus. & Prof. Code §§ 17200 *et seq*.); and under common law (Dkt. 102, No. 8:21- cv-01628-DOC-JDE). They also brought common law claims

---

[1] At this time, the Court need not decide whether these issues will be addressed during a second phase within this Limitation Action or in the *Gutierrez* action (No. 8:21- cv-01628-DOC-JDE).

against various vessel interests including Dordellas Finance Corp. ("Dordellas") and MSC Mediterranean Shipping Company S.A. ("MSC") as the owners and operators of the M/V Danit, and Capetanissa Maritime Corporation ("Capetanissa") and Costamare Shipping Company S.A. as the owners and operators of the Beijing (Dkt. 102, No. 8:21- cv-01628-DOC-JDE).

Amplify filed a Third Party Verified Complaint against Dordellas, MSC, Capetanissa, and other parties under OPA and common law (Dkt. 123, No. 8:21- cv-01628-DOC-JDE). On March 31, 2022, Dordellas and MSC jointly filed a Complaint seeking exoneration from or limitation of liability within the Admiralty jurisdiction of this Court (Dkt. 1, No. 2:22-cv-02153-DOC-JDE) ("Dordellas Complaint"). On May 20, 2022, Capetanissa filed a similar complaint seeking exoneration from or limitation of liability action within the Admiralty jurisdiction of this Court (Dkt. 1, No. 2:22-cv-03462-DOC-JDE) ("Capetanissa Complaint"). Both actions were filed pursuant to the Limitation of Liability Act of 1851, 46 U.S.C. §§ 30501 *et seq*. ("Limitation Act") (Dordellas and Capetanissa are jointly referred to as the "Limitation Plaintiffs").

On May 25, 2022, the Court issued its Order Re: Limitation of Liability Act (Dkt. 245, No. 8:21- cv-01628-DOC-JDE), which stayed the class action claims against the Limitation Plaintiffs and Amplify's non-OPA claims, noting that "the parties agreed that the Limitation Act questions apply solely to claims asserted against the vessel interests represented in the Dordellas Action and the Capetanissa Action." *Id.*

On February 7, 2023, the parties appeared before the Court and addressed the appropriate scope of Phase I of the Limitation Action trial. The parties disagreed as to the applicability of the seaworthiness doctrine, the harms at issue, the relevance of Amplify's conduct, damages and apportionment of fault, and the liability of entities that are not parties to the Limitation Action.

I.     LEGAL STANDARD

The Limitation of Liability Act, 46 U.S.C. App. § 183 *et seq*. ("Limitation Act") was enacted in response to multiple incidents in which a vessel owner was "held liable for significant

damage amounts under the common law rule of common carrier liability, which did not require proof that the owner was negligent or at fault." *Martz v. Horazdovsky*, 33 F.4th 1157, 1166 (9th Cir. 2022). The purpose was to protect maritime commerce and the interests of individual shipowners and the greater community from undue costs. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001). The Limitation Act, provides, in pertinent part:

> The liability of the owner of any vessel, whether American or foreign, . . . for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C. App. § 183(a). The Act applies only to vessel "owners," and potentially limits their liability to "the value of the vessel and pending freight." 46 U.S.C. § 30505(a). The claims subject to limitation include "any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner." *Id*. § 30505(b). Taken together, "[t]he Limitation of Liability Act limits shipowner liability arising from the unseaworthiness of the vessel or the negligence of the vessel's crew to the value of the boat unless the condition of unseaworthiness or the act of negligence was within the shipowner's 'privity or knowledge.'" *Holzhauer v. Golden Gate Bridge Highway & Transp. Dist.*, 745 F. App'x 265, 269 (9th Cir. 2018) (citations omitted).

Ultimately, "[t]he Act permits both American and foreign shipowners facing multiple suits arising out of one voyage to bring the claimants into one proceeding to apportion the owner's liability." *Matter of Bowoon Sangsa Co., Ltd.*, 720 F.2d 595, 597 (9th Cir. 1983).

**II.   DISCUSSION**

The Court has discretion to structure its trial in a manner that best allocates judicial resources. *See* Fed. R. Civ. P. 42; *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 807–08 (9th Cir. 2022). Deciding whether a shipowner is exempt from liability is a two-step process. First, the Court determines "what acts of negligence or conditions of unseaworthiness caused the

accident." *In re Hechinger*, 890 F.2d 202, 207 (9th Cir. 1989); *In re Seaway Co. of Catalina*, No. CV 11-0336 PA EX, 2013 WL 877393, at *13 (C.D. Cal. Mar. 7, 2013). If no negligence or unseaworthiness is found, the vessel owner is wholly exonerated. *In re Hechinger*, 890 F.2d. at 208 ("[I]f no liability exists[,] there is nothing to limit." (quoting *Northern Fishing Trading Co., Inc. v. Grabowski*, 477 F.2d 1267 (9th Cir. 1973)).

Alternatively, the Court proceeds to the second step to determine whether "the act or condition [causing the injury] was outside [the vessel owner's] privity or knowledge." *In re BOWFIN M/V*, 339 F.3d 1137, 1137 (9th Cir. 2003). If no privity or knowledge is established, the vessel owner's liability is limited to the value of the vessel and its cargo. *Newton v. Shipman*, 718 F.2d 959, 961 (9th Cir. 1983); *Palla v. L M Sports, Inc.*, 388 F. Supp. 3d 1191, 1200–01 (E.D. Cal. 2019). Otherwise, limitation is denied and claimants may move forward with their claims. *See Pickle v. Char Lee Seafood, Inc.,* 174 F.3d 444, 449–51 (4th Cir. 1999) (explaining that a court sitting in admiralty without a jury must conduct the Limitation of Liability action, but if the court denies limitation, claimants will be released to pursue their claims in the limitation action or revive their original suits wherein they demanded jury trials).

### A. Unseaworthiness

Dordellas argues that the question of seaworthiness is inapplicable in this action. Dordellas Br. (Dkt. 222-2, No. 2:22-cv-02153-DOC-JDE) at 9. The Ninth Circuit, however, has held that "[a] boat owner's liability for unseaworthiness 'is a form of absolute duty owing to all within the humanitarian range of its humanitarian policy.'" *In re Hechinger*, 890 F.2d at 207 (quoting *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 95 (1946)).[2]

But while "the owner's duty to furnish a seaworthy ship is absolute," "it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use." *Mitchell v. Trawler*

---

[2] To be sure, the Supreme Court framed the question in *Seas Shipping Co. v. Sieracki* as whether the traditional obligation of seaworthiness ran to a longshore worker. And while the doctrine of unseaworthiness no longer applies to longshore workers, *see Smallwood v. Am. Trading & Transp. Co.*, 839 F. Supp. 1377, 1380 (N.D. Cal. 1993), Dordellas offers no support for the proposition that the Congress or the Ninth Circuit has disavowed the doctrine in actions seeking to hold vessels liable for losses unrelated to personal injury or death. To the extent that such authority exists, Limitation Plaintiffs may seek leave to further brief the issue.

*Racer Inc.*, 362 U.S. 539, 549–50 (1960); *see also Billeci v. United States*, 298 F.2d 703, 705 (9th Cir. 1962) ("It is well settled that a shipowner owes a non-delegable duty to furnish a seaworthy vessel . . . ."). "Once a proper limitation of liability petition has been filed, the court must first determine what acts of negligence *or conditions of unseaworthiness* caused the accident." *In re Hechinger*, 890 F.2d at 207 (emphasis added) (internal quotation mark and citation omitted). "In essence, the doctrine requires that the vessel, including the hull, the decks, or the machinery, be reasonably fit for the purpose for which they are used." *Id.* (citing *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206 (1963)).

Accordingly, the Court finds that conditions of the vessels' seaworthiness are relevant to the Court's determination as to whether vessel owners are entitled to exoneration or limitation of liability under the Limitation Act.

### B. Relevant Harm

Capetanissa first contends that the oil spill is the harm at issue. *See generally* Capetanissa Br. (Dkt. 230, No. 2:22-cv-02153-DOC-JDE). Dordellas' position similarly focuses on the oil spill-related damages. *See generally* Dordellas Br. Amplify, by contrast, contends that damages flow from two harms: (1) the anchor strike, and (2) the oil leak. The Court agrees with Amplify.

As stated in its Complaint in this Limitation Action, Dordellas sought exoneration from, or limitation of, liability for Amplify's alleged "non-OPA damages related to the loss of oil, damage to a subsea pipeline . . . and loss of use of the Pipeline." Dordellas Complaint at 2. As such, Dordellas' position was that the Limitation Action "applies to all non-OPA claims and proceedings asserted against the Plaintiffs including (1) the entirety of the claims asserted in the Consolidated Class Action Complaint, (2) the Second, Third and Fourth causes of action asserted in the Amplify Complaint, and (3) all other claims that might be asserted or filed in the future against the Plaintiffs." *Id.* at 4. Capetanissa likewise sought exoneration, asserting that its ship, the Beijing, "was NOT the cause, proximate or otherwise, of the 13" crack in the Pipeline, the Amplify Oil Spill, or the alleged damages sustained by the Class Action Plaintiffs and Amplify Defendants." Capetanissa Complaint ¶ 118.

As relevant here, Amplify's second and third causes of action pertain to negligence related to "the damage to the Pipeline, the Pipeline's failure, and the eventual discharge of oil,"[3] "damages in the form of damage done to the Pipeline and lost oil," and "damages to its business, including, but not limited to, lost revenue and economic opportunities, and harm to its reputation."[4] Amplify's fourth cause of action asserts damages "for the damage done to the Pipeline and for the loss of use of the Pipeline, as well as the oil lost as a result of the . . . trespasses."[5] The claims in the Consolidated Class Action Complaint assert "a wide variety of damages" "caused by the discharge of crude oil into or upon area beaches and the Pacific Ocean [that] injured, caused to be lost, and/or impaired [Class Action Plaintiffs'] use of property or natural resources . . . ."[6]

By all accounts, including those proffered by Dordellas and Capetanissa, the Limitation Action was filed for the purpose of limiting or exonerating Limitation Plaintiffs' liability for damages resulting from both the pipeline strike and the subsequent oil leak.[7] Accordingly, claimants must first establish that the vessels' negligent acts or conditions of unseaworthiness caused those two injuries.

### C. Causation

With respect to the oil leak, Limitation Plaintiffs seek to introduce evidence in Phase I regarding Amplify's own negligence, which Dordellas contends "caused the pipeline leak and release of oil." *See* Dordellas Br. at 3. As such, Dordellas argues that "even if Amplify manages to prove that the Limitation Plaintiffs struck the pipeline in January 2021 and were negligent in doing so," it has no bearing on the "claims of the individual and proposed class claimants unless oil was released and damaged their properties and businesses." *Id.* Capetanissa's argument,

---

[3] Amplify Compl. (Dkt. 123, No. 8:21-cv-01628-DOC-JDE) ¶ 137.
[4] Amplify Compl. ¶ 173.
[5] Amplify Compl. ¶ 182.
[6] Class Action Compl. (Dkt. 148, No. 8:21-cv-01628-DOC-JDE) ¶¶ 168–69.
[7] In a supplemental brief filed in April 2022, for example, Capetanissa urged that "the only discovery that can be allowed is discovery in the Limitation Action on the specific and limited issues in that case: 1. the shipping Defendants' negligence, 2. causation and 3. privity and knowledge of the owners. All other discovery is irrelevant to the narrow issues involved in the Limitation Action and must be stayed." Capetanissa Suppl. Br. (Dkt. 221, No 8:21-cv-01628-DOC-JDE) at 6 (citing Dkt. 148, 71-85).

which slightly varies, relies on the Supreme Court's decision in *Exxon Co., USA v. Sofec, Inc.*, 517 U.S. 830 (1996). According to Capetenissa, "[e]ven if *any* negligence on the part of the BEIJING *caused* the Oil Spill . . . . the Court must consider whether Amplify's criminally negligent conduct cuts off the causal link between any negligence on part of the BEIJING and the Oil Spill." Capetanissa Br. at 7 (emphasis added). The Court agrees that, with respect to the damages for the oil leak that Amplify and Class Action Plaintiffs seek to recover, Amplify's own negligent acts are relevant to the question of whether the vessels' negligent acts caused those damages.

In *Exxon Co., USA v. Sofec, Inc.*, the Supreme Court held that the common law negligence doctrines of proximate causation and superseding cause apply in admiralty notwithstanding the adoption of comparative fault. 517 U.S. 830 (1996). There, the tanker broke from a mooring system due to the alleged negligence of the system's manufacturer. 517 U.S. at 832–33. In the hour that followed, the tanker went through a series of maneuvers to avoid further damage from the hose that previously connected the ship to the mooring system. *Id*. at 833. When the vessel was no longer in danger from the hose, the captain of the tanker navigated the vessel into a reef, running it aground, and resulting in the ship's constructive total loss. *Id*. at 833–34. The shipowner filed an admiralty action alleging that failure of the mooring system manufactured by the defendants was the proximate cause of owner's damages. *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570 (9th Cir. 1995), *aff'd sub nom. Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830 (1996). The district court bifurcated trial of the action, limiting the first phase to the issue of causation after the break. *Id*. Defendants had the burden of showing that plaintiff's actions subsequent to the break were the sole proximate cause or superseding cause of grounding. *Id.* The district court concluded that the captain's conduct of navigating the vessel towards shore was a highly extraordinary and negligent act, and the damages to the ship were not a consequence of the mooring line breaking. *Id.* The Supreme Court affirmed the district court's finding that the captain's negligence was a superseding cause of the loss, thus preventing the mooring system from being held responsible. *Exxon Co.*, 517 U.S. at 840–41.

*Exxon* stands for the proposition that a plaintiff in admiralty who is the superseding and sole proximate cause of her own injury cannot recover part of her damages from a defendant tortfeasor whose actions were a cause-in-fact of the injury. *See id.* Applying *Exxon* to the case here, Limitation Plaintiffs cannot disprove their own negligence for the oil leak by simply demonstrating that the negligence of other actors was another proximate cause of the leak where such negligence was not so unusual or extraordinary that it was the sole proximate cause. *Id.*; *see also Hart v. Browne*, 103 Cal. App. 3d 947, 163 Cal. Rptr. 356 (1980) ("An independent intervening act is a superseding cause relieving the actor of liability for his negligence only if the intervening act is highly unusual or extraordinary and hence not reasonably foreseeable."); *Farr v. NC Mach. Co.*, 186 F.3d 1165, 1169 (9th Cir. 1999).

Here, if the vessels' negligent acts or omissions were a cause-in-fact of the oil leak, only extraordinary negligence by Amplify can constitute an intervening force that breaks the chain of proximate causation required to impose liability upon the vessel owners for the oil leak.[8] Accordingly, Limitation Plaintiffs may introduce evidence establishing that the sole cause of either the pipeline damage or oil leak was Amplify's own extraordinary negligence.[9]

### D. Ancillary Issues

The Court declines to entertain issues related to allocation of fault, damages, or other parties' liability in Phase I. As a practical matter, the Court cannot conduct any comparative fault analysis during the Limitation Trial because numerous potentially liable parties are neither Limitation Plaintiffs nor parties to the Limitation Action. Confining questions of fault and damages to a separate trial also avoids prejudicing claimants' right to a jury. These issues are

---

[8] This is consistent with California tort law, which recognizes that it is possible to have more than one proximate cause of a harm. *See Mitchell v. Gonzales,* 54 Cal.3d 1041, 1049, 1 Cal.Rptr.2d 913, 819 P.2d 872 (Cal. 1991) ("In those few situations[ ] where there are concurrent independent causes, our law provides one cannot escape responsibility for his negligence on the ground that identical harm would have occurred without it. The proper rule for such situations is that the defendant's conduct is a cause of the event because it is a material element and a substantial factor in bringing it about.") (citations omitted); *see also* Restatement, Second, Torts § 439 ("If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's . . . tortious . . . act is also a substantial factor ... does not protect the actor from liability.").

[9] Notwithstanding any pretrial motions or further rulings by the Court, the relevant time period for such evidence includes the time before January 25, 2021 until the initial oil leak in October 2021.

thus appropriately addressed after determining whether shipowners are entitled to exoneration or limitation of liability under the Limitation Act in Phase I. *See Pickle,* 174 F.3d at 449–51.

**IV. DISPOSITION**

Phase I of the trial will consider only (1) whether the vessels were seaworthy; (2) whether any conditions of unseaworthiness caused the pipeline damage; (3) whether any conditions of unseaworthiness caused the oil leak; (4) whether any acts of negligence by the vessel owner or vessel crew caused the pipeline damage, (5) whether any acts of negligence by the vessel owner or vessel crew caused the oil leak; (6) whether Limitation Plaintiffs had privity or knowledge of any negligent acts or conditions of unseaworthiness; and (7) whether Amplify's own conduct was the sole proximate cause of the pipeline damage or the initial oil leak.

Phase I of the Limitation Act trial will not address Amplify's conduct after the oil leak or liability for entities that are not participating in the Limitation Action. Nor will the Court consider allocation of fault or questions of damages at this stage.

Pursuant to this order, the parties shall meet and confer and propose a pretrial schedule. The proposed schedules shall be submitted to the Special Master Panel.

IT IS SO ORDERED.

DATED: February 10, 2023

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE