CONTE C. CICALA, State Bar No. 173554
*conte.cicala@clydeco.us*
THOMAS M. FEDELI, State Bar No. 314647
*thomas.fedeli@clydeco.us*
CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile:  (415) 365-9801

Attorneys for Intervenor Defendant
MARINE EXCHANGE OF LOS ANGELES-
LONG BEACH HARBOR dba MARINE
EXCHANGE OF SOUTHERN CALIFORNIA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### -SOUTHERN DIVISION-

| | |
|---|---|
| PETER MOSES GUTIERREZ, JR., et al., <br><br> Plaintiffs, <br><br> v. <br><br> AMPLIFY ENERGY CORP., et al, <br><br> Defendants/Third-Party Plaintiffs. <br><br> v. <br><br> MEDITERRANEAN SHIPPING COMPANY, S.A., et al, <br><br> Defendants/Third-Party Defendants. <br><br> AND ALL RELATED CASES | Case No.  8:21-cv-01628-DOC-JDE <br> Judge David O. Carter <br><br> **MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF SOUTHERN CALIFORNIA'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> **Date:    April 17, 2023** <br> **Time:   TBD** <br> **Dept:   Courtroom 10A** <br> **Judge:  Hon. David O Carter** <br><br> [*Filed concurrently with the Declaration of Kipling Louttit; Proposed Separate Statement of Uncontroverted Facts and Conclusions of Law; and [Proposed] Judgment*] |

**<ins>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT</ins>**

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 17, 2023, at the time of the pretrial conference, or as soon as the matter can be heard before the Honorable David O. Carter in Courtroom 10A of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California, 92701, Defendant Marine Exchange of Los Angeles-Long Beach Harbor dba Marine Exchange of Southern California ("Marine Exchange") will and hereby does move for summary judgment on the Intervenors' Original Complaint in Intervention filed against it by the issuers of Policy Nos. JCL102718 and JUMB102340, Policy No. EL20KM423Q5X and Policy No. B0180ME2001399 (collectively, "Underwriters")(Doc. 453), who continue to pursue claims in place of the Amplify parties, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Marine Exchange's motion is based on this notice of motion and Motion for Summary Judgment, the memorandum of points and authorities in support of this Motion, the [Proposed] Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Kipling Louttit, the [Proposed] Judgment, all pleadings filed with this Court, and any oral argument that may be presented at the hearing.

Dated:   March 22. 2023          CLYDE & CO LLP


By:   /s/ *Conte C. Cicala*
          Conte C. Cicala
          Attorneys for Intervenor Defendant
          MARINE EXCHANGE OF LOS
          ANGELES-LONG BEACH HARBOR dba
          MARINE EXCHANGE OF SOUTHERN
          CALIFORNIA

# <u>TABLE OF CONTENTS</u>

I.  STATEMENT OF MATERIAL UNCONTROVERTED FACTS .....................1

   A.  Marine Exchange's VTS Operations ...............................................1

   B.  VTS Operating Procedures .............................................................3

   C.  Anchorage Area at LA-LB ..............................................................4

   D.  Amplify Had No Relationship with Marine Exchange...................5

   E.  There is No Law or Procedure that Marine Exchange Report Incidents to any Third Party .........................................................................5

   F.  Additional Material Facts Regarding Marine Exchange ................5

   G.  Allegations Against Marine Exchange Derive From Its Role In Connection With VTS LA-LB .....................................................................6

II.  STANDARD FOR MOTION FOR SUMMARY JUDGMENT .......................6

III.  SUMMARY OF ARGUMENT .................................................................7

IV.  ARGUMENT ........................................................................................7

   A.  Legal Background ...........................................................................7

     1.  The United States Coast Guard Is Legally Responsible For Operation Of The Los Angeles-Long Beach VTS System.........................7

     2.  Marine Exchange May Have No Role In Connection With VTS LA-LB Except Under The Supervision Of USCG ...................................8

   B.  Marine Exchange Is Immune to Suit On Four Separate Grounds .................9

     1.  Suits In Admiralty Act....................................................................10

     2.  Derivative Sovereign Immunity (Yearsley Immunity)...................11

     3.  Ports & Waterways Safety Act .......................................................13

     4.  California Harbors & Navigation Code ...........................................13

   C.  Marine Exchange Owed No Legal Duty of Care to Amplify .....................15

   D.  No Facts Establish Proximate Cause for Any Alleged Negligence by the Marine Exchange ..........................................................................18

V.  CONCLUSION ....................................................................................18

7517275

i

Case No. 8:21-cv-01628-DOC-JDE

MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Rogers,*
780 F.3d 1229 (9th Cir. 2015) ...........................................................................................9, 10, 11

*Bell v. Tug Shrike,*
332 F.2d 330 (4th Cir. 1964) ...........................................................................................16

*British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund,*
882 F.2d 371 (9th Cir. 1989) ...........................................................................................7

*Byrd v. Byrd,*
657 F.2d 615 (4th Cir. 1981) ...........................................................................................16

*Campbell-Ewald Co. v. Gomez,*
577 U.S. 153 (2016) ...........................................................................................11

*Celotex Corp. v. Catrett,*
477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) ...........................................................6, 17

*Dearborn v. Mar Ship Operations, Inc.,*
113 F.3d 995 (9th Cir. 1997) ...........................................................................................9, 10

*Petition of Kinsman Transit Co.,*
338 F.2d 708 (2nd Cir. 1964) ...........................................................................................17

*Ost-West-Handel Bruno Bischoff G.m.b.H. v. Project Asia Line, Inc.,*
160 F.3d 170 (4th Cir. 1998) ...........................................................................................17

*Palestina v. Fernandez,*
701 F.2d 438 (5th Cir. 1983) ...........................................................................................17

*Rowland v. Christian,*
443 P.2d 561 (Cal. 1968) ...........................................................................................15

*Shaw v. United States,*
436 F.Supp.3d 1315 (N.D. Cal. 2020) ...........................................................................................10

*Tarasoff v. Regents of the University of California,*
551 P.2d 334 (Cal. 1976) ...........................................................................................15

*Taylor Energy Co., L.L.C. v. Luttrell,*
3 F.4th 172 (5th Cir. 2021) ...........................................................................................12

7517275

ii

Case No. 8:21-cv-01628-DOC-JDE

MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT

*Tidewater Marine Towing, Inc. v. Curran-Houston, Inc.*,
   785 F.2d 1317 (5th Cir. 1986) ...................................................................17

*Yearsley v. W.A. Ross Construction Co.*,
   309 U.S. 18 (1940) ...................................................................7, 11, 12, 13

**Statutes**

14 CCR § 791.7 ...........................................................................................15

33 C.F.R. §1.01-1 .....................................................................................2, 8

33 C.F.R. §1.01-30 ......................................................................................8

33 C.F.R § 110.214 .....................................................................................4

33 CFR §138.10 et seq .............................................................................15

14 U.S.C. §102(3) ......................................................................................11

14 U.S.C. §102(4) ........................................................................................7

33 U.S.C. § 2716 ......................................................................................15

46 U.S.C. § 30904 ...........................................................................9, 10, 11

46 U.S.C. §70001 ......................................................................................12

46 U.S.C. § 70001(a)(1) ...........................................................................2, 7

46 U.S.C. § 70001(a)(2) .............................................................................2

46 U.S.C. §70001(d) ...............................................................................2, 14

46 U.S.C. §70001(d)(1) .........................................................................2, 12

46 U.S.C. §70001(d)(3)(A) .........................................................................2

46 U.S.C. §70001(d)(3)(B) .........................................................................2

46 U.S.C. §70001(b) ...................................................................................3

46 U.S.C. §70001(k)(2) .............................................................................13

Cal. Harb. & Nav. Code § 445 .............................................................2, 13,

Cal. Harb. & Nav. Code § 445(a) .................................................2, 3, 8, 10

Cal. Harb. & Nav. Code § 448.5 ..........................................................3, 13

Cal. Harb. & Nav. Code § 449 ..................................................................14

MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF
SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT

California Government Code §8670.21(f)(1) ..................................................8

Corporations Code § 5047.5(b) ...............................................................14

Federal Rules of Civil Procedure Rule 56 ................................................1

Federal Rules of Civil Procedure Rule 56(a) ..........................................6

**Other Authorities**

Federal Ports and Waterways Safety Act ................................................2

Ports & Waterways Safety Act ..........................................1, 3, 7, 9, 11, 13

Suits In Admiralty Act ........................................................1, 9, 10, 12

7517275

iv

Case No. 8:21-cv-01628-DOC-JDE

MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF
SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Intervenor Defendant Marine Exchange of Los-Angeles-Long Beach Harbor d/b/a Marine Exchange of Southern California ("Marine Exchange"), by and through its undersigned counsel, moves for summary judgment on the Intervenors' Original Complaint in Intervention ("Complaint in Intervention")(Doc. 453) filed against it by Plaintiffs in Intervention, consisting of various insurers who issued Policy Nos. JCL102718 and JUMB102340, EL20KM423Q5X and Policy No. B0180ME2001399 (collectively, "Underwriters").   As Underwriters have admitted, they stand in the shoes of the Amplify parties in respect of their rights as against the Marine Exchange (and other parties hereto).   (Complaint in Intervention ¶4)     Unless otherwise stated, the term "Amplify" herein refers to all three Amplify parties to the consolidated litigation (Amplify Energy Corp., Beta Operating Company LLC and San Pedro Bay Pipeline Company).

Marine Exchange respectfully submits that application of controlling statutes and legal principles to the uncontroverted facts mandates the conclusion that Marine Exchange is entitled to summary judgment with respect to the Complaint in Intervention. More specifically, Marine Exchange is immune to the claims asserted against it on the bases of four different legal grounds: Suits In Admiralty Act ("SIA"), Ports & Waterways Safety Act ("PWSA"), derivative sovereign immunity (aka "Yearsley Immunity") and the California Harbors & Navigation Code ("HNC").  In addition, Marine Exchange owed no legal duty to the Amplify parties to protect them from harm, and there is no evidence which would support a finding of proximate causation against Marine Exchange.

## I.     STATEMENT OF MATERIAL UNCONTROVERTED FACTS

### A.     *Marine Exchange's VTS Operations*

Marine Exchange is a corporation organized under the Non-Profit Mutual Benefit Corporation Law, Part 3 (commencing with Section 7110) of Division 2 of Title 1 of

the Corporations Code of the State of California.  Declaration of James Kipling Louttit ("Louttit Decl."), ¶ 3; Cal. Harb. & Nav. Code §445(a).  As provided for by state and federal statute, Marine Exchange operates the vessel traffic service for the Ports of Long Beach and Los Angeles ("VTS LA-LB") in conjunction with, and under the supervision of, the United States Coast Guard ("USCG").  Louttit Decl. ¶¶4, 6; 46 U.S.C. §70001(d); Cal. Harb. & Nav. Code § 445.  The goal of VTS LA-LB is to provide seamless navigational information to improve vessel transit safety from 25 NM seaward of PT Fermin to berth or anchorage. Louttit Decl. ¶ 5.

The federal Ports and Waterways Safety Act ("PWSA") authorizes USCG to establishes VTS schemes for waters subject to congested vessel traffic.  46 U.S.C. § 70001(a)(1).[1]  The PWSA also empowers USCG to require vessels to utilize or comply with a VTS when operating in an area covered by such a scheme. 46 U.S.C. § 70001(a)(2).

USCG has statutory authority to "enter into cooperative agreements with public or private agencies, authorities, associations, institutions, corporations, organizations, or other persons to carry out the functions [of vessel traffic services]."  46 USC 70001(d)(1).  However, "a nongovernmental entity may not under this subsection carry out an inherently governmental function."[2]  46 USC 70001(d)(3)(A).

For governmental functions such as issuing an order to a vessel, the Captain of the Port ("COTP") has delegated limited authority to USCG personnel at VTS.  This

---

[1] The PWSA empowers the Secretary of Homeland Security to operate VTS services, which the Secretary delated to the Commandant of the USCG by Delegation 00170.1, Revision 01 in 2003, which were, in turn, sub-delegated to USCG District Commanders.  33 C.F.R. §1.01-1.  Thus where the PWSA speaks of the rights and duties of the "Secretary" in practice it means USCG.

[2] "[T]he term "inherently governmental function" means any activity that is so intimately related to the public interest as to mandate performance by an officer or employee of the Federal Government, including an activity that requires either the exercise of discretion in applying the authority of the Government or the use of judgment in making a decision for the Government."  46 USC 70001(d)(3)(B).

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF
SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT

delegation is set forth in the January 2021 was a Memorandum issued by the Department of Homeland Security, United States Coast Guard, dated August 13, 2020, bearing the subject "DELEGATION OF CAPTAIN OF THE PORT AUTHORITY FOR VTS OPERATIONS." Louttit Decl. ¶ 7, Exhibit A, Par. 3(d).  Marine Exchange employees do not have COTP authority. Louttit Decl. ¶ 8.

The State of California's Harbor and Navigation Code ("HNC") authorizes the Marine Exchange to "operate a vessel traffic service, in cooperation with, and subject to the supervision of, the United States Coast Guard, for the waters of San Pedro Bay, San Pedro Channel, and Santa Monica Bay, within a radius of 25 nautical miles of the Point Fermin Light." Cal. Harb. & Nav. Code § 445(a).  In authorizing Marine Exchange's participation in VTS, HNC also provides that vessels are obligated to defend and indemnify Marine Exchange in connection with incidents, under terms provided in that statute. Cal. Harb. & Nav. Code § 448.5(c).

Marine Exchange cannot unilaterally set fees or terms of use, but must instead obtain concurrence from the Ports of Los Angeles and Long Beach who publish them in their respective Port Tariffs.  Louttit Decl. ¶ 9;

Marine Exchange is not authorized to operate the VTS outside USCG supervision, and does not do so.  Louttit Decl. ¶ 10.  At all times, Marine Exchange's VTS operations are subject to the supervision and oversight of USCG.  Louttit Decl. ¶6.

**B.**   *VTS Operating Procedures*

As mandated by the PWSA, 46 USC § 70001(b), USCG established and maintains a National Standard Operating Procedure ("NSOP").[3]  Louttit Decl. ¶ 11.  The NSOP in effect at the time of the incidents giving rise to this lawsuit is dated 11 July 2011.  Louttit Decl. ¶ 11, Exhibit B.  The NSOP, in turn, provides that the VTS Director is responsible for the development of VTS Internal Operating Procedures

---

[3] In February 2023, USCG revised and updated the NSOP.  Marine Exchange was not involved or consulted in the NSOP revision process. Louttit Decl. ¶ __.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

("IOP") that "shall reflect the internal procedures that are consistent with the procedures/policy set forth in [the VTS NSOP]." Louttit Decl. ¶ 14, Exhibit B, NSOP, Chapter 3(B)(1)(a). The NSOP also requires VTS Directors "to ensure that IOPs are kept current and accurately capture the operational procedures actually being used by the VTS." Louttit Decl. ¶ 15, Exhibit B, NSOP Chapter 3(B)(1)(c).

Marine Exchange provides input, suggests and indicates approval of changes to the VTS IOP, but is not authorized to change the IOP specifically or VTS procedures generally. (Louttit Decl. ¶16) USCG approval is required for any changes to the IOP and/or VTS procedures. *Id.* Put another way, neither the IOP nor VTS Procedures can change without USCG approval and authorization. *Id.*

VTS LA-LB maintains a round-the-clock watch ordinarily staffed by two Marine Exchange employees and one USCG person. Louttit Decl. ¶ 18, Exhibit C, IOP Chapter 7(B). In VTS LA-LB, the VTS Director is a USCG Chief Petty Officer. Louttit Decl. ¶ 19. In January 2021, the VTS Director was Chief Petty Officer Casey Roberts. *Id.* In October 2021, the VTS Director was Chief Petty Officer Raymond Sablan. *Id.*

Marine Exchange VTS personnel work alongside USCG personnel and together they follow USCG procedures; for example, USCG and Marine Exchange personnel staff radar systems, engaged in radio communications with vessels, inform vessels of anchor alarms on their respective vessels, and otherwise perform tasks in support of the VTS LA-LB as set forth in statute, regulation and VTS procedures. Louttit Dec. ¶20. On January 25, 2021, this same structure was in place and, among other things, VTS personnel – both USCG uniformed personnel and Marine Exchange employees – interacted with various vessels including the MSC DANIT and BEJING as part of their regular functions. Louttit Decl. ¶21.

## C.   *Anchorage Area at LA-LB*

The anchorage area at LA-LB is defined by federal regulation. 33 C.F.R § 110.214. Specific anchorage "circles" within that area were established by USCG (with

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT

possible input from other agencies/stakeholders) and charted by NOAA. Louttit Decl. ¶ 22. In addition, as of January 2021, there existed 23 "contingency" anchorages which were not charted, but which were established, and the use of which was authorized, by the COTP. Louttit Decl. ¶ 23; Exhibit A, Par. 8.

### D. *Amplify Had No Relationship with Marine Exchange*

No Amplify party has ever been a "VTS User" as defined by statute, regulation or policy. Louttit Decl. ¶ 24. As of the October 2021 oil spill, no Amplify party had any relationship with the Marine Exchange. Louttit Decl. ¶ 25. At no time prior to the October 2021 oil spill had anyone acting on behalf of the Amplify parties contacted or communicated with anyone at VTS LA-LB generally or the Marine Exchange specifically. Louttit Decl. ¶ 26. Prior to the oil spill, there is no indication anyone – whether USCG uniformed personnel or Marine Exchange employees – ever communicated to the Amplify parties that they would be notified of marine incidents of any kind. Louttit Decl. ¶ 27.

### E. *There is No Law or Procedure that Marine Exchange Report Incidents to any Third Party*

No statute, regulation or VTS procedure requires VTS to report incidents to any third party. Louttit Decl. ¶28. No statute, regulation or VTS procedure requires the Marine Exchange to independently report incidents to anyone. *Id.*

### F. *Additional Material Facts*

As a consequence of its nonprofit status, and lack of control over its own VTS fee structure, Marine Exchange does not, and cannot, secure an insurance tower capable of responding to a catastrophic event such as an oil spill. Louttit Decl. ¶ 29. If Marine Exchange cannot reasonably rely on the immunities and defense/indemnity rights it understands are provided by federal and state statute and common law, it is doubtful that it will be able to continue to support VTS operations under the current structure. (Louttit Decl. ¶30.) It is unclear whether, and on what timeframe, the USCG would be able to find a suitable replacement and/or funding mechanism for the services provided

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

to VTS LA-LB, with unpredictable – but likely significant – implications for marine safety and maritime commerce. *Id.*

### G.  *Allegations Against Marine Exchange Derive From Its Role In Connection With VTS LA-LB*

Underwriters' allegations against Marine Exchange unquestionably derive from its role in connection with VTS LA-LB.  (CIA ¶68)("Marine Exchange operates the VTS for Southern California in conjunction with the Coast Guard…").  In summary, Underwriters allege (and Marine Exchange denies) that "Marine Exchange was negligent in failing to advise or direct the ships to leave their anchorages before the impending storm; in failing to properly monitor, supervise and regulate vessel traffic despite deliberately assigning vessels to anchorages near the Pipeline; and in failing to notify Amplify that Vessels had dragged anchor while repeatedly crossing over the Pipeline."  (CIA ¶191; *See* also ¶¶ 117-122, 202-205, 219-229).

There is no reasonable dispute that, at all times relevant, including January 25, 2021, Marine Exchange VTS personnel worked alongside USCG personnel and together they followed USCG procedures; for example, USCG and Marine Exchange personnel staffed radar systems, engaged in radio communications with vessels including MSC DANIT and BEIJING, informed both vessels of anchor alarms on their respective vessels, and otherwise performed tasks in support of the VTS LA-LB as set forth in statute, regulation and VTS procedures.  (*See*, e.g., Louttit Decl. ¶¶20-21).

## II.   STANDARD FOR MOTION FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Federal Rules of Civil Procedure.  Judgment in favor of the moving party is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to its case and upon which it bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

To withstand summary judgment, the non-moving party (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible. *British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

## III.   SUMMARY OF ARGUMENT

Marine Exchange is immune to suit, and/or not liable as a matter of law, for claims against it relating to its role in VTS LA-LB, on four distinct legal grounds, each and every one of which separately justifies and mandates dismissal of the action against it:  (i) The Suits in Admiralty Act; (ii) Derivative Sovereign Immunity, also called *Yearsley* Immunity; (iii) the Ports & Waterways Safety Act; and (iv) the California Harbors & Navigation Code.

As an additional and separate grounds for dismissal, there does not exist, and this Court should not create, a duty for the Marine Exchange to protect third parties such as Amplify from harm.

Finally, there is no evidence of any negligence on the part of Marine Exchange that is the proximate cause of any damages alleged by Amplify or its insurers.

## IV.   ARGUMENT

### A.   *Legal Background*

#### 1.   The United States Coast Guard Is Legally Responsible For Operation Of The Los Angeles-Long Beach VTS System

The United States Coast Guard ("USCG") has a primary statutory duty to "develop, establish, maintain, and operate…aids to maritime navigation." 14 U.S.C. §102(4). More specifically, the Ports and Waterways Safety Act empowers the Secretary of Homeland Security to "construct, operate, maintain, improve, or expand vessel traffic services" (46 U.S.C. §70001(a)(1)) and imposes on the Secretary a

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

specific obligation to "require appropriate vessels that operate in an area of a vessel traffic service to utilize or comply with that service" (46 U.S.C. §70001(a)(1)). The Secretary delegated his functions to the Commandant of USCG by Delegation 00170.1, Revision 01 in 2003. The Commandant sub-delegated them to District Commanders. 33 C.F.R. §1.01-1. USCG Captains of the Port enforce many responsibilities within their respective areas, including, without limitation, "regulated navigation areas" and "ports and waterways safety." 33 C.F.R. §1.01-30.

Neither the Commandant of USCG, nor a USCG District Commander, nor USCG Captain of the Port, is authorized by statute to delegate any of the Secretary of Homeland Security's responsibilities to a private entity such as Marine Exchange.

Although Subrogated Insurer's CIA alleges that Marine Exchange is "responsible for the safe passage of all vessels within a 25-mile radius from Point Fermin in the San Pedro Bay area," (CIA, ¶ 66), that is incorrect as a matter of law. Marine Exchange jointly operates the VTS for that area in conjunction with USCG, but the legal authorization to operate the VTS, and thus legal responsibility for its operation, rests with USCG.

### 2. Marine Exchange May Have No Role In Connection With VTS LA-LB Except Under The Supervision Of USCG

The California legislation that authorizes Marine Exchange's role in VTS explicitly recognizes the overall authority of USCG. California Government Code §8670.21(f)(1) provides that Marine Exchange may operate a VTS system for Los Angeles-Long Beach "if the system is approved by the Coast Guard." California Harbor & Navigation Code §445(a) provides that Marine Exchange may operate the VTS for Los Angeles-Long Beach "in cooperation with, *and subject to the supervision of,* the United States Coast Guard" (emphasis added).

The USCG memorandum dated August 13, 2020 delegates COTP authority for VTS operations at Los Angeles-Long Beach to USCG officers, only, and not to Marine Exchange employees. (Louttit Decl. ¶8 and Exh. A). The memorandum makes it quite

clear that although "[b]oth civilian employees of the Marine Exchange and Coast Guard personnel stand watch at VTS" (COTP memo, para. 3(a)), it is the USCG personnel who are in charge, consistently with the delegation of legal authority to them. The memo states: "The COTP holds federal authority which may be used to exert real-time control over the movement of vessels under certain circumstances. This authority is derived from the *Ports and Waterways Safety Act* and is contained in regulations published in Title 33 Code of Federal Regulations (CFR) Part 160. Coast Guard watchstanders who exercise COTP authority in accordance with this memorandum are doing so as the direct representative of the COTP." *Id.* at ¶3(b). "Coast Guard Vessel Traffic Management Specialists (VTMS) are authorized to exercise COTP… only in the situations delineated below and where time does not permit consultation with the COTP or [her] designated representative." *Id.* at ¶3(d).

A *Memorandum of Agreement for Vessel Traffic Management in the Los Angeles-Long Beach Approaches and Harbors* between USCG, the State of California, the Port of Los Angeles, the Port of Long Beach, Jacobsen Pilot Service, Los Angeles Pilot Service and the Marine Exchange provides for cooperation in "the process of overseeing safe and efficient maritime operations in the approaches to, and within the Los Angeles-Long Beach Harbors", but it also specifically provides "Nothing in this Agreement is intended to conflict with current law or regulation of the United States…" (Louttit Decl. Exh. D at pp 1-2). Thus, although the parties agree to cooperate in operating the vessel traffic management system, they do so under the rubric of governing federal law, particularly the PWSA.

**B.**    ***Marine Exchange Is Immune to Suit On Four Separate Grounds***

There are four separate immunity doctrines which each, independently, require dismissal of the claims against Marine Exchange.  While Marine Exchange should be dismissed on the basis of all four, the application of even one would suffice to bar suit.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

### 1.    Suits In Admiralty Act

The Suits in Admiralty Act ("SIAA"), 46 U.S.C. §§ 30901 et seq. provides the sole remedy against "the officer, employee or agent of the United States… whose act or omission gave rise to the claim."  46 U.S.C. § 30904.  In both *Dearborn v. Mar Ship Operations, Inc.,* 113 F.3d 995 (9th Cir. 1997) and *Ali v. Rogers,* 780 F.3d 1229 (9th Cir. 2015), the Ninth Circuit held that the exclusivity provision in the Suits in Admiralty Act, 46 U.S.C. 30904, precludes suit against an agent of the United States in admiralty arising out of the same subject matter as a claim that could be brought against the United States. "The SIAA's exclusivity provision precludes any claims arising from the same facts being brought against any parties but the United States." *Ali v. Rogers,* 780 F.3d 1229, 1236 (9th Cir. 2015). In waiving its sovereign immunity for admiralty actions, the United States has rendered the remedies allowed by the waiver exclusive of any action against an agent. *Dearborn,* 113 F.3d at 996.  Because USCG is legally responsible for the operation of the Los Angeles-Long Beach VTS, only the United States can be sued for alleged negligence in its operation.  Subrogated Insurer's Intervention Complaint alleges a cause of action against Marine Exchange in negligence arising out of the same subject matter as would a negligence claim against the United States, so it is precluded by 46 U.S.C. §30904.

In *Dearborn*, the Ninth Circuit adopted the common law definition of agent when analyzing relationships between the United States and private entities for purposes of the exclusivity provision of the Suits in Admiralty Act. The court held that two characteristics are usually dispositive: (1) the United States must exercise significant control over the agent's activities – either day-to-day control or overall control and direction of the mission, and (2) the agent must be engaged in conducting the business of the United States. *Id.* at 997-8 & n.3; *Shaw v. United States,* 436 F.Supp.3d 1315, 1324 (N.D. Cal. 2020).

The United States exercises significant control over Marine Exchange's activities, both in terms of day-to-day control and overall control and direction of the

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

1  mission. The Complaint in Intervention acknowledges that "Marine Exchange operates
2  the VTS for Southern California in conjunction with the Coast Guard," (CIA ¶ 68)
3  acknowledging that USCG officers are an integral part of the day-to-day operations of
4  the VTS along with Marine Exchange employees. As already noted, overall control and
5  direction of the mission lies with USCG as a matter of law, because Marine Exchange
6  is only authorized to act under the supervision of USCG. Cal. Harb. & Nav. Code
7  §445(a).

8       Operating the VTS is very much "the business of the United States," because
9  USCG has primary responsibility for operating aids to navigation such as the VTS. 14
10 U.S.C. §102(3).

11      The legal effect of 46 U.S.C. §30904 is that the Court does not have subject-
12 matter jurisdiction over the remaining claims against Marine Exchange. *Ali,* 780 F.3d
13 at 1236 (9th Cir. 2015).  Summary judgment is therefore appropriate on this ground.

14           **2.      Derivative Sovereign Immunity (Yearsley Immunity)**

15      The doctrine of "derivative sovereign immunity," also called "*Yearsley*
16 Immunity, is to the same general effect: a government contractor is immune when (i) it
17 performed acts pursuant to a valid authorization of Congress and (ii) the contractor did
18 not exceed the scope of that authority.  *Yearsley v. W.A. Ross Construction Co.*, 309
19 U.S. 18 (1940).  In *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), the Supreme
20 Court rejected the narrow view previously held by the Ninth Circuit and held that
21 *Yearsley* immunity is not confined to cases of property damage caused by public works
22 projects but protects "the contractor's performance in compliance with all federal
23 directions." *Campbell-Ewald*, 577 U.S. at 167 n.7. The *Campbell-Ewald* Court
24 explained the scope of *Yearsley* immunity as follows: "Where the Government's
25 authority to carry out the project was validly conferred, that is, if what was done was
26 within the constitutional power of Congress,…there is no liability on the part of the
27 contractor who simply performed as the Government directed."  *Id.* at167 (internal
28 citations omitted).

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF
SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT

Here, there is no doubt that the USCG's authority to conduct VTS operations was validly conferred, in the sense that the PWSA was within the constitutional power of Congress. Marine Exchange was a contractor that simply performed as the USCG directed at all times. *See also Taylor Energy Co., L.L.C. v. Luttrell*, 3 F.4th 172, 176 (5th Cir. 2021) ("The appropriate inquiry is whether [the contractor] adhered to the Government's instructions as described in the contract documents.").

Marine Exchange is immune from suit under the *Yearsley* doctrine of derivative sovereign immunity. There is no reasonable dispute that, at all times relevant, including January 25, 2021, Marine Exchange VTS personnel worked alongside USCG personnel and together they followed USCG procedures; for example, USCG and Marine Exchange personnel staffed radar systems, engaged in radio communications with vessels including MSC DANIT and BEIJING, informed both vessels of anchor alarms on their respective vessels, and otherwise performed tasks in support of the VTS LA-LB as set forth in statute, regulation and VTS procedures. (*See, e.g.,* Louttit Decl. ¶¶20-21)

Here, just as Congress delegated responsibility for operations of VTS to the USCG, 46 U.S.C. §70001, it also authorized USCG to "enter into cooperative agreements with public or private agencies, authorities, associations, institutions, corporations, organizations or other persons to carry out…" those functions. 46 U.S.C. §70001(d)(1). At VTS LA-LB, this was accomplished through the Memorandum of Agreement between USCG, the Marine Exchange and various other parties, as well as the NSOP and IOP under which VTS LA-LB operations are carried out. (Louttit Decl. ¶¶ 11-17, 31 and Exhs. B-D) The entire "public private partnership" between USCG and Marine Exchange is obviously, and necessarily, carried out under the rubric of this statutory, regulatory, and procedural umbrella.

Just as obviously, Marine Exchange operated within this authority, whether set forth in statute, regulation, procedure (NSOP/IOP) or the Memorandum of Agreement. Amplify has never even alleged that Marine Exchange exceeded the scope of its

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF
SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

delegated authority, far less has it provided any evidence to that effect; to the contrary, the crux of the claims against Marine Exchange are that – according to Amplify – it should have done more. There is no genuine factual dispute about Marine Exchange's adherence to the Government's directives.  As such, MX is plainly immune to suit under the Yearsley doctrine.  As with SIAA, the effect of the doctrine is to deprive the court of subject matter jurisdiction over the claim. *See Cunningham . General Dynamic Information Technology*, 888 F.3d 640, 649 (4th Cir. 2018).

### 3.      Ports & Waterways Safety Act

As a third independent basis to dismiss this action, a separate "limitation of liability" provision for "non-federal vessel traffic service operators" set forth in the PWSA also provides that the Marine Exchange is not liable for Amplify's claims.  46 USC § 70001(k)(2) states "An entity operating a non-Federal vessel traffic information service or advisory service pursuant to a duly executed written agreement with the Coast Guard… is not liable for damages caused by or related to information, advice or communication assistance provided by such entity or pilot while so operating or acting" in the absence of gross negligence or willful misconduct.  Marine Exchange and USCG are party to the Memorandum of Agreement For Vessel Traffic Management In the Los Angeles-Long Beach Approaches and Harbors, and both signatories, which is unquestionably a "duly executed written agreement with the Coast Guard."  (Louttit Decl. Exh. D)  There can be no genuine factual dispute about the fact that Marine Exchange was acting pursuant to that agreement when performing the functions of which Amplify complains.  As such, pursuant to 46 U.S.C.  §70001(k)(2), Marine Exchange is "not liable for damages caused by or related to information, advice or communication assistance…" here, and summary judgment is appropriate on this ground as well.

### 4.      California Harbors & Navigation Code

As the fourth and final basis for immunity, the California statute which permits Marine Exchange to have any involvement with VTS LA-LB also provides that it is

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

immune from suit.  As part of the wide-ranging Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, enacted following a series of major oil spills including the EXXON VALDEZ in Alaska and the AMERICAN TRADER just off the coast of Orange County, the California legislature authorized the Marine Exchange "to operate a vessel traffic service, in cooperation with, and subject to the supervision, the United States Coast Guard" in the VTS LA-LB area.  Cal. Harb. & Nav. Code § 445 et seq. This same statute made the Marine Exchange generally immune to claims by, and entitled to defense and indemnity from, the vessels using its services.  Cal. Harb. & Nav. Code § 448.5 ("No vessel subject to the requirements of this article shall assert any claim against the marine exchange or any officer, director, employee, or representative of the marine exchange for any damage, loss, or expense…sustained by the vessel or its owners, agents, charterers, operators, crew, or third parties arising out of, or connected with, directly or indirectly, the marine exchange's operation of the vessel traffic service, even though resulting in whole or in part from negligent acts or omissions…").

The HNC further provides that "**the marine exchange and** its officers and directors are subject to Section 5047.5 of the Corporations Code…"  which section, in turn, bars *all* monetary actions, by whomever brought and whatever the cause of action. Cal. Harb. & Nav. Code § 449 (emphasis added)  While the Corporations Code § 5047.5(b) by its terms bars monetary actions only against officers and directors, the plain words of Cal. Harb. & Nav. Code § 449(a) show that the effect and intent is to afford the Marine Exchange itself the same immunity.  This interpretation is reinforced by the legislative history which states, "The bill... would exempt **the corporation and** its officers and directors from liability."  1991 Cal. Legis. Serv. Ch. 969 (A.B. 134)(WEST)(emphasis added)

There can be no factual dispute about the availability of this immunity because the relevant provisions of the Harbors & Navigation Code refer specifically to the Marine Exchange.  Summary judgment should be granted on this ground as well..

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

### C.   *Marine Exchange Owed No Legal Duty of Care to Amplify*

As a separate and independent basis for summary judgment, the Marine Exchange owed no legal duty of care to Amplify.   Marine Exchange has found no authority holding that a party to a 46 U.S.C. § 70001(d) "cooperative agreement" with USCG (such as Marine Exchange) to carry out VTS functions owes any duty of care to protect third parties (such as Amplify) from harm.  To prosecute their claim on behalf of Amplify, Underwriters effectively ask this Court to create one.  It should not do so; and the absence of a legal duty further justifies summary judgment in Marine Exchange's favor.

Among other issues, creating a duty here would place Marine Exchange – a small nonprofit company – on equal liability footing with facility owners/operators such as Amplify and vessel owners/operators of not only the container ships that are party to this case, but chemical and oil tanker vessels as well.  The United States and California have both clearly signaled this is not the intent of the legal regime governing VTS and entities which support VTS.  As discussed above, both state and federal law provide substantial legal immunities and protections for government contractors/agents generally and the Marine Exchange specifically.  In contrast, federal and State law both require vessels and facility owners/operators to have adequate financial resources to pay cleanup and damage costs arising from an oil spill.  33 U.S.C. § 2716; 33 CFR §138.10 et seq; 14 CCR §§ 791 et seq.  For example, California requires $1 billion in financial responsibility for tanker vessels, and $300,000,000 for nontank vessels and certain offshore marine facilities.  14 CCR § 791.7.

It has long been firmly established as a matter of California state law that there is no general duty in tort to take affirmative action to protect another from harm. *Rowland v. Christian*, 443 P.2d 561 (Cal. 1968); *Tarasoff v. Regents of the University of California*, 551 P.2d 334 (Cal. 1976).  These cases recognize that such a duty to take positive action can only arise where there exists a "special relationship" giving rise to a duty of care. *Tarasoff*, 551 P.2d 334, 343 ("Although …under the common law, as a

CLYDE & CO US LLP
150 California Street, 15ᵗʰ Floor
San Francisco, California 94111
Telephone: (415) 365-9800

general rule, one person owed no duty to control the conduct of another, nor to warn those endangered by such conduct, the courts have carved out an exception to this rule in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct.")

There can be no such "special relationship" duty here.  Marine Exchange had no relationship at all with Amplify, let alone a "special relationship."  (See Louttit Decl. ¶¶24-27).  In *Rowland v. Christian*, the California Supreme Court listed several factors as being relevant to the question of whether the requisite "special relationship" exists, including the following: "[T]he extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Rowland*, 443 P.2d 561, 564. As noted above, it would be almost impossible for Marine Exchange to buy insurance to protect against the risk of a catastrophic environmental event. That factor alone suggests that Marine Exchange owed no "special relationship" duty to the vessels in the VTS zone to take affirmative action for their safety, let alone to third parties such as Amplify, whose interests might possibly be affected by the movement of the vessels in the VTS zone. The imposition on Marine Exchange of uninsurable liability to third parties would likely force it to discontinue its role in support of the LA-LB VTS, a "consequence to the community" that militates against any finding of a "special relationship" duty.

The existence of any duty owed by Marine Exchange to Amplify should be governed by general maritime law, the federally-uniform body of judge-made law, and statute rather than directly by state common law. However, there are very few general maritime law cases about the "special relationship" duty to take positive action to protect the interests of another. In the absence of an established general maritime law rule, an admiralty court may look to state law for guidance. *See, e.g.*, *Bell v. Tug Shrike*, 332 F.2d 330, 334 (4th Cir. 1964); *Byrd v. Byrd*, 657 F.2d 615, 617 (4th Cir. 1981)

MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF
SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT

("[A]dmiralty law, at times, looks to state law, either statutory or decisional, to supply the rule of decision where there is no admiralty rule on point"); *Palestina v. Fernandez*, 701 F.2d 438, 439 (5th Cir. 1983); *Tidewater Marine Towing, Inc. v. Curran-Houston, Inc.*, 785 F.2d 1317, 1318 (5th Cir. 1986); *Ost-West-Handel Bruno Bischoff G.m.b.H. v. Project Asia Line, Inc.*, 160 F.3d 170, 174 (4th Cir. 1998) ("[I]n an admiralty case, a court applies federal common law and can look to state law in situations where there is no admiralty rule on point").

Thus, in the absence of a well-established federal maritime rule about the "special relationship" duty to take positive action to protect the interests of another, a federal court exercising admiralty jurisdiction may look to state law – in this case, to the California state law principles stated in such cases as *Tarasoff* and *Rowland*. There is at least one example of a district court in the Ninth Circuit relying on *Tarasoff* principles in a federal maritime case. In *Sakuda v. Kyodogumi Co. Ltd,* 555 F.Supp. 371 (D. Haw. 1983), the parents of a member of the riding crew of a towed vessel brought a wrongful death action against the defendant, the husbanding agent of the tug that towed the vessel, arguing that the defendant had negligently failed to warn the crew member of potential danger. Citing *Tarasoff* (among other authorities), the district court held that no duty existed because there was no special relationship between the defendant and the deceased. *Sakuda*, 555 F.Supp. at 374.

To repeat: there was no "special relationship" between Marine Exchange and Amplify, because there was no relationship at all. Amplify has provided no evidence of facts that might be material to a finding of a "special relationship" that might give rise to a duty of care on Marine Exchange's part at all, let alone that would outweigh the very clear reasons  against finding such a duty. It follows that Marine Exchange is entitled to summary judgment on this ground, too.

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

### D.    *No Facts Establish Proximate Cause for Any Alleged Negligence by the Marine Exchange*

To the extent Underwriters may attempt to craft novel arguments of liability to avoid the consequences of the straightforward arguments set forth above, they can present no evidence of any negligent act which is the proximate cause of their alleged damages. *Petition of Kinsman Transit Co.,* 338 F.2d 708 (2nd Cir. 1964)(discussing proximate cause as an element of maritime law negligence); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)(nonmoving party must present more than "mere scintilla" of evidence to defeat summary judgment).

## V.    CONCLUSION

For reasons set forth herein, Marine Exchange respectfully requests that this Court grant its motion and enter judgment in favor of Marine Exchange dismissing the Complaint in Intervention with prejudice.

Dated:  March 22. 2023            CLYDE & CO LLP


                                 By:  /s/ *Conte C. Cicala*
                                      Conte C. Cicala
                                      Attorneys for Intervenor Defendant
                                      MARINE EXCHANGE OF LOS
                                      ANGELES-LONG BEACH HARBOR dba
                                      MARINE EXCHANGE OF SOUTHERN
                                      CALIFORNIA

7517275

18

Case No. 8:21-cv-01628-DOC-JDE

MARINE EXCHANGE OF LOS ANGELES-LONG BEACH HARBOR dba MARINE EXCHANGE OF
SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT