UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PETER MOSES GUTIERREZ, JR., *et al.*,<br><br>            Plaintiffs,<br><br>v.<br><br>AMPLIFY ENERGY CORP., *et al.*,<br><br>            Defendants. | Case No. 8:21-CV-01628-DOC(JDEx)<br><br>**ORDER GRANTING ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS UNDER RULE 23(H)**<br><br>Judge:   David O. Carter<br>Room:    10A |

Before the Court is a motion for attorneys' fees, expenses, and class representative service awards. The Court conducted a fairness hearing on April 24, 2022. Having considered the moving papers and the information provided at the hearing, the Court GRANTS the motion for attorneys' fees, costs, and Class Representative service awards.

I. **BACKGROUND**

This litigation arises from an oil spill in the San Pedro Bay on or around October 1, 2021. Amplify owns and operates an offshore 17.5-mile-long crude oil pipeline that transports crude oil from an offshore oil platform, also owned and operated by Amplify, to the Port of Long Beach. When the pipeline ruptured, oil spilled into the Pacific Ocean and spread along the coast of Orange County. Dkt. 454 ¶¶ 1, 2, 4.

In the aftermath of the oil spill, and as early as October 4, 2021, certain plaintiffs filed the first of many class action complaints against Amplify. On December 20, 2021, this Court consolidated many of the cases into this lead case, *Gutierrez, et al. v. Amplify Energy, et al.*, and administratively closed all related cases. *See* Dkt. 38. The Court invited attorneys to apply for leadership positions on behalf of plaintiffs and, after briefing and oral presentations to the Court, appointed Wiley Aitken of Aitken* Aitken* Cohn, Stephen Larson of Larson LLP, and Lexi Hazam of Lieff Cabraser Heimann & Bernstein LLP as Interim Lead Co-Counsel. *Id*. at 3.

After this Court consolidated separately filed class actions into this lead case, Interim Co-Lead Counsel filed a consolidated amended class action complaint in early 2022. Dkt. 102. Plaintiffs have subsequently amended. Plaintiffs' operative pleading in this lead case is now the 110-page Second Amended Consolidated Complaint ("SAC"), filed on October 4, 2022. Dkt. 454.

Plaintiffs brought claims against the Amplify Defendants for strict liability under the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act

(California Code Section 8670, et seq.) and the Oil Pollution Act of 1990 (33 U.S.C. Section 2701, et seq.), and under the common law for ultrahazardous activities. Plaintiffs also brought common law claims against the Amplify Defendants for negligence, public nuisance, negligent interference with prospective economic advantage, trespass, and continuing private nuisance. Finally, Plaintiffs brought a claim for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. Dkt. 454, ¶¶ 236-347.

The Parties then conducted substantial discovery. Following their appointment, Interim Co-Lead Counsel negotiated search protocols with Amplify to facilitate discovery. This process involved lengthy negotiations on ESI parameters, including custodians, search terms, and non-custodial data sources. After these negotiations, Plaintiffs and Amplify agreed to a Document and Electronically Stored Information Production Protocol (Dkts. 96 (Stipulation) 99 (Order) and a protocol for removing and preserving of portions of the damaged pipeline (Dkts. 119 (Amended Stipulation), 121 (Order).

These agreements set into motion discovery in earnest. In response to comprehensive document requests, the Parties have exchanged over 360,000. Interim Co-Lead Counsel was charged with reviewing and analyzing Amplify's documents, which required substantial time by counsel and consultation with experts and consultants. Dkt 476-3 (Hazam Prelim. Decl.) ¶¶ 14, 25-26. These documents included highly technical topics such as Shoreline Cleanup Assessment Technique data relating to oil fate and data sets related to pipeline integrity. *Id*. ¶ 25.

The Parties brought many disputes before the Special Master Panel ("SMP") appointed by the Court to oversee discovery. Dkt. 38, § IV. Among these disputes was a dispute regarding the release of California Department Fish and Wildlife ("CDFW") historical fishing data, and a dispute regarding the scope of the releases Amplify executed with claimants in its claim process pursuant to the Oil Pollution

Act before the SMP. Apprised of the facts of this case, the Parties then engaged in settlement negotiations.

In advance of the mediation, Plaintiffs and Amplify prioritized discovery related to damages. Plaintiffs engaged some of the same experts that survived *Daubert* challenges in similar litigation, *Andrews v. Plains All American Pipeline*, L.P., No. 2:15-cv-04113-PSG (C.D. Cal.), a class action lawsuit on behalf of businesses and property owners harmed by the Refugio oil spill. These experts include a renowned oil fate and transport expert, an expert in the field of real estate damages, an economist, and a marine scientist, who submitted confidential preliminary reports for purposes of the mediation to support Plaintiffs' claims and damages. *See* Dkt. 476-3 (Hazam Prelim. Decl.) ¶ 26. The Parties exchanged and submitted detailed mediation statements addressing liability and damages, including expert reports and rebuttal reports. *See* Dkt. 476-2 (Phillips Decl.) ¶ 5. As the mediators recognized, substantial work went into mediation preparation, and the mediation itself involved complex issues that required significant analysis. *Id.* ¶¶ 5, 9.

Under the proposed Settlement, Amplify will pay $34 million to the Fisher Class. The Fisher Class Settlement Amount, together with interest earned thereon, will constitute the Fisher Class Common Fund. Separately, Amplify will pay $9 million to the Property Class. The Property Class Settlement Amount, together with interest thereon, will constitute the Property Class Common Fund. Separately, Amplify will pay $7 million to the Waterfront Tourism Class. The total combined value of the three Funds is $50 million. No portion of the combined $50 million will revert to the Amplify Defendants. After deduction of notice-related costs and any Court-approved award of attorneys' fees, reimbursement of litigation expenses, and service awards to Class Representatives, all of the remaining monies will be distributed to the Class members in accordance with Plaintiffs' proposed Plans of Distribution, which were filed with the Court on December 16, 2022. Dkt. 621.

This Court granted preliminary approval of the Settlement on December 7, 2022. Dkt. 599. After considering the factors set forth in this Court appointed Interim Co-Lead Counsel Wylie A. Aitken, Lexi J. Hazam, and Stephen Larson as Interim Settlement Class Counsel. Dkt. 599.

Plaintiffs now move for an order approving the requested attorneys' fees, expenses, and service awards.

## II. ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Plaintiffs move for (1) $12.5 million in attorneys' fees, representing 25% of the Settlement Funds, (2) reimbursement of $1,291,067.91 in litigation costs incurred by Class Counsel, and (3) service awards of $10,000 to each Class Representative. *See* Plaintiffs' Notice of Motion and Motion for Attorneys' Fees, Expenses, and Service Awards Under Rule 23(H) ("Fees Mot.") at 2. The Court addresses each request in turn.

### A. Attorneys' Fees

#### 1. Legal Standard

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs. The court "must carefully assess" the reasonableness of the fee award. *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Because the benefit to the class is easily quantified in common-fund settlements," courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id*. The Court will analyze Interim Settlement Class Counsel's fee request under both theories, starting with the percentage-of-the-

common-fund theory, and then a lodestar-cross-check.

### 2. Discussion

The "benchmark" percentage for attorney's fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "However, in most common fund cases, the award exceeds that [25%] benchmark." *Spencer-Ruper v. Scientiae, LLC*, No. 819CV01709DOCADS, 2021 WL 4895740, at *1 (C.D. Cal. Sept. 24, 2021) (Carter, J.) (citing *Omnivision*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)). "Absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Omnivision*, 559 F. Supp. 2d at 1048.

Here, Interim Settlement Class Counsel requests that the court approve a fee award of $12.5 million, or 25% of the gross Settlement amount. Fees Mot. 2. The fee request is fully supported by the factors enunciated in *Vizcaino*, as explained below.

The common fund approach is also endorsed by California law, a relevant consideration given that many of the Settlement Classes' claims are brought under this State's law. *See Laffitte v. Robert Half Int'l Inc.,* 1 Cal. 5th 480, 503 (2016) (endorsing percentage of the fund approach and affirming an award equal to one-third of the common fund).

#### a. Percentage-of-the-Common-Fund Method

The selection of a percentage must "take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. When assessing the reasonableness of a fee award under the common fund theory, courts consider factors such as (1) the results achieved, (2) the risk of litigation, (3) the complexity of the case and skill required, (4) the benefits beyond the immediate generation of a cash fund, and (5) awards made in similar cases. *Omnivision*, 559 F. Supp. 2d at

1046; *Vizcaino*, 290 F.3d at 1048-50).

### i. Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046.

The Court finds that the monetary relief here is a strong result for the Class in light of the costs and risks of delay of litigation, particularly given Amplify's available funds. As detailed in Plaintiffs' Motion for Preliminary Approval, the Settlement represents a large portion of the insurance funds that remain available to Amplify to pay claims—an amount that will only decrease with time as Amplify pays ongoing clean-up, litigation and other costs. Dkt. 476 at 12-13. *See also* Dkt. 476-2 (Phillips Decl.) ¶ 11 ("Based on my experience as a litigator, a former U.S. District Judge and a mediator, I believe that the Settlement represents a recovery and outcome that is reasonable and fair for the settlement classes …. I further believe it was in the best interests of the parties that they avoid the burdens and risks associated with taking a case of this size and complexity to trial, particularly given Amplify's available insurance and financial position. I strongly support the Court's approval of the Settlement in all respects.").

The Court also finds that the injunctive relief further supports the requested benchmark 25% fee award. "Incidental or non-monetary benefits conferred by the litigation are a relevant" consideration (*Vizcaino*, 290 F.3d at 1049), and courts may "consider the public benefits of counsel's efforts in determining the level of reasonable compensation." *Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 408 (D.C. Cir. 1986). Some of these measures mirror the relief included in its criminal plea, which were spurred in significant part by Plaintiffs' pursuit of civil litigation, and originally sought in Plaintiffs' Complaint. *See* Dkt. 476 at 6 (comparing complaint and plea). These include the installation of a new leak detection system, the use of ROVs to detect pipeline movement and rapid reporting of such to authorities, an increase from one to four of the number of biannual ROV

pipeline inspections, revision of oil spill contingency plans and procedures, and employee training on new plans, procedures, and spill reporting. Settlement § IV. On top of those measures, Amplify has agreed with Plaintiffs to injunctive relief beyond that included in the criminal plea, including increased staffing on the offshore platform and control room involved with this Oil Spill, and establishment of a one-call alert system to report any threatened release of hazardous or pollutant substances. *Id*.

Further, the Court recognizes the overwhelmingly positive reaction from the Class—no Class Member has filed an objection to the Settlement or the fee request. *See* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:58 (6th ed.) ("If the class contains particularly significant class members . . . who do not object, those class members' acquiescence may be more meaningful."). The lack of objections to the Settlement and to Class Counsel's request for fees provides a compelling argument that the results obtained are meaningful to the Class and that Class members appreciate the Class Counsel's work achieving them. *Jenson v. First Tr. Corp.*, No. CV 05-3124 ABC (CTx), 2008 WL 11338161, at *15 (C.D. Cal. June 9, 2008) ("[T]hat no Class members that have manifested any disapproval of the fee request further supports its reasonableness.").

Accordingly, the Court finds that the result obtained for the Class supports the reasonableness of the requested award.

### ii. Risk of Litigation

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly [in] a case involving complicated legal issues, is a significant factor in the award of fees." *Spencer-Ruper*, 2021 WL 4895740, at *2 (citing *Omnivision*, 559 F. Supp. 2d at 1046-47).

The Court finds that the risk of continued litigation supports the requested benchmark fee. Amplify demonstrated its willingness to mount a vigorous defense, moving to dismiss Plaintiffs' claims on multiple bases, including on preemption

grounds and failure to state claims. Dkts. 151 (motion), 250 (reply). If Plaintiffs were to continue litigating their claims against Amplify, they would face the gauntlet of prevailing on class certification, *Daubert*, summary judgment, liability and damages at trial, and appeal. Each of these would be hotly contested. Amplify would also likely seek to shift liability onto the other defendants in this case. And even if Plaintiffs secured a complete victory at trial on both liability and damages, it is a near certainty that Amplify would engage in "vigorous post-trial motion practices . . . and likely appeals to the Ninth Circuit—delaying any recovery for years." *Baker v. SeaWorld Ent., Inc.*, No. 14-CV-02129-MMA-AGS, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020).

For these reasons, "the risks of continued litigation not only support the Settlement, the result obtained for the Class also supports the reasonableness of the requested fees." *See Spencer-Ruper*, 2021 WL 4895740, at *2.

### iii.   Complexity of the Case and Skill Required

The Court also considers the skill required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See Omnivision*, 559 F. Supp. 2d at 1047.

As this Court recognized in appointing Interim Settlement Class Counsel as Interim Co-Lead Counsel at the beginning of this hard-fought litigation, Interim Settlement Class Counsel has a depth of experience handling class actions and other complex litigation, including "litigation involving similar facts and issues to those in th[is] case," they engaged in significant work "investigating potential claims in this action," and they have knowledge of the laws at issue in this case, including environmental law. *See* Dkt. 38 (appointing Interim Co-Lead Counsel).

The Court finds that Interim Settlement Class Counsel deftly applied their legal skills and abilities to this litigation and settlement. Interim Settlement Class Counsel engaged in extensive written discovery, after negotiating search protocols and ESI parameters, and collected 8 GB of data for search and review in response

to Amplify's three sets of requests for production of documents. Interim Settlement Class Counsel had to review and understand voluminous and highly-technical documents, including Shoreline Cleanup Assessment Technique data relating to oil fate and data sets related to pipeline integrity. Interim Settlement Class Counsel also successfully handled this protracted litigation against a company represented by a prominent litigation firm. *See In re Am. Apparel, Inc. S'holder Litig.*, No. 10-cv-6352, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.").

The Court agrees that the skill displayed by Interim Settlement Class Counsel in prosecuting this case and obtaining a favorable settlement supports their requested award.

### iv. Settlement Class Counsel's undertaking of this case on a contingency-fee basis supports the requested fees.

"The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work." *Spencer-Ruper*, 2021 WL 4895740, at *3 (citing *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Interim Settlement Class Counsel bore not insignificant risks to achieve this result. Interim Settlement Class Counsel took the case purely on contingency, devoting thousands of hours and advancing hundreds of thousands of dollars in litigation expenses, all with no guarantee of reimbursement. Hazam Decl., ¶ 9. In so doing, Interim Settlement Class Counsel "turn[ed] down opportunities to work on other cases to devote the appropriate amount of time, resources, and energy necessary to responsibly handle this complex case." *In re Volkswagen "Clean*

*Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *3 (N.D. Cal. Mar. 17, 2017).

This factor also strongly supports Interim Settlement Class Counsel's requested fee.

### v. Awards Made in Similar Cases

A court should also consider fee awards from similar cases. *Vizcaino*, 290 F.3d at 1049-50. The requested fee is equal to the Ninth Circuit's "benchmark," and in fact is lower than the fees often awarded in similar cases. *See Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017) (citing several cases awarding 33%). Indeed, in another oil spill case along the California coast, the court awarded a 32% fee. *See Andrews v. Plains All Am. Pipeline L.P*, No. CV154113PSGJEMX, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (awarding a 32% fee and citing cases awarding up to 42% in fees).

The requested fee is also below a traditional contingency fee, which further supports its reasonableness. *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (Carter, J.) (awarding 28% in fees, noting that 28% is "commensurate with, and even slightly below, a traditional contingency fee) (citing *Blum v. Stenson*, 465 U.S. 886, 904, (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.").

Thus, the requested 25 percent award is consistent with fee awards in class action cases generally, and compares favorably with percentages approved in similar cases. Accordingly, this factor clearly supports Interim Settlement Class Counsel's requested fee.

### b. Lodestar Cross-Check

The lodestar method is a way for the Court to cross-check the reasonableness of a fee award. Courts sometimes employ a "streamlined" lodestar analysis to "cross-check" the reasonableness of a requested award. *Vizcaino*, 290 F.3d at 1050.

"[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The aim is to do rough justice, not to achieve auditing perfection." *In re Apple Inc. Device Performance Litig.*, No. 18-md-2827,, 2021 WL 1022866, at *7 (N.D. Cal. Mar. 17, 2021) (citation omitted); *see also In re Capacitors Antitrust Litig.*, No. 17-md-2801, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (holding that a lodestar cross-check does not require "mathematical precision [or] bean-counting").

In the Ninth Circuit, a multiplier ranging from 1.0 to 4.0 is considered "presumptively acceptable." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014); *Vizcaino*, 290 F.3d at 1051 n.6 (finding most multipliers range from 1.0–4.0).

Here, the lodestar cross-check reveals that the requested fee is eminently reasonable: the resulting multiplier is on the low end of the acceptable range. *First*, Class Counsel devoted a substantial number of hours to this complex class action case. Hazam Decl., ¶ 9. Class Counsel were careful and thorough, but also tried to coordinate their efforts to gain efficiencies. *Id.* at ¶¶ 21, 25.

*Second*, Class Counsel's rates are consistent with market rates in their area. Hazam Decl., ¶ 26; Larson Decl., ¶ 11; Aitken Decl., ¶¶ 11; *e.g., Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals found to be reasonable); *see also* No. 15-cv-4922, *Dickey v. Advanced Micro Devices, Inc.*, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (approving rates between $275 and $1,000 for attorneys); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2018 WL 4620695, at *2 (N.D. Cal.

Sept. 20, 2018) (approving rates between $300 and $1,050). Other courts have recently affirmed the rates of Interim Settlement Class Counsel. Hazam Decl., ¶ 27.

The resulting lodestar of $9,554,751.73 yields a modest multiplier of 1.3 for work performed to date. This multiplier is on the low end of the "presumptively acceptable range of 1.0-4.0" in this Circuit. *Dyer*, 303 F.R.D. at 334; *see also Vizcaino*, 290 F.3d at 1051 n.6 (approving 3.65 multiplier); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-cv-5693, 2017 WL 4685536, at *9 (C.D. Cal. May 8, 2017) (approving multiplier of up to 2.5); *Calhoun v. Celadon Trucking Servs.*, No. 16-cv-1351, 2017 WL 11631979, at *8 (C.D. Cal. Nov. 13, 2017) (multiplier of 1.3 is "lower than the accepted range"). And the multiplier will only decrease as Interim Settlement Class Counsel continue to work on the approval and implementation of this proposed Settlement. Hazam Decl., ¶ 38.

This factor supports Interim Settlement Class Counsel's requested 25 percent fee, and demonstrates that such a fee will not result in a "windfall" to Counsel.

For the above reasons, the Court finds that the requested benchmark fee is reasonable and GRANTS Interim Settlement Counsel's Motion for Fees of $12.5 million.

### B. Litigation Expenses

Class Counsel may "recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Brown v. CVS Pharmacy, Inc.*, No. 15-cv-7631, 2017 WL 3494297, at *9 (C.D. Cal. Apr. 24, 2017) (citation omitted); *see also Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003); Fed. R. Civ. P. 23(h). This includes expenses that are reasonable, necessary, and directly related to the litigation. *See Willner v. Manpower Inc.*, No. 11-cv-2846, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015).

Here, Interim Settlement Class Counsel established a joint cost fund to manage the bulk of the hard costs incurred, such as for depositions, transcripts, expert fees, and mediation expenses. Hazam Decl., ¶ 22. Combined with each

firm's held costs, the total costs for which Class Counsel seek reimbursement is $1,291,067.91. Hazam Decl., ¶ 38. These costs benefted the Settlement Classes and are commensurate with the stakes, complexity, novelty, and intensity of this particular litigation. As indicated in the accompanying declarations, Interim Settlement Class Counsel expended costs on the typical categories, *e.g.*, experts, document management systems, mediation fees, and necessary travel, in addition to soft costs attributable to the litigation. Hazam Decl., ¶ 36; Larson Decl., ¶ 17; Aitken Decl., ¶ 16. While this highly technical case was expensive to prosecute, "[Interim Settlement] Class Counsel had a strong incentive to keep expenses at a reasonable level due to the high risk of no recovery when the fee is contingent." *Beesley v. Int'l Paper Co.*, No. 06-cv-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014).

The Court is satisfied that the costs are reasonable, and therefore GRANTS Plaintiffs' motion for costs in the amount of $1,291,067.91.

### C. Service Awards for Class Representatives

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In addition to any settlement distributions they receive, the Court-appointed Class Representatives request service awards of $10,000 to compensate them for the time and effort they spent pursuing this matter on behalf of their respective Classes. Courts have discretion to approve service awards based on the amount of time and effort spent, the duration of the litigation, and the personal benefit (or lack thereof) as a result of the litigation. *See, e.g., Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Each of these Class Representatives searched for and provided facts used to compile the Complaints, helped Interim Settlement Class Counsel analyze claims, produced substantial documents in response to significant document requests, and reviewed and approved the proposed Settlement. They each have submitted declarations further explaining the time and effort they expended to

1  benefit the class. Hazam Decl., Exs. 10-26.

2       Service awards of this size or larger "are fairly typical in class action cases,"
3  and should be approved here. *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d
4  948, 958 (9th Cir. 2009); *see also In re Wells Fargo & Co. S'holder Derivative*
5  *Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (granting $25,000 service awards
6  to each institutional investor plaintiff); *In re Nat'l Collegiate Athletic Ass'n Athletic*
7  *Grant-in-Aid Cap Antitrust Litig.*, No. 14-md-2541, 2017 WL 6040065, at *11
8  (N.D. Cal. Dec. 6, 2017), *aff'd,* 768 F. App'x 651 (9th Cir. 2019) (awarding each of
9  the four class representatives $20,000 service awards); *Garner v. State Farm Mut.*
10 *Auto. Ins. Co.*, No. 08-cv-1365, 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22,
11 2010) (collecting Ninth Circuit cases with service awards of $20,000 or higher);
12 *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *7
13 (C.D. Cal. Nov. 18, 2014) (Carter, J.) (awarding a service award of $15,000).
14 Moreover, a $10,000 service award to each of the seventeen Class Representatives
15 amounts to a total payment of $170,000, or less than .4 percent of the gross
16 Settlement amount. This is well within the range the Ninth Circuit has found
17 reasonable. *Staton*, 327 F.3d at 976-77.

18      Accordingly, the Court GRANTS Plaintiffs' request for service awards in the
19 amount of $10,000 per Plaintiff, for a total of $170,000.

20 **III. CONCLUSION**

21      For the reasons stated above, Plaintiffs' motion for approval of attorneys'
22 fees, expenses, and incentive awards is GRANTED. Accordingly, it is HEREBY
23 ORDERED AS FOLLOWS:

24      1.    Class Counsel is awarded 25 percent of the total settlement amount, or
25 $12.5 million, in attorneys' fees and $$1,291,067.91 in costs.

26      2.    Each of the seventeen Class Representatives is awarded $10,000 in
27 service awards.

28      3.    The Court finds that these amounts are warranted and reasonable for

...

the reasons set forth in the moving papers before the Court, at the Final Approval Hearing, and the reasons stated in this Order.

    IT IS SO ORDERED.

Dated: <u>April 24, 2023</u>

_____
Hon. David O. Carter