Wylie A. Aitken, State Bar No. 37770
*wylie@aitkenlaw.com*
**AITKEN♦AITKEN♦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

Lexi J. Hazam, State Bar No. 224457
*lhazam@lchb.com*
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-100

Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
**LARSON, LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| PETER MOSES GUTIERREZ, JR., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>AMPLIFY ENERGY CORP., *et al.*,<br><br>　　　　　Defendants. | Case No. 8:21-CV-01628-DOC(JDEx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)**<br><br>Judge: Hon. David O. Carter<br>Date:  June 12, 2023<br>Time: 8:30 am PT<br>Courtroom:  10A |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 12, 2023, at 8:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom 10A of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California, 92701, Plaintiffs, for themselves and on behalf of all others similarly situated, will move the Court for an order pursuant to Fed. R. Civ. P. 23(e)(1) granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Direction of Notice Under Rule 23(e).

Plaintiffs request that in such order the Court do the following:

1. Grant preliminary approval of the proposed Settlement Agreement;[1]

2. Appoint Interim Co-Lead Counsel as Interim Settlement Class Counsel pursuant to Fed. R. Civ. P. 23(g);

3. Approve the proposed notice program in the Settlement, including the proposed forms of notice, and direct that notice be disseminated pursuant to such notice program and Fed. R. Civ. P. 23(e)(1);

4. Appoint JND Legal Administration as Settlement Administrator and direct JND Legal Administration to carry out the duties and responsibilities of the Settlement Administrator as specified in the Settlement;

5. Enter a scheduling order consistent with the dates set forth in the below Memorandum; and

6. Schedule a Fairness Hearing in connection with the final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Settlement, including

---

[1] The Settlement is being filed herewith as Ex. 1 to the accompanying Declaration of Lexi J. Hazam ("Hazam Decl."). Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Settlement.

2764731.6

MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT
CASE NO. 8:21-CV-01628-DOC

all exhibits thereto; the Declaration of Lexi J. Hazam ("Hazam Decl."), filed herewith; the Declaration of notice expert Gina Intrepido-Bowden filed herewith ("Intrepido-Bowden Decl."); the Declaration of the Hon. Layn R. Phillips filed herewith ("Phillips Decl."); the arguments of counsel; all papers and records on file in this matter, and such other matters as the Court may consider.

Dated: May 15, 2023                    Respectfully submitted,

*/s/   Wylie Aitken*
Wylie A. Aitken, State Bar No. 37770
*wylie@aitkenlaw.com*
**AITKEN✦AITKEN✦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

*/s/   Lexi Hazam*
Lexi J. Hazam, State Bar No. 224457
*lhazam@lchb.com*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-100

*/s/   Stephen Larson*
Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
**LARSON, LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

Wylie A. Aitken, State Bar No. 37770
wylie@aitkenlaw.com
**AITKEN✦AITKEN✦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

Lexi J. Hazam, State Bar No. 224457
lhazam@lchb.com
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-100

Stephen G. Larson, State Bar No. 145225
slarson@larsonllp.com
**LARSON, LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| PETER MOSES GUTIERREZ, JR., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AMPLIFY ENERGY CORP., *et al.*, <br><br> Defendants. | Case No. 8:21-CV-01628-DOC(JDEx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)** <br><br> Judge: David O. Carter <br> Date:  June 5, 2023 <br> Time: 8:30 a.m. PT <br> Courtroom:  10A |

- 1 -

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION .................................................................................. 1

INTRODUCTION ........................................................................................ 1

BACKGROUND .......................................................................................... 2

I.    Factual Background ............................................................................. 2

II.   Procedural Background ....................................................................... 3

SUMMARY OF THE SETTLEMENT TERMS ......................................... 9

LEGAL STANDARD .................................................................................. 9

ARGUMENT ............................................................................................. 10

I.    The Proposed Settlement Is Fair, Reasonable, and Adequate ...................... 10

II.   The Court Should Certify the Settlement Classes Upon Final
      Approval. ...................................................................................... 21

III.  The Proposed Notice Program Complies with Rule 23 and Due
      Process. ....................................................................................... 24

IV.   The Court Should Schedule a Fairness Hearing and Related Dates. ............ 25

CONCLUSION .......................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................... 21, 24

*Andrews v. Plains All American Pipeline, L.P.*,
  No. 15-CV-4113-PSGJ-EMX, 2017 WL 10543402 (C.D. Cal. Feb. 28, 2017),
  amended sub nom. Andrews v. Plains All Am. Pipeline, L.P, No.
  CV154113PSGJEMX, 2019 WL 6647928 (C.D. Cal. Nov. 22, 2019) .......... 15, 20

*Baker v. SeaWorld Ent., Inc.*,
  2020 WL 4260712 (S.D. Cal. July 24, 2020) ................................................ 12, 15

*Carter v. Anderson Merchs., LP*,
  Nos. 08-0025, 09-0216, 2010 WL 1946784 (C.D. Cal. May 11, 2010) .............. 11

*Cheng Jiangchen v. Rentech, Inc.*,
  No. 17-1490, 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......................... 13, 15

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) ............................................................................ 22

*Gutierrez et al. v. Amplify Energy Corp. et al.*,
  8:21-cv-01628-DOC-JDE ................................................................. 3, 5, 15, 16

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................ 14

*In re Apple Inc. Device Performance Litig.*,
  No. 21-15758, 2022 WL 4492078 (9th Cir. Sept. 28, 2022) ............. 11, 12, 20, 24

*In re Biolase, Inc. Sec. Litig.*,
  No. SA-CV-13-1300 JLS, 2015 WL 12720318(C.D. Cal. Oct. 13, 2015) .......... 19

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .......................................................................... 13, 21

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  No. 17-MD-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ............. 10

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) .............................................................................. 23

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) .............................................................................. 10

*In re Illumina, Inc. Sec. Litig.*,
  2021 WL 1017295 (S.D. Cal. March 17, 2021) .......................................... 19, 20

*In re the Matter of the Complaint of Capetanissa Maritime Corporation*,
  No. 2:22-cv-03462-DOC-JDE (C.D. Cal.) ............................................................ 4

*In re Toys R Us–Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA)
  Litig.*,
  295 F.R.D. 438(C.D. Cal. 2014) ........................................................................ 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) .............................................................................. 21

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  2019 WL 13020734 (N.D. Cal. May 14, 2019) ................................................ 13

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) ............................................................................ 22

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 1579251 (S.D. Cal. Apr. 22, 2021) .................................................... 24

*Koenig v. Lime Crime, Inc.*,
  No. CV 16-503 PSG, 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) ................... 19

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................................ 14

*Loomis v. Slendertone Distrib., Inc.*,

**TABLE OF AUTHORITIES**
(continued)

Page

2021 WL 873340 (S.D. Cal. Mar. 9, 2021) ........................................................... 11
*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ............................................................................. 22
*Reed v. 1–800 Contacts, Inc.*,
    No. 12–CV–02359 JM, 2014 WL 29011 (S.D. Cal. Jan. 2, 2014) ...................... 14
*Rodriguez v. W. Pub. Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................. 20
*Roes, 1–2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ........................................................................... 11
*S. California Gas Leak Cases*,
    No. BC601844, (Cal. Super. Ct. April 29, 2022) ............................................... 19
*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...................................................................................... 23
*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ........................................................................... 24
*Zamora Jordan v. Nationstar Mortg., LLC*,
    2019 WL 1966112 (E.D. Wash. May 2, 2019) ................................................... 11

**Statutes**
California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ...... 3

**Rules**
Fed. R. Civ. P. 23(a) ................................................................................... 21, 23
Fed. R. Civ. P. 23(a)(1) ........................................................................................ 22
Fed. R. Civ. P. 23(a)(2) ........................................................................................ 22
Fed. R. Civ. P. 23(a)(3) ........................................................................................ 22
Fed. R. Civ. P. 23(a)(4) ........................................................................................ 22
Fed. R. Civ. P. 23(b)(3) ................................................................................... 23, 24
Fed. R. Civ. P. 23(c)(2)(B) .............................................................................. 10, 25
Fed. R. Civ. P. 23(e) ........................................................................................... 12
Fed. R. Civ. P. 23(e)(1) .................................................................................... 10, 25
Fed. R. Civ. P. 23(e)(1)(B) ............................................................................... 10, 24
Fed. R. Civ. P. 23(e)(1)(B)(i) ............................................................................... 10
Fed. R. Civ. P. 23(e)(2) ....................................................................... 10, 11, 19, 26
Fed. R. Civ. P. 23(e)(2)(A) ................................................................................... 11
Fed. R. Civ. P. 23(e)(2)(B) ................................................................................... 12
Fed. R. Civ. P. 23(e)(2)(C) ................................................................................... 13
Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................................... 13
Fed. R. Civ. P. 23(e)(2)(C)(ii) .............................................................................. 16
Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................. 20
Fed. R. Civ. P. 23(e)(2)(C)(iv) ............................................................................. 21
Fed. R. Civ. P. 23(e)(2)(D) ................................................................................... 19
Fed. R. Civ. P. 23(e)(3) .................................................................................... 13, 21
Fed. R. Civ. P. 23(e)(5) ........................................................................................ 10

**Treatises**
4 William B. Rubenstein, *Newberg on Class Actions* § 13:49 (5th ed. Dec. 2021
    update) .............................................................................................................. 12
*Manual for Compl. Litig.*, § 21.632 (4th ed. 2014) ............................................... 21

- iv -

# **INTRODUCTION**

In October 2021, the San Pedro Bay Pipeline ruptured, discharging thousands of gallons of crude oil into Orange County's coastal waters (the "Oil Spill"). The Oil Spill damaged the local economy's beaches, harbors, and properties; caused closures to commercial fisheries; and harmed waterfront businesses that depend on the local waters and coastline for their livelihood.

After more than a year and a half of intensive litigation, Plaintiffs and the Shipping Defendants[2] have reached an agreement to settle Plaintiffs' claims on a class-wide basis. Pursuant to the terms of the Settlement Agreement, the Shipping Defendants will pay a total of $45 million in non-reversionary common funds to the proposed Settlement Classes.

The proposed Settlement is an excellent result for the proposed Settlement Classes, and readily satisfies the criteria for preliminary settlement approval of being fair, reasonable, and adequate. In particular, the Settlement will provide Orange County businesses and residents with relief rapidly, rather than after years of continued litigation and appeals that would otherwise ensue. When considered in combination with the Plaintiffs $50 million settlement with Amplify,[3] the result is even more substantial. The total value of the Plaintiffs' settlements with the defendants in this action would be $95 million dollars, an extraordinary result for the proposed Settlement Classes.

The Settlement is the product of hard-fought, arms-length negotiations between the Parties[4] with the assistance of experienced and well-respected

---

[2] The "Shipping Defendants" are: Capetanissa Maritime Corporation, Costamare Shipping Co., S.A., V.Ships Greece Ltd., and the *M/V Beijing* (collectively, "Capetanissa") and Dordellas Finance Corp., MSC Mediterranean Shipping Co. SA, Mediterranean Shipping Co. S.r.l., MSC Shipmanagement Ltd., and *MSC Danit* (collectively, "Dordellas").

[3] "Amplify" refers collectively to Amplify Energy Corporation, Beta Operating Company, LLC, and San Pedro Bay Pipeline Company, the three Defendants that own and operate the San Pedro Bay Pipeline.

[4] Unless otherwise stated, "the Parties" refers collectively to the parties to this Settlement Agreement: Plaintiffs and the Shipping Defendants.

mediators Hon. Layn Phillips (Ret.) and Hon. Sally Shushan (Ret.). It follows extensive discovery and litigation, including more than 40 depositions and significant briefing and argument before this Court and the Court-appointed Special Master Panel. Accordingly, the Parties and their counsel were well informed about the issues, the strengths and weaknesses of their respective positions, and the risks faced by each side of continued litigation in negotiating the Settlement.

The terms of this Settlement, including the Plans of Distribution to be filed after preliminary approval, are very similar to those approved by this Court in the Amplify settlement, and merit approval for the same reasons this Court cited there. *See* Dkt. 728 ("Amplify Final Approval Order").

Plaintiffs and their undersigned counsel believe the Settlement to be in the best interests of the Settlement Class Members. Plaintiffs therefore respectfully request that the Court preliminarily approve the Settlement, appoint Interim Co-Lead Counsel as Settlement Class Counsel, direct that notice be disseminated to the Settlement Classes pursuant to the proposed notice program, schedule a Fairness Hearing, and grant the related relief requested herein.

## **BACKGROUND**

### I.   **Factual Background**

Class Plaintiffs allege that in January 2021, two container ships, the *M/V Beijing* ("Beijing") and *M/V MSC Danit* (the "Ships"), struck and dragged their anchors over Amplify's San Pedro Bay Pipeline (the "Pipeline"), moving a 4,000-foot section of the Pipeline out of alignment by more than 100 feet. Plaintiffs allege that the Ships' owners and operators neglected to inform Amplify or relevant government authorities that their Ships' anchors had struck the Pipeline prior to October 2021, when damage to the Pipeline from the anchor strikes caused it to rupture and discharge thousands of gallons of crude oil into Orange County's coastal waters. The spill soiled beaches and coastal properties, closed commercial fisheries, and harmed waterfront tourism businesses. Upon learning that the Ships

had struck the Pipeline, community members affected by the spill (proposed Class Members) brought claims against the Shipping Defendants for causing the spill, in addition to their claims against Amplify. *See* Dkts. 102, 148, 454 (complaints against Shipping Defendants).

## II.     Procedural Background

### A.     Summary of Procedural History

This litigation involves two separate but related actions: (1) *Gutierrez et al. v. Amplify Energy Corp. et al.*, 8:21-cv-01628-DOC-JDE ("*Gutierrez*") and (2) *In the Matter of the Complaint of Dordellas Finance Corp. Owner and MSC Mediterranean Shipping Company S.A., Owner pro hac vice*, No. 2:22-cv-02153-DOC-JDE (C.D. Cal.) ("Limitation Action").

#### 1.     Initiation of the Litigation and Complaints

In the days after the Oil Spill in early October 2021, Plaintiffs began filing lawsuits arising from the spill. *See* Dkt. 30 at 2 (listing cases). On December 20, 2021, this Court consolidated many of those cases into this lead case, *Gutierrez*, and appointed Interim Co-Lead Counsel. Dkt. 38.

Plaintiffs filed their Consolidated Amended Complaint on January 28, 2022. Dkt. 102. Plaintiffs brought claims against the Shipping Defendants for negligence, public nuisance, negligent interference with prospective economic advantage, trespass, continuing private nuisance, and a permanent injunction. Plaintiffs also brought a claim for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq. See id.*, ¶¶ 190-253. Plaintiffs filed their First Amended Consolidated Amended Complaint on March 21, 2022. Dkt. 148.

Soon thereafter, the *MSC Danit's* owner and owner *pro hac vice*, Dordellas Finance Corp. and MSC Mediterranean Shipping Co. SA, and the *Beijing's* owner, Capetanissa Maritime Corporation (collectively "Shipowners"), filed petitions under the Limitation of Liability Act of 1851, 46 U.S.C. §§ 30502, *et seq.* (the "Limitation Act"), seeking exoneration from or limitation of liability. *See*

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
CASE NO. 8:21-CV-01628-DOC

1    Limitation Action Dkt. No. 1; *see also In re the Matter of the Complaint of*

2    *Capetanissa Maritime Corporation*, No. 2:22-cv-03462-DOC-JDE (C.D. Cal.) ("*In*

3    *re Capetanissa*").

4              **2.      Litigation on Impact of Limitation Action on *Gutierrez***

5              With their Limitation Act petitions, the Shipowners sought a stay of

6    Plaintiffs' claims in *Gutierrez* until the Shipowner's liability and potential right to

7    limitation were resolved under the Limitation Act. *See* Limitation Action Dkt. 1; *In*

8    *re Capetanissa*, Dkt. 1. The Court invited supplemental briefing on the Limitation

9    Act and its impact *Gutierrez*. Dkt. 171.

10             Plaintiffs filed supplemental briefing arguing that their claims against

11   Amplify and the Shipping Defendants should proceed in *Gutierrez*. Dkts. 224, 232.

12   Plaintiffs' briefing also asserted that if the Court were to grant the Shipowners'

13   request to stay Plaintiffs' claims in *Gutierrez*, then the stay should apply only to

14   claims against the Shipowners and no other Defendants, and that Plaintiffs' claims

15   against the Shipowners should then proceed as a class claim within the Limitation

16   Action. Dkts. 224, 232.

17             On May 25, 2022, the Court issued an order permitting Plaintiffs' claims

18   against the non-Shipowner Defendants, including Amplify and certain Shipping

19   Defendants, to proceed in *Gutierrez*, and staying Plaintiffs' claims against the

20   Shipowners in *Gutierrez* until the Shipowners' liability and potential right to

21   limitation were resolved in a single consolidated Limitation Action. *Gutierrez v.*

22   *Amplify Energy Corp.*, No. 8:21-cv-01628-DOC-JDE, 2022 WL 2348060, at *3

23   (C.D. Cal. May 25, 2022). The Court also ordered that discovery be coordinated

24   between *Gutierrez* and the Limitation Action, and set a schedule for Limitation

25   Action notice, claims, and other requirements. *See id.* Consistent with their

26   supplemental briefing, Plaintiffs then filed a class claim on behalf of the putative

27   Settlement Classes against the Shipowners in the Limitation Action, as well as an

28   Answer asserting the Shipowners were not entitled to exoneration or limitation of

liability. Limitation Action. Dkts. 29, 166, 167, 171.

### 3.   Plaintiffs' Settlement with Amplify

On August 24, 2022, Plaintiffs and Amplify informed the Court that they had reached an agreement to settle Plaintiffs' claims against Amplify. Dkt. 377. This Court granted final approval to the settlement with Amplify on April 24, 2023. Dkt. 728.

After reaching the proposed resolution with Amplify, Plaintiffs focused all their litigation efforts on the Shipping Defendants, and the significant merits-related hours and expenditures by Plaintiffs over the past seven months have related solely to pursuing their claims against the Shipping Defendants. Hazam Decl. ¶ 16.

### 4.   Litigation Against Shipping Defendants in *Gutierrez*

In *Gutierrez*, all Parties stipulated to Plaintiffs filing a Second Amended Consolidated Class Action Complaint, which this Court granted on October 3, 2022. Dkts. 436, 452. The now-operative complaint was filed on October 4, 2022. Dkt. 454.

The Shipping Defendants moved to dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint. Dkts. 467 (Mediterranean Shipping Company S.r.l. and MSC Shipmanagement Ltd.), 470 (Costamare Shipping Co. S.A. and V.Ships Greece Ltd.), 494 (Cosco Shipping Lines).  Plaintiffs filed a consolidated opposition (Dkt. 491) addressing two of the motions (Dkts.  467, 470) and a separate opposition addressing Cosco Shipping Lines' motion (Dkt. 537). Defendants replied, and the Court heard argument at an all-day hearing on December 5, 2022.

### 5.   Litigation Against Shipping Defendants in Limitation Action

The Parties also engaged in significant motion practice related to the Limitation Action. After Plaintiffs filed their class claim, the Shipowners moved to strike and/or dismiss the class claim, arguing that class allegations cannot be maintained within a limitation action. Limitation Action Dkts. 47, 48. Plaintiffs

opposed, Limitation Action Dkt. 66, and the Parties argued the motion over the course of a two-day hearing on August 24 and 25, 2022.

Before the Shipowners issued notice of the Limitation Action to potential claimants, Plaintiffs filed an objection to the planned notice on the grounds it was insufficient to inform Class Members of the Limitation Action's potential impact on their rights. Limitation Action Dkt. 24. Shipowners moved to strike the objection, Limitation Action Dkts. 30, 33, which Plaintiffs opposed, Limitation Action Dkt. 44. The Court denied the Shipowners' motion to strike Plaintiffs' objection to notice and ordered supplemental notice to cure the deficiencies noted in Plaintiffs' objection. Limitation Action Dkt. 113. The Court further directed the Parties to confer on the form of the supplemental notice and raise any disputes with the Special Master Panel. *Id.* The Parties made numerous submissions to the Special Master Panel regarding the proper form of supplemental notice, in which Plaintiffs argued in favor of direct notice to identifiable putative class members, extending the claim filing period, and a short form claim to streamline the claim filing process. The Special Master Panel ordered direct notice and extended the monition period to December 7. Limitation Action Dkt. 131. The Court ordered the short form claim process. Limitation Action Dkt. 132.

### 6.    Litigation to Lift Stay as to V.Ships and Costamare

Capetanissa initially sought, and the Court initially granted, a stay of claims against two non-Shipowner Defendants, V.Ships Greece Ltd. ("V.Ships") and Costamare Shipping Company ("Costamare"). Dkt. 401. When it became apparent neither was a vessel owner, Plaintiffs moved to lift the stay against the two Shipping Defendants. Dkts. 383, 396. On September 8, 2022, the Court granted Plaintiffs' motion and lifted the stay to the extent it applied to Class Plaintiffs' and Amplify's claims against V.Ships and Costamare. Dkt. 401.

### 7.    Litigation Regarding Limitation Trial

In its Order lifting the stay against V.Ships and Costamare, the Court

bifurcated liability and damages in the Limitation Action and later set a liability trial to begin on April 24, 2023 (the "Limitation Trial"). Dkts. 401, 630. On January 4, 2023, the Special Master Panel directed the Parties to submit briefing on the scope of the Limitation Trial. The Parties submitted detailed briefing, in which Plaintiffs advocated for a narrow Limitation Trial focused on exoneration and limitation. Limitation Action Dkts. 208, 224 (Plaintiffs' briefing on the scope of the Limitation Trial); *see also* Limitation Action Dkts. 209, 211, 222-2, 230 (Shipowners' briefing on the scope of the Limitation Trial). The Court held a hearing on the matter on February 7, 2023, after which the Court issued an Order clarifying the scope of the Limitation Trial to include issues relevant to exoneration and limitation. Limitation Action Dkt. 235.

### B.    Discovery

Plaintiffs and the Shipping Defendants have engaged in a significant amount of discovery in the year and a half since this litigation began in both actions. Plaintiffs propounded a total of 94 requests for production on the Shipping Defendants, along with three sets of requests for admission. Each Plaintiff timely responded to the Shipping Defendants' two sets of requests for production, two sets of interrogatories, and Capetanissa's requests for admission. Plaintiffs also briefed (and in some cases argued) numerous discovery disputes with the Shipping Defendants before the Special Master Panel, including disputes regarding the Shipping Defendants' pace and schedule of production, whether Plaintiffs and other parties would be permitted to propound discovery relating to the Shipping Defendants' Limitation Action claims against one another, and the location and timing of depositions.

Plaintiffs collected 8 GB of data for search and review responsive to the Shipping Defendants' requests. Hazam Decl., ¶ 25. Plaintiffs and the Shipping Defendants cumulatively reviewed and exchanged more than 190,000 documents, including numerous highly technical documents relating to ship engineering and

navigation. *Id*. Plaintiffs cross-noticed and participated in the depositions of more than 40 witnesses around the world, including at ports of call in Europe. Plaintiffs also participated in the inspections of the *M/V Beijing*, the oil platform that controlled the pipeline at the location and time of the spill, and the pipeline during its removal. *Id*. Leading up to the deadline for expert reports, Plaintiffs also developed several maritime experts and worked with various liability experts. *Id*.

As to damages, Plaintiffs engaged the same damages experts who survived *Daubert* challenges in *Plains*, including an expert in the field of real estate damages, an economist, and a marine scientist, who submitted confidential preliminary reports the mediation to support Plaintiffs' damages. Hazam Decl. ¶ 26.

As a result of this extensive liability and damages work conducted by the Plaintiffs and the Ships, the Parties were well-placed to evaluate the strengths and weaknesses of their positions and the adequacy of the proposed Settlement. *Id.* The advanced stage of discovery crystallized liability issues in the mediation sessions with the Hon. Layn Phillips (Ret.) and Hon. Sally Shushan (Ret.). *See* Phillips Decl.

## C.    Settlement Negotiations

The proposed Settlement is the product of hard-fought, arm's length negotiations. On June 2, 2022, the Parties participated in a formal mediation session with Hon. Layn Phillips (Ret.) and Hon. Sally Shushan (Ret.). That session did not result in a settlement. Phillips Decl. ¶¶ 5-7. The Parties continued informal negotiations and held telephone conferences over the following months. *Id*. ¶ 8. On November 14, 2022, the Parties against engaged the mediators in an all-day mediation session. *Id*. ¶ 9. There, too, the Parties were unable to come to an agreement. *Id*. Following that mediation session, the Parties continued their informal negotiations with the mediators. *Id.* On February 5, 2023, the mediators made a mediator's proposal, which the Parties accepted on February 8, 2023. *Id*. ¶ 10. Since reaching an agreement in principle, the Parties have worked diligently to draft the Settlement Agreement, notices, and other settlement exhibits, and to

1    select the proposed Settlement Administrator. Hazam Decl. ¶ 31.

2                      **SUMMARY OF THE SETTLEMENT TERMS**

3            Under the proposed Settlement, the Shipping Defendants will pay $45

4    million total, with $30.6 million paid to the Fisher Class, $8.1 million to the

5    Property Class, and $6.3 million to the Waterfront Tourism Class. *See* Settlement at

6    §§ II.16, 28, 41, III. These amounts, together with interest earned thereon, will

7    constitute the Fisher, Property, and Waterfront Tourism Class Common Funds,

8    respectively. *Id.* § II.14, 26, 39. No portion of the combined $45 million will revert

9    to the Shipping Defendants. After deduction of notice-related costs and any Court-

10   approved attorneys' fees and costs, and service awards to Class Representatives, the

11   monies will be distributed to the members of the three Classes in accordance with

12   Plans of Distribution which Plaintiffs are entrusted with developing per the

13   Settlement, to be submitted to this Court for review and approval within 10 days of

14   preliminary approval. The Plans of Distribution are described in Argument § I.C.2.a

15   below.

16           The structure of the Settlement, the proposed Classes, the division of funds

17   between the Classes, the notice program, and the Plans of Distribution are all

18   substantially similar to the settlement with Amplify that this Court recently

19   approved. *See* Dkt. 728. Two differences each benefit Class Members: first, unlike

20   in the Amplify Settlement, Class Members' payments under this Settlement will not

21   be offset by any payments already received under the Oil Pollution Act. Second,

22   unlike in the Amplify Settlement, *no* Waterfront Tourism Class Members will need

23   to submit claims or documentation to receive a payment from this Settlement.

24   Rather, the Net Waterfront Tourism Class Fund will be distributed to all Waterfront

25   Tourism Class Members automatically as described in Argument § I.C.2.a below.

26                              **LEGAL STANDARD**

27           Class actions "may be settled . . . only with the court's approval."  Fed. R.

28

- 9 -

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
CASE NO. 8:21-CV-01628-DOC

Civ. P. 23(e).[5] The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citation omitted). Rule 23(e) governs a district court's analysis of the fairness of a proposed class action settlement. The process for court approval is comprised of two steps:

*First*, a court must make a "preliminary fairness determination" that it is likely to "approve the proposal under Rule 23(e)(2)." FRCP 23(e)(1)(B); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 17-MD-02777-EMC, 2019 WL 536661, at *7-8 (N.D. Cal. Feb. 11, 2019). If a court makes this determination, it must direct notice to the proposed settlement class, describing the terms of the proposed settlement and the definition of the class, to give them an opportunity to object to or opt out of the proposed settlement. *See* FRCP 23(c)(2)(B); FRCP 23(e)(1), (5). *Second*, after a fairness hearing, the court may grant final approval to the proposed settlement on a finding that the settlement is fair, reasonable, and adequate. FRCP 23(e)(2). By this motion, Plaintiffs respectfully ask the Court to take the first step and enter an order preliminarily approving the Settlement and directing class notice, pursuant to the proposed notice program, under FRCP 23(e)(1).

## ARGUMENT

## I.   The Proposed Settlement Is Fair, Reasonable, and Adequate.

A court should preliminarily approve a class settlement if it finds that it is likely to approve the settlement as "fair, reasonable, and adequate." FRCP 23(e)(1)(B)(i); (e)(2). The factors to consider are whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arms-length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each

---

[5] All references to "FRCP" or "Rule" refer to the Federal Rules of Civil Procedure.

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
CASE NO. 8:21-CV-01628-DOC

other." FRCP 23(e)(2).[6] *Id.* "[T]he district court must show it has explored
comprehensively all Rule 23(e)(2) factors, and must give a reasoned response to all
non-frivolous objections." *In re Apple Inc. Device Performance Litig.*, No. 21-
15758, 2022 WL 4492078, at *8 (9th Cir. Sept. 28, 2022) (citation omitted).

At the preliminary approval stage, the primary question is simply whether the
settlement "is 'within the range of possible approval' and whether or not notice
should be sent to class members." *Carter v. Anderson Merchs., LP*, Nos. 08-0025,
09-0216, 2010 WL 1946784, at *4 (C.D. Cal. May 11, 2010) (citation omitted). At
the same time, "settlement approval requires a higher standard of fairness and a
more probing inquiry than may normally be required under Rule 23(e)" if "the
parties negotiate a settlement agreement before the class has been certified." *Roes,
1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (citations omitted).

A.   **Plaintiffs and Interim Co-Lead Counsel Have Adequately
     Represented the Proposed Settlement Classes (Rule 23(e)(2)(A)).**

Plaintiffs and Interim Co-Lead Counsel have prosecuted this action on behalf
of the proposed Settlement Classes with vigor and dedication for the past year and a
half, with the aim of securing substantial and expeditious relief for community
members affected by the Oil Spill. *See* Fed. R. Civ. P. 23(e)(2)(A). As discussed
above and in the attached declaration, Interim Co-Lead Counsel thoroughly
investigated the factual and legal issues, conducted substantial discovery, engaged
in extensive motion practice before this Court and the Special Master Panel, and
worked with experts to investigate the Shipping Defendants' liability, identify the
Classes, and assess their damages. *See* Background § II, *supra*. In particular,
Plaintiffs obtained more than 180,000 documents from the Shipping Defendants

---

[6] The "factors in amended Rule 23(e)(2) generally encompass the list of relevant
factors previously identified by the Ninth Circuit." *Zamora Jordan v. Nationstar
Mortg., LLC*, No. 2:14-CV-0175-TOR, 2019 WL 1966112, at *2 (E.D. Wash. May
2, 2019); *see also Loomis v. Slendertone Distrib., Inc.*, No. 19-cv-854-MMA, 2021
WL 873340, at *4 n.4 (S.D. Cal. Mar. 9, 2021) (Rule 23(e)(2) "overlap[s]" with
factors Ninth Circuit had previously identified).

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
CASE NO. 8:21-CV-01628-DOC

and participated in more than 30 depositions of witnesses related to Shipping
Defendants or third parties (plus an additional more than 10 depositions of Amplify
witnesses). Hazam Decl., ¶ 25. The Class Representatives produced more than
8,000 documents in discovery *after* settling with Amplify. *Id.*

The Class Representatives themselves have also been actively engaged in the
case—each provided pertinent information about their losses, searched for and
provided documents and information in response to written discovery requests and
follow-up correspondence, and regularly communicated with their counsel up to
and including evaluating and approving the proposed Settlement. *Id.*, ¶ 28.

## B.   The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B)).

The Court must also consider whether "the proposal was negotiated at arm's
length. FRCP 23(e)(2)(B). This "procedural concern[]" requires the Court to
examine "the conduct of the litigation and of the negotiations leading up to the
proposed settlement." Fed. R. Civ. P. 23(e), 2018 adv. comm. note. "[W]hen a
settlement precedes class certification, the district court must apply an even higher
level of scrutiny . . . to look for and scrutinize any subtle signs that class counsel
have allowed pursuit of their own self-interests to infect the negotiations." *In re
Apple*, 2022 WL 4492078, at *8. There is "no better evidence" of "a truly
adversarial bargaining process" than "a neutral third party mediator." 4 William B.
Rubenstein, *Newberg on Class Actions* § 13:50 (5th ed. Dec. 2021 update).

Here, the Parties engaged in vigorous and contested settlement negotiations
with the aid of "neutral and experienced mediators." *Baker v. SeaWorld Ent., Inc.*,
2020 WL 4260712, at *6 (S.D. Cal. July 24, 2020). As this Court held when
granting preliminary approval to the similar settlement with Amplify, "The
involvement of Judge Layn Phillips (Ret.) and Judge Sally Shushan (Ret.), two
highly qualified mediators, in the settlement process supports this Court's finding
that the Settlement Agreement was reached at arm's length and is free from

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
CASE NO. 8:21-CV-01628-DOC

collusion." Dkt. 599 at 3. The Parties' two formal all-day mediation session with

the mediators on June 2 and November 14, 2022, did not result in a settlement.

Hazam Decl., ¶ 29. The Parties continued informal negotiations and held telephone

conferences over the following months, and they were able to agree only when the

mediators issued a mediators' proposal. *Id*. ¶¶ 29-30; Phillips Decl., ¶¶ 7-10.

Proposed Settlement Class Counsel will apply for an award of attorneys' fees

"separate from the approval of the Settlement, and neither [Plaintiffs nor Class

Counsel] may cancel or terminate the Settlement based on this Court's or any

appellate court's ruling with respect to attorneys' fees." *Cheng Jiangchen v.*

*Rentech, Inc.*, No. 17-1490, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019).

Finally, no portion of the Common Funds will revert to Defendants or their

insurers. *See generally In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935

(9th Cir. 2011). For these reasons, no signs of collusion are present here.

### C.    The Relief for the Classes Is Substantial (Rule 23(e)(2)(C)).

The Court must "ensure the relief provided for the class is adequate," taking

into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness

of any proposed distribution plan, including the claims process; (iii) the terms of

any proposed award of attorney's fees; and (iv) any agreement made in connection

with the proposal, as required under Rule 23(e)(3). FRCP 23(e)(2)(C). These

factors support preliminary approval.

#### 1.    The Settlement Relief Outweighs the Costs, Risks, and Delay of Trial and Appeal (Rule 23(e)(2)(C)(i)).

To assess "the costs, risks, and delay of trial and appeal," Rule 23(e)(2)(C)(i),

the Court must "evaluate the adequacy of the settlement amount in light of the

case's risks." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 2019 WL

13020734, at *5 (N.D. Cal. May 14, 2019). This requires weighing "[t]he relief that

the settlement is expected to provide" against "'the strength of the plaintiffs' case

[and] the risk, expense, complexity, and likely duration of further litigation.'" *Id*.

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
CASE NO. 8:21-CV-01628-DOC

Here, the non-reversionary $45 million Settlement provides Settlement Class
Members with substantial monetary relief. When viewed in combination with the
$50 million monetary relief sought in the settlement against Amplify, the $95
million result in under two years is extraordinary. The combined $95 million
represents a substantial portion of the Classes' estimated damages. *See* Phillips
Decl. at 13. Courts routinely approve settlements that achieve significantly less. *See
also e.g.*, *In re Toys R Us–Del., Inc.–Fair & Accurate Credit Transactions Act
(FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (granting final approval
to settlement providing 3% of possible recovery ($391.5 million value on exposure
up to $13.05 billion)); *Reed v. 1–800 Contacts, Inc.*, No. 12–CV–02359 JM, 2014
WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval to settlement
providing 1.7% of possible recovery (net settlement fund of $8,288,719.16,
resolving claims worth potentially $499,420,000). Class Members would only
receive 100% of their damages if they succeed at every stage of litigation, including
lengthy appeal, at which point they could still end up with no recovery. The "very
essence of a settlement is compromise, a yielding of absolutes and an abandoning
of highest hopes." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 322
(N.D. Cal. 2018) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242
(9th Cir. 1998)); *see also id.* ("Estimates of what constitutes a fair settlement figure
are tempered by factors such as the risk of losing at trial, the expense of litigating
the case, and the expected delay in recovery (often measured in years).").

The reasonableness of the proposed Settlement is clear in light of the
uncertainty of victory and significant delay from continued litigation. Class
Plaintiffs litigated this case nearly to the Limitation Act trial, which would have
determined whether the Ships were at least partly liable for the Oil Spill, and if so
whether their liability should be limited pursuant to the Limitation Act. If the Ships
had proven at that trial that they were not liable for the Oil Spill, or that their
damages should be limited, Class Plaintiffs would have either recovered nothing or

potentially significantly less than their full damages—especially considering that Amplify would have also claimed very significant damages in any concursus related to any limited funds identified in the Limitation Action. If the Court had granted limitation, Plaintiffs also faced the challenge of demonstrating that a class claim was proper in a Limitation Action—which the Shipping Defendants had strenuously opposed and which this Court had not yet decided.

Even in the best case scenario for Class Plaintiffs—if the Court denied exoneration and limitation, dismissed the Limitation Action, and the parties litigated fully in *Gutierrez*—Class Plaintiffs would still face the gauntlet of prevailing on class certification, *Daubert*, summary judgment, liability and damages at trial, and inevitable appeal. Each of these would be hotly contested. The Shipping Defendants would also likely seek to shift liability onto Amplify.

Perhaps most importantly, any victory at trial that survived appeal would be years away. In *Andrews v. Plains All American Pipeline, L.P.* ("*Plains*"), No. 2:15-cv-04113-PSG (C.D. Cal.), a similar class action lawsuit on behalf of businesses and property owners harmed by a Southern California oil spill, the parties litigated for over seven years before reaching a settlement shortly before trial. Even if Plaintiffs secured a complete victory at trial on both liability and damages, it is a near certainty that Defendants would engage in "vigorous post-trial motion practices . . . and likely appeals to the Ninth Circuit—delaying any recovery for years" more. *Baker*, 2020 WL 4260712, at *7.

Of course, Class Counsel were prepared to prosecute their clients' case through all challenges, and believe they can overcome them. Nonetheless, risks remained, and significant delays to recovery would have been inevitable. The proposed Settlement allows the affected Orange County community to obtain recovery now—within about two years of the incident that caused their losses.

Experienced counsel's support for the proposed Settlement also weighs in favor of preliminary approval. *See Cheng Jiangchen*, 2019 WL 5173771, at *6

("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.") (citation omitted). Class Counsel strongly support the Settlement. *See* Hazam Decl., ¶¶ 32-33.

In summary, the proposed Settlement offers substantial monetary relief, and it avoids the uncertainty and the inevitable years-long delays the Classes would have faced if Class Plaintiffs were successful in the Limitation Action trial *and* a *Gutierrez* trial and then appeal. This reality, and the potential risks outlined above, underscore the strength of the proposed Settlement.

### 2. The Settlement Will Distribute Relief Effectively and Equitably to the Classes (Rules 23(e)(2)(C)(ii), 23(e)(2)(D)).

Second, the Court should consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." FRCP 23(e)(2)(C)(ii). If the Settlement is approved by the Court, Plaintiffs will submit Plans of Distribution to the Court within 10 days of preliminary approval, and also make these distribution plans available on the Settlement website. Hazam Decl., ¶ 8. As a part of the notice plan, Settlement Class Members will be instructed to review the Plans of Distribution on the website, and will have the opportunity to do so well before the deadline to object to the Settlement. *Id.*

For all Settlement Classes, the Settlement Administrator will determine the amount of each payment consistent with the Plans of Distribution. *Id.* ¶ 9.

Approval of the Plans of Distribution is meant to be separate and distinct from the Court's approval of the Settlement Agreement, as it was in the *Plains* and *Amplify* settlements. As a result, a Settlement Class Member might object to the Plans of Distribution, and the Settlement could nonetheless become final and effective. This helps the Settlement becomes effective as soon as possible.

### a. Summary of Plans of Distribution

The Plans of Distribution will effectively distribute relief to the Classes. *See* FRCP 23(e)(2)(C)(ii). The Plans are substantially similar to those approved in the

Amplify Settlement. *See* Dkt. 727 (order approving Amplify Plans of Distribution); Tr. of Apr. 24, 2023 Hr'g at 4:10-7:1 (describing Amplify Plans of Distribution as "extraordinarily well-thought-out") (attached hereto as Ex. 2 to the Hazam Decl.). Notably, all of the proposed Class Members had the opportunity to object to similar Plans of Distribution in the Amplify settlement, and none did. *See id.* at 3. The two differences between the Plans of Distribution Class Plaintiffs intend to submit here and those approved in the Amplify settlement both benefit Class Members: (a) no payments will be offset by prior payments received under the Oil Pollution Act, and (b) no Waterfront Tourism Class Members will need to submit claims to receive payments, for the reasons discussed below.

The distribution process here will be at least as "fair and simple" as the one in the Amplify settlement, as this Court described:

> The Fisher Plan and Property Plan will issue checks directly to Class Members, obviating the need for a claims process entirely. Certain Waterfront Tourism Class Members will similarly not need to submit claims at all, and will be issued checks directly. For those Waterfront Tourism Class Members who do need to submit claims forms, the requirement documentation is minimal and flexible, and the Claims Form is easily understandable.

*Id.* Omitting the claim requirement for certain Waterfront Tourism Class Members will make the distribution process even simpler here. The calculation of awards for each Class Member will also match the methodologies approved in the Amplify settlement, *see id.*, with the exception of the Waterfront Tourism Class Members who previously had to file claims, who now will receive equal portions of the damages allocated to their business category.

The Plans of Distribution that Class Plaintiffs will submit following preliminary approval will provide complete details. In sum:

***Fisher Class:*** The Fisher Class distribution will be based upon the pro rata share and value of the catch attributable to each vessel and each fishing license, per

landing records from the California Department of Fish and Wildlife (CDFW). The
Plan will also provide for the distribution of the Fisher Class Settlement Fund to
fish processors based upon CDFW landing records. This is the same Fisher Class
methodology employed and approved in the Amplify and Refugio/Plains
settlements. *See* Dkt. 727; *Plains*, Dkt. 979 (C.D. Cal. Sept. 20, 2022); *Plains*, Dkt.
951-1 (June 27, 2022) (plan of distribution for *Plains* fisher class).

**Property Class:** Property Class Members will receive checks by mail for
equal portions of the Property Class Settlement Fund (after fees and costs). As in
*Plains*, no Property Class Member will have to prove they had oil on their property.

**Waterfront Tourism Class:** All Waterfront Tourism Class Members will
receive checks by mail without having to file any claim (unlike in the Amplify
settlement). Waterfront Tourism Class Members who did not have to file claims in
the Amplify settlement (marinas, vessels and other entities engaged in cruising or
sportfishing, and hotels and lodging accommodations) will have their payments
determined the exact same way they are determined in the Amplify settlement:
based on their estimated share of aggregate damages for their category of business.
Because it is more difficult to estimate damages for four other categories of
businesses among the Waterfront Tourism Class—food and beverage entities, surf
schools, bait and tackle businesses, and other waterfront area businesses such as
retail shops—the estimated aggregate damages for each of these categories will be
divided evenly among all such businesses and distributed automatically by check.
Unlike in the Amplify settlement, these entities will not have to file claims to
receive payments. Class Plaintiffs believe, based in part upon their experience in
the Amplify settlement, that such a distribution is a fairer and more efficient means
than requiring a claims process to maximize distribution.

Courts regularly approve such settlement distributions as fair and reasonable.
*See, e.g.*, Dkt. 727 (approving similar distribution plans in Amplify settlement); *In
re Biolase, Inc. Sec. Litig.*, No. SA-CV-13-1300 JLS, 2015 WL 12720318, at *5

(C.D. Cal. Oct. 13, 2015) (approving variable pro rata distribution plan based upon relative injuries of class members); *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *4-5 (S.D. Cal. March 17, 2021) (approving plan of distribution that "correlates each Settlement Class members' recovery to . . . each Settlement Class member's Recognized Loss"); *Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG, 2018 WL 11358228, at *4 (C.D. Cal. Apr. 2, 2018) (approving payment of equal shares for portion of settlement); *S. California Gas Leak Cases*, No. BC601844, (Cal. Super. Ct. April 29, 2022) (granting final approval to settlement distributing $40 million fund equally to class of property owners affected by gas leak).

### b.    The Plans of Distribution Are Equitable.

The proposed distributions will also "treat[] class members equitably relative to each other." FRCP 23(e)(2)(D). Relevant considerations include "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." FRCP 23(e)(2), 2018 adv. comm. note. The release in the Settlement affects all Class Members equally. Settlement § VIII.[7]

As noted above, the Plans of Distribution apportion relief among each proposed Class equitably, considering the relative harm to each Class Member where feasible, and employing common distribution arrangements well in line with prior settlement approvals in this Circuit, including this Court regarding the Amplify settlement. *See* Dkt. 727 (approving Amplify Plans of Distribution and citing cases).

Allocation of funds *between* the three classes is also equitable, reflecting both

---

[7] The Settlement releases claims against the Shipping Defendants and "any party allegedly liable for damages to the Putative Class Members based on the acts or conduct of the *M/V Beijing* or the *MSC Danit* or any of the other Defendants, including but not limited to COSCO Shipping Lines Co., LTD., COSCO (Cayman) Mercury Co., Ltd. and Marine Exchange of Los Angeles-Long Beach Harbor . . . ." Settlement § II.36. This Settlement thus would resolve all Class Plaintiffs' claims.

- 19 -

relative amounts of damages as estimated by expert analysis to date, and likelihood of recovery given relative strength of claims. *See Jenson v. v. First Tr. Corp.*, 2008 WL 11338161, at \*10 (C.D. Cal. June 9, 2008) (approving distinctions in plan of allocation as reasonably reflecting likelihood of recovery of subgroups within the class). While Plaintiffs believe all three Classes will prevail, the Fisher Class and Property Class (unlike the Waterfront Tourism Class) benefit from the precedents in *Plains* certifying substantially similar classes, and admitting the testimony of the same experts that Plaintiffs may use here to prove class-wide liability damages for those two classes. *See Plains*, 2017 WL 10543402, at \*1 (C.D. Cal. Feb. 28, 2017) (certifying fisher class, denying certification of property and tourism classes); *Plains*, Dkt. 454 (C.D. Cal. Apr. 17, 2018) (certifying renewed motion to certify property class); *Plains*, 2020 WL 3105425, at \*6 (C.D. Cal. Jan. 16, 2020) (denying motion to decertify property class and to exclude fisher and property class experts). The mediators also found that the allocation "fairly divides the Settlement among the three putative classes." Phillips Decl., ¶ 13.

### c.   Plaintiffs Will Request Reasonable Service Awards for Class Representatives.

Plaintiffs intend to request service awards of up to $7,500 each to compensate the Class Representatives for the time and effort they spent pursing the matter on behalf of the Class, including participating in discovery and settlement. *See* Hazam Decl. ¶¶ 28, 34. Such awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "So long as they are reasonable, they can be awarded." *In re Apple*, 2022 WL 4492078, at \*13 (rejecting objections that service awards were inequitable); *see also Illumina*, 2021 WL 1017295, at \*8 (granting $25,000 service award as reasonable).

### 3.   Settlement Class Counsel Will Seek Reasonable Attorneys' Fees and Expenses (Rule 23(e)(2)(C)(iii)).

The terms of Interim Co-Lead Counsel's "proposed award of attorney's fees, including timing of payment," are also reasonable. *See* FRCP 23(e)(2)(C)(iii).

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
CASE NO. 8:21-CV-01628-DOC

1   Interim Co-Lead Counsel will move the Court for an award of attorneys' fees of up

2   to 25% of each Common Fund (up to $11.25 million). "[C]ourts typically calculate

3   25% of the fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth*,

4   654 F.3d at 942 (citation omitted). Interim Co-Lead Counsel's fee request will be

5   supported by their lodestar in the matter, and Plaintiffs will provide lodestar and

6   expense figures when they move for attorneys' fees and costs. Plaintiffs will also

7   seek reimbursement of litigation expenses. Hazam Decl. ¶ 35.

8          Plaintiffs will file their motion for attorneys' fees and expenses (along with

9   Plaintiffs' request for service awards) sufficiently in advance of the deadline for

10  Class Members to object to the request. The motion will be available on the

11  Settlement Website. Class Members will thus have the opportunity to comment on

12  or object to the fee application prior to the hearing on final settlement approval, as

13  the Ninth Circuit and Rule 23(h) require. *See In re Volkswagen "Clean Diesel"*

14  *Mktg., Sales Practices & Prods. Liab. Litig.*, 895 F.3d 597, 614–15 (9th Cir. 2018).

15         As with the Plans of Distribution, Plaintiffs' request for reasonable attorneys'

16  fees and expenses, and for service awards for the Class Representatives, is meant to

17  be separate and distinct from the Court's approval of the Settlement Agreement to

18  help ensure that the Settlement becomes final and effective as soon as possible. As

19  a result, a Class member might object regarding attorneys' fees, expenses, or

20  service awards, and the Settlement could nonetheless become final and effective.

21              **4.      No Other Agreements Exist.**

22         Plaintiffs have not entered into any agreements "made in connection with the

23  proposal" besides the Settlement itself. FRCP 23(e)(2)(C)(iv), 23(e)(3).

24  **II.    The Court Should Certify the Settlement Classes Upon Final Approval.**

25         When a settlement is reached before certification, a court must determine

26  whether to certify the settlement class. *See, e.g.*, *Manual for Compl. Litig.,* § 21.632

27  (4th ed. 2014); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).

28  Class certification is warranted when the requirements of Rule 23(a) and at least

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
CASE NO. 8:21-CV-01628-DOC

one subsection of Rule 23(b) are satisfied. Certification is warranted here. *See* Dkts. 559, 727 (certifying identical classes in Amplify settlement).

## A.     The Requirements of Rule 23(a) Are Satisfied.

**Numerosity**. Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." FRCP 23(a)(1). Here, each Class contains over one thousand Class Members. Intrepido-Bowden Decl., ¶ 25.

**Commonality.** Rule 23(a)(2) requires that there be one or more questions common to the class. Commonality "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). This case raises multiple common questions, including whether the Shipping Defendants acted negligently in operating and maintaining their vessels, and whether the Shipping Defendants' conduct caused the Oil Spill.

**Typicality.** Under Rule 23(a)(3), a plaintiff's claims are "typical" if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). Plaintiffs' claims and those of the Settlement Classes each represents are based on the same course of conduct and the same legal theories. Moreover, the Plaintiffs representing each Settlement Class suffered the same types of alleged harm as the Class Members they seek to represent.

**Adequacy of Representation.** Rule 23(a)(4)'s adequacy inquiry asks "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). Interim Co-Lead Class Counsel have extensive experience litigating and resolving class actions, and are well qualified to represent the Settlement Classes. *See* Dkt. 38 (appointing Interim Co-Lead Counsel after considering, in part, their "[e]xperience handing class action sand other

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
CASE NO. 8:21-CV-01628-DOC

complex litigation"). Interim Co-Lead Class Counsel have vigorously prosecuted this action on behalf of the Settlement Classes, including engaging in substantial motions practice and extensive investigation and discovery, developing experts, participating in mediation, and negotiating the proposed Settlement. *See supra* Background § II; Argument § I.A. They will continue to protect their interests.

Likewise, the Class Representatives have demonstrated their commitment to the Settlement Classes, including by providing significant amounts of information about their businesses and their losses, answering questions and signing written responses to the Shipping Defendants' discovery requests, regularly communicating with their counsel about the case, and reviewing and approving the proposed Settlement. Hazam Decl., ¶¶ 28, 34.

Finally, Plaintiffs' and Interim Co-Lead Class Counsel's interests are aligned with and not antagonistic to the interests of the Settlement Classes, with whom they share an interest in obtaining relief from the Shipping Defendants.

### B.     The Requirements of Rule 23(b)(3) Are Satisfied.

In addition to the requirements of Rule 23(a), at least one prong of Rule 23(b) must be satisfied. Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**Predominance.** "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). The Ninth Circuit favors class treatment of claims stemming from a "common course of conduct," like those alleged from the Oil Spill in this case. *See In re First All. Mortg. Co.*, 471 F.3d 977, 989 (9th Cir. 2006). Common questions predominate here. The Settlement Class Members' claims all arise under the same laws and the same

alleged conduct. The questions that predominate include whether the Shipping Defendants acted negligently in maintaining and operating their vessels, and whether the Shipping Defendants caused the Oil Spill. Moreover, under the proposed Settlement, there will be no class trial, removing potential concerns about individual issues, if any, creating trial inefficiencies. *See Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

**Superiority.** Rule 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at 615; *see also Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010) ("The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."). Class treatment is superior to other methods for the resolution of this case, particularly given the relatively small amounts of alleged damages for each individual Class Member. Moreover, Settlement Class Members remain free to exclude themselves if they wish to do so.

## III.   The Proposed Notice Program Complies with Rule 23 and Due Process.

Before a class settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." FRCP 23(e)(1)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 1579251, at *8 (S.D. Cal. Apr. 22, 2021) (quotation marks omitted). "[N]either Rule 23 nor the Due Process Clause requires actual notice to each individual class member." *In re Apple*, 2022 WL 4492078, at *5 (citation omitted).

The proposed notice program here meets the standards of the Federal Rules and Due Process. The notice program includes direct notice via first class mail to all

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
CASE NO. 8:21-CV-01628-DOC

identifiable Class Members;[8] a robust and targeted social media notice campaign; a

Settlement Website where Settlement Class Members can view the Settlement, the

Long-Form Notice, and other key case documents; and a Toll-Free Number.

Pursuant to Rule 23(c)(2)(B), the proposed forms of notice (*see* Intrepido-Bowden

Decl., Exs. B-J) provide information about the case, the Settlement, and Class

Members' rights and options in clear and concise terms.

## IV.    The Court Should Schedule a Fairness Hearing and Related Dates.

The next steps are to give notice to Class Members, submit the proposed Plan

of Distribution for the Court's review and post it on the Settlement website, allow

Class Members to file objections, and hold a Fairness Hearing. The Parties propose

the following schedule also set forth in the concurrently filed proposed Order:

| | |
|---|---|
| Last Day for the Plaintiffs to file Plan of Distribution | **10 days after Preliminary Approval** |
| Notice to be Completed | **40 days after Preliminary Approval** |
| Last day for Plaintiffs to File motion for Final Approval of Settlement and Approval of Plans of Distribution, and for Interim Co-Lead Counsel to file Application for Fees and Expenses and for Service Awards | **50 days after Preliminary Approval** |
| Last day to file Objections or Opt-Out Requests | **70 days after Preliminary Approval** |
| Last day to file replies in support of Final Approval, Plans of Distribution, Attorneys' Fees and Expenses, and Service Awards | **80 days after Preliminary Approval** |
| Final Approval Hearing | **90 days after Preliminary Approval** |

## CONCLUSION

Plaintiffs respectfully request that the Court: (1) determine under Rule

23(e)(1) that it is likely to approve the Settlement and certify the Settlement

Classes; (2) appoint Interim Co-Lead Counsel as Interim Settlement Class Counsel

to conduct the necessary steps in the Settlement approval process; (3) direct notice

---

[8] The website instructs businesses that do not receive a notice to contact the
Settlement Administrator to determine if they fall within a Class.

to the Classes through the proposed notice program; and (4) schedule a Fairness Hearing to consider final approval of the Settlement pursuant to Rule 23(e)(2).

Dated: May 15, 2022                    Respectfully submitted,

                                       /s/ Lexi J. Hazam
                                       Lexi J. Hazam

                                       /s/ Wylie A. Aitken
                                       Wylie A. Aitken

                                       /s/ Stephen G. Larson
                                       Stephen G. Larson

                                       Wylie A. Aitken, State Bar No. 37770
                                       Darren O. Aitken, State Bar No. 145251
                                       Michael A. Penn, State Bar No. 233817
                                       Megan G. Demshki, State Bar No. 306881
                                       **AITKEN✦AITKEN✦COHN**
                                       3 MacArthur Place, Suite 800
                                       Santa Ana, CA 92808
                                       Telephone: (714) 434-1424
                                       Facsimile: (714) 434-3600

                                       Lexi J. Hazam, State Bar No. 224457
                                       Elizabeth J. Cabraser, State Bar No. 083151
                                       Robert J. Nelson, State Bar No. 132797
                                       Wilson M. Dunlavey, State Bar No. 307719
                                       **LIEFF CABRASER HEIMANN
                                       & BERNSTEIN, LLP**
                                       275 Battery Street, 29th Floor
                                       San Francisco, CA 94111-3339
                                       Telephone: (415) 956-1000
                                       Facsimile: (415) 956-1008

                                       Kelly K. McNabb, *admitted pro hac vice*
                                       Patrick I. Andrews, *admitted pro hac vice*
                                       Avery S. Halfon, *admitted pro hac vice*
                                       **LIEFF CABRASER HEIMANN
                                       & BERNSTEIN, LLP**
                                       250 Hudson Street, 8th Floor
                                       New York, NY 10013-1413
                                       Telephone: (212) 355-9500
                                       Facsimile: (212) 355-9592

                                       Stephen G. Larson, State Bar No. 145225
                                       *slarson@larsonllp.com*
                                       Steven E. Bledsoe, State Bar No. 157811
                                       *sbledsoe@larsonllp.com*
                                       Rick Richmond, State Bar No. 194962
                                       *rrichmond@larsonllp.com*

MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL
CASE NO. 8:21-CV-01628-DOC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Paul A. Rigali, State Bar No. 262948
*prigali@larsonllp.com*
**LARSON, LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

2764731.6