1   Wylie A. Aitken, State Bar No. 37770
    *wylie@aitkenlaw.com*
2   **AITKEN✦AITKEN✦COHN**
    3 MacArthur Place, Suite 800
3   Santa Ana, CA 92808
    Telephone: (714) 434-1424
4   Facsimile: (714) 434-3600

5   Lexi J. Hazam, State Bar No. 224457
    *lhazam@lchb.com*
6   **LIEFF CABRASER HEIMANN**
    **& BERNSTEIN, LLP**
7   275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
8   Telephone: (415) 956-1000
    Facsimile: (415) 956-100
9
    Stephen G. Larson, State Bar No. 145225
10  *slarson@larsonllp.com*
    **LARSON LLP**
11  600 Anton Blvd., Suite 1270
    Costa Mesa, CA 92626
12  Telephone: (949) 516-7250
    Facsimile: (949) 516-7251
13
    *Interim Settlement Class Counsel*
14
    *[Additional Counsel Appear on Signature Page]*
15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18                    **SOUTHERN DIVISION**

19

20  PETER MOSES GUTIERREZ, JR.,      Case No. 8:21-CV-01628-DOC(JDEx)
    *et al.*,
21                                   **NOTICE OF MOTION AND**
                    Plaintiffs,      **MOTION FOR FINAL APPROVAL**
22                                   **OF CLASS ACTION SETTLEMENT**
    v.
23                                   Date:    September 14, 2023
    AMPLIFY ENERGY CORP., *et al.*,  Time:    8:30 a.m.
24                                   Judge:   David O. Carter
                    Defendants.      Room:    10A
25

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL
                                                 APPROVAL OF CLASS ACTION SETTLEMENT
                                                 CASE NO. 8:21-CV-01628-DOC(JDEX)

TO ALL THE PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 14, 2023, at 8:30 a.m., or as soon thereafter as the matter may be heard by the Honorable David O. Carter in Courtroom 10A of the above-entitled court, located at 411 West Fourth Street, Santa Ana, CA 92701, Plaintiffs will and hereby do move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an Order:

A.     Granting final approval of the proposed Settlement (Dkt. 739-2);

B.     Appointing Settlement Class Counsel and Class Representatives under Fed. R. Civ. P. 23(g)(1); and

C.     Finding that notice to the Classes was directed and completed in a reasonable manner.

This motion is based on the attached supporting memorandum; the accompany declarations and exhibits; the pleadings, papers, and records on file in this action, including Plaintiffs' Motion for Preliminary Approval (Dkt. 739); any further papers filed in support of this motion; and arguments of counsel.

Dated:    July 31, 2023                     Respectfully submitted,

                                            */s/ Lexi J. Hazam*
                                            Lexi J. Hazam

                                            */s/ Wylie A. Aitken*
                                            Wylie A. Aitken

                                            */s/ Stephen G. Larson*
                                            Stephen G. Larson

                                            Wylie A. Aitken, State Bar No. 37770
                                            Darren O. Aitken, State Bar No. 145251
                                            Michael A. Penn, State Bar No. 233817
                                            Megan G. Demshki, State Bar No. 306881
                                            **AITKEN✦AITKEN✦COHN**
                                            3 MacArthur Place, Suite 800
                                            Santa Ana, CA 92808
                                            Telephone: (714) 434-1424
                                            Facsimile: (714) 434-3600

1    Lexi J. Hazam, State Bar No. 224457
     Elizabeth J. Cabraser, State Bar No. 083151
2    Robert J. Nelson, State Bar No. 132797
     Patrick I. Andrews, *admitted pro hac vice*
3    **LIEFF CABRASER HEIMANN
     & BERNSTEIN, LLP**
4    275 Battery Street, 29th Floor
     San Francisco, CA 94111-3339
5    Telephone: (415) 956-1000
     Facsimile: (415) 956-1008
6
     Kelly K. McNabb, *admitted pro hac vice*
7    Wilson M. Dunlavey, State Bar No. 307719
     Avery S. Halfon, *admitted pro hac vice*
8    **LIEFF CABRASER HEIMANN
     & BERNSTEIN, LLP**
9    250 Hudson Street, 8th Floor
     New York, NY 10013-1413
10   Telephone: (212) 355-9500
     Facsimile: (212) 355-9592
11
     Stephen G. Larson, State Bar No. 145225
12   *slarson@larsonllp.com*
     Steven E. Bledsoe, State Bar No. 157811
13   *sbledsoe@larsonllp.com*
     **LARSON LLP**
14   600 Anton Blvd., Suite 1270
     Costa Mesa, CA 92626
15   Telephone: (949) 516-7250
     Facsimile: (949) 516-7251
16
     *Interim Settlement Class Counsel*
17

18

19

20

21

22

23

24

25

26

27

28

Wylie A. Aitken, State Bar No. 37770
*wylie@aitkenlaw.com*
**AITKEN✦AITKEN✦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

Lexi J. Hazam, State Bar No. 224457
*lhazam@lchb.com*
**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-100

Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
**LARSON LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

*Interim Settlement Class Counsel*

*[Additional Counsel Appear on Signature Page]*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| PETER MOSES GUTIERREZ, JR., *et al.*,<br><br>            Plaintiffs,<br><br>v.<br><br>AMPLIFY ENERGY CORP., *et al.*,<br><br>            Defendants. | Case No. 8:21-CV-01628-DOC(JDEx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      September 14, 2023<br>Time:      8:30 a.m.<br>Judge:     David O. Carter<br>Room:      10A |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 2

I.      Factual Background ...................................................................................... 2

II.     Procedural Background ................................................................................ 2

        A.      Litigation Summary ........................................................................... 2

                1.      Initiation of the Litigation and Complaints ............................. 2

                2.      Litigation on Impact of Limitation Action on *Gutierrez* .......... 3

                3.      Plaintiffs' Settlement with Amplify ........................................ 4

                4.      Litigation Against Shipping Defendants in *Gutierrez* ............. 4

                5.      Litigation Against Shipping Defendants in Limitation
                        Action ..................................................................................... 4

                6.      Litigation Regarding Limitation Trial ..................................... 5

        B.      Discovery .......................................................................................... 5

        C.      Settlement Negotiations .................................................................... 6

        D.      Summary of Settlements Terms ......................................................... 7

        E.      The Notice Program ........................................................................... 7

III.    ARGUMENT .................................................................................................. 8

        A.      The Settlement Classes Satisfy All Requirements of Rule 23
                and Should Be Certified ..................................................................... 8

                1.      Rule 23(a)(1): The Class Is Sufficiently Numerous. ............... 8

                2.      Rule 23(a)(2): The Class Claims Present Common
                        Questions of Law and Fact. ..................................................... 9

                3.      Rule 23(a)(3): The Settlement Class Representatives'
                        Claims Are Typical of Other Class Members' Claims. ............ 9

                4.      Rule 23(a)(4): The Settlement Class Representatives and
                        Class Counsel Have Protected and Will Protect the
                        Interests of the Class. ........................................................... 10

                5.      Rule 23(b)(3)—Predominance: Common Issues of Law

# TABLE OF CONTENTS
## (continued)

Page

and Fact Predominate. ............................................................... 11

6.  Rule 23(b)(3)—Superiority: Class Treatment Is Superior to Other Available Methods for the Resolution of This Case. ........................................................................... 12

B.  The Settlement Is Fair, Reasonable, and Adequate. ............................... 12

1.  Rule 23(e)(2)(A): Class Counsel and the Representatives of the Settlement Classes Have Zealously Represented the Classes and Will Continue to Do So. ................................. 13

2.  Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations. .................. 14

3.  Rule 23(e)(2)(C): The Settlement Provides Adequate Relief in Exchange for the Compromise of Claims. ............... 15

4.  Rule 23(e)(2)(D): The Settlement Treats Class Members Equitably Relative to Each Other. ............................................ 19

C.  The Court-Approved Notice Program Complies with Rule 23(b)(3) and Rule 23(c)(2)(B). ............................................................. 22

IV.  CONCLUSION ............................................................................................ 23

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods.*, Inc. v. Windsor,
521 U.S. 591 (1997) ......................................................................................... 11

*Andrews et al v. Plains et al*,
15-cv-04113-PSG-JEM (C.D. Cal. Sept. 20, 2022) ............................................ 20

*Andrews v. Plains All American Pipeline*, *L.P.*,
No. 2:15-cv-04113-PSG (C.D. Cal.) ............................................................. 6, 17

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ........................................................................... 13

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ............................................. 14, 17

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ........................................................................... 10

*Fleming v. Impax Labs. Inc.*,
2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ................................................... 21

*Gutierrez et al. v. Amplify Energy Corp. et al.*,
8:21-cv-01628-DOC-JDE ...................................................................... 2, 3, 16, 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................... 10

*Hillson v. Kelly Servs. Inc.*,
2017 WL 279814 (E.D. Mich. Jan. 23, 2017) .................................................... 14

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ....................................................... 21

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ....................................................................... 16

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318, (C.D. Cal. Oct. 13, 2015) ................................................. 20

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ............................................................................. 14

*In re Elec. Carbon Prods. Antitrust Litig.*,
447 F. Supp.2d 389 (D.N.J. 2006) ..................................................................... 18

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. Jul. 22, 2018) ..................................................... 21

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ............................................................................. 11

*In re High-Tech Emp. Antitrust Litig.*,
2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) .................................................... 18

*In re Illumina, Inc. Sec. Litig.*,
2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) .............................................. 18, 20

*In re the Matter of the Complaint of Capetanissa Maritime Corporation*,
No. 2:22-cv-03462-DOC-JDE (C.D. Cal.) ........................................................... 3

- iii -

**TABLE OF AUTHORITIES**
**(continued)**

Page

*In re Toys R Us–Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438(C.D. Cal. 2014)..............................................................................15

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
2019 WL 13020734 (N.D. Cal. May 14, 2019)....................................................15

*Jenson, v. First Tr. Corp.*,
2008 WL 11338161, (C.D. Cal. June 9, 2008) .....................................................20

*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014)...............................................................................9

*Koenig v. Lime Crime, Inc.*,
2018 WL 11358228, (C.D. Cal. Apr. 2, 2018) ....................................................20

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)..............................................................................16

*Loomis v. Slendertone Distrib., Inc.*,
2021 WL 873340 (S.D. Cal. Mar. 9, 2021) ...................................................12, 21

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014).........................................................................13

*Palmer v. Stassinos*,
233 F.R.D. 546 (N.D. Cal. 2006)...........................................................................9

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014).................................................................................9

*Reed v. 1–800 Contacts, Inc.*,
No. 12–CV–02359 JM, 2014 WL 29011 (S.D. Cal. Jan. 2, 2014)......................16

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010)..............................................................................10

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)................................................................................21

*Slaven v. BP Am., Inc.*,
190 F.R.D. 649 (C.D. Cal. 2000)...........................................................................8

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ........................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ..............................................................................................9

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010)..............................................................................12

**Rules**

Fed. R. Civ. P. 23(a)(1).............................................................................................8

Fed. R. Civ. P. 23(a)(2).............................................................................................9

Fed. R. Civ. P. 23(a)(3).............................................................................................9

Fed. R. Civ. P. 23(a)(4)...........................................................................................10

Fed. R. Civ. P. 23(b)(3)...........................................................................................12

# TABLE OF AUTHORITIES
## (continued)

                                                                                    **Page**

Fed. R. Civ. P. 23(c)(2)............................................................................22

Fed. R. Civ. P. 23(e)(1)............................................................................22

Fed. R. Civ. P. 23(e)(2)........................................................................passim

Fed. R. Civ. P. 23(e)(3)............................................................................19

**Treatises**

4 William B. Rubenstein, *Newberg on Class Actions* § 13:49
    (5th ed. Dec. 2021 update).............................................................13, 14

**Other Authorities**

Fed. R. Civ. P. 23(e)(2), 2003 adv. comm. note.....................................19

Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note.....................................12

Fed. R. Civ. P. 23(e), 2018 adv. comm. note ...................................13, 14

Limitation Act of 1851, 46 U.S.C. §§ 30502 ............................................3

**INTRODUCTION**

After over a year of hard-fought litigation, Plaintiffs and Interim Settlement
Class Counsel secured a Settlement on behalf of fishers, real property owners and
lessees, and waterfront tourism entities with the Shipping Defendants.[1] The
Settlement is an excellent outcome. It provides a non-reversionary fund of $45
million to compensate Settlement Class Members, inclusive of attorneys' fees and
costs, to add to the $50 million fund achieved for the same Class Members through
the Amplify settlement. Pursuant to the Court's order preliminarily approving the
Settlement (Dkt. 751), Plaintiffs now file three motions to complete the approval
process.[2]

Through this motion, Plaintiffs seek final approval of the Settlement. *First*,
each proposed Settlement Class should be certified, because each proposed
Settlement Class satisfies the requirements for class certification under Fed. R. Civ.
P. 23(3) and 23(b)(3) for the same reasons this Court found in granting Preliminary
Approval. *Second*, the Settlement readily satisfies the "fair, adequate, and
reasonable" settlement approval standard of Rule 23 for the same reasons this Court
found in granting Preliminary Approval. The Settlement was the product of hard-
fought and arm's-length negotiation after significant discovery, and was facilitated
with the aid of experienced mediators, including the Hon. Layne R. Phillips, who
fully endorses the Settlement in all respects. *See generally* Phillips Decl. The
Settlement heads off the unpredictable risks of continued litigation, including the
Limitation Action trial regarding exoneration or limitation of liability, class

---

[1] The "Shipping Defendants" are: Capetanissa Maritime Corporation, Costamare
Shipping Co., S.A., V.Ships Greece Ltd., and the *M/V Beijing* (collectively,
"Capetanissa") and Dordellas Finance Corp., MSC Mediterranean Shipping Co.
SA, Mediterranean Shipping Co. S.r.l., MSC Shipmanagement Ltd., and *MSC
Danit* (collectively, "Dordellas"). *See* Settlement Agreement (Dkt. 739-2, ¶ 1).
Capitalized terms have the definitions set forth in the Settlement Agreement.
[2] In addition to this motion for final approval, Plaintiffs have concurrently filed a
motion to approve the Plans of Distribution, and a motion to award fees, costs, and
Class Representative service awards.

certification and whether a class claim is permissible in a Limitation Action, summary judgment, trial, and appeal—risks that are heightened in this case given its complexity and scope. *See id.* ¶ 13. Settlement Class Members will receive significant compensation quickly, benefitting from settlement implementation work already completed for the similar Amplify settlement.

Plaintiffs thus respectfully request that the Court certify the Settlement Classes and grant final approval to the Settlement.

## BACKGROUND

### I. Factual Background

Class Plaintiffs allege that in January 2021, two container ships, the *M/V Beijing* and *M/V MSC Danit* (the "Ships"), struck and dragged their anchors over Amplify's San Pedro Bay Pipeline (the "Pipeline"), moving a 4,000-foot section of the Pipeline out of alignment by more than 100 feet. Plaintiffs allege that the Ships' owners and operators neglected to inform Amplify or relevant government authorities about the anchor strikes prior to October 2021, when damage from those strikes caused the Pipeline to rupture and discharge thousands of gallons of crude oil into Orange County's coastal waters. The spill soiled beaches and coastal properties, closed commercial fisheries, and harmed waterfront tourism businesses.

### II. Procedural Background

#### A. Litigation Summary

This litigation involves two related actions: (1) *Gutierrez et al. v. Amplify Energy Corp. et al.*, 8:21-cv-01628-DOC-JDE ("*Gutierrez*") and (2) *In the Matter of the Complaint of Dordellas Finance Corp. Owner and MSC Mediterranean Shipping Company S.A., Owner pro hac vice*, No. 2:22-cv-02153-DOC-JDE (C.D. Cal.) ("Limitation Action").

##### 1. Initiation of the Litigation and Complaints

Shortly after the Oil Spill in early October 2021, Plaintiffs filed lawsuits arising from the spill. *See* Dkt. 30 at 2 (listing cases). On December 20, 2021, this

1   Court consolidated many of those cases into this lead case, *Gutierrez*, and

2   appointed Interim Co-Lead Counsel. Dkt. 38.

3        Plaintiffs filed their Consolidated Amended Complaint on January 28, 2022,

4   Dkt. 102, and their First Amended Consolidated Amended Complaint on March 21,

5   2022, Dkt. 148. Soon thereafter, the *MSC Danit*'s owner and owner *pro hac vice*,

6   Dordellas Finance Corp. and MSC Mediterranean Shipping Co. SA, and the

7   *Beijing*'s owner, Capetanissa Maritime Corporation (collectively "Shipowners"),

8   filed petitions under the Limitation of Liability Act of 1851, 46 U.S.C. §§ 30502, *et*

9   *seq.* (the "Limitation Act"), seeking exoneration from or limitation of liability. *See*

10   Limitation Action Dkt. No. 1; *see also In re the Matter of the Complaint of*

11   *Capetanissa Maritime Corporation*, No. 2:22-cv-03462-DOC-JDE (C.D. Cal.) ("*In*

12   *re Capetanissa*").

13            **2.    Litigation on Impact of Limitation Action on *Gutierrez***

14        The Shipowners sought to stay Plaintiffs' claims in *Gutierrez* until the

15   Shipowners' potential exoneration or limitation was resolved under the Limitation

16   Act. *See* Limitation Action Dkt. 1; *In re Capetanissa*, Dkt. 1. Plaintiffs argued that

17   their claims against Amplify and the Shipping Defendants should proceed in

18   *Gutierrez.* Dkts. 224, 232. Plaintiffs also asserted that any stay should apply only to

19   claims against the Shipowners and no other Defendants, and that Plaintiffs should

20   be able to proceed with a class claim within the Limitation Action. Dkts. 224, 232.

21        On May 25, 2022, the Court permitted Plaintiffs' claims against the non-

22   Shipowner Defendants, including Amplify and certain Shipping Defendants, to

23   proceed in *Gutierrez*, and stayed Plaintiffs' claims against the Shipowners in

24   *Gutierrez* until the Shipowners' Limitation Action claims were resolved.[3] Dkt. 245.

25   Plaintiffs then filed a class claim on behalf of the putative Settlement Classes

26   against the Shipowners in the Limitation Action, as well as an Answer asserting the

27   ─────────────

28   [3] When it became apparent neither V.Ships Greece Ltd. nor Costamare Shipping
     Company were a vessel owner, Plaintiffs successfully moved to lift the stay against
     them. Dkts. 383, 396, 401.

1  Shipowners were not entitled to exoneration or limitation of liability. Limitation

2  Action Dkts. 29, 166, 167, 171.

### 3. Plaintiffs' Settlement with Amplify

4  On August 24, 2022, Plaintiffs and Amplify informed the Court they had

5  reached an agreement to settle Plaintiffs' claims against Amplify. Dkt. 377. This

6  Court granted final approval to the Amplify settlement on April 24, 2023. Dkt. 728.

7  After reaching the proposed settlement with Amplify, Plaintiffs focused all

8  their litigation efforts on the Shipping Defendants, and the significant merits-related

9  hours and expenditures by Plaintiffs since then have related solely to pursuing their

10 claims against the Shipping Defendants. *See* Declaration of Lexi J. Hazam in

11 Support of Final Approval ("Hazam Decl.," filed concurrently herewith), ¶ 16.

### 4. Litigation Against Shipping Defendants in *Gutierrez*

13 Plaintiffs filed their now-operative Second Amended Consolidated Class

14 Action Complaint on October 4, 2022. Dkt. 454. The Shipping Defendants filed

15 three motions to dismiss. Dkts. 467, 470, 494. Plaintiffs opposed (Dkts. 491, 537).

16 Defendants replied, and the Court heard argument at an all-day hearing on

17 December 5, 2022. These motions were still pending at the time the Parties settled.

### 5. Litigation Against Shipping Defendants in Limitation Action

19 The Parties also engaged in significant motion practice related to the

20 Limitation Action. Shipowners moved to strike or dismiss Plaintiffs' class claim,

21 arguing that class allegations cannot be maintained within a limitation action.

22 Limitation Action Dkts. 47, 48. Plaintiffs opposed, Limitation Action Dkt. 66, and

23 the Parties argued the motion over the course of a two-day hearing on August 24

24 and 25, 2022.

25 Plaintiffs also filed an objection to the Shipowners' planned Limitation

26 Action notice arguing it was insufficient to inform Class Members of the Limitation

27 Action's potential impact on their rights. Limitation Action Dkt. 24. Shipowners

28 moved to strike the objection, Limitation Action Dkts. 30, 33, which Plaintiffs

opposed, Limitation Action Dkt. 44. The Court denied the Shipowners' motion to strike and ordered supplemental notice to cure the deficiencies noted in Plaintiffs' objection. Limitation Action Dkt. 113. The Court further directed the Parties to confer on the form of the supplemental notice and raise any disputes with the Special Master Panel. *Id.* The Parties made numerous submissions to the Special Master Panel regarding the proper form of supplemental notice, in which Plaintiffs successfully argued for direct notice to identifiable putative class members, extending the claim filing period, and a short form claim to streamline the claim filing process. *See* Limitation Action Dkts. 131, 132.

### 6. Litigation Regarding Limitation Trial

The Parties submitted detailed briefing on the scope of the Limitation Action trial, in which Plaintiffs successfully advocated for a narrow trial focused on exoneration and limitation. *See* Limitation Action Dkts. 208, 224, 235.

### B. Discovery

Plaintiffs and the Shipping Defendants have engaged in a significant amount of discovery in the year and a half since this litigation began in both actions. Plaintiffs propounded a total of 94 requests for production on the Shipping Defendants, along with three sets of requests for admission. Declaration of Hazam Decl., ¶ 14. Each Plaintiff timely responded to the Shipping Defendants' two sets of requests for production, two sets of interrogatories, and Capetanissa's requests for admission. *Id.* Plaintiffs also briefed (and in some cases argued) numerous discovery disputes with the Shipping Defendants before the Special Master Panel, including disputes regarding the Shipping Defendants' pace and schedule of production, whether Plaintiffs and other parties would be permitted to propound discovery relating to the Shipping Defendants' Limitation Action claims against one another, and the location and timing of depositions. *Id.* ¶¶ 16-17.

The Class Representatives collected 8 GB of data for search and review responsive to the Shipping Defendants' requests. *Id.* ¶ 15. Plaintiffs obtained and

1  reviewed more than 180,000 documents, including numerous highly technical

2  documents relating to ship engineering and navigation. *Id*. Plaintiffs cross-noticed

3  and participated in the depositions of more than 40 witnesses around the world,

4  including at ports of call in Europe. *Id.* Plaintiffs also participated in inspections of

5  the *M/V Beijing*, the oil platform that controlled the pipeline at the location and time

6  of the spill, and the pipeline during its removal. *Id*. Leading up to the deadline for

7  expert reports, Plaintiffs also developed several maritime experts and worked with

8  various liability experts. *Id*.

9       As to damages, Plaintiffs engaged some of the same experts that survived

10  *Daubert* challenges in *Andrews v. Plains All American Pipeline, L.P.*, No. 2:15-cv-

11  04113-PSG (C.D. Cal.), a similar class action on behalf of businesses and property

12  owners harmed by a Southern California oil spill. *Id.* ¶ 22. These experts include an

13  expert in the field of real estate damages, an economist, and a marine scientist, who

14  submitted confidential preliminary reports for purposes of mediation to support

15  Plaintiffs' claims and damages. *Id.*

16       As a result of this extensive liability and damages work conducted by the

17  Plaintiffs and the Ships, the Parties were well-placed to evaluate the strengths and

18  weaknesses of their positions and the adequacy of the proposed Settlement. *Id.* at ¶

19  23. The advanced stage of discovery crystallized liability issues in the mediation

20  sessions with the Hon. Layn Phillips (Ret.) and Hon. Sally Shushan (Ret.). *See*

21  *generally* Phillips Decl.

22       **C.**    <u>**Settlement Negotiations**</u>

23       The proposed Settlement is the product of hard-fought, arm's length

24  negotiations. On June 2, 2022, the Parties participated in a formal mediation session

25  with Hon. Layn Phillips (Ret.) and Hon. Sally Shushan (Ret.). That session did not

26  result in a settlement. Phillips Decl. ¶¶ 5-7. The Parties continued informal

27  negotiations and held telephone conferences over the following months. *Id*. ¶ 8. On

28  November 14, 2022, the Parties again engaged in an all-day mediation session. *Id*. ¶

1    9. There, too, the Parties were unable to come to an agreement. *Id*. Following that

2    mediation session, the Parties continued their informal negotiations with the

3    mediators. *Id.* On February 5, 2023, the mediators made a mediator's proposal,

4    which the Parties accepted on February 8, 2023. *Id.* ¶ 10.

5        After reaching an agreement in principle, the Parties worked diligently to

6    draft the Settlement Agreement, notices, and other settlement exhibits. Hazam Decl.

7    ¶ 5. This Court granted preliminary approval to the Shipping Defendants settlement

8    on June 15, 2023. Dkts. 750, 751. Since then, Interim Settlement Class Counsel has

9    worked with the Settlement Administrator to assist with sending notice and

10   administering the settlement. Hazam Decl. ¶ 5.

11            **D.**    **Summary of Settlements Terms**

12       Under the proposed Settlement, the Shipping Defendants will pay $45

13   million total, with $30.6 million paid to the Fisher Class, $8.1 million to the

14   Property Class, and $6.3 million to the Waterfront Tourism Class. *See* Settlement at

15   §§ II.16, 28, 41, III. These amounts, together with interest earned thereon, will

16   constitute the Fisher, Property, and Waterfront Tourism Class Common Funds,

17   respectively. *Id.* § II.14, 26, 39. No portion of the combined $45 million will revert

18   to the Shipping Defendants. After deduction of notice-related costs and any Court-

19   approved award of attorneys' fees, reimbursement of litigation expenses, and

20   service awards to Class Representatives, all of the remaining monies will be

21   distributed to the Class members in accordance with Plaintiffs' proposed Plans of

22   Distribution, which were filed with the Court on June 26, 2023. Dkt. 752.

23   Alongside this motion, Plaintiffs have filed a separate motion for approval of the

24   Plans of Distribution.

25            **E.**    **The Notice Program**

26       Following preliminary approval, the Parties worked with the respected notice

27   provider and settlement administrator JND to successfully roll out the Court-

28   approved Notice Program. JND reports that the Notice Program is on track to reach

1   "virtually all" Class Members. Declaration of Gretchen Eoff ("Eoff Decl." filed

2   concurrently herewith), ¶ 4. To date, and in compliance with this Court's order

3   granting Preliminary Approval, JND has sent thousands of individual notices by

4   mail and email to individual Class members. *Id*. ¶¶ 5-13. Also per Court order, JND

5   supplemented this direct effort with supplemental forms of notice, including a

6   substantial digital notice effort, which included a targeted state-of-the-art social

7   media outreach campaign in which the digital ads link directly to the dedicated

8   Settlement Website (www.OCOilSpillSettlement.com) where Class Members can

9   review the notices, read FAQs, apprise themselves of key dates, and contact the

10  Settlement Administrator directly should they have any additional questions. *Id.*

11  ¶¶ 16-29. To maximize the success of the Settlement Program, Interim Settlement

12  Class Counsel will continue to confer with JND regarding appropriate additional

13  outreach.

14  **III.    ARGUMENT**

15      **A.    The Settlement Classes Satisfy All Requirements of Rule 23 and
16             Should Be Certified.**

17      As the Court concluded in granting preliminary approval and directing notice

18  to the Classes, "the proposed Settlement Classes, as defined in the Settlement

19  Agreement, likely meet the requirements for class certification under Fed. R. Civ.

20  P. 23(a) and 23(b)(3)." Dkt. 599 ¶ 2. This remains true, and the Settlement Classes

21  should be certified.

22          **1.    Rule 23(a)(1): The Class Is Sufficiently Numerous.**

23      Rule 23(a)(1) is satisfied where, as here, "the class is so numerous that

24  joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity

25  is generally met when the class exceeds forty members. *See, e.g.*, *Slaven v. BP Am.,*

26  *Inc*., 190 F.R.D. 649, 654 (C.D. Cal. 2000). Here each Class contains hundreds or

27  thousands of Class Members. *See* Declaration of Gretchen Eoff (concurrently filed),

28

¶¶ 5-7.[4] The size of the Settlement Class renders joinder impracticable. *See Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006) ("Joinder of 1,000 or more co-plaintiffs is clearly impractical."). Numerosity is easily satisfied here.

### 2. Rule 23(a)(2): The Class Claims Present Common Questions of Law and Fact.

Rule 23(a)(2) requires that there be one or more questions common to the class. Commonality "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011) (internal quotation omitted).

As Plaintiffs explained in their motion for preliminary approval, this case raises multiple common questions, including whether the Shipping Defendants acted negligently in operating and maintaining their vessels, and whether the Shipping Defendants' conduct caused the Oil Spill. These common questions will, in turn, generate common answers "apt to drive the resolution of the litigation" for the Settlement Classes. *See Dukes*, 564 U.S. at 350. For these reasons, commonality is readily satisfied.

### 3. Rule 23(a)(3): The Settlement Class Representatives' Claims Are Typical of Other Class Members' Claims.

Under Rule 23(a)(3), a plaintiff's claims are "typical" if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted).

---

[4] As explained in JND's declaration, JND determined through analysis of detailed records of the California Department of Fish & Wildlife ("CDFW") that the number of Fisher Class Members is 642, fewer than previously identified based on more generalized CDFW data. JND sent notice of the Shipping Defendant settlement to Fisher Class Members identified in the detailed CDFW data. The hundreds of Fisher Class Members easily satisfy the numerosity requirement. *See Slavin*, 190 F.R.D. at 654.

1     "Like the commonality requirement, the typicality requirement is 'permissive'…."

2     *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon v.*

3     *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

4         Plaintiffs' claims and those of the Settlement Classes each represents are

5     based on the same course of conduct and the same legal theories. Moreover, the

6     Plaintiffs representing each Settlement Class suffered the same types of alleged

7     harm as the Class Members they seek to represent. For these reasons, the Settlement

8     Class Representatives' claims are typical.

### 4. Rule 23(a)(4): The Settlement Class Representatives and Class Counsel Have Protected and Will Protect the Interests of the Class.

11         Rule 23(a)(4)'s adequacy inquiry asks "(1) do the named plaintiffs and their

12     counsel have any conflicts of interest with other class members and (2) will the

13     named plaintiffs and their counsel prosecute the action vigorously on behalf of the

14     class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012)

15     (citation omitted). Interim Settlement Class Counsel have extensive experience

16     litigating and resolving class actions, and are well qualified to represent the

17     Settlement Classes. *See* Dkt. 38 (appointing Interim Settlement Class Counsel as

18     Interim Co-Lead Counsel at the litigation's inception after considering, in part, their

19     "[e]xperience handing class actions and other complex litigation"); Dkt. 739-3 (Tr.

20     of Apr. 24, 2023 Hr'g) at 7:11-13, 21-22 ("This Court has been, let's say,

21     impressed with the fact that all counsel . . . have been extraordinarily diligent";

22     "I'm extremely complimentary towards all counsel in this matter"). As described

23     above, Interim Settlement Class Counsel have vigorously prosecuted this action on

24     behalf of the Settlement Classes, including engaging in substantial motion practice

25     and extensive investigation and discovery, developing experts, participating in

26     mediation, and negotiating the proposed Settlement. They will continue to protect

27     the Classes' interests.

28         Plaintiffs have similarly demonstrated their commitment to the Settlement

1   Classes, including by providing pertinent information about their losses, searching
2   for and providing documents and information in response to Amplify's discovery
3   requests, regularly communicating with their counsel about the case, and reviewing
4   and approving the proposed Settlement. *See, e.g.*, Hazam Decl. ¶¶ 41-44.

5        Finally, Plaintiffs and Interim Settlement Class Counsel's interests are
6   aligned with and not antagonistic to the interests of the Settlement Classes, with
7   whom they share an interest in obtaining relief from the Shipping Defendants for
8   the alleged violations.

### 5.   Rule 23(b)(3)—Predominance: Common Issues of Law and Fact Predominate.

11       "The predominance inquiry 'asks whether the common, aggregation-
12   enabling, issues in the case are more prevalent or important than the non-common,
13   aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.
14   Ct. 1036, 1045 (2016) (citation omitted). The Ninth Circuit favors class treatment
15   of claims stemming from a "common course of conduct," like those alleged from
16   the Oil Spill in this case. *See In re First All. Mortg. Co.*, 471 F.3d 977, 989 (9th Cir.
17   2006).

18       Common questions predominate here. The Settlement Class Members'
19   claims all arise under the same laws and the same alleged conduct. The questions
20   that predominate include whether the Shipping Defendants acted negligently in
21   operating and maintaining their vessels, and whether the Shipping Defendants'
22   conduct caused the Oil Spill. Moreover, under the proposed Settlement, there will
23   not need to be a class trial, meaning there are no potential concerns about individual
24   issues, if any, creating trial inefficiencies. *See Amchem Prods.*, Inc. v. Windsor, 521
25   U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class
26   certification, a district court need not inquire whether the case, if tried, would
27   present intractable management problems . . . for the proposal is that there be no
28   trial.").

### 6.     Rule 23(b)(3)—Superiority: Class Treatment Is Superior to Other Available Methods for the Resolution of This Case.

Rule 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *Id*. at 615; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."). Class treatment is superior to other methods for the resolution of this case, particularly given the relatively small amounts of alleged damages for each individual Class Member. Moreover, Settlement Class Members remain free to exclude themselves if they wish to do so. Superiority is met here, and Rule 23(e)(1)(B)(ii) is satisfied.

\*\*\*

The Settlement Classes meet all relevant requirements of Rule 23(a) and (b). Plaintiffs thus request that the Court confirm the certification of the Settlement Classes and the appointment of the Settlement Class Representatives.

### B.     The Settlement Is Fair, Reasonable, and Adequate.

A court may approve the parties' settlement after it determines that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23 sets out the "primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note. These include whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[5]

---

[5] The Rule substantively tracks the Ninth Circuit's test for evaluating a settlement's fairness. *Loomis v. Slendertone Distrib., Inc.*, 2021 WL 873340, at \*4 n.4 (S.D. Cal. Mar. 9, 2021). Plaintiffs' analysis accounts for the Ninth Circuit's factors and discusses them where applicable. Those factors are: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the

The proposed Settlement readily satisfies these criteria.

### 1. Rule 23(e)(2)(A): Class Counsel and the Representatives of the Settlement Classes Have Zealously Represented the Classes and Will Continue to Do So.

The Court considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis includes "the nature and amount of discovery" undertaken in the case. Fed. R. Civ. P. 23(e), 2018 adv. comm. note; *see also* 4 William B. Rubenstein, *Newberg on Class Actions* § 13:49 (5th ed. Dec. 2021 update) ("*Newberg*").

As detailed above, Interim Settlement Class Counsel undertook significant efforts to investigate and refine the Class claims. Interim Settlement Class Counsel engaged in significant discovery, including litigating multiple discovery disputes before the SMP; engaged in robust Rule 12 motion practice; and conducted extensive litigation to protect the Classes' claims in the Limitation Action. This process fleshed out the strengths and vulnerabilities of Plaintiffs' claims. Class Counsel were therefore well-positioned to evaluate the case and to negotiate a fair and reasonable Settlement. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). They have done so.

The Settlement Class Representatives are also actively engaged. Each was consulted on the terms of the Settlement and has expressed their support and continued willingness to protect the Class until the Settlement is approved and its administration completed. Hazam Decl. ¶ 44.

The Settlement Classes remain well represented by experienced Counsel and engaged Settlement Class Representatives.

---

amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (citation omitted).

### 2. Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations.

The Court must also consider whether "the [settlement] proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This "procedural concern[]" requires the Court to examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), 2018 adv. comm. note. There is "no better evidence" of "a truly adversarial bargaining process . . . than the presence of a neutral third party mediator." *Newberg*, *supra*, § 13:50.

Here, the parties engaged in vigorous and contested settlement negotiations with the aid of Hon. Layne Phillips (Ret.), a "neutral, experienced mediator[]." *See Hillson v. Kelly Servs. Inc*., 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017). The mediation efforts spanned months and included a two full-day mediation sessions before the Hon. Layne Phillips (Ret.), along with the Hon. Sally Shushan (Ret.). The Hon. Layne Phillips "strongly support[s] the Court's approval of the Settlement in all respects." Dkt. 739-4 ¶ 13.

Nor does the Agreement contain any signs of collusion. *See generally In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). Class Counsel has applied for an award of attorneys' fees of 25 percent of the three Common Funds. This award will be "separate from the approval of the Settlement, and neither [Plaintiffs nor Class Counsel] may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019). Finally, no portion of the Common Funds will revert to the Shipping Defendants.

In summary, this Settlement is the result of strenuous and informed arm's length settlement negotiations.

### 3. Rule 23(e)(2)(C): The Settlement Provides Adequate Relief in Exchange for the Compromise of Claims.

The Court must ensure "the relief provided for the class is adequate," taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed distribution plan, including the claims process; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement made in connection with the proposal, as required under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). These factors overwhelmingly support preliminary approval. Avoiding years of additional, risky litigation in exchange for immediate and significant cash payments is a principled compromise that works to the clear benefit of the Classes in this case. *See* Fed. R. Civ. P. 23(e)(2)(C).

### a. The Settlement Relief Outweighs the Costs, Risks, and Delay of Trial and Appeal.

Rule 23(e)(2)(C)(i) requires that the Court "evaluate the adequacy of the settlement amount in light of the case's risks." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 2019 WL 13020734, at *5 (N.D. Cal. May 14, 2019). This requires weighing "[t]he relief that the settlement is expected to provide" against "the strength of the plaintiffs' case [and] the risk, expense, complexity, and likely duration of further litigation." *Id*. (internal cites and quotes omitted).

Here, the non-reversionary $45 million Settlement provides Settlement Class Members with substantial monetary relief. When viewed in combination with the $50 million monetary relief sought in the settlement against Amplify, the $95 million result in under two years is extraordinary. The combined $95 million represents a substantial portion of the Classes' estimated damages. *See* Phillips Decl. at ¶ 13. Courts routinely approve settlements that achieve significantly less. *See also e.g.*, *In re Toys R Us–Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (granting final approval to settlement providing 3% of possible recovery ($391.5 million value on exposure up to $13.05 billion)); *Reed v. 1–800 Contacts, Inc.*, No. 12–CV–02359 JM, 2014

1  WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval to settlement

2  providing 1.7% of possible recovery (net settlement fund of $8,288,719.16,

3  resolving claims worth potentially $499,420,000). Class Members would only

4  receive 100% of their damages if they succeed at every stage of litigation, including

5  lengthy appeal, at which point they could still end up with no recovery. The "very

6  essence of a settlement is compromise, a yielding of absolutes and an abandoning

7  of highest hopes." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 322

8  (N.D. Cal. 2018) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242

9  (9th Cir. 1998)); *see also id.* ("Estimates of what constitutes a fair settlement figure

10  are tempered by factors such as the risk of losing at trial, the expense of litigating

11  the case, and the expected delay in recovery (often measured in years).").

12      The reasonableness of the proposed Settlement is clear in light of the

13  uncertainty of victory and significant delay from continued litigation. Class

14  Plaintiffs litigated this case nearly to the Limitation Act trial, which would have

15  determined whether the Ships were at least partly liable for the Oil Spill, and if so

16  whether their liability should be limited pursuant to the Limitation Act. If the Ships

17  had proven at that trial that they were not liable for the Oil Spill, or that their

18  damages should be limited, Class Plaintiffs would have either recovered nothing or

19  potentially significantly less than their full damages—especially considering that

20  Amplify would have also claimed very significant damages in any concursus

21  related to any limited funds identified in the Limitation Action. If the Court had

22  granted limitation, Plaintiffs also faced the challenge of demonstrating that a class

23  claim was proper in a Limitation Action—which the Shipping Defendants had

24  strenuously opposed and which this Court had not yet decided.

25      Even in the best case scenario for Class Plaintiffs—if the Court denied

26  exoneration and limitation, dismissed the Limitation Action, and the parties

27  litigated fully in *Gutierrez*—Class Plaintiffs would still face the gauntlet of

28  prevailing on class certification, *Daubert*, summary judgment, liability and

1   damages at trial, and inevitable appeal. Each of these would be hotly contested. The

2   Shipping Defendants would also likely seek to shift liability onto Amplify.

3   Perhaps most importantly, any victory at trial that survived appeal would be

4   years away. In *Andrews v. Plains All American Pipeline, L.P.* ("*Plains*"), No. 2:15-

5   cv-04113-PSG (C.D. Cal.), a similar class action lawsuit on behalf of businesses

6   and property owners harmed by a Southern California oil spill, the parties litigated

7   for over seven years before reaching a settlement shortly before trial. Even if

8   Plaintiffs secured a complete victory at trial on both liability and damages, it is a

9   near certainty that Defendants would engage in "vigorous post-trial motion

10   practices . . . and likely appeals to the Ninth Circuit—delaying any recovery for

11   years" more. *Baker*, 2020 WL 4260712, at \*7.

12   Of course, Class Counsel were prepared to prosecute their clients' case

13   through all challenges, and believe they can overcome them. Nonetheless, risks

14   remained, and significant delays to recovery would have been inevitable. The

15   proposed Settlement allows the affected Orange County community to obtain

16   recovery now—within about two years of the incident that caused their losses.

17   Experienced counsel's support for the proposed Settlement also weighs in

18   favor of preliminary approval. *See Cheng Jiangchen*, 2019 WL 5173771, at \*6

19   ("The recommendation of experienced counsel carries significant weight in the

20   court's determination of the reasonableness of the settlement.") (citation omitted).

21   Class Counsel strongly support the Settlement. *See* Hazam Decl., ¶ 7.

22   In summary, the proposed Settlement offers substantial monetary relief, and

23   it avoids the uncertainty and the inevitable years-long delays the Classes would

24   have faced if Class Plaintiffs were successful in the Limitation Action trial *and* a

25   *Gutierrez* trial and then appeal. This reality, and the potential risks outlined above,

26   underscore the strength of the proposed Settlement.

27

28

### b.   Payment to Class Members Is Straightforward and User-Friendly.

In determining whether relief is adequate, Rule 23(e)(2)(C)(ii) requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." As detailed in Plaintiffs' proposed Plans of Distribution (Dkts. 752-1, 752-2, 753-3) and explained in Plaintiffs' Motion for Preliminary Approval (Dkt. 739 at 16-20) and Plaintiffs' concurrently filed Motion for Approval of Plaintiffs' Plans of Distribution, the Parties designed an extraordinarily simple administration process. For all three Classes, Class Members will be issued checks directly by mail, obviating the need for a claims process altogether. Each member of the Settlement Classes will receive their pro rata share of the settlement directly by mailed check. Courts regularly approve such distribution plans. *See, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (finding a plan of distribution that provided each class member with a "fractional share" to be "cost-effective, simple, and fundamentally fair") (citation omitted). *See also In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp.2d 389, 404 (D.N.J. 2006) (approving pro rata distribution to claimants based on their direct purchases as "eminently reasonable and fair to the class members"); *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *5 (S.D. Cal. Mar. 17, 2021) ("[I]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.") (citation omitted).

The Plans are substantially similar to those approved in the Amplify Settlement. *See* Dkt. 727 (order approving Amplify Plans of Distribution); Dkt. 739-3 (Tr. of Apr. 24, 2023 Hr'g at 4:10-7:1) (describing Amplify Plans of Distribution as "extraordinarily well-thought-out"). The two differences between the Plans of Distribution here and those approved in the Amplify settlement both benefit Class Members: (a) no payments will be offset by prior payments received

under the Oil Pollution Act, and (b) no Waterfront Tourism Class Members will need to submit claims to receive payments. *See* Dkt. 752-3 (proposed Plan of Distribution for Waterfront Tourism Class). The calculation of awards for each Class Member will match the methodologies approved in the Amplify settlement, *see id.*, with the exception of the Waterfront Tourism Class Members who previously had to file claims, who now will receive equal portions of the damages allocated to their business category. *See id.* ¶ 37.

The proposed method of distribution relief to the Classes is effective and supports approval of the Settlement.

### c. Plaintiffs Seek Reasonable Attorneys' Fees and Expenses.

The Court should also evaluate Class Counsel's "proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Plaintiffs have separately filed a motion in support of their requested fees and costs award. As explained in that motion, the requested fee of 25 percent is presumptively reasonable and represents a modest multiplier on Class Counsel's lodestar. The fee request is independent of this final approval motion.

### d. No Other Agreements Exist.

Finally, Plaintiffs must identify any agreements "made in connection with the proposal." Fed. R. Civ. P. 23(e)(3); *see* Fed. R. Civ. P. 23(e)(2)(C)(iv). This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2), 2003 adv. comm. note. Plaintiffs have not entered into any such agreements.

### 4. Rule 23(e)(2)(D): The Settlement Treats Class Members Equitably Relative to Each Other.

The Court should consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). In addition, the final Rule 23(e)(2) factor

1  asks whether "the proposal treats class members equitably relative to each other."

2  Fed. R. Civ. P. 23(e)(2)(D).

3      Both factors are readily met here. The Plans are described in detail in the

4  concurrently filed Motion for Approval of Plaintiffs' Plans of Distribution. In sum,

5  relief to all Class Members will be automatic, requiring no claims process at all.

6      The Plans of Distribution apportion relief among each Class equitably,

7  considering the relative harm to each Class Member where feasible, and employing

8  common distribution arrangements well in line with prior settlement approvals in

9  this Circuit. *See* Dkt. 727 (approving Amplify Plans of Distribution and citing

10  cases); *Andrews et al. v. Plains et al*, 15-cv-04113-PSG-JEM (C.D. Cal. Sept. 20,

11  2022) (Gutierrez, J.) Dkt. 979 (order approving Distribution Plans); *In re Biolase,*

12  *Inc. Sec. Litig.*, 2015 WL 12720318, at \*5 (C.D. Cal. Oct. 13, 2015); *Illumina*, 2021

13  WL 1017295, at \*4- 5; *Koenig v. Lime Crime, Inc*., 2018 WL 11358228, at \*4

14  (C.D. Cal. Apr. 2, 2018).

15      Allocation of funds *between* the Classes is also equitable, reflecting both

16  relative amounts of damages as estimated by expert analysis to date, and likelihood

17  of recovery given relative strength of claims. *See Jenson, v. First Tr. Corp*., 2008

18  WL 11338161, at \*10 (C.D. Cal. June 9, 2008) (approving distinctions in plan of

19  allocation as reasonably reflecting likelihood of recovery of subgroups within the

20  class). While Plaintiffs believe all three Classes will prevail, the Fisher Class and

21  Property Class (unlike the Waterfront Tourism Class) benefit from the precedents in

22  *Plains* certifying substantially similar classes, and admitting the testimony of the

23  same experts that Plaintiffs may use here to prove class-wide liability damages for

24  those two classes. *See Plains*, 2017 WL 10543402, at \*1 (C.D. Cal. Feb. 28, 2017)

25  (certifying fisher class, denying certification of property and tourism classes);

26  *Plains*, Dkt. 454 (C.D. Cal. Apr. 17, 2018) (certifying renewed motion to certify

27  property class); *Plains*, 2020 WL 3105425, at \*6 (C.D. Cal. Jan. 16, 2020) (denying

28  motion to decertify property class and to exclude fisher and property class experts).

1  The mediators also found that the allocation "fairly divides the Settlement among

2  the three putative classes." Phillips Decl., ¶ 13.

3      In addition to their distributions, the Court-appointed Class Representatives

4  have requested service awards of $7,500 to compensate them for the time and effort

5  they spent pursing the matter on behalf of the Class, including participating in

6  discovery and settlement. These service awards are appropriate for the reasons

7  explained in the concurrently filed Motion for Attorneys' Fees, Expenses, and

8  Service Awards Under Rule 23(H). Each of these Class Representatives followed

9  the case throughout and reviewed and approved the proposed Settlement. Hazam

10  Decl., ¶¶ 41-44. Such service awards "are fairly typical in class action cases."

11  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)*; see also In re*

12  *High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at

13  *17 (N.D. Cal. Sept. 2, 2015) (awarding $80,000–$120,000 to each class

14  representative on top of $20,000 awarded to each for prior settlements). The service

15  awards do not raise any equitable concerns about the Settlement itself. *Fleming v.*

16  *Impax Labs. Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (service

17  awards "are not per se unreasonable" and "this factor weighs in favor of []

18  approval"); *see Loomis*, 2021 WL 873340, at *8 (granting final approval to

19  settlement with service award for lead plaintiff); *In re Extreme Networks, Inc. Sec.*

20  *Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. Jul. 22, 2018) (same).

21      Finally, no settlement funds will revert to Defendants, a "[s]ignificant[]" fact

22  that further demonstrates the Settlement's fairness and effectiveness. *Hilsley v.*

23  *Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020).[6]

24

25

26

---

27  [6] Approval of the Settlement Agreement is meant to be separate and distinct from the Court's approval of the Plans of Distribution as well as Class Counsel's request for attorneys' fees and costs. The purpose of this provision is to protect the Class

28  and to help ensure that the Settlement becomes final and effective as soon as possible.

1

## C.  The Court-Approved Notice Program Complies with Rule 23(b)(3) and Rule 23(c)(2)(B).

2

3

4

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), and upon preliminary approval of the settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

5

6

7

8

9

In granting preliminary approval to the Settlement, this Court held that the Notice Plan submitted in support of preliminary approval "constitutes the best notice practicable under the circumstances," satisfies due process, and "complies fully" with the Federal Rules of Civil Procedure." Dkt. 751 ¶ 9; *see also* Dkt. 739-5, ¶ 48 (notice provider attesting that "the proposed Notice Plan provides the best notice practicable under the circumstances [and] is consistent with the requirements of Rule 23" and "similar court-approved best notice practicable notice programs"). The Notice Plan here closely tracks the one previously approved by this Court and administered by Court-appointed Settlement Administrator JND for the Amplify settlement.

10

11

12

13

14

15

16

17

18

19

As explained in the concurrently filed declaration of Gretchen Eoff, Senior Vice President of Operations at JND, the notices were delivered in a manner that satisfies both Rule 23 and due process. Direct notice was individually mailed to all known Settlement Class Members via U.S. Mail, and notice was also emailed to the Fisher Class Members for whom addresses were available. Eoff Decl., ¶¶ 9-15. These already robust mailing and emailing efforts were supplemented by an extensive and state-of-the-art digital notice program, which included a targeted social media notice effort (*id*., ¶¶ 16-22), internet search effort (*id*. ¶¶ 23-24), and earned media effort (*id*., ¶¶ 25-26). Class Members were directed to the case

20

21

22

23

24

25

26

27

28

2828352.2

- 22 -

website, where they can view the entire Settlement, the long-form Class Notices, the Plans of Distribution, and other key case documents. *Id.* ¶¶ 27-29. The website also directs inquiries to a toll-free number where Class Members can get additional information and communicate directly with the Settlement Administrator. *Id*. ¶¶ 30-31.

The notice provider believes that the roll-out of the Notice Program "is providing the best notice practicable under the circumstances of this Settlement," that the notice statistics to date "reinforce the fact that the Notice program is broad in scope and designed to reach the greatest practicable number of Settlement Class Members." *Id*. ¶ 34.

## IV. CONCLUSION

As set forth above, the Settlement Agreement resolves this litigation by providing substantial monetary relief for Class Members. All of the factors and considerations set forth in Rule 23 for final approval have been met. Plaintiffs respectfully request that the Court grant their motion for final approval of the proposed Settlement.

Dated: July 31, 2023          Respectfully submitted,

*/s/ Lexi J. Hazam*
Lexi J. Hazam

*/s/ Wylie A. Aitken*
Wylie A. Aitken

*/s/ Stephen G. Larson*
Stephen G. Larson

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wylie A. Aitken, State Bar No. 37770
Darren O. Aitken, State Bar No. 145251
Michael A. Penn, State Bar No. 233817
Megan G. Demshki, State Bar No. 306881
**AITKEN✦AITKEN✦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

Lexi J. Hazam, State Bar No. 224457
Elizabeth J. Cabraser, State Bar No. 083151
Robert J. Nelson, State Bar No. 132797
Patrick I. Andrews, *admitted pro hac vice*
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Kelly K. McNabb, *admitted pro hac vice*
Wilson M. Dunlavey, State Bar No. 307719
Avery S. Halfon, *admitted pro hac vice*
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
Steven E. Bledsoe, State Bar No. 157811
*sbledsoe@larsonllp.com*
Rick Richmond, State Bar No. 194962
*rrichmond@larsonllp.com*
Paul A. Rigali, State Bar No. 262948
*prigali@larsonllp.com*
**LARSON LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

*Interim Settlement Class Counsel*

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:21-CV-01628-DOC(JDEX)