Wylie A. Aitken, State Bar No. 37770
*wylie@aitkenlaw.com*
**AITKEN✦AITKEN✦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

Lexi J. Hazam, State Bar No. 224457
*lhazam@lchb.com*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-100

Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
**LARSON LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

*[Additional Counsel Appear on Signature Page]*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| PETER MOSES GUTIERREZ, JR., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMPLIFY ENERGY CORP., *et al.*,<br><br>Defendants. | Case No. 8:21-CV-01628-DOC(JDEx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS UNDER RULE 23(H)**<br><br>Date:      September 14, 2023<br>Time:      8:30 a.m.<br>Judge:     David O. Carter<br>Room:     10A |

TO ALL THE PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 14, 2023, at 8:30 a.m., or as soon thereafter as the matter may be heard by the Honorable David O. Carter in Courtroom 10A of the above-entitled court, located at 411 West Fourth Street, Santa Ana, California, 92701, Plaintiffs, for themselves and on behalf of all others similarly situated, will and hereby do move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an Order:

A.   Approving the request for attorneys' fees to Interim Settlement Class Counsel in the amount of $11,250,000, or 25% of the Settlement Funds achieved with the Shipping Defendants;[1]

B.   Approve reimbursement of litigation expenses of $1,134,254.91; and

C.   Approve service awards of $7,500 to each of the seventeen Class Representatives (*see* Settlement Agreement (Dkt. 739-2, ¶¶ 2-4)) for the time and effort they spent pursuing this matter on behalf of the Settlement Classes, for a total of $127,500.

This motion is based on the attached supporting memorandum; the accompanying declarations and exhibits; the pleadings, papers, and records on file in this action, including those submitted in support of Plaintiffs' Motion for Final Approval; any further papers filed in support of this motion; and arguments of counsel.

---

[1] The "Shipping Defendants" are: Capetanissa Maritime Corporation, Costamare Shipping Co., S.A., V.Ships Greece Ltd., and the *M/V Beijing* (collectively, "Capetanissa") and Dordellas Finance Corp., MSC Mediterranean Shipping Co. SA, Mediterranean Shipping Co. S.r.l., MSC Shipmanagement Ltd., and *MSC Danit* (collectively, "Dordellas"). *See* Settlement Agreement (Dkt. 739-2, ¶ 1). Capitalized terms have the definitions set forth in the Settlement Agreement.

Dated: July 31, 2023                          Respectfully submitted,

/s/ Lexi J. Hazam
Lexi J. Hazam

/s/ Wylie A. Aitken
Wylie A. Aitken

/s/ Stephen G. Larson
Stephen G. Larson

Wylie A. Aitken, State Bar No. 37770
Darren O. Aitken, State Bar No. 145251
Michael A. Penn, State Bar No. 233817
Megan G. Demshki, State Bar No. 306881
**AITKEN✦AITKEN✦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

Lexi J. Hazam, State Bar No. 224457
Elizabeth J. Cabraser, State Bar No. 083151
Robert J. Nelson, State Bar No. 132797
Patrick I. Andrews, *admitted pro hac vice*
**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Kelly K. McNabb, *admitted pro hac vice*
Wilson M. Dunlavey, State Bar No. 307719
Avery S. Halfon, *admitted pro hac vice*
**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
Steven E. Bledsoe, State Bar No. 157811
*sbledsoe@larsonllp.com*
**LARSON LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

*Interim Settlement Class Counsel*

Wylie A. Aitken, State Bar No. 37770
*wylie@aitkenlaw.com*
**AITKEN✦AITKEN✦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

Lexi J. Hazam, State Bar No. 224457
*lhazam@lchb.com*
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-100

Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
**LARSON LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

*Interim Settlement Class Counsel*

*[Additional Counsel Appear on Signature Page]*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| PETER MOSES GUTIERREZ, JR., *et al.*,<br><br>                   Plaintiffs,<br><br>v.<br><br>AMPLIFY ENERGY CORP., *et al.*,<br><br>                   Defendants. | Case No. 8:21-CV-01628-DOC(JDEx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS UNDER RULE 23(H)**<br><br>Date:        September 14, 2023<br>Time:        8:30 a.m.<br>Judge:      David O. Carter<br>Room:      10A |

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 3

ARGUMENT ........................................................................................................ 3

I.    The requested attorneys' fees are reasonable and appropriate under the applicable standards. ................................................................................... 3

    A.    The requested 25% fee is equal to the Ninth Circuit's "benchmark" and is reasonable under the circumstances. ................... 4

        1.    The substantial benefits to the Class support the requested fees. ................................................................................ 5

        2.    The risk of continued litigation supports the requested fees. ................................................................................ 6

        3.    Interim Co-Lead Counsel's skill and expertise supports the requested fees. ...................................................... 7

        4.    Settlement Class Counsel's undertaking of this case on a contingency-fee basis supports the requested fees. ................... 9

        5.    The requested fee percentage is in line with percentages approved in other cases. ......................................................... 10

    B.    A lodestar cross-check further confirms the reasonableness of the fees requested. ............................................................... 11

II.   Class Counsel's expenses are reasonable and appropriate. ........................... 13

III.  The requested Class Representative service awards are reasonable and well-deserved. ................................................................................ 14

CONCLUSION ..................................................................................................... 16

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS
CASE NO. 8:21-CV-01628-DOC(JDEX)

# TABLE OF AUTHORITIES

**Page**

## Cases

*Andrews v. Plains All American Pipeline*, *L.P.*,
   No. 2:15-cv-04113-PSG (C.D. Cal.) .............................................................8, 10
*Baker v. SeaWorld Ent., Inc.*,
   No. 14-CV-02129-MMA-AGS, 2020 WL 4260712 (S.D. Cal. July 24, 2020).....7
*Beaver v. Tarsadia Hotels*,
   No. 11-CV-01842-GPC-KSC, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017)....10
*Beesley v. Int'l Paper Co.*,
   No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ..........14
*Blum v. Stenson*,
   465 U.S. 886 (1984)...............................................................................................10
*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..................................................................................................3
*Boyd v. Bank of Am. Corp.*,
   No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .........15
*Brown v. CVS Pharmacy, Inc.*,
   2017 WL 3494297 (C.D. Cal. Apr. 24, 2017)......................................................13
*Dickey v. Advanced Micro Devices, Inc.*,
   2020 WL 870928 (N.D. Cal. Feb. 21, 2020).........................................................12
*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) ....................................................................11, 12
*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ...................................................................................2
*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).......................................................15
*In re Am. Apparel, Inc. S'holder Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) ......................................................9
*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...................................................................................4
*In re Capacitors Antitrust Litig.*,
   2018 WL 4790575 (N.D. Cal. Sept. 21, 2018)......................................................11
*In re High-Tech Emp. Antitrust Litig.*,
   No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015).............15
*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
   2013 WL 7985367 (C.D. Cal. Dec. 23, 2013)........................................................4
*In re Lidoderm Antitrust Litig.*,
   2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)......................................................12
*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
   2017 WL 6040065 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir.
   2019) ......................................................................................................................15
*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007)...................................................4, 5, 6, 7
*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ..............................................10, 12
*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................................5, 9
*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   445 F. Supp. 3d 508, 534 (N.D. Cal. 2020)...........................................................15
*Laffitte v. Robert Half Int'l Inc.*,
   1 Cal. 5th 480 (2016) ................................................................................................5
*Rodriguez v. W. Pub. Corp.*,

-ii-

# TABLE OF AUTHORITIES
## (continued)

**Page**

563 F.3d 948 (9th Cir. 2009) ................................................................ 15
*Spencer-Ruper v. Scientiae, LLC*,
  No. 819CV01709DOCADS, 2021 WL 4895740 (C.D. Cal. Sept. 24, 2021) 3, 6, 7
*Staton v. Boeing*,
  327 F.3d 938 (9th Cir. 2003) ........................................................ 13, 16
*Tait v. BSH Home Appliances Corp.*,
  2015 WL 4537463 (C.D. Cal. July 27, 2015) ......................................... 5
*Van Vraken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ..................................................... 14
*Vinh Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ......... 10
*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...................................................... passim
*Willner v. Manpower Inc.*,
  No. 11-cv-02846-JST, 2015 WL 3863625 (N.D. Cal. June 22, 2015) ............... 13

**Rules**

Federal Rule of Civil Procedure 23(h) ............................................... 3, 13

**Treastise**

William B. Rubenstein,
  *Newberg on Class Actions* (5th ed. 2020) ............................................ 5

**Other Authorities**

Limitation Act of 1851, 46 U.S.C. §§ 30502 .......................................... 8

**INTRODUCTION**

After more than a year of intensive litigation, Plaintiffs, through Court-appointed Interim Co-Lead Counsel,[1] reached a proposed Settlement[2] with the Shipping Defendants[3] that will create a $45 million dollar non-reversionary cash fund (the "Settlement Fund") to compensate Settlement Class Members. *See generally* Dkt. 751 (Amended Order Granting Preliminary Approval Order of Shipping Defendant Settlement). In recognition of their work achieving this excellent result, Plaintiffs and Interim Settlement Class Counsel respectfully move the Court to award attorneys' fees in the amount of 25 percent of the $45 million Settlement Fund ($11,250,000), grant reimbursement of $1,134,254.91 in litigation expenses, and award each of the seventeen Class Representatives a service award of $7,500 for the time they spent prosecuting this action on behalf of the Settlement Classes. The fees and costs sought by Interim Settlement Class Counsel here are based on time and expenses separate from those sought related to the settlement with the Amplify Defendants.[4] *See* Declaration of Lexi J. Hazam, filed concurrently herewith ("Hazam Decl."), ¶¶ 26, 34.

Interim Settlement Class Counsel's request for 25 percent of the Settlement Fund, equivalent to the Ninth Circuit's "benchmark" rate, is presumptively reasonable. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th

---

[1] "Interim Co-Lead Counsel" and "Interim Settlement Class Counsel" both refer to the counsel appointed by this Court to lead this litigation for Plaintiffs: Wylie A. Aitken, Lexi J. Hazam, and Stephen Larson. *See* Dkt. 751 at 3.

[2] All capitalized terms used herein have the meaning set forth in the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") (Dkt. 739-2 (Ex. 1 to the Hazam Decl.), unless otherwise indicated.

[3] The "Shipping Defendants" are: Capetanissa Maritime Corporation, Costamare Shipping Co., S.A., V.Ships Greece Ltd., and the *M/V Beijing* (collectively, "Capetanissa") and Dordellas Finance Corp., MSC Mediterranean Shipping Co. SA, Mediterranean Shipping Co. S.r.l., MSC Shipmanagement Ltd., and *MSC Danit* (collectively, "Dordellas"). *See* Settlement Agreement (Dkt. 739-2, ¶ 1).

[4] "Amplify" refers collectively to Amplify Energy Corporation, Beta Operating Company, LLC, and San Pedro Bay Pipeline Company, the three Defendants that own and operate the San Pedro Bay Pipeline.

Cir. 2002). An analysis of the other factors considered by courts in this Circuit in assessing fee requests confirms the reasonableness of the request. *First*, the recovery provides significant monetary relief to the Settlement Classes (on top of separate monetary and injunctive relief already achieved for the same Settlement Class Members by the same counsel in the Amplify settlement). *Second*, the Settlement Classes would have faced serious litigation risks and delays had they continued to litigate against the Shipping Defendants, which mounted a spirited defense and are represented by sophisticated and experienced counsel. *Third*, Interim Settlement Class Counsel applied their considerable experience and skill in litigating this case on behalf of the Settlement Classes against the Shipping Defendants, including very significant and complex additional litigation after settlement with Amplify. *Fourth*, Interim Settlement Class Counsel pursued this case purely on a contingency basis. *Fifth*, the requested 25 percent fee request is a modest request in comparison with similar settlements. *Finally*, the requested 25 percent fee results in a multiplier of approximately 2.23 for this settlement, which is in the middle of the range considered presumptively reasonable in this Circuit.

If this $45 million Settlement with the Shipping Defendants is considered together with the already-approved $50 million settlement with Amplify, the total fee would constitute 25 percent of the combined total recovery, and would result in a total multiplier of 1.63.

In sum, given the quality of the Settlement and the risks undertaken by Interim Settlement Class Counsel, an award of 25 percent of the Settlement Funds is appropriate. Notably, this Court approved a 25 percent fee for Interim Settlement Class Counsel's work achieving the very similar settlement with the Amplify Defendants, and zero members of the same Settlement Classes objected to that award. *See* Dkt. 726 at 8.

In addition to attorneys' fees, Interim Settlement Class Counsel also respectfully requests that the Court award reimbursement of $1,134,254.91 in

litigation expenses, all of which were reasonably incurred and necessary for the prosecution of the case. *See* Argument, § II, *infra*. Finally, the Class Representatives each seek $7,500 service awards in recognition of their time and effort litigating this action on behalf of the Settlement Classes, for a total of $127,500. *See* Argument, § III, *infra*.

## **BACKGROUND**

Plaintiffs have detailed the extensive history of this litigation in their accompanying motion for final approval and the concurrently-filed Hazam Declaration. In the interest of efficiency, Interim Settlement Class Counsel will not repeat that history here, but rather incorporate it by reference. In sum, this litigation was hotly contested for over a year, involved numerous complex and highly technical factual disputes as well as cutting-edge legal arguments, and settled with extraordinary quickness.

## **ARGUMENT**

## I.    **THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND APPROPRIATE UNDER THE APPLICABLE STANDARDS.**

Pursuant to Federal Rule of Civil Procedure 23(h), courts may award reasonable attorneys' fees to class counsel. *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").

"Courts consider several factors to determine the appropriate percentage of the fund to award as attorneys' fees in a common fund case including (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and (e) awards made in similar cases." *Spencer-Ruper v. Scientiae, LLC*, No. 819CV01709DOCADS, 2021 WL 4895740, at *1 (C.D. Cal. Sept. 24, 2021) (Carter, J.) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1048-50 (9th Cir. 2002)).

As detailed below, each of these factors strongly supports Interim Settlement Class Counsel's 25 percent fee request. Additionally, and as demonstrated by the lodestar cross-check, the requested award would not constitute a windfall to Interim Settlement Class Counsel. The requested fee would constitute a reasonable lodestar-multiplier of 2.23 for this Settlement with the Shipping Defendants, or a total multiplier of 1.63 when considered together with the Amplify settlement. Those multipliers will decrease during the administration of the Settlement. And this fee request will not result in any double-recovery, as none of the time supporting this request was submitted in support of the fee request related to the Amplify settlement.

### A. The requested 25% fee is equal to the Ninth Circuit's "benchmark" and is reasonable under the circumstances.

"The 'benchmark' percentage for attorney's fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount." *Id*. (citing *Vizcaino*, 290 F.3d at 1047). "However, in most common fund cases, the award *exceeds* that [25%] benchmark." *Id*. (citing *In re Omnivision Techs*., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (emphasis added)). "Absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Id*. (citing *Omnivision*, 559 F. Supp. 2d at 1048).

"Because the benefit to the class is easily quantified in common-fund settlements," courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013). The percentage-of-the-fund method

confers "significant benefits…including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015); *see* 5 William B. Rubenstein, *Newberg on Class Actions* §§ 15:62, 15:65 (5th ed. 2020).[5] The key purpose of the common fund doctrine is to share the burden of a party's litigation expenses among those who benefit from them. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

### 1.  The substantial benefits to the Class support the requested fees.

The benefits Interim Settlement Class Counsel secured for the Classes are the most important factor in evaluating the reasonableness of a requested fee. *Bluetooth*, 654 F.3d at 942; *Omnivision Techs.*, 559 F. Supp. 2d at 1046.

The relief here is a strong result for the Class in light of the costs and risks of delay of litigation. As detailed in Plaintiffs' Motion for Preliminary Approval, the non-reversionary $45 million Settlement provides Settlement Class Members with substantial monetary relief on its own. When viewed in combination with the $50 million monetary relief achieved in the settlement with Amplify, the $95 million result in under two years is extraordinary. The combined $95 million represents a substantial portion of the Classes' estimated damages. *See* Dkt. 739-4 (Phillips Decl.), ¶ 13.

The outstanding result of the Settlement supports the requested fees.

---

[5] The common fund approach is also endorsed by California law, a relevant consideration given that many of the Settlement Classes' claims are brought under this state's law. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016) (endorsing percentage of the fund approach and affirming an award equal to one-third of the common fund); *see also Vizcaino*, 290 F.3d at 1047.

**2.    The risk of continued litigation supports the requested fees.**

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly [in] a case involving complicated legal issues, is a significant factor in the award of fees." *Spencer-Ruper*, 2021 WL 4895740, at *2 (C.D. Cal. Sept. 24, 2021) (Carter J.) (citing *Omnivision*, 559 F. Supp. 2d at 1046-47).

Litigation against the Shipping Defendants—a constellation of companies from across the globe—was complicated and risky from the start. The Shipping Defendants each moved to dismiss Plaintiffs' claims for a variety of reasons, including that maritime law barred their claims. *See* Dkts. 467, 469. Those motions were still pending when the parties settled.

Plaintiffs also faced the challenges associated with the Limitation Action and the related trial that had been approaching at the time of settlement. If the Ships had proven at that trial that they were not liable for the Oil Spill,[6] or that their damages should be limited, Class Plaintiffs would have either recovered nothing or potentially significantly less than their full damages—especially considering that Amplify would have also claimed very significant damages in any concursus related to any limited funds identified in the Limitation Action. If the Court had granted limitation, Plaintiffs also faced the challenge of demonstrating that a class claim was proper in a Limitation Action—which the Shipping Defendants had strenuously opposed and which this Court had not yet decided.

Even if Plaintiffs had prevailed on every measure in the Limitation Action and it was dismissed, Plaintiffs would then still face the gauntlet of prevailing on class certification, *Daubert*, summary judgment, liability and damages at trial, and an inevitable appeal. Each of these would be hotly contested. The Shipping Defendants would also likely seek to shift liability onto Amplify. And even if

---

[6] "Oil Spill" refers to the "San Pedro Bay Incident" defined in the Settlement as the release of crude oil from Amplify's P00547 Pipeline in San Pedro Bay on or about October 1–2, 2021.

Plaintiffs secured a complete victory at a merits trial on both liability and damages, it is a near certainty that the Shipping Defendants would engage in "vigorous post-trial motion practices . . . and likely appeals to the Ninth Circuit—delaying any recovery for years." *Baker v. SeaWorld Ent., Inc.*, No. 14-CV-02129-MMA-AGS, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020).

In considering the Settlement, Plaintiffs and Interim Settlement Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Settlement Classes, including the significant monetary benefit and speed. *See* Dkt. 739-1 (Declaration of Lexi J. Hazam in support of Preliminary Approval or "Hazam Prelim. Decl.") ¶ 33. Furthermore, the Settlement was negotiated with an experienced mediator, who "strongly support[s] the Court's approval of the Settlement in all respects." Dkt. 739-4 ("Phillips Decl."), ¶ 13.

For these reasons, "the risks of continued litigation not only support the Settlement, the result obtained for the Class also supports the reasonableness of the requested fees." *See Spencer-Ruper*, 2021 WL 4895740, at *2 (Carter, J.).

### 3. Interim Co-Lead Counsel's skill and expertise supports the requested fees.

"The 'prosecution and management of a complex [ ] class action requires unique legal skills and abilities' that are to be considered when evaluating fees.'" *See id.* (citing *Omnivision*, 559 F. Supp. 2d at 1047).

This case required a high degree of skill and experience to prosecute and manage. As this Court recognized in appointing Interim Settlement Class Counsel as Interim Co-Lead Counsel at the beginning of this hard-fought litigation, Interim Settlement Class Counsel has a depth of experience handling class actions and other complex litigation, including "litigation involving similar facts and issues to those in th[is] case," they engaged in significant work "investigating potential claims in this action," and they have knowledge of the laws at issue in this case, including

1   environmental law. *See* Dkt. 38 at 3 (appointing Interim Co-Lead Counsel).

2        Following their appointment, Interim Co-Lead Counsel filed their

3   Consolidated Amended Complaint to bring claims against the Shipping Defendants,

4   Dkt. 102, and soon after some of those Shipping Defendants filed petitions under

5   the Limitation of Liability Act of 1851, 46 U.S.C. §§ 30502, *et seq.*, which were

6   consolidated into the Limitation Action. The interplay between this action and the

7   Limitation Action required significant research, strategizing, and briefing to

8   navigate in order to maintain the claims of the three Settlement Classes. *See* Dkt.

9   739 at 4-7 (detailing Limitation Action-related litigation, including briefing

10  regarding the action in which Plaintiffs' claims should proceed, whether any claims

11  should be stayed, whether class claims could be maintained in a limitation action,

12  the sufficiency of the Limitation Action notice, and the scope of the Limitation

13  Action trial).

14       Discovery against the Shipping Defendants was extensive. The Class

15  Representatives collected 8 GB of data for search and review responsive to the

16  Shipping Defendants' requests. Hazam Decl., ¶ 15. Plaintiffs obtained and reviewed

17  more than 180,000 documents from the Shipping Defendants, including numerous

18  highly technical documents relating to ship engineering and navigation. *Id.*

19  Plaintiffs cross-noticed and participated in the depositions of more than 40

20  witnesses around the world, including at ports of call in Europe. Plaintiffs also

21  participated in the inspections of the *M/V Beijing*, the oil platform that controlled

22  the pipeline at the location and time of the spill, and the pipeline during its removal.

23  *Id.* Leading up to the deadline for expert reports, Plaintiffs developed several

24  maritime experts and worked with various liability experts. *Id.*

25       As to damages, Plaintiffs engaged some of the same experts that survived

26  *Daubert* challenges in similar litigation, *Andrews v. Plains All American Pipeline*,

27  *L.P.*, No. 2:15-cv-04113-PSG (C.D. Cal.), a similar class action lawsuit on behalf

28  of businesses and property owners harmed by a Southern California oil spill. These

experts include an expert in the field of real estate damages, an economist, and a marine scientist, who submitted confidential preliminary reports for purposes of mediation to support Plaintiffs' claims and damages. Hazam Decl., ¶ 22. The Parties exchanged and submitted detailed mediation statements addressing liability and damages, including expert reports and rebuttal reports. *See* Phillips Decl., ¶ 6. As the mediator recognized, substantial work went into mediation preparation, and the mediation involved complex issues that required significant thought. *Id*. ¶¶ 6, 11.

Finally, Interim Settlement Class Counsel successfully handled this litigation against a multitude of Defendants with significant financial and legal resources, represented by prominent litigation firms. "In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully." *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014).

This factor, too, strongly supports Interim Settlement Class Counsel's requested fees. *Cf.* Dkt. 726 (recognizing complexity of this case and skill exhibited by same Interim Settlement Class Counsel in approving 25% fee request in Amplify settlement).

### 4.   Settlement Class Counsel's undertaking of this case on a contingency-fee basis supports the requested fees.

"The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work." *Spencer-Ruper*, 2021 WL 4895740, at *3 (Carter, J.) (citing *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)).

Interim Settlement Class Counsel bore not insignificant risks to achieve this result. Interim Settlement Class Counsel took the case purely on contingency,

devoting thousands of hours and advancing hundreds of thousands of dollars in litigation expenses, all with no guarantee of reimbursement. Hazam Decl., ¶ 9. In so doing, Interim Settlement Class Counsel "turn[ed] down opportunities to work on other cases to devote the appropriate amount of time, resources, and energy necessary to responsibly handle this complex case." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig*., 2017 WL 1047834, at \*3 (N.D. Cal. Mar. 17, 2017).

This factor also strongly supports Interim Settlement Class Counsel's requested fee.

### 5.    The requested fee percentage is in line with percentages approved in other cases.

A court should also consider fee awards from similar cases. *Vizcaino*, 290 F.3d at 1049-50. The requested fee is equal to the Ninth Circuit's "benchmark," and in fact is lower than the fees often awarded in similar cases. *See Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at \*10 (S.D. Cal. Sept. 28, 2017) (citing several cases awarding 33%). Indeed, in another oil spill case along the California coast, the court awarded a 32% fee. *See Andrews v. Plains All Am. Pipeline L.P*, No. CV154113PSGJEMX, 2022 WL 4453864, at \*4 (C.D. Cal. Sept. 20, 2022) (awarding a 32% fee and citing cases awarding up to 42% in fees). This Court awarded a 25% fee for the similar settlement with Amplify, and notably none of the class members there—who are the same as the class members here—objected to that fee request. *See* Dkt. 726 at 8.

The requested 25% fee is also below a traditional contingency fee, which further supports its reasonableness. *Vinh Nguyen v. Radient Pharms. Corp*., No. SACV 11-00406 DOC, 2014 WL 1802293, at \*9 (C.D. Cal. May 6, 2014) (Carter, J.) (awarding 28% in fees, noting that 28% is "commensurate with, and even slightly below, a traditional contingency fee) (citing *Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, an attorney might receive one-third of whatever amount

the plaintiff recovers.")).

Thus, the requested 25 percent award is consistent with fee awards in class action cases generally, and compares favorably with percentages approved in similar cases. Accordingly, this factor clearly supports Interim Settlement Class Counsel's requested fee.

### B.    A lodestar cross-check further confirms the reasonableness of the fees requested.

Courts sometimes employ a "streamlined" lodestar analysis to "cross-check" the reasonableness of a requested award. *Vizcaino*, 290 F.3d at 1050. "[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id*. "The aim is to do rough justice, not to achieve auditing perfection." *In re Apple*, 2021 WL 1022866, at *7 (citation omitted); *see also In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (holding that a lodestar cross-check does not require "mathematical precision [or] bean-counting").

In the Ninth Circuit, a multiplier ranging from 1.0 to 4.0 is considered "presumptively acceptable." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014); *Vizcaino*, 290 F.3d at 1051 n.6 (finding most multipliers range from 1.0–4.0).

Here, the lodestar cross-check reveals that the requested fee is reasonable, because the resulting multiplier is comfortably in the middle of the acceptable range. *See* Hazam Decl. (attaching exhibit summarizing time and lodestar); Declaration of Stephen G. Larson ("Larson Decl.," filed concurrently herewith) (attaching exhibits summarizing time and lodestar, including of firms that worked at the direction of Interim Co-Lead Counsel); Declaration of Wylie A. Aitken, ("Aitken Decl.," filed concurrently herewith) (attaching exhibit summarizing time and lodestar).

First, as detailed in the accompanying declarations, Interim Settlement Class

1  Counsel devoted a substantial number of hours to the litigation specifically against

2  the Shipping Defendants. *See* Hazam Decl., ¶¶ 9, 39. Interim Settlement Class

3  Counsel took care not to double-count—no hours submitted in support of this fee

4  request were submitted in support of the fee requested for achieving the Amplify

5  settlement. *Id.* at ¶ 26. The hours submitted with this motion were important to

6  achieving the Settlement with the Shipping Defendants, and reflect Interim

7  Settlement Class Counsel's careful and thorough work balanced with efforts to

8  coordinate to gain efficiencies. *Id.* at ¶¶ 25, 28.

9       Second, Class Counsel's rates are consistent with market rates in their area.

10  *See* Hazam Decl., ¶¶ 29-30; Larson Decl., ¶¶ 10-11; Aitken Decl., ¶¶ 10-11; *see*

11  *also Hefler v. Wells Fargo & Co*., No. 16-CV-05479-JST, 2018 WL 6619983, at

12  *14 (N.D. Cal. Dec. 18, 2018) (approving rates from $650 to $1,250 for partners or

13  senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel"*

14  *Mktg., Sales Practices, & Prod. Liab. Litig*., No. 2672 CRB (JSC), 2017 WL

15  1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates from $275 to $1600 for

16  partners, $150 to $790 for associates, and $80 to $490 for paralegals); *Dickey v.*

17  *Advanced Micro Devices, Inc.*, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020)

18  (approving rates between $275 and $1,000 for attorneys); *In re Lidoderm Antitrust*

19  *Litig*., 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (approving rates

20  between $300 and $1,050). This Court recently approved the same rates in granting

21  the fee request relating to the Amplify settlement. Dkt. 726 at 12-13.

22       The resulting lodestar of $5,035,745.40 yields a total multiplier of 2.23 for

23  work performed to date related to the Shipping Defendants settlement. This

24  multiplier is in the middle of the "presumptively acceptable range of 1.0-4.0" in this

25  Circuit. *Dyer*, 303 F.R.D. at 334 (approving 2.83 multiplier); *see also Vizcaino*, 290

26  F.3d at 1051 (approving 3.65 multiplier); *Flo & Eddie  Inc., v. Sirius XM Radio,*

27  *Inc.,* , 2017 WL 4685536, at *9 (C.D. Cal. May 8, 2017) (approving multiplier of

28  up to 2.5). And the multiplier will only decrease as Interim Settlement Class

-12-

1  Counsel continue to work on the approval and implementation of this proposed

2  Settlement. Hazam Decl., ¶ 39.[7] Allocation to attorneys of any fees awarded as a

3  multiplier will be determined by Interim Co-Lead Counsel.

4      The reasonableness of the requested fee is even clearer when this Settlement

5  is considered together with the Amplify settlement, where the total requested 25%

6  fee yields a total multiplier of 1.63.

7      This factor strongly supports Interim Settlement Class Counsel's requested

8  25 percent fee, and demonstrates that such a fee will not result in a "windfall" to

9  Counsel.

10  **II.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND
       APPROPRIATE.**

11

12      Class Counsel may "recover their reasonable expenses that would typically

13  be billed to paying clients in non-contingency matters." *Brown v. CVS Pharmacy,*

    *Inc.*, 2017 WL 3494297, at *9 (C.D. Cal. Apr. 24, 2017) (citation omitted); *see also*

14  *Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003); Fed. R. Civ. P. 23(h). This

15  includes expenses that are reasonable, necessary, and directly related to the

16  litigation. *See Willner v. Manpower Inc.*, 2015 WL 3863625, at *7 (N.D. Cal. June

17  22, 2015).

18

19      Here, Interim Settlement Class Counsel established a joint cost fund to

20  manage the bulk of the hard costs incurred, such as for transcripts, expert fees, and

21  mediation expenses. Hazam Decl., ¶¶ 33-36. Combined with each firm's held costs,

22  the total costs for which Interim Settlement Class Counsel seek reimbursement is

23  $1,134,254.91 in costs. *Id.* at ¶ 39. None of the costs requested here were requested

    or reimbursed in the Amplify settlement. *Id.* at ¶ 34.

24

25  ―――――――――――――

26  [7] Interim Settlement Class Counsel has already spent more than 300 hours assisting
    with implementation of the Amplify settlement after they filed their motion
    requesting fees for that settlement, corresponding to more than $200,000 in

27  lodestar. This time will not be compensated, and Interim Settlement Class Counsel
    are not claiming it as part of the time submitted for the present fee request. *See*

28  Hazam Decl. ¶ 40.

These costs benefited the Settlement Classes and are commensurate with the stakes, complexity, novelty, and intensity of this particular litigation. As indicated in the accompanying declarations, Interim Settlement Class Counsel expended costs on the typical categories, *e.g.*, experts, depositions, document management systems, mediation fees, and necessary travel, in addition to soft costs attributable to the litigation. *See, e.g*., Hazam Decl., ¶¶ 34-35, Ex. 2. While this highly technical case was expensive to prosecute, "[Interim Settlement] Class Counsel had a strong incentive to keep expenses at a reasonable level due to the high risk of no recovery when the fee is contingent." *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014).

Interim Settlement Class Counsel expended only that which they believed was necessary to advance the interests of the Classes. The requested costs are reasonable and should be reimbursed.

## III.    THE REQUESTED CLASS REPRESENTATIVE SERVICE AWARDS ARE REASONABLE AND WELL-DESERVED.

In addition to any settlement distributions they receive, the Court-appointed Class Representatives request service awards of $7,500 to compensate them for the time and effort they spent pursuing this matter on behalf of their respective Classes. Courts have discretion to approve service awards based on the amount of time and effort spent, the duration of the litigation, and the personal benefit (or lack thereof) as a result of the litigation. *See, e.g.*, *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Each of the Class Representatives here searched for and provided facts used to compile the Complaints, helped Interim Settlement Class Counsel analyze claims, produced voluminous documents that were responsive to discovery requests both by Amplify and by the Shipping Defendants, provided information to respond to written discovery requests served by the Shipping Defendants, and reviewed and approved the proposed Settlement. *See* Hazam Decl., ¶¶ 42-44.

In declarations submitted in support of the Amplify settlement, each Class Representative estimated the substantial number of hours each had spent on this case through January 24, 2023. *See* Dkt. 667 Exs. 10-26. The majority of those hours supported litigation against the Shipping Defendants (as well as Amplify), and those estimates excluded additional time each Class Representative spent related to the Shipping Defendants after January 24, 2023.

Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Service awards of $7,500 or greater are often awarded in this Circuit. *See, e.g.*, *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, at 534 (N.D. Cal. 2020) (granting $25,000 service awards to each institutional investor plaintiff); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.* ("*In re NCAA*"), 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017), *aff'd,* 768 F. App'x 651 (9th Cir. 2019) (awarding each of the four class representatives $20,000 service awards); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting Ninth Circuit cases with service awards of $20,000 or higher); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (Carter, J.) (awarding service award of $15,000).

If considered together with the $10,000 service awards granted by this Court for the Class Representatives' total service awards would amount to $17,500 each (out of a total $95 million recovery), which is still below the amount often awarded in this Circuit. *See In re NCAA*, 2017 WL 6040065, at *11 & n.69 (citing several cases awarding between $20,000 and $120,000), *aff'd,* 768 F. App'x 651 (9th Cir. 2019). Awarding multiple, separate service awards for successive settlements in the same litigation is also appropriate. *See In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (awarding $80,000–$120,000 to each class representative on top of $20,000 awarded to each for prior settlements).

1    Moreover, a $7,500 service award to each of the seventeen Class

2    Representatives amounts to a total payment of $127,500, or less than 0.3 percent of

3    the gross Settlement amount here. This is well within the range the Ninth Circuit

4    has found reasonable. *See Staton*, 327 F.3d at 976-77.

5    Accordingly, the requested service awards are reasonable and should be

6    approved.

7    ## CONCLUSION

8    Interim Settlement Class Counsel have dedicated considerable time, skills,

9    and resources to achieve an excellent result in this complex class action. For the

10    reasons stated above, Interim Settlement Class Counsel respectfully submit that the

11    Court approve their requested fee award of $11.25 million, representing 25 percent

12    of the Settlement Funds and a 2.23 lodestar multiplier, or a 1.63 total multiplier

13    when this Settlement is considered together with the Amplify settlement. Further,

14    Interim Settlement Class Counsel respectfully request that the Court approve

15    reimbursement of $1,134,254.91 in expenses, which were reasonably incurred in

16    the prosecution of this case, and service awards of $7,500 to each Class

17    Representative.

18    Dated: July 31, 2023                Respectfully submitted,

19
                                         */s/ Lexi J. Hazam*
20                                       Lexi J. Hazam

21                                       */s/ Wylie A. Aitken*
22                                       Wylie A. Aitken

23                                       */s/ Stephen G. Larson*
24                                       Stephen G. Larson

25

26

27

28

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS
CASE NO. 8:21-CV-01628-DOC(JDEX)

Wylie A. Aitken, State Bar No. 37770
Darren O. Aitken, State Bar No. 145251
Michael A. Penn, State Bar No. 233817
Megan G. Demshki, State Bar No. 306881
**AITKEN✦AITKEN✦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

Lexi J. Hazam, State Bar No. 224457
Elizabeth J. Cabraser, State Bar No. 083151
Robert J. Nelson, State Bar No. 132797
Patrick I. Andrews, *admitted pro hac vice*
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Kelly K. McNabb, *admitted pro hac vice*
Wilson M. Dunlavey, State Bar No. 307719
Avery S. Halfon, *admitted pro hac vice*
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
Steven E. Bledsoe, State Bar No. 157811
*sbledsoe@larsonllp.com*
Rick Richmond, State Bar No. 194962
*rrichmond@larsonllp.com*
Paul A. Rigali, State Bar No. 262948
*prigali@larsonllp.com*
**LARSON LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

*Interim Co-Lead Counsel for Plaintiffs and
the Proposed Classes*