Wylie A. Aitken, State Bar No. 37770
*wylie@aitkenlaw.com*
**AITKEN♦AITKEN♦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

Lexi J. Hazam, State Bar No. 224457
*lhazam@lchb.com*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-100

Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
**LARSON LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| PETER MOSES GUTIERREZ, JR., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMPLIFY ENERGY CORP., *et al.*,<br><br>Defendants. | Case No. 8:21-CV-01628-DOC(JDEx)<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF PLAINTIFFS' PLANS OF DISTRIBUTION**<br><br>Date:   September 14, 2023<br>Time:   8:30 a.m.<br>Judge:  David O. Carter<br>Room:   10A |

TO ALL THE PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 14, 2023, at 8:30 a.m., or as soon thereafter as the matter may be heard by the Honorable David O. Carter in Courtroom 6A of the above-entitled court, located at 411 West Fourth Street, Santa Ana, CA 92701, Plaintiffs will and hereby do move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an Order approving the Plan of Distribution for the Fisher Class (Dkt. 752-1) the Plan of Distribution for the Property Class (Dkt. 752-2), and the Plan of Distribution for the Waterfront Tourism Class (Dkt. 752-3). This motion is based on the attached supporting memorandum; the pleadings, papers, and records on file in this action, including those submitted in support of Plaintiffs' Motion for Preliminary Approval (Dkt. 739) and concurrently filed Motion for Final Approval; any further papers filed in support of this motion; and arguments of counsel.

Dated: July 31, 2023            Respectfully submitted,

*/s/ Lexi J. Hazam*
Lexi J. Hazam

*/s/ Wylie A. Aitken*
Wylie A. Aitken

*/s/ Stephen G. Larson*
Stephen G. Larson

Wylie A. Aitken, State Bar No. 37770
Darren O. Aitken, State Bar No. 145251
Michael A. Penn, State Bar No. 233817
Megan G. Demshki, State Bar No. 306881
**AITKEN♦AITKEN♦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

Lexi J. Hazam, State Bar No. 224457
Elizabeth J. Cabraser, State Bar No. 083151
Robert J. Nelson, State Bar No. 132797
Patrick I. Andrews, *admitted pro hac vice*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Kelly K. McNabb, *admitted pro hac vice*
Wilson M. Dunlavey, State Bar No. 307719
Avery S. Halfon, *admitted pro hac vice*
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
Steven E. Bledsoe, State Bar No. 157811
*sbledsoe@larsonllp.com*
Rick Richmond, State Bar No. 194962
*rrichmond@larsonllp.com*
Paul A. Rigali, State Bar No. 262948
*prigali@larsonllp.com*
**LARSON LLP**
600 Anton Blvd., Suite 1270
Costa Mesa, CA 92626
Telephone: (949) 516-7250
Facsimile: (949) 516-7251

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes*

| | |
|---|---|
| 1 | Wylie A. Aitken, State Bar No. 37770 |
| 2 | *wylie@aitkenlaw.com*<br>**AITKEN♦AITKEN♦COHN** |
| 3 | 3 MacArthur Place, Suite 800<br>Santa Ana, CA 92808 |
| 4 | Telephone: (714) 434-1424<br>Facsimile: (714) 434-3600 |
| 5 | Lexi J. Hazam, State Bar No. 224457 |
| 6 | *lhazam@lchb.com*<br>**LIEFF CABRASER HEIMANN** |
| 7 | **& BERNSTEIN, LLP**<br>275 Battery Street, 29th Floor |
| 8 | San Francisco, CA 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-100 |
| 9 | |
| 10 | Stephen G. Larson, State Bar No. 145225<br>*slarson@larsonllp.com* |
| 11 | **LARSON LLP**<br>600 Anton Blvd., Suite 1270 |
| 12 | Costa Mesa, CA 92626<br>Telephone: (949) 516-7250<br>Facsimile: (949) 516-7251 |
| 13 | |
| 14 | *Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes* |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| PETER MOSES GUTIERREZ, JR., *et al.*, | Case No. 8:21-CV-01628-DOC(JDEx) |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF PLAINTIFFS' PLANS OF DISTRIBUTION** |
| v. | |
| AMPLIFY ENERGY CORP., *et al.*, | |
| Defendants. | Date: September 14, 2023<br>Time: 8:30 a.m.<br>Judge: David O. Carter<br>Room: 10A |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1
II. ARGUMENT .................................................................................................. 1
    A. The Plans reasonably identify Class Members and issue payments directly by mailed check. ....................................................... 3
    B. The Fisher Class Plan of Distribution is fair, reasonable, and adequate. ................................................................................................ 4
    C. The Property Class Plan of Distribution is fair, reasonable, and adequate. ................................................................................................ 6
    D. The Waterfront Tourism Class Plan of Distribution is fair, reasonable, and adequate. ...................................................................... 7
III. CONCLUSION ............................................................................................... 9

## I. INTRODUCTION

Plaintiffs have reached a proposed Settlement that provides $34 million to the Fisher Class, $9 million to the Property Class, and $7 million to Waterfront Tourism Class. *See* Dkt. 739-2 ("Settlement"), Ex. 1. Pursuant to the Court's Preliminary Approval Order (Dkt. 751 ¶ 26), Plaintiffs filed their Plans of Distribution for each Class on June 26, 2023 (Dkt. 752), and now file this motion for approval of each of those Plans. Capitalized terms here have the meanings given to them in the Plans or, if not defined there, in the Settlement.

Plaintiffs' proposed Plans of Distribution for the Fisher Class Property Class, and the Waterfront Tourism Class should each be approved as fair, adequate, and reasonable. They establish a straightforward process for compensating class members—including issuing checks directly to the members of the Fisher Class, the Property Class, and the Waterfront Tourism Class—anchored in Plaintiffs' experts' classwide damages models. The Plans distribute funds based principally on the claimants' fractional shares of the total losses, and they treat Class members equitably relative to one another.

## II. ARGUMENT

As part of its review of a proposed settlement, the trial court should consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e), 2018 adv. comm. note. The goal is for settlement funds to be distributed "in as simple and expedient a manner as possible." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020) (quoting 4 William B. Rubenstein, *Newberg on Class Actions* § 13:53 (5th ed. Dec. 2021 update)).

Likewise, Rule 23(e)(2)(D) asks whether "the proposal [for distribution

among class members] treats class members equitably relative to each other." Relevant considerations may include "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note.

Fundamentally, "[a]ssessment of a plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P. 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate." *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *4 (S.D. Cal. Mar. 17, 2021) (*citing Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284–85 (9th Cir. 1992)). The plan "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *9 (C.D. Cal. June 9, 2008) (citation omitted); *see also In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *12 (N.D. Cal. Dec. 10, 2020).

This Court approved substantially similar Plans of Distribution in the settlement with the Amplify defendants. *See* Dkt. 727 (order approving Amplify Plans of Distribution); Dkt. 739-3 (Tr. of Apr. 24, 2023 Hr'g at 4:10-7:1) (describing Amplify Plans of Distribution as "extraordinarily well-thought-out"). No class members there—the exact same Class Members here—objected to the Amplify Plans of Distribution. *Id.* at 3.

The two differences between the Plans of Distribution here and those approved in the Amplify settlement both benefit Class Members: (a) no payments will be offset by prior payments received under the Oil Pollution Act, and (b) no Waterfront Tourism Class Members will need to submit claims to receive payments. *See* Dkt. 752-3 (proposed Plan of Distribution for Waterfront Tourism Class). The calculation of awards for each Class Member will match the

methodologies approved in the Amplify settlement, *see id.*, with the exception of the Waterfront Tourism Class Members who previously had to file claims. Each identifiable Waterfront Tourism Class Member in business categories that had to file claims in Amplify will receive checks for equal portions of the damages allocated to their business category, without having to take action. *See id.* at ¶ 37.

### A. The Plans reasonably identify Class Members and issue payments directly by mailed check.

For all three Classes, the Plans provide relief simply, fairly, and quickly. The Settlement Administrator will mail checks directly to all identified Fisher, Property, and Waterfront Tourism Class Members who do not opt out. There will be no claims process, and identifiable Class Members will not need to take any action receive a check.

For the Fisher Class, the Settlement Administrator has utilized California Department of Fish and Wildlife ("CDFW") Landing Records previously obtained by Class Counsel to identify Fisher Class members, and to establish each Fisher Class Member's pro rata share of the Settlement, based upon their fishing activity before and after the Spill. Dkt. *See* 752-1 (Proposed Plan of Distribution for the Fisher Class), ¶ 30. The Settlement Administrator will mail a check for that amount to each Fisher Class Member.

Likewise, each Property Class Member will be issued a check directly. The Settlement Administrator has obtained real property records to identify all real properties in the class definition. Dkt. 752-2 (Proposed Plan of Distribution for the Real Property Class), ¶ 23. Each property will be allocated the same share of the settlement's value, but their recovery may differ if the same property was owned by multiple owners during the class period, in which case each such owner will receive a partial share of the allocation for that property. *Id*. ¶¶12, 15, 26.

Unlike in the Amplify settlement, where some Waterfront Tourism Class Members had to file claims, all identified Waterfront Tourism Class Members will

be mailed a check directly pursuant to the Plan of Distribution in this Settlement. The Settlement Administrator has used records and information previously obtained by Class Counsel and the Settlement Administrator, as well as information gathered related to the separate settlement with the Amplify defendants, to identify Waterfront Tourism Class Members. Dkt. 752-3 (Proposed Plan of Distribution for the Waterfront Tourism Class), ¶¶ 24, 27. As detailed below, Waterfront Tourism Class Members in certain business categories will receive pro rata shares of estimated lost profits for their business category. Waterfront Tourism Class Members in other business categories will receive equal shares of the estimated lost profits for their business category.

Any Class Members not identified through the methods above may contact the Settlement Administrator to have their eligibility determined. If deemed by the Settlement Administrator to be a Class Member based on the Class definitions, that Class Member will be issued a check. *See* Dkt. 752-1 ¶ 39; Dkt. 752-2 ¶ 28; Dkt. 752-3 ¶ 26.

### B. The Fisher Class Plan of Distribution is fair, reasonable, and adequate.

The Fisher Class is composed of fishers operating in the CDFW fishing blocks that Plaintiffs allege were oiled by the Spill, and fish processors who re-sold fish from those blocks. Dkt. 752-1 ¶ 16. At trial, Plaintiffs intended to prove classwide damages through their expert Dr. Peter Rupert's difference-in-differences model that calculated the lost catch due to the Spill, from which Dr. Rupert then calculated lost profits. Following a favorable verdict, allocation of classwide damages would follow and be guided principally by the detailed CDFW landings data. *Id.* at 16. This was exactly the same methodology, developed by the same expert, in the Refugio Oil Spill litigation. *Andrews et al v. Plains et al*, 15-CV-04113, Dkt. 951-1 (Proposed Plan of Distribution for Fisher Class) ¶ 61 (C.D. Cal. June 27, 2022). This Plan is based on the similar plans developed for and approved

in the *Plains* litigation and the Amplify settlement approved by this Court. *See* Dkt. 727.

As in *Plains*, the Plan of Distribution for the Fisher Class is appropriately anchored in this methodology. First, the Fisher Net Settlement Amount is divided between Fishers and Processors based on Dr. Rupert's analysis of how profits derived from gross catch are generally distributed in the fishing industry. Dkt. 752-1 ¶¶ 35-36. Dr. Rupert's analysis determined that the Processor Share should be 10% of the Fisher Net Settlement Amount. After allocating to Processors, the remainder of the Fisher Net Settlement Amount will be allocated to Fishers and Vessels, also pursuant to Dr. Rupert's analysis. *Id.*. Again, using the industry guidelines identified by Dr. Rupert, after the 10% Processor Share the proportional division of revenue between Vessels and individual Fishers is 80%/20% with the larger share to Vessels. *Id.*

*Second*, each entity or individual's pro-rata share of the Processor Share, Vessel Share, and/or Fisher Share is calculated by taking the Processor, Vessel, or Fisher's average annual proportional share of the catch in comparison to other individuals or entities in that category. *Id.* ¶ 37. In sum, calculating individualized payment amounts for the Fisher Class is economically and administratively feasible without claims forms in this case because of the CDFW data.

Courts have consistently found that a plan of distribution that awards fractional shares is fair, reasonable and adequate. *See, e.g., In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (finding a plan of distribution that provided each class member with a "fractional share" based on each class member's total base salary received during the alleged conspiracy period to be "cost-effective, simple, and fundamentally fair") (citation omitted); *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp.2d 389, 404 (D.N.J. 2006) (finding a pro rata distribution to claimants based on their direct purchases to be "eminently reasonable and fair to the class members").

The Settlement Administrator is still calculating payment amounts, but based on currently available information Interim Settlement Class Counsel estimates that the average Fisher Class Member payment could be in the five figures. The specific amount per Fisher Class Member will vary considerably based on the percentage of fish catch.

### C. The Property Class Plan of Distribution is fair, reasonable, and adequate.

The Property Class is comprised of residential properties that front shoreline, including harbors, that was allegedly oiled and/or closed. Plaintiffs allege that all Property Class Members suffered a nuisance as a result of this oiling.

Each property within the Property Class definition will be assigned an equal Distribution Share from the Property Class Settlement Fund (net after fees, costs, and service awards). As in *Plains*, no Property Class Member will have to prove they had oil on their property. But unlike in *Plains*, Property Class Members will not have to file claims—all identified Property Class Members who do not opt out will be sent a check.

The proposed equal distribution to Property Class Members is reasonable, efficient, and equitable. Setting aside oiling or other physical trespass on individual Class Members' properties, all Property Class Members are similarly situated with regard to the impact of harbor and beach closures, which affected all similarly and has no single centralized data source like the CDFW from which to determine each member's proportional share of the aggregate damage. An equal distribution— without claims required—is simpler than the variable property class distribution in *Plains*, which required significant expert costs to calculate the proportional loss of use value of each property and administrative costs to administer a claims process. *See Plains*, Dkt. 951-2 (June 27, 2022) (Proposed Plan of Distribution for Property Class). For the Property Class in this case, such expensive calculation and administration processes would be a larger proportion of a smaller fund, reducing

the payments available to all Class Members.

Courts regularly approve settlements distributing equal payments from a common fund. *See, e.g.*, *Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG, 2018 WL 11358228, at *4 (C.D. Cal. Apr. 2, 2018) (approving payment of equal shares for portion of settlement); *S. California Gas Leak Cases*, No. BC601844, (Cal. Super. Ct. April 29, 2022) (granting final approval to settlement distributing $40 million fund equally to class of property owners affected by gas leak).[1]

Class Counsel currently estimates that payments for each property in the Property Class could be approximately $600 per property, though this could change depending on administrative costs and Court-awarded fees, costs, and service awards.

### D. The Waterfront Tourism Class Plan of Distribution is fair, reasonable, and adequate.

Class Counsel identified ten categories of businesses in the Waterfront Tourism Class. *See* Dkt. 621-3. They are (1) marina or "landing" operations servicing fishing and sightseeing vessels, (2) whale and/or dolphin watch vessels and sunset cruise vessels, (3) vessels providing sportfishing operations (with more than 6 passengers and requiring a Coast Guard Certification of Inspection), (4) "sixpack" fishing vessels offering charters for 6 or fewer anglers, (5) bait and tackle shops, (6) surf schools, (7) leisure boat rentals/charters, (8) hotel and lodging accommodations, (9) food and beverage establishments, and (10) retail establishments within the class definition. *See* Dkt. 752-3 (Proposed Waterfront Tourism Plan), ¶ 29. The total estimated lost profits of each Waterfront Tourism Business category during the Damages Period was calculated by examining

---

[1] Mot. at 3, S. California Gas Leak Cases, No. BC601844, (Cal. Super. Ct. Mar. 28, 2022) (available at https://www.porterranchpropertyclass.com/Docs/Plaintiffs%E2%80%99%20Motion%20for%20Final%20Approval%20of%20Class%20Settlement%20and%20Plaintiffs%E2%80%99%20Motion%20for%20Attorneys%20Fees,%20Lit.pdf)

financial information provided by the Settlement Class Representatives combined with publicly available research such as advertised vessels and capacity ("seats"), reported hotel occupancy and average daily room rates, and consumer spending research conducted for local municipalities. *Id.* ¶ 30. By adding up the estimated lost profits of each category, the total estimated lost profits for the Waterfront Tourism Class has been determined. *Id.* Accordingly, the pro rata share of the Settlement funds allocated to each category has been determined by taking each category's estimated lost profits as a percentage of the total estimated lost profits of the entire Waterfront Tourism Class. *Id.* ¶ 31.

Unlike in the Amplify settlement, here Plaintiffs propose that all identified Waterfront Tourism Class Members, like the Fisher and Property Class Members, will receive checks by mail without having to take any action.

For entities engaged in whale and/or dolphin watching/sunset cruising, sportfishing operations, "six-pack" fishing, leisure boat rentals/charters, and hotel and lodging accommodations, their allocation of Settlement funds within these categories will be determined by calculating each entity's pro-rata share of the total number of seats (for boats) or rooms (for hotels) multiplied by the Category Distribution Balance for each respective category. *Id.* ¶ 35.

The Settlement Administrator will determine whether any marina or landing entity is a member of the Waterfront Tourism Class and not already covered by another business category above, in which case an award will be determined based on a percentage of the funds allocated to the entities being serviced through such marina or landing entity. *Id.* ¶ 36.

Surf schools, food and beverage entities, bait and tackle shops, and other retail establishments identified within the Waterfront Tourism Class Definition will receive equal shares of the Category Distribution Balance for each respective category. They will not need to file claims to receive payments. *Id.* ¶ 37.

Payments will be issued to eligible, identified Waterfront Tourism Class

Members by check. To the extent that any Waterfront Tourism Class Member has side agreements with other individuals or entities that guarantee those individuals or entities a proportion of recovery, Waterfront Tourism Class Members are responsible for upholding their side agreements. *Id.* ¶ 38.

Calculations are ongoing and it is not possible for Plaintiffs to specifically estimate potential payments per category of Waterfront Tourism Class Member at this time.

### III.  CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court approve the Plans of Distribution for the Fisher Class, the Property Class, and the Waterfront Tourism Class as fair, adequate, and reasonable.

Dated: July 31, 2023          Respectfully submitted,

/s/ *Lexi J. Hazam*
Lexi J. Hazam

/s/ *Wylie A. Aitken*
Wylie A. Aitken

/s/ *Stephen G. Larson*
Stephen G. Larson

Wylie A. Aitken, State Bar No. 37770
Darren O. Aitken, State Bar No. 145251
Michael A. Penn, State Bar No. 233817
Megan G. Demshki, State Bar No. 306881
**AITKEN♦AITKEN♦COHN**
3 MacArthur Place, Suite 800
Santa Ana, CA 92808
Telephone: (714) 434-1424
Facsimile: (714) 434-3600

Lexi J. Hazam, State Bar No. 224457
Elizabeth J. Cabraser, State Bar No. 083151
Robert J. Nelson, State Bar No. 132797
Patrick I. Andrews, *admitted pro hac vice*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Kelly K. McNabb, *admitted pro hac vice*
Wilson M. Dunlavey, State Bar No. 307719
Avery S. Halfon, *admitted pro hac vice*
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

| | |
|---|---|
| 1 | Stephen G. Larson, State Bar No. 145225 |
| | *slarson@larsonllp.com* |
| 2 | Steven E. Bledsoe, State Bar No. 157811 |
| | *sbledsoe@larsonllp.com* |
| 3 | Rick Richmond, State Bar No. 194962 |
| | *rrichmond@larsonllp.com* |
| 4 | Paul A. Rigali, State Bar No. 262948 |
| | *prigali@larsonllp.com* |
| 5 | **LARSON LLP** |
| | 600 Anton Blvd., Suite 1270 |
| 6 | Costa Mesa, CA 92626 |
| | Telephone: (949) 516-7250 |
| 7 | Facsimile: (949) 516-7251 |
| 8 | *Interim Co-Lead Counsel for Plaintiffs and the Proposed Classes* |