**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| PETER MOSES GUTIERREZ, JR., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMPLIFY ENERGY CORP., *et al.*,<br><br>Defendants. | Case No. 8:21-CV-01628-DOC(JDEx)<br><br>**ORDER GRANTING ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS UNDER RULE 23(H) [774][756]**<br><br>Judge: David O. Carter<br>Room: 10A |

Before the Court is a motion for attorneys' fees, expenses, and class representative service awards related to a class action settlement reached between Class Plaintiffs and Shipping Defendants.[1] *See* Dkt. 739-2 (the proposed "Settlement"). The Court conducted a fairness hearing on September 14, 2023. Having considered the moving papers and the information provided at the hearing, the Court GRANTS the motion for attorneys' fees, costs, and Class Representative service awards.

## I. BACKGROUND

This litigation arises from an oil spill in the San Pedro Bay on or around October 1, 2021. Class Plaintiffs allege that in January 2021, two container ships, the *M/V Beijing* and *M/V MSC Danit*, struck and dragged their anchors over Amplify's San Pedro Bay Pipeline.[2] Plaintiffs allege that damage from those strikes caused the pipeline to rupture. When the pipeline ruptured, oil spilled into the Pacific Ocean and spread along the coast of Orange County. *See* Dkt. 454 ¶¶ 2, 4, 12-14.

In the aftermath of the oil spill, and as early as October 4, 2021, certain plaintiffs filed the first of many class action complaints against Amplify. On December 20, 2021, this Court consolidated many of the cases into this lead case, *Gutierrez, et al. v. Amplify Energy, et al.*, and administratively closed all related cases. *See* Dkt. 38. The Court invited attorneys to apply for leadership positions on behalf of plaintiffs and, after briefing and oral presentations to the Court, appointed Wiley Aitken of Aitken*Aitken*Cohn, Stephen Larson of Larson LLP, and Lexi

---

[1] The "Shipping Defendants" are: Capetanissa Maritime Corporation, Costamare Shipping Co., S.A., V.Ships Greece Ltd., and the *M/V Beijing* (collectively, "Capetanissa") and Dordellas Finance Corp., MSC Mediterranean Shipping Co. SA, Mediterranean Shipping Co. S.r.l., MSC Shipmanagement Ltd., and *MSC Danit* (collectively, "Dordellas"). *See* Dkt. 739-2, ¶ 1. Unless otherwise stated, capitalized terms have the definitions set forth in the Settlement Agreement.

[2] Amplify" refers collectively to Amplify Energy Corporation, Beta Operating Company, LLC, and San Pedro Bay Pipeline Company, the three Defendants that own and operate the San Pedro Bay Pipeline.

Hazam of Lieff Cabraser Heimann & Bernstein LLP as Interim Co-Lead Counsel. *Id.* at 3.

After this Court consolidated separately filed class actions into this lead case, Interim Co-Lead Counsel filed a consolidated amended class action complaint in early 2022. Dkt. 102. Plaintiffs have subsequently amended. Plaintiffs' operative pleading in this lead case is now the 110-page Second Amended Consolidated Complaint ("SAC"), filed on October 4, 2022. Dkt. 454.

Plaintiffs brought claims against the Shipping Defendants for negligence, public nuisance, negligent interference with prospective economic advantage, trespass, continuing private nuisance, violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, respondeat superior, and enforcement of maritime lien *in Rem*. See Dkt. 454 ¶¶ 273-389. The Shipping Defendants each moved to dismiss Plaintiffs' claims for a variety of reasons, including that maritime law barred their claims. *See* Dkts. 467, 469.

The Parties conducted substantial discovery. The Class Representatives collected 8 GB of data for search and review responsive to the Shipping Defendants' requests. Dkt. 739-1, ¶ 25. Plaintiffs obtained and reviewed more than 180,000 documents from the Shipping Defendants, including numerous highly technical documents relating to ship engineering and navigation. *Id.* Plaintiffs cross-noticed and participated in the depositions of more than 40 witnesses around the world, including at ports of call in Europe. *Id.* Plaintiffs also participated in the inspections of the *M/V Beijing*, the oil platform that controlled the pipeline at the location and time of the spill, and the pipeline during its removal. *Id.* Plaintiffs developed several maritime experts and worked with various liability experts. *Id.* This discovery-related work included This discovery work included many disputes argued between Plaintiffs and the Shipping Defendants before the Special Master Panel ("SMP") appointed by the Court to oversee discovery. Dkt. 38, § IV.

Plaintiffs also managed the interplay between this action and a related action

brought by certain of the Shipping Defendants under the Limitation of Liability Act of 1851, 46 U.S.C. §§ 30502, *et seq. See In the Matter of the Complaint of Dordellas Finance Corp. Owner and MSC Mediterranean Shipping Company S.A., Owner pro hac vice*, No. 2:22-cv-02153-DOC-JDE (C.D. Cal.) ("Limitation Action"); *see also In re the Matter of the Complaint of Capetanissa Maritime Corporation*, No. 2:22-cv-03462-DOC-JDE (C.D. Cal.). The Parties engaged in significant additional litigation in the Limitation Action, including briefing regarding whether Plaintiffs' claims should proceed in this action or the Limitation Action, whether any claims should be stayed, whether class claims could be maintained in the Limitation Action, the sufficiency of the Limitation Action notice, and the scope of the Limitation Action trial. *See* Dkt. 739 at 4-7 (detailing this briefing).

Apprised of the facts of this case, the Parties then engaged in settlement negotiations.

In advance of the mediation, Plaintiffs engaged some of the same experts that survived *Daubert* challenges in similar litigation, *Andrews v. Plains All American Pipeline, L.P.*, No. 2:15-cv-04113-PSG (C.D. Cal.), a similar class action lawsuit on behalf of businesses and property owners harmed by a Southern California oil spill. These experts include an expert in the field of real estate damages, an economist, and a marine scientist, who submitted confidential preliminary reports for purposes of mediation to support Plaintiffs' claims and damages. Dkt. 739-1, ¶ 26. The Parties exchanged and submitted detailed mediation statements addressing liability and damages, including expert reports and rebuttal reports. *See* Dkt. 739-4 (Declaration of Layn R. Phillips), ¶ 6. As the mediator recognized, substantial work went into mediation preparation, and the mediation involved complex issues that required significant thought. *Id.* ¶¶ 6, 11.

Under the proposed Settlement, the Shipping Defendants will pay $45 million total, with $30.6 million paid to the Fisher Class, $8.1 million to the

Property Class, and $6.3 million to the Waterfront Tourism Class. *See* Settlement at §§ II.16, 28, 41, III. These amounts, together with interest earned thereon, will constitute the Fisher, Property, and Waterfront Tourism Class Common Funds, respectively. *Id.* § II.14, 26, 39. No portion of the combined $45 million will revert to the Shipping Defendants. After deduction of notice-related costs and any Court-approved award of attorneys' fees, reimbursement of litigation expenses, and service awards to Class Representatives, all of the remaining monies will be distributed to the Class members in accordance with Plaintiffs' proposed Plans of Distribution, which were filed with the Court on June 26, 2023. Dkt. 752.

This Court granted preliminary approval to the Shipping Defendants Settlement on June 15, 2023. Dkts. 750, 751. After considering the factors set forth in Fed. R. Civ. P. 23(g), this Court appointed Interim Co-Lead Counsel Wylie A. Aitken, Lexi J. Hazam, and Stephen Larson as Interim Settlement Class Counsel. Dkt. 751, ¶ 4.

Plaintiffs now move for an order approving the requested attorneys' fees, expenses, and service awards.

## II. ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Plaintiffs move for (1) $11.25 million in attorneys' fees, representing 25% of the Settlement Funds, (2) reimbursement of $1,142,660.81 in litigation costs incurred by Class Counsel, and (3) service awards of $7,500 to each Class Representative. *See* Plaintiffs' Notice of Motion and Motion for Attorneys' Fees, Expenses, and Service Awards Under Rule 23(H) ("Fees Mot.") at 1. The Court addresses each request in turn.

### A. Attorneys' Fees

#### 1. Legal Standard

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs. The court "must

-5-

carefully assess" the reasonableness of the fee award. *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Because the benefit to the class is easily quantified in common-fund settlements," courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id*. The Court will analyze Interim Settlement Class Counsel's fee request under both theories, starting with the percentage-of-the-common-fund theory, and then a lodestar-cross-check.

### 2. **Discussion**

The "benchmark" percentage for attorney's fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "However, in most common fund cases, the award exceeds that [25%] benchmark." *Spencer-Ruper v. Scientiae, LLC*, No. 819CV01709DOCADS, 2021 WL 4895740, at *1 (C.D. Cal. Sept. 24, 2021) (Carter, J.) (citing *Omnivision*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998))). "Absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Omnivision*, 559 F. Supp. 2d at 1048.

Here, Interim Settlement Class Counsel requests that the court approve a fee award of $11.25 million, or 25% of the gross Settlement amount. Fees Mot. 1. The fee request is fully supported by the factors enunciated in *Vizcaino*, as explained below.

The common fund approach is also endorsed by California law, a relevant consideration given that many of the Settlement Classes' claims are brought under

this State's law. *See Laffitte v. Robert Half Int'l Inc.,* 1 Cal. 5th 480, 503 (2016) (endorsing percentage of the fund approach and affirming an award equal to one-third of the common fund).

### a. Percentage-of-the-Common-Fund Method

The selection of a percentage must "take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. When assessing the reasonableness of a fee award under the common fund theory, courts consider factors such as (1) the results achieved, (2) the risk of litigation, (3) the complexity of the case and skill required, (4) the benefits beyond the immediate generation of a cash fund, and (5) awards made in similar cases. *Omnivision*, 559 F. Supp. 2d at 1046; *Vizcaino*, 290 F.3d at 1048-50).

#### i. Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046.

The Court finds that the monetary relief here is a strong result for the Class in light of the costs and risks of delay of litigation. As detailed in Plaintiffs' motions for settlement approval, the non-reversionary $45 million Settlement provides Settlement Class Members with substantial monetary relief on its own. When viewed in combination with the $50 million monetary relief achieved in the settlement with Amplify, the $95 million represents a substantial portion of the Classes' estimated damages. *See* Dkt. 739-4 (Phillips Decl.), ¶ 13; *see also id.* ("Based on my experience as a litigator, a former U.S. District Judge and a mediator, I believe that the Settlement represents a recovery and outcome that is reasonable and fair for the Settlement Classes …. I further believe it was in the best interests of the parties that they avoid the burdens and risks associated with taking a case of this size and complexity to trial, particularly given the added complication of the Limitation Action and its potential impact on the claims. I strongly support the Court's approval of the Settlement in all respects.").

Further, the Court recognizes the overwhelmingly positive reaction from the Class—no Class Member has filed an objection to the Settlement or the fee request. *See* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:58 (6th ed.) ("If the class contains particularly significant class members . . . who do not object, those class members' acquiescence may be more meaningful."). The lack of objections to the Settlement and to Class Counsel's request for fees provides a compelling argument that the results obtained are meaningful to the Class and that Class members appreciate the Class Counsel's work achieving them. *Jenson v. First Tr. Corp.*, No. CV 05-3124 ABC (CTx), 2008 WL 11338161, at *15 (C.D. Cal. June 9, 2008) ("[T]hat no Class members that have manifested any disapproval of the fee request further supports its reasonableness.").

Accordingly, the Court finds that the result obtained for the Class supports the reasonableness of the requested award.

### ii. Risk of Litigation

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly [in] a case involving complicated legal issues, is a significant factor in the award of fees." *Spencer-Ruper*, 2021 WL 4895740, at *2 (citing *Omnivision*, 559 F. Supp. 2d at 1046-47).

The Court finds that the risk of continued litigation supports the requested benchmark fee. Litigation against the Shipping Defendants—a constellation of companies from across the globe—was complicated and risky. The Shipping Defendants each moved to dismiss Plaintiffs' claims for a variety of reasons, including that maritime law barred their claims. *See* Dkts. 467, 469. Those motions were still pending when the parties settled.

Plaintiffs also faced the challenges associated with the Limitation Action and the related trial that had been approaching at the time of settlement. If the Ships had proven at that trial that they were not liable for the oil spill, or that their damages should be limited, Class Plaintiffs would have either recovered nothing or

potentially significantly less than their full damages—especially considering that Amplify would have also claimed very significant damages in any concursus related to any limited funds identified in the Limitation Action. If the Court had granted limitation, Plaintiffs also faced the challenge of demonstrating that a class claim was proper in a Limitation Action—which the Shipping Defendants had strenuously opposed and which this Court had not yet decided.

Even if Plaintiffs had prevailed on every measure in the Limitation Action and it was dismissed, Plaintiffs would then still face the gauntlet of prevailing on class certification, *Daubert*, summary judgment, liability and damages at trial, and an inevitable appeal. Each of these would be hotly contested. The Shipping Defendants would also likely seek to shift liability onto Amplify. And even if Plaintiffs secured a complete victory at a merits trial on both liability and damages, it is a near certainty that the Shipping Defendants would engage in "vigorous post-trial motion practices . . . and likely appeals to the Ninth Circuit—delaying any recovery for years." *Baker v. SeaWorld Ent., Inc.*, No. 14-CV-02129-MMA-AGS, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020).

For these reasons, "the risks of continued litigation not only support the Settlement, the result obtained for the Class also supports the reasonableness of the requested fees." *See Spencer-Ruper*, 2021 WL 4895740, at *2.

### iii. Complexity of the Case and Skill Required

The Court also considers the skill required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See Omnivision*, 559 F. Supp. 2d at 1047.

As this Court recognized in appointing Interim Settlement Class Counsel as Interim Co-Lead Counsel at the beginning of this hard-fought litigation, Interim Settlement Class Counsel has a depth of experience handling class actions and other complex litigation, including "litigation involving similar facts and issues to those in th[is] case," they engaged in significant work "investigating potential claims in

this action," and they have knowledge of the laws at issue in this case, including environmental law. *See* Dkt. 38 (appointing Interim Co-Lead Counsel).

The Court finds that Interim Settlement Class Counsel deftly applied their legal skills and abilities to this litigation and settlement. The interplay between this action and the Limitation Action required significant research, strategizing, and briefing to navigate in order to maintain the claims of the three Settlement Classes. *See* Dkt. 739 at 4-7 (detailing Limitation Action-related litigation). Interim Settlement Class Counsel also engaged in extensive discovery, collecting an producing enormous amounts of data and documents, reviewing and interpreting understand voluminous and highly-technical documents from Defendants, participating in depositions of more than 40 witnesses around the world, and participating in inspections of one of the container ships, the oil platform that controlled the pipeline at the location and time of the spill, and the pipeline itself during removal. Dkt. 739-1, ¶ 25. Plaintiffs also retained and worked with experts related both to liability and damages, in fields including marine science, real estate damages, and economics. *Id.* ¶ 26.

Interim Settlement Class Counsel also successfully handled this litigation against a multitude of Defendants with significant financial and legal resources, represented by prominent litigation firms. *See In re Am. Apparel, Inc. S'holder Litig.*, No. 10-cv-6352, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.").

The Court agrees that the skill displayed by Interim Settlement Class Counsel in prosecuting this case and obtaining a favorable settlement supports their requested award.

        **iv.** **Settlement Class Counsel's undertaking of this case on a contingency-fee basis supports the requested fees.**

"The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work." *Spencer-Ruper*, 2021 WL 4895740, at *3 (citing *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Interim Settlement Class Counsel bore not insignificant risks to achieve this result. Interim Settlement Class Counsel took the case purely on contingency, devoting thousands of hours and advancing hundreds of thousands of dollars in litigation expenses, all with no guarantee of reimbursement. Fees Mot. at 10. In so doing, Interim Settlement Class Counsel "turn[ed] down opportunities to work on other cases to devote the appropriate amount of time, resources, and energy necessary to responsibly handle this complex case." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *3 (N.D. Cal. Mar. 17, 2017).

This factor also strongly supports Interim Settlement Class Counsel's requested fee.

### v.  Awards Made in Similar Cases

A court should also consider fee awards from similar cases. *Vizcaino*, 290 F.3d at 1049-50. The requested fee is equal to the Ninth Circuit's "benchmark," and in fact is lower than the fees often awarded in similar cases. *See Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017) (citing several cases awarding 33%). Indeed, in another oil spill case along the California coast, the court awarded a 32% fee. *See Andrews v. Plains All Am. Pipeline L.P*, No. CV154113PSGJEMX, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (awarding a 32% fee and citing cases awarding up to 42% in fees). This Court awarded a 25% fee for the similar settlement with Amplify, and notably none of the class members there—who are the same as the class members here—objected to that fee request. *See* Dkt. 726 at 8.

The requested fee is also below a traditional contingency fee, which further supports its reasonableness. *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (Carter, J.) (awarding 28% in fees, noting that 28% is "commensurate with, and even slightly below, a traditional contingency fee) (citing *Blum v. Stenson*, 465 U.S. 886, 904, (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.").

Thus, the requested 25 percent award is consistent with fee awards in class action cases generally, and compares favorably with percentages approved in similar cases. Accordingly, this factor clearly supports Interim Settlement Class Counsel's requested fee.

### b. **Lodestar Cross-Check**

The lodestar method is a way for the Court to cross-check the reasonableness of a fee award. Courts sometimes employ a "streamlined" lodestar analysis to "cross-check" the reasonableness of a requested award. *Vizcaino*, 290 F.3d at 1050. "[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The aim is to do rough justice, not to achieve auditing perfection." *In re Apple Inc. Device Performance Litig.*, No. 18-md-2827,, 2021 WL 1022866, at *7 (N.D. Cal. Mar. 17, 2021) (citation omitted); *see also In re Capacitors Antitrust Litig.*, No. 17-md-2801, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (holding that a lodestar cross-check does not require "mathematical precision [or] bean-counting").

In the Ninth Circuit, a multiplier ranging from 1.0 to 4.0 is considered "presumptively acceptable." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014); Vizcaino, 290 F.3d at 1051 n.6 (finding most multipliers range from 1.0–4.0).

Here, the lodestar cross-check reveals that the requested fee is eminently

reasonable: the resulting multiplier is comfortably in the middle of the acceptable range. First, Interim Settlement Class Counsel devoted a substantial number of hours to the litigation specifically against the Shipping Defendants. Fees Mot. at 11-12. Interim Settlement Class Counsel confirms they did not submit any hours in support of this fee request in support of the fee requested for the Amplify settlement. *Id.*

Second, Class Counsel's rates are consistent with market rates in their area. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals found to be reasonable); *see also* No. 15-cv-4922, *Dickey v. Advanced Micro Devices, Inc.*, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (approving rates between $275 and $1,000 for attorneys); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (approving rates between $300 and $1,050). This Court recently approved the same rates in granting the fee request relating to the Amplify settlement. Dkt. 726 at 12-13.

The resulting lodestar of $5,035,745.40 yields a modest multiplier of 2.23 for work performed to date related to the Shipping Defendants settlement. This multiplier is in the middle of the "presumptively acceptable range of 1.0-4.0" in this Circuit. *Dyer*, 303 F.R.D. at 334; *see also Vizcaino*, 290 F.3d at 1051 n.6 (approving 3.65 multiplier); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-cv-5693, 2017 WL 4685536, at *9 (C.D. Cal. May 8, 2017) (approving multiplier of up to 2.5). And the multiplier will only decrease as Interim Settlement Class Counsel continue to work on the approval and implementation of this proposed Settlement. Allocation to attorneys of any fees awarded as a multiplier will be

1  determined by Interim Co-Lead Counsel.

2      The reasonableness of the requested fee is also evident when this Settlement
3  is considered together with the Amplify settlement, where the total requested 25%
4  fee yields a total multiplier of 1.63.

5      This factor supports Interim Settlement Class Counsel's requested 25 percent
6  fee, and demonstrates that such a fee will not result in a "windfall" to Counsel.

7      For the above reasons, the Court finds that the requested benchmark fee is
8  reasonable and GRANTS Interim Settlement Counsel's Motion for Fees of $11.25
9  million.

10     **B.**    **Litigation Expenses**

11     Class Counsel may "recover their reasonable expenses that would typically
12 be billed to paying clients in non-contingency matters." *Brown v. CVS Pharmacy,*
13 *Inc.*, No. 15-cv-7631, 2017 WL 3494297, at *9 (C.D. Cal. Apr. 24, 2017) (citation
14 omitted); *see also Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003); Fed. R. Civ.
15 P. 23(h). This includes expenses that are reasonable, necessary, and directly related
16 to the litigation. *See Willner v. Manpower Inc.*, No. 11-cv-2846, 2015 WL
17 3863625, at *7 (N.D. Cal. June 22, 2015).

18     Here, Interim Settlement Class Counsel established a joint cost fund to
19 manage the bulk of the hard costs incurred, such as for depositions, transcripts,
20 expert fees, and mediation expenses. Fees Mot. at 13. Combined with each firm's
21 held costs, the total costs for which Class Counsel seek reimbursement is
22 $1,134,254.91. *Id.* Interim Settlement Class Counsel confirms that none of the costs
23 requested here were requested or reimbursed in the Amplify settlement. *Id.*

24     These costs benefited the Settlement Classes and are commensurate with the
25 stakes, complexity, novelty, and intensity of this particular litigation. Interim
26 Settlement Class Counsel expended costs on the typical categories, *e.g.*, experts,
27 document management systems, mediation fees, and necessary travel, in addition to
28 soft costs attributable to the litigation. *Id.* at 14. While this highly technical case

was expensive to prosecute, "[Interim Settlement] Class Counsel had a strong incentive to keep expenses at a reasonable level due to the high risk of no recovery when the fee is contingent." *Beesley v. Int'l Paper Co.*, No. 06-cv-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014).

The Court is satisfied that the costs are reasonable, and therefore GRANTS Plaintiffs' motion for costs in the amount of $1,142,660.81.

### C. Service Awards for Class Representatives

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In addition to any settlement distributions they receive, the Court-appointed Class Representatives request service awards of $7,500 to compensate them for the time and effort they spent pursuing this matter on behalf of their respective Classes. Courts have discretion to approve service awards based on the amount of time and effort spent, the duration of the litigation, and the personal benefit (or lack thereof) as a result of the litigation. *See, e.g.*, *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Each of these Class Representatives searched for and provided facts used to compile the Complaints, helped Interim Settlement Class Counsel analyze claims, produced voluminous documents that were responsive to discovery requests both by Amplify and by the Shipping Defendants, provided information to respond to written discovery requests served by the Shipping Defendants, and reviewed and approved the proposed Settlement. They each have submitted declarations further explaining the time and effort they expended to benefit the class. Fees Mot. at 14.

Service awards of $7,500 or larger are often awarded in this Circuit. *See, e.g., In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (granting $25,000 service awards to each institutional investor plaintiff); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.* ("*In re NCAA*"), No. 14-md-2541, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017), *aff'd,* 768 F. App'x 651 (9th Cir. 2019) (awarding each of the four class

representatives $20,000 service awards); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365, 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting Ninth Circuit cases with service awards of $20,000 or higher); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (Carter, J.) (awarding a service award of $15,000).

If considered together with the $10,000 service awards granted by this Court for the Class Representatives' total service awards would amount to $17,500 each (out of a total $95 million recovery), which is still below the amount often awarded in this Circuit. *See In re NCAA*, 2017 WL 6040065, at *11 & n.69 (citing several cases awarding between $20,000 and $120,000), *aff'd,* 768 F. App'x 651 (9th Cir. 2019). Awarding multiple, separate service awards for successive settlements in the same litigation is also appropriate. *See In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (awarding $80,000–$120,000 to each class representative on top of $20,000 awarded to each for prior settlements).

Moreover, a $7,500 service award to each of the seventeen Class Representatives amounts to a total payment of $127,500, or less than .3 percent of the gross Settlement amount. This is well within the range the Ninth Circuit has found reasonable. *Staton*, 327 F.3d at 976-77.

Accordingly, the Court GRANTS Plaintiffs' request for service awards in the amount of $7,500 per Plaintiff, for a total of $127,500.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' motion for approval of attorneys' fees, expenses, and incentive awards is GRANTED. Accordingly, it is HEREBY ORDERED AS FOLLOWS:

1.    Class Counsel is awarded 25 percent of the total settlement amount, or $11.25 million, in attorneys' fees and $1,142,660.81 in costs.

2.    Each of the seventeen Class Representatives is awarded $7,500 in

service awards.

3. The Court finds that these amounts are warranted and reasonable for the reasons set forth in the moving papers before the Court, at the Final Approval Hearing, and the reasons stated in this Order.

IT IS SO ORDERED.

Dated: September 14, 2023

*[signature]*
Hon. David O. Carter